ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.:   949-266-1240
Fax:   949-266-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiffs, Individually
and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA HABBERFIELD, an individual, KEONA KALU, an individual, KATIE RUNNELLS, an individual, JUANITA CARMET CACHADINA, an individual, SARAH HUEBNER, an individual, YESENIA VALIENTE, an individual, VERONICA WALTON, an individual, LISA MURPHY, an individual, NICOLE HILL, an individual, NICOLE STEWART, an individual, ME'LISA THIMOT, an individual, and MARIKA WALTON, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, PRETTYLITTLETHING.COM USA INC., a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, NASTYGAL.COM USA INC., a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, and DOES 1-10, inclusive.<br><br>Defendants. | CASE NO.: 2:22-CV-03899-GW-JEMx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE**<br><br>**Hearing Information:**<br><br>Date:   May 18, 2023<br>Time:   8:30 a.m.<br>Courtroom:   9D<br>Judge:   Hon. George H. Wu<br><br>Action Filed:   June 7, 2022<br><br>Trial Date:   TBD |

1
2

## **TABLE OF CONTENTS**

3

I.      INTRODUCTION ............................................................................1

II.     PROCEDURAL BACKGROUND ...................................................3

     A.    The *Khan* Litigation ............................................................3

     B.    This Lawsuit Is Filed to Continue the Prosecution of Nationwide Claims ...................................................................................4

     C.    The Motion Practice and Discovery From the *Khan* Litigation Is Applicable to and Benefited the Present Case ..........................5

          1.    Defendants' Motion to Dismiss ...................................6

          2.    Written Discovery, Depositions, and Witness Interviews ..............7

          3.    Settlement Negotiations in the *Khan* Litigation .............8

          4.    The Court Approved the Class Settlement in the *Khan* Litigation…. ..........................................................................8

     D.    The Court Denied Defendants' Motion to Strike the *Habberfield* Action……. ...........................................................................8

     E.    The Court Consolidated this Action With the *Khan* Litigation ..............9

     F.    Settlement Negotiations and Confirmatory Discovery ...........................9

III.    THE TERMS OF THE SETTLEMENT ........................................10

     A.    The Settlement Class ...........................................................10

     B.    Settlement Consideration ...................................................11

          1.    Monetary Benefits to the Class .................................11

          2.    Injunctive Relief Benefits to the Class ......................12

          3.    Attorneys' Fees, Costs, Incentive Awards, and Administration Costs ........................................................................13

          4.    Release and Dismissal of All Claims ........................15

     C.    The Notice and Settlement Administration Program ...........................15

IV.    LEGAL STANDARD .....................................................................15

**V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL ...............17**

**A.    The Proposed Settlement is Fair and Reasonable..................................17**

    **1.    The Class Is Adequately Represented by Plaintiffs and Counsel17**

    **2.    The Proposal Was Negotiated at Arm's Length ...........................18**

    **3.    The Relief for the Class is Adequate Under Rule 23(e)(2)(C) .....19**

        **a.    The costs, risks, and delay of trial and appeal....................19**

        **b.    The claims process and distribution of relief are effective 22**

        **c.    The attorneys' fees request is reasonable...........................22**

            **(A)    Class counsel's fee request is not disproportionate..23**

            **(B)    The clear sailing provision is not collusive...............27**

            **(C)    There is no reversion of fees to Defendants .............28**

    **4.    The Proposal Treats Class Members Equitably. ..........................29**

**B.    Provisional Certification of the Settlement Class Should Be Granted..30**

    **1.    The Proposed Class Satisfies the Prerequisites of Rule 23(a)......30**

    **2.    The Proposed Class Satisfies Rule 23 Predominance and Superiority........................................................................................32**

    **3.    Injunctive Relief Class Prerequisites Under Rule 23 Are Satisfied………........................................................................37**

**C.    The Notice Plan Should Be Approved.....................................................38**

**VI.   CONCLUSION .........................................................................................39**

# TABLE OF AUTHORITIES

## CASES

*Abdullah v. U.S. Sec. Assocs.*,
   731 F.3d 952 (9th Cir. 2013) .................................................................. 30

*Ahmed v. HSBC Bank*, No. ED CV 15-2057 FMO (SPx),
   2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) ........................................ 30

*American Pipe & Construction Co. v. Utah*,
   414 U.S. 538 (1974) ................................................................................ 20

*Bias v. Wells Fargo & Co.*,
   312 F.R.D. 528 (N.D. Cal. 2015) ............................................................ 37

*Briseno v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ................................................................. 23

*Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx),
   2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ......................................... 20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 15

*Comcast Corp. v. Behrend*,
   569 U.S. 27, 133 S.Ct. 1426 (2013) ........................................................ 36

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) ............................................................ 31, 36

*Donovan v. RRL Corp.*,
   26 Cal. 4th 261 (2001) ............................................................................ 36

*Elkies v. Johnson & Johnson Servs.*, Inc., No. CV 17-7320-GW (JEMx),
   2020 WL 10055593 (C.D. Cal. June 22, 2020) ....................................... 26

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................... 32

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ................................................................. 32

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020) ............................................................ 24

*Graves v. United Industries Corp.*, No. 2:17-cv-06983-CAS (SKx),
   2020 WL 953210 (C.D. Cal. Feb. 24, 2020) ........................................... 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ……………………………………… passim

iv

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,
    2011 WL 4831157 (N.D. Cal. Oct. 12, 2011) ............................................ 29

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................... 29

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD,
    2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ............................................ 29

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)………………………………………………… passim

*In re EasySaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018)………………………………………………… 26, 29

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173–86 (9th Cir. 2013) ......................................... 26

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ......................................... 16, 31, 38

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................................... 24

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) ......................................... 26, 30

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................... 36

*Konik v. Cable*, No. CV 07-763 SVW (RZX)
    2009 WL 10681970 ......................................... 36

*LaGarde v. Support.com, Inc.*, No. C12-0609 JSC,
    2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ......................................... 28

*Lambert v. Nutraceutical Corp.*,
    870 F.3d 1170 (9th Cir. 2017) ......................................... 36, 37

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ......................................... 36

*Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB,
    2021 WL 1839989 (S.D. Cal. May 7, 2021) ......................................... 17

*Martin v. Marriott Int'l, Inc.*, No. CV 18-00494 JAO-RT,
    2021 WL 4888973 (D. Haw. Oct. 19, 2021) ......................................... 28

*Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD,
    2021 WL 1736807 (N.D. Cal. May 3, 2021) ......................................... 28

*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB,
    2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ............................................. 24

*Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx),
    2021 WL 4460334 (C.D. Cal., July 19, 2021) .......................................... 17

*People v. Superior Court (J.C. Penney Corp.)*,
    34 Cal. App. 5th 376 (2019) ........................................................................ 35

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) ……………………………………… 31, 36, 37

*Seegert v. Lamps Plus, Inc.*,
    377 F. Supp. 3d 1127 (S.D. Cal. 2018) ..................................................... 26

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC),
    2012 WL 5392159 (S.D. Cal. 2012) ........................................................... 28

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244–61 (C.D. Cal. 2016) ......................................... 27, 28

*Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB,
    2016 WL 4916955 (N.D. Cal. Sept. 15, 2016) ......................................... 24

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................................... 32

*Torres v. Wells Fargo Bank*, No. CV 17-9305-DMG (RAOx),
    2018 WL 6137126 (C.D. Cal. Aug. 28, 2018) ......................................... 21

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) .................................................... 29

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ..................................................................... 37

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) …………………………………………….. 30, 31, 37

*Warner Const. Corp. v. City of Los Angeles*,
    2 Cal.3d 285 (1970) .................................................................................... 31

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ............................................................... 30, 31

**FEDERAL STATUTES**

28 U.S.C. § 1711 .............................................................................................. 26

28 U.S.C. § 1712 .............................................................................................. 26

**FEDERAL RULES**

Fed. R. Civ. P. 12 ……………………………………………………... 3

Fed. R. Civ. P. 23 ……………………………………………….. passim

Fed. R. Civ. P. 30 ……………………………………………….. 7

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200 ...................................................  5

Cal. Bus. & Prof. Code § 17203 ...................................................  38

Cal. Bus. & Prof. Code § 17500 ...................................................  5

Cal. Bus. & Prof. Code § 17535 ...................................................  38

Cal. Civ. Code § 1750  ...................................................................  5

Cal. Civ. Code § 1780  ...................................................................  38

Cal. Civ. Code § 1781  ...................................................................  38

# I.   INTRODUCTION

On April 6, 2023, Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants Boohoo Group PLC ("Boohoo Group"), Boohoo.com USA, Inc., Boohoo.com UK Limited, Prettylittlething.com USA, Inc., Prettylittlething.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively "Defendants"), entered into a Class Action Settlement Agreement and Release (the "Settlement"). (*See* Ibrahim Decl. Ex. 1.) The Settlement covers all purchasers of merchandise from Defendants' websites in the U.S., excluding California (hereafter, the "Class Members" or the "Class"). Plaintiffs move for preliminary approval of the Settlement. Notably, in December 2022, the Court granted final approval of a virtually identical settlement between Defendants and California purchasers.

Defendants are internet retailers selling women's and men's clothing, shoes, accessories, and beauty products direct to consumers worldwide, including the U.S. Boohoo Group owns the three brands that are the subject of this litigation: Boohoo (which includes BoohooMAN) ("BH"), PrettyLittleThing ("PLT"), and Nasty Gal ("NG").

Plaintiffs contend that Defendants perpetually advertised nearly all the products on their U.S. websites with deceptive original prices (referred to in the pleadings as "reference prices"). Plaintiffs allege the reference prices are deceptive because Defendants rarely sell their merchandise at the reference prices. Instead, Plaintiffs allege Defendants' reference prices are significantly discounted on a near daily basis by sitewide percentage-off "promotions" or sales (e.g., "50% Off Everything"). Plaintiffs thus allege customers are deceived into a false belief that they are receiving a deep discount, when in reality, Plaintiffs believe they are receiving no such discount. As a result, Plaintiffs contend Defendants have falsely inflated the value of their products and induced class members to buy items they would have never bought, or pay more than they otherwise would have paid, had they known the truth about Defendants' practices. Defendants make no

admissions of fact or law and deny liability.

Plaintiffs are pleased to present a Settlement that provides excellent relief for the Class. The Settlement provides for each Class Member to receive a $10 Gift Card with *free shipping* (additionally valued at $7.45 per Class Member, for a total value of $17.45 per Gift Card) to use towards the purchase of any item on the site from which they made a purchase. The Gift Cards have ultimate flexibility. There are no expiration dates, blackout dates, minimum purchase requirements, or fees, and they may be used in conjunction with other offers and promotions. There are no restrictions on transferability and, when they are transferred to others, multiple Gift Cards may be combined together (i.e., "stacked"). Class Members who bought from more than one of the subject websites may receive multiple Gift Cards—one from each site from which they made a purchase (BH, PLT, and NG). These websites consistently include thousands of items available for $10 or less across a wide variety of product categories and styles, meaning that Class Members can use their Gift Cards without incurring any out-of-pocket expense or apply the Gift Cards toward a more expensive purchase, all with free shipping. The Class consists of more than 9.4 million individuals with an anticipated distribution of over 11.3 million Gift Cards. Thus, the monetary value of the Settlement based on the Gift Card and free shipping amounts to more than $197 Million. (Tregillis Decl. ¶¶53-62.)

Moreover, Class Members do not have to file a claim to receive their benefits. *All* Class Members who do not affirmatively opt out will *automatically receive* the Gift Cards via email. Because the Gift Cards never expire, their benefits will forever remain with Class Members until they use them. There is no possibility of reversion to Defendants.

The Settlement also provides impactful injunctive relief to prevent future consumer harm by virtue of the fact that Defendants must fully, prominently, and forever disclose to site visitors that their reference prices *are not based on former prices*, but rather are *merely Defendants' own opinion* of the full retail value of an item. Consumers nationwide thus will no longer be misled into believing that Defendants' reference prices reflect the price at which the item was sold in the recent past.

Class Counsels' proposed attorneys' fees and costs are a small fraction (0.78%) of the Settlement's monetary and non-monetary value—far less than the 25% benchmark—with no reversion to Defendants. The proposed $1,500 incentive awards to the class representatives are well within the norm.

In view of the risks of proceeding with this litigation through class certification, summary judgment, trial, and appeal, this is an excellent result for the Class. Plaintiffs therefore respectfully request the Court to enter an order granting preliminary approval of the Settlement, provisionally certifying the Settlement Class, directing notice of the Settlement in the manner proposed herein, and setting a schedule for final approval.

## II.    PROCEDURAL BACKGROUND

### A.    The *Khan* Litigation

This action is a continuation of the litigation initiated against Defendants in 2020 in the following three related and consolidated actions: (1) *Khan v. Boohoo.com USA Inc.*, No. 2:20-cv-03332-GW-JEMx, (2) *Hilton v. PrettyLittleThing.com USA Inc.*, No. 2:20-cv-04658-GW-JEMx, and (3) *Lee v. NastyGal.com USA Inc.*, No. 2:20-cv-04659-GW-JEMx (together, the "*Khan* Litigation"). Importantly, in the operative complaints in the *Khan* Litigation, the plaintiffs sought certification of a nationwide class of purchasers from the U.S. websites of the three brands that are also at issue here, namely, https://us.boohoo.com  and/or https://boohooman.com/us (the "Boohoo U.S. Websites"), https://prettylittlething.us (the "PLT U.S. Website"), and https://nastygal.com (the "Nasty Gal U.S. Website") (collectively, the "U.S. Websites").

Defendants filed Rule 12 motions seeking to dismiss and/or strike seeking to preclude Plaintiffs from being able to proceed with nationwide classes, but the Court declined to do so. (Khan D.E. 22, 24, 34.)[1] Defendants answered the complaints and the case proceeded to class discovery on a nationwide basis. (Khan D.E. 60-62.)

After extensive discovery and protracted settlement negotiations both before a

---

[1] "Khan D.E." denotes "Docket Entry" in the *Khan* Litigation followed by a docket control number. Page number cites refer to the pagination found in the blue PACER header at the top of each page.

retired U.S. district judge and between counsel, the parties in the *Khan* Litigation settled the plaintiffs' claims on a California-only basis on May 20, 2022. (Khan D.E. 133-1, Ex. 1.) Specifically, the settlement defined the "Settlement Class" and "Settlement Class Members" as only those "individuals in California" who made a purchase on Defendants' U.S. Websites during the applicable class period. (Khan D.E. 133-1, Ex. 1 at § 1.3.) The settlement also expressly stated that it only intended to "fully and finally resolve the claims of the *California* class members and dismiss *without prejudice* the claims of the non-California class members." (Khan D.E. 133-1, Ex. 1 at Recital J (emphasis added).)

On June 3, 2022, the Court granted preliminary approval of the class action settlement in the *Khan* Litigation. (Khan D.E. 158.) On December 20, 2022, the Court granted final approval of the settlement and entered judgment. (Khan D.E. 203.)

**B.    This Lawsuit Is Filed to Continue the Prosecution of Nationwide Claims**

In the meantime, because as noted, the nationwide claims outside of California would be dismissed without prejudice if, as was anticipated, the Court would grant final approval, on June 7, 2022, Plaintiffs Habberfield, Kalu, Runnells, Cachadina, Huebner, Valiente, Veronica Walton, Murphy, Hill, and Stewart filed this action to continue pursuing nationwide class relief (excluding relief for California purchasers) against Defendants. (D.E. 1.)[2] In the complaint, said Plaintiffs sought essentially the same nationwide relief requested by the plaintiffs in the *Khan* Litigation based on the same allegations of false advertising and deceptive pricing on Defendants' U.S. Websites. For example, Plaintiffs asserted claims on a nationwide basis for violations of California consumer protection statutes, common law fraud, and unjust enrichment, and assert that these California claims should be applied to Defendants on a nationwide basis due to Defendants' contacts with, and conduct taking place in, California. (D.E. 1 at ¶¶148-312.)

On June 22, 2022, the ten original Plaintiffs filed a First Amended Complaint ("FAC") to clarify that they were not pursuing relief on behalf of California class members in light of the class settlement in the *Khan* Litigation. (D.E. 13.)

---

[2] "D.E." denotes "Docket Entry" in *this* action followed by a docket control number. Page number cites refer to the pagination found in the blue header at the top of each page.

Pursuant to a stipulation between the parties, on April 6, 2023, the Court permitted Plaintiffs to file a Second Amended Complaint ("SAC"), which is the operative complaint in this action. (D.E. 32.) In the SAC, Plaintiffs added two putative class representatives—Me'Lisa Thimot, a resident of Illinois, and Marika Walton, a resident of New York.

As a result, the SAC contains the following claims for relief: (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL), (2) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"), violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., (4) fraud, (5) fraudulent concealment, (6) restitution for unjust enrichment, (7) violation of the New York State Consumer Protection Statute, (8) violation of the Florida Deceptive & Unfair Trade Practices Act, (9) violation of the Maryland Consumer Protection Act, (10) violation of the Massachusetts State Consumer Protection Law, (11) violation of the Michigan Consumer Protection Act, (12) violation of the Ohio Consumer Sales Practices Act, and (13) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs seek certification of claims 1 through 6 enumerated above on behalf of all nationwide purchasers from the U.S. Websites, excluding California. In the alternative, Plaintiffs seek to certify subclasses of purchasers from New York, Florida, Maryland, Massachusetts, Michigan, Ohio, and Illinois for their common law fraud and restitution claims, as well as under each respective state's consumer protection statute listed above. Plaintiffs seek damages and injunctive relief.

**C.     The Motion Practice and Discovery From the *Khan* Litigation Is Applicable to and Benefited the Present Case**

The present action, in substantial part, is a continuation of the nationwide class claims originally brought in the *Khan* Litigation. With this clear overlap of the claims and issues between the *Khan* Litigation and this action, as well as the Court formally ordering this action consolidated with the *Khan* Litigation for pretrial purposes, the discovery and motion practice from the *Khan* Litigation is plainly applicable to this action. It thus benefited the efforts of Plaintiffs and Class Counsel in prosecuting this action and ultimately negotiating the Settlement presented here. In other words, the Settlement here

was only made possible by the work that had already been done in the *Khan* Litigation.

Importantly, Defendants in the Stipulation of their Chief Executive Officer filed with this motion acknowledged that:

> [T]his case would not have settled without the benefit of the litigation undertaken in the related *Khan* Litigation, including all discovery and depositions taken in that Litigation. The *Khan* Litigation began as nationwide class actions and ultimately resulted in a California class settlement. The litigation and discovery efforts expended by counsel in the *Khan* Litigation overlap entirely with this matter and the work was used extensively to bring about the resolution in this case.

(Stipulation in Support of Motion for Preliminary Approval of Class Settlement (the "Stipulation") at ¶21.) Accordingly, the following brief discussion of discovery and motion practice in the Khan Litigation is relevant to this motion.

### 1.   *Defendants' Motion to Dismiss*

On September 4, 2020, Defendants filed a motion to dismiss and strike the operative complaints in each of the three actions in the *Khan* Litigation pursuant to Rule 12(b)(2), 12(f), and 12(b)(6) of the Federal Rules of Civil Procedure, raising numerous issues, including jurisdiction, standing, and pleading sufficiency. (*See*, *e.g.*, Khan D.E. 22 and 24.) Defendants argued, among other things, that (1) the Court lacked personal jurisdiction over Boohoo Group, (2) Plaintiffs Khan, Hilton, and Lee (the "*Khan* Plaintiffs") sued the wrong entities, (3) all non-California class allegations should be stricken, (4) the *Khan* Plaintiffs lacked standing, (5) the *Khan* Plaintiffs' pre-litigation CLRA notices were non-compliant, and (6) the *Khan* Plaintiffs' claims were not properly pled. (*See* Khan D.E. 22 at 6-7.) The *Khan* Plaintiffs filed a comprehensive opposition, and a detailed declaration full of exhibits contesting Defendants' personal jurisdiction arguments. (Khan D.E. 27.)

On November 16, 2020, the Court denied Defendants' Rule 12(f) motion to strike and Rule 12(b)(6) motion to dismiss in its entirety. (*Khan* D.E. 34 at 6-16.) Regarding personal jurisdiction, the Court found Plaintiffs "produced enough reason for the Court to conclude that they are entitled to an opportunity to take jurisdictional discovery to solidify a basis for a proper assertion of personal jurisdiction over" Boohoo Group. (Khan D.E. 34 at 8-9.) The Court thus allowed written and deposition discovery concerning jurisdiction. Not long after Plaintiffs propounded their discovery requests, Boohoo Group dropped its

personal jurisdiction challenge. (Khan D.E. 57.)

### 2.   *Written Discovery, Depositions, and Witness Interviews*

In early 2021, Plaintiffs served written class discovery on Defendants in the *Khan* Litigation. (Ibrahim Decl. ¶21.) The parties met and conferred regarding Defendants' discovery responses, which ultimately led the *Khan* Plaintiffs to file a lengthy motion to compel further discovery. (Khan D.E. 67.) In April 2021, Magistrate Judge McDermott issued two separate orders granting the *Khan* Plaintiffs' motion, in significant part, and denying the *Khan* Plaintiffs' motion, in certain respects. (Khan D.E. 71, 73.)

In March 2021, the *Khan* Plaintiffs responded to Defendants' written class discovery. (Ibrahim Decl. ¶22.) Defendants also filed a motion to compel. (Khan D.E. 76.) However, on July 19, 2021, Judge McDermott denied the motion in its entirety, the only exception being that the *Khan* Plaintiffs were ordered to provide a verification confirming they had no documents responsive to one document demand. (Khan D.E. 83.)

Not including voluminous spreadsheets and data, Defendants produced more than 546,000 pages of documents responsive to the *Khan* Plaintiffs' document demands. (Ibrahim Decl. ¶24.) In total, up to the present date, Defendants have produced more than 250 Gigabytes of data. (*Id.*) Class Counsel and their team reviewed these documents to conduct depositions and prepare their class certification motion. (*Id.*)

In the meantime, in June 2021, Plaintiffs noticed the deposition of Boohoo Group's Executive Chairman. (Ibrahim Decl. ¶25.) On July 7, 2021, Defendants moved for a protective order to quash the deposition, which the *Khan* Plaintiffs opposed. (Khan D.E. 78.) On July 28, 2021, Judge McDermott again sided with the *Khan* Plaintiffs, ordering the Chairman for deposition after concluding that "Plaintiffs have presented evidence that [the Executive Chairman] has unique personal non-repetitive knowledge of facts relevant to this suit and to class certification[.]" (*Khan* D.E. 89 at 3.)

In late January and early February 2022, the *Khan* Plaintiffs deposed four Rule 30(b)(6) corporate representatives designated by Defendants on behalf of the BH, PLT, and NG brands to testify concerning class topics central to the allegations of wrongdoing.

(Ibrahim Decl. ¶26, Exs. 2-6.) In addition, Plaintiffs' counsel conducted an additional three deposition-like interviews of key defense witnesses on relevant topics. (*Id.*)

### 3.   Settlement Negotiations in the Khan Litigation

The parties commenced settlement negotiations in the *Khan* Litigation by agreeing to private mediation before the Honorable Irma Gonzalez (Ret.) from the U.S. District Court for the Southern District of California. (Ibrahim Decl. ¶36.) The parties initially participated in four separate mediation sessions with Judge Gonzalez. (*Id.*) After a general framework for a potential settlement was laid at these initial sessions, the parties met in person and began an ongoing and regular dialogue where they negotiated intensely all the detailed and intricate aspects of the settlement, provision by provision. (*Id.*) The direct negotiations between counsel occurred over eight (8) months in dozens of video conferences and phone calls. (*Id.*) The parties then reengaged Judge Gonzalez for a final mediation session on May 4, 2022, where they finalized the settlement agreement, leading to its final execution by the parties on May 20, 2022. (*Id.*)

### 4.   The Court Approved the Class Settlement in the Khan Litigation

As noted, on June 3, 2022, the Court granted preliminary approval of the class action settlement in the *Khan* Litigation. (Khan D.E. 158.)  In September 2022, notice was disseminated to the class. (Khan D.E. 190 at ¶¶7-10.) Out of the more than 1.5 million class members who received notice, only 33 class members opted out of the class and there were no objections to the settlement. (Khan D.E. 190 at ¶¶6-8; 198 at ¶¶3-4.)

On December 20, 2022, the Court granted final approval of the settlement, as well as the *Khan* Plaintiffs' motion for attorneys' fees, costs, and service awards in its entirety. (Khan D.E. 199, 201.) The Court entered final judgment the same day. (Khan D.E 203.)

### D.   The Court Denied Defendants' Motion to Strike the *Habberfield* Action

After the settlement in the *Khan* Litigation was signed and preliminarily approved, this action was filed on June 7, 2022, followed by the FAC on June 22, 2022. (D.E. 1, 13.)

On June 28, 2022, Defendants filed a "Motion to Enforce Settlement Agreement and Strike *Habberfield* First Amended Complaint, or in the Alternative to Stay Settlement

Administration, and for Sanctions." (Khan D.E. 159.) Defendants sought a swift dismissal of this nationwide class action without the Court considering any merits of the claims alleged in the complaint. Class Counsel fully briefed the issue for the Court and the Court held a hearing on August 22, 2022. The Court rejected all of Defendants' arguments and denied the motion. (Khan D.E. 181, 185.) The Court found that because Plaintiffs in this action were not plaintiffs in the *Khan* Litigation or bound by the class representatives in the *Khan* Litigation, they had no obligation to seek leave to amend or intervene in the *Khan* Litigation, and could not have possibly breached the settlement. (Khan D.E. 181 at 2.) The Court thus reinstated the schedule for final approval of the settlement in the *Khan* Litigation, which had been stayed while the Court considered Defendants' motion.

### E.   The Court Consolidated this Action With the *Khan* Litigation

Following the Court's denial of Defendants' motion to strike the *Habberfield* action, on August 31, 2022, the parties in this action filed a stipulation in which they stated, among other things, that they "agree and jointly request that the *Habberfield* Action be consolidated with the related *Khan* action for pretrial purposes and stayed" until the Court decided on final approval of the settlement in the *Khan* Litigation. (D.E. 14 at 2.) The parties also stipulated that during the period of the stay, they "wish to engage in settlement discussions in the *Habberfield* Action and shall be permitted to participate in discovery for this purpose as long as all parties mutually agree to do so." (*Id.*)

On September 1, 2022, the Court approved the stipulation and ordered this action consolidated with the *Khan* Litigation for pretrial purposes. (D.E. 21.)

### F.   Settlement Negotiations and Confirmatory Discovery

As described in further detail below in section V.A.2, *infra*, the parties participated in two separate mediations before the Honorable Irma Gonzalez (Ret.), United States District Judge on October 4, 2022 and November 15, 2022. (Ibrahim Decl. ¶¶37-39.)

Class Counsel as described above already conducted extensive discovery relating to the nationwide claims and business activities of Defendants in the *Khan* Litigation that could be used to benefit this litigation. (Ibrahim Decl. ¶40; Stipulation at ¶21.)

Nevertheless, because the end-date of the class period in this action post-dated the Court's preliminary approval order in the *Khan* Litigation, Class Counsel sought to update the information pertinent to the Settlement and to confirm that the information discovered in the *Khan* Litigation continued to apply to this action. (Ibrahim Decl. ¶40.) On March 8, 2023, Class Counsel requested additional and updated documents and data. Over the next several weeks, Defendants' counsel complied with Class Counsel's requests. (*Id.*) On March 23, Class Counsel conducted a comprehensive interview of Boohoo Group's Chief Financial Officer from the United Kingdom to go over the additional information provided by Defendants. (*Id.* ¶41.) The information obtained from the documents produced by Defendants and the interview ultimately resulted in the Stipulation in Support of Motion for Preliminary Approval of Class Settlement concurrently filled with the Court. (*Id.*)

## III.   THE TERMS OF THE SETTLEMENT[3]

### A.   The Settlement Class.

The Settlement defines the class of persons whose claims are being resolved as "[a]ll individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website during the Class Period." (Settlement at § 1.3.)

The term "Class Period" is defined as follows:

- For the Boohoo U.S. Websites, from April 1, 2016 through June 17, 2022. (Settlement at § 1.6.1.)
- For the PLT U.S. Website, from April 1, 2016 through June 17, 2022. (Settlement at § 1.6.2.)
- For the Nasty Gal U.S. Website, from February 28, 2017 through June 17, 2022. (Settlement at § 1.6.3.)

The class period end date of June 17, 2022 was chosen because that is when Defendants implemented changes to their websites in accordance with the settlement benefiting California class members in the *Khan* Litigation and as agreed upon by the parties under Section 2.10 of the Settlement in this case. (Settlement at § 1.6.1; Stipulation

---

[3] Other than the Settlement, no other agreement exists that would be required to be identified under Rule 23(e)(3). (Ibrahim Decl. ¶43.)

¶20.) In other words, this is the date on which Defendants implemented the disclosures regarding their pricing to make clear to all visitors to their sites that their reference prices are not based on former prices and instead merely reflect their own opinion of the value of the products. (*See* Settlement at § 2.10.2; Stipulation ¶20.) Defendants affirmed in the Stipulation that they have implemented, and will maintain, on their U.S. websites across the remaining 49 states and U.S. territories the website changes and other injunctive relief provisions agreed to in the settlement in the *Khan* Litigation. (Stipulation ¶20.)

### B.   Settlement Consideration

#### 1.   *Monetary Benefits to the Class*

Under the Settlement, each Class Member who does not timely opt out "shall automatically receive" a $10 gift card to include free shipping (additionally valued at $7.45 per gift card) for single use on each U.S. website from which one or more "Qualifying Purchases" were made during the Class Period (the "Gift Card"). (Settlement at § 2.1; Stipulation at ¶13, Ex. 2.) The Settlement covers purchases from the U.S. Websites), which include their associated mobile phone applications. (*Id.*) "Qualifying Purchase" is defined as "the purchase of any product by a Settlement Class Member from the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website within the Class Period." (*Id.* at § 1.22.) The Gift Cards have the following important attributes:

- All Class Members who do not opt out will automatically receive the Gift Card via email without the need to file a claim. (Settlement at §§2.1 and 2.1(a)(ii).)

- Each Gift Card has a face value of $10.00 plus free shipping and handling (Settlement at §2.1(a)(i)), which provides Class Members considerable choice and variety in using the Gift Cards without having to incur any out-of-pocket costs. "On any given day, Defendants generally have thousands of styles that may be purchased for $10 or less with a wide variety of styles across many different categories on their websites." (Stipulation at ¶19; Tregillis Decl. at ¶¶ 57-59.)

- Class Members do not have to pay any shipping charges when a Gift Card is used, but because Defendants do not normally offer free shipping and are thus incurring a significant cost as a result of this benefit, the Gift Cards must be used in one transaction. (Stipulation at ¶13.) The value of this benefit is at least $7.45 based on Defendants' customary shipping and handling charges on average per order across the U.S. Websites during the Class Period. (Settlement at §2.1(a)(i)(xi); Stipulation at ¶13, Ex. 2; Tregillis Decl. at ¶¶ 60-62.)

- The Gift Cards do not expire. Defendants cannot cancel the Gift Cards and they cannot revert to Defendants under any circumstance. (Settlement at §2.1(a)(iii).)

11

- There is no minimum purchase requirement to use the Gift Cards and they may be used toward any purchase. (*Id*. at §2.1(a)(iv).)

- There are no blackout dates restricting use. (*Id*. at §2.1(a)(vi).)

- The Gift Cards may be used with other offers and promotions. (*Id*. at §2.1(a)(vii).)

- The Gift Cards may be freely transferred or given to others. (*Id*. at §2.1(a)(viii).)

- The Gift Cards are stackable, meaning that multiple Gift Cards from the same website may be combined to use in a single transaction. (*Id*. at §2.1(a)(ix).)

- There are no fees for inactivity or any other reason. (*Id*. at §2.1(a)(xii).)

- The Gift Cards may be used on the site from which a Class Member made a purchase. (*Id*. at §2.1(a)(i).) For example, if a Class Member bought from the PLT U.S. Website, she will receive one Gift Card to use on the PLT site only. (*Id*.)

- If Class Members bought from multiple sites, they may receive multiple Gift Cards—one for each website from which a purchase was made (with Boohoo and BoohooMAN counting as one site). (*Id*. at §2.1(a)(v).) Class Members may thus be entitled to a total of three (3) Gift Cards if they made a purchase on all three sites.

- Lost Gift Cards will be replaced upon request. (*Id*. at §2.1(a)(xiii).)

### 2. *Injunctive Relief Benefits to the Class*

The Settlement provides for significant injunctive relief whereby Defendants agree to make and/or maintain on their websites across every U.S. state and territory (not just California) important disclosures concerning their marketing and advertising practices. (Settlement at §2.10.) Specifically, Defendants are required to make clear and conspicuous disclosures on their product display pages whenever they advertise a discount off the original or full price (i.e., the "reference price"). (*Id*.) The disclosures advise the customer that the original price advertised is not intended to be a former price, but instead merely reflects Defendants' opinion of the full value, as follows:

> *Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors.*

> *That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!*

(Settlement at § 2.10.2(b).) Both the disclosure and the original price on the product display page must have an asterisk to alert the customer that the disclaimer relates to the displayed original price. (*Id*. at § 2.10.2(a), (c).) The disclosure cannot be hidden in a

"click to reveal" format, but must constantly be viewable under the header "Pricing Policy" on the product display pages.  (*Id.* at § 2.10.2(a).) This full disclosure must also be displayed on the terms and conditions of each of the U.S. Websites. (*Id.* at § 2.10.2(e).)

Defendants must also include a short disclosure on all landing pages, product display pages, and emails sent to customers containing advertisements of discounts from an original or full price. (*Id.* at § 2.10.2(d).) This disclaimer must state: "*Discounts may not be based on former prices. See pricing policy*." (*Id.*) The phrase "See pricing policy" must be hyperlinked directly to the full pricing disclosure. (*Id.*)

These changes must be in a format consistent with Exhibit G to the Settlement, which provides a visual mockup of what the changes look like on the U.S. Websites. (Settlement at §2.10.2, Ex. G.) Importantly, these mockups demonstrate that the disclosures are visible to customers to satisfy the conspicuousness requirement. (*Id.* at Ex. G.) As shown on Exhibit G, Defendants must include the short form disclaimer in the *center* of the top banner on the home landing page of their websites and product display pages where they advertise their percent-off promotion for a given day (including on the mobile application version); moreover, the short form disclaimer shall be *bolded*, and the font size must be large enough to match the discount messaging that it accompanies. (*Id.* at Ex. G.) Exhibit G also shows that the short form disclaimer shall be bolded, centered, and of equal font size to the accompanying promotional message on all emails sent to customers advertising a sale or discount off an original price. (*Id.* at Ex. G.)

There is no end date on the required disclosures, i.e., they shall be maintained forever on the subject websites. (*See id.* at §2.10.2.)

The Settlement also contains a provision titled "Compliance with the Law."  (*Id.* at §2.10.1.) This clause requires Defendants to "agree that their comparison pricing practices in the United States . . . will not violate then-existing Federal or California law . . ." (*Id.*)

### 3.    *Attorneys' Fees, Costs, Incentive Awards, and Administration Costs*

As noted, the Settlement provides a monetary value of $17.45 per Class Member consisting of a $10 Gift Card with free shipping valued at $7.45 per person. For the

9,418,900 Class Members covering an anticipated 11,312,701 Gift Cards[4] to be distributed as identified by Defendants (*see* Stipulation at Ex. 1), this computes to a total monetary value of the Settlement in the approximate amount of $197.4 Million, which does not account for the value of injunctive relief. (Tregillis Decl. at ¶¶53-62.) If this matter were to go to trial, Plaintiffs would produce proof to demonstrate that the injunctive relief would be valued at an additional $341.7 Million over the next three years. (*Id.* at ¶¶63-71.)

In consideration of obtaining these significant benefits for the Class, the many hours spent by Class Counsel, the significant funds Class Counsel has spent on litigation costs, including experts, in pursuing this litigation against Defendants in the *Khan* Litigation and continuing the nationwide class claims from the *Khan* Litigation in this case, and the risks taken by Class Counsel, the Settlement provides that Class Counsel may seek an award of attorneys' fees and costs up to $4,197,000 with no opposition from Defendants. (Settlement at § 2.4(b).) Therefore, Class Counsel's fee request amounts to 2.1% of the $197 Million monetary value recovered for the Class, not considering the value of the injunctive relief. (*See id.*) If the value of the injunctive relief is considered, Class Counsel's request for fees is 0.78% of the overall value provided to the Class. (*See id.*)

Furthermore, the parties agree that if the Court awards an amount less than $4,197,000, the difference will *not revert* to Defendants. (Settlement at §2.5.) Instead, it will be donated to *cy pres*—either the National Consumer Law Center (as proposed by Plaintiffs) or the Better Business Bureau National Programs (proposed by Defendants), or divided equally between the two organizations, as determined by the Court in its discretion. (*Id.* at § 2.5.) If the Court finds that neither organization should receive the funds, the unawarded fees will be donated to an organization selected by the Court. (*Id.*)

The Settlement further provides that each of the three class representatives may seek an incentive award not to exceed $1,500 with no opposition from Defendants. (*Id*. at §2.3.)

Defendants also agree to pay all costs associated with settlement administration in

---

[4] There are more Gift Cards than Class Members because a substantial number of Class Members purchased from multiple U.S. Websites. (*See* Stipulation at Ex. 1.) Such Class Members are entitled to receive multiple Gift Cards—one from each of the U.S. Websites from which they made a purchase. (*See* Settlement at § 2.1(a)(v).)

an amount that does not exceed $1,000,000. (Settlement at § 2.4(a).) This amount is based on an estimate prepared by Kurtzman Carlson Consultants LLC ("KCC"), the selected settlement administrator, to execute the notice and administration plan set forth in the Settlement. (Ibrahim Decl. ¶42.) The entire $1,000,000 is to be used with no reversion back to Defendants. (*See* Settlement at § 3.4(f), Ex. J.)

### 4.    *Release and Dismissal of All Claims*

Defendants deny liability. (*Id*. at § 2.9) Thus, in exchange for the above-described benefits of the Settlement, the individual Plaintiffs and all Class Members who do not timely opt out agree to a standard release against Defendants and other affiliated entities. (*Id*. at §§ 1.7, 1.8, 1.9, 2.7, 2.8.) Following final approval, the claims of the Settlement Class Members will be dismissed with prejudice. (Settlement, Ex. H at ¶13.)

### C.    The Notice and Settlement Administration Program

As noted above, KCC will be the settlement administrator. (Ibrahim Decl. ¶42.) The notice program tailored by the parties and KCC to reach Class Members is fully described in the concurrently filed declaration of Christie Reed, KCC's Vice President of Legal Notification Services. (Reed Decl.) Notably, the notice plan is nearly identical to the program KCC implemented in the *Khan* Litigation where notices and Gift Cards were successfully distributed to California class members who, like the Class Members here, were customers of Defendants on the U.S. Websites. (Reed Decl. ¶¶22-24.)

## IV.    LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Before a district court grants approval, it must determine that the settlement would be "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Congress amended Rule 23, which took effect on December 1, 2018. These amendments provide guidance on the "fair, adequate, and reasonable" standard at the preliminary approval stage. *See* Fed. R. Civ. P. 23(e)(2). The amended Rule 23 clarifies that courts must employ a two-step process in granting preliminary approval. Under the

first step, the parties must show "that the court will likely be able to (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). These factors are:

(A)     the class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief; (iii) the terms of any proposed award of attorney's fees and costs; and (iv) any agreement required to be identified;

(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[5]

The second step of the analysis requires a "showing that the court will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Where, as here, the proponents of the proposed settlement seek certification of a settlement class seeking monetary remedies, they must demonstrate that they meet the prerequisites of Rule 23(a), as well as the requirements of Rule 23(b)(3). *See Hanlon*, 150 F.3d at 1019-1022.

Rule 23(a) requires the putative class to meet four threshold requirements: numerosity, commonality, typicality, and adequacy of representation. Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). But whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558-60 (9th Cir. 2019) (an individual question that "would only apply to a subset of the class and would primarily implicate trial management issues

---

[5] Prior to the amendments, courts in this Circuit routinely applied the four fairness factors from *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007), or the eight factors set forth in *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Although not technically displaced by the amendments, Plaintiffs will not discuss these factors to avoid redundancy as they are directly or indirectly discussed in applying the factors from Rule 23(e)(2). Further, "some of these fairness factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Dawson v. Hertz*, No. CV 17-8766-GW(JEMX), 2019 WL 13014626, at *1 (C.D. Cal. Mar. 8, 2019).

is not considered when conducting a predominance analysis for a settlement class.")

## V.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.    The Proposed Settlement is Fair and Reasonable

As noted above, under the first step of the Court's analysis of whether preliminary approval of a class settlement should be granted, the parties must show "that the court will likely be able to (i) approve the proposal under [the final approval factors set forth in] Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B)(i). These factors are considered below, in turn.

#### 1.    *The Class Is Adequately Represented by Plaintiffs and Counsel*

The first fairness factor under Rule 23(e)(2) is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "This analysis includes the nature and amount of discovery undertaken in the litigation." *Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *4 (C.D. Cal., July 19, 2021). The analysis is also "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *7 (S.D. Cal. May 7, 2021).

Here, the class representatives and counsel have more than adequately represented the class. The class representatives have provided all information needed for the case to counsel, provided factual input for the complaint, reviewed and approved the complaints, made themselves available when called upon, and have kept up to date on the progress of the case, including with regards to reviewing and approving the Settlement.[6]

Further, as summarized in section II, *supra*, Class Counsel have vigorously prosecuted this case on behalf of the Class, including the work they did in the *Khan* Litigation, which Defendants acknowledge "overlap[ped] entirely with this matter" and "was used extensively to bring about the resolution in this case." (Stipulation at ¶21.) By way of summary, Class Counsel investigated the validity of claims arising from Defendants' practices on three different websites, procured 12 separate class

---

[6] (Ibrahim Decl. ¶32; Habberfield Decl. ¶¶8-12; Kalu Decl. ¶¶9-13; Runnells Decl. ¶¶10-14; Cachadina Decl. ¶¶8-12 Valiente Decl. ¶¶8-12; Huebner Decl. ¶¶15-19; V. Walton Decl. ¶¶8-12; Murphy Decl. ¶¶7-11; Hill Decl. ¶¶8-12; Stewart Decl. ¶¶12-16; Thimot Decl. ¶¶11-15; M. Walton Decl. ¶¶10-14.)

representatives, filed an elaborate nationwide complaint pleading claims from eight different states, defeated Defendants' challenges to the pleadings and personal jurisdiction, conducted extensive written discovery, conducted many depositions and interviews of Defendants' executives and managers, prevailed in multiple discovery motions, defeated Defendants' sweeping effort to strike Plaintiffs' ability to bring this action, which, significantly, was directly followed by Defendants' expressed willingness to negotiate a resolution (*see* Khan D.E. 181, 185; D.E. 14), and conducted follow up confirmatory discovery to supplement prior documents and data.

Finally, both Class Counsel have extensive experience in complex litigation spanning 35 years between them, including numerous trials as an Assistant U.S. Attorney, a federal clerkship, complex litigation experience at large firms, including trials, and class action litigation experience. (Ibrahim Decl. ¶¶2-7; Almadani Decl. ¶¶2-11.) Indeed, they have had recent success teaming up as co-counsel in 2022 by trying two successful jury trials (one in this courthouse) resulting in multimillion dollar verdicts. (Ibrahim Decl. ¶7.) This Court in connection with the *Khan* Litigation found that "Plaintiffs' counsel . . . easily meets the 'qualifications' requirement." (Khan D.E. at 5.)

### 2. *The Proposal Was Negotiated at Arm's Length*

The second Rule 23(e)(2) factor looks at whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This is "described as [a] 'procedural' concern[ ], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The settlement here was the product of diligent arm's length negotiations. Like the *Khan* Litigation, the parties again enlisted the assistance of Judge Irma Gonzalez, a highly respected retired federal district judge. (Ibrahim Decl. ¶37.) After Plaintiffs defeated Defendants' motion to strike this action, the parties initially participated in an in-person

mediation session with Judge Gonzalez on October 4, 2022 in San Diego. (*Id.*) Although the case did not settle at that time, a framework for a potential settlement was laid at this initial session. (*Id.*) The parties then agreed to participate in a second mediation session on November 15, 2022, at which time they reached agreement in principle on the material terms of the settlement presented here. (*Id.* ¶38.) In reaching the Settlement Agreement, as they did in the *Khan* Litigation, the parties were careful to negotiate the material terms of the settlement covering benefits for the class prior to negotiating class counsel's fees and costs. (*See id.*) After the second mediation, the parties engaged in numerous direct communications by videoconference, phone, and e-mail to negotiate and finalize all the detailed and intricate aspects of the Settlement, beginning with a memorandum of understanding delineating the material terms of the parties' agreement, and ending on April 6, 2023, with a final signed Settlement Agreement. (*Id.*)

### 3. *The Relief for the Class is Adequate Under Rule 23(e)(2)(C)*

Under the third Rule 23(e)(2) factor, the Court must consider whether "the relief provided for the class is adequate, taking into account:  (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Comm. Notes. As shown below, the Settlement satisfies these factors.

### a. *The costs, risks, and delay of trial and appeal*

A "central concern" when evaluating a proposed class action settlement "relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes; *see also Graves v. United Industries Corp.*, No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020).

Here, these factors weigh in favor of preliminary approval. Plaintiffs are confident they would be able to obtain class certification and successfully prove their claims at trial.

They are also confident that they have formulated a viable damages model based on a sound marketing survey and well-settled and accepted economic methodologies. (*See* Tregillis Decl.) Nevertheless, juries are unpredictable and may not find Defendants' pricing and sales practices deceptive despite the evidence. There is also a small risk that Plaintiffs' model for computing classwide damages would not be acceptable to the Court or the Ninth Circuit. *See*, *e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *12 (C.D. Cal. Mar. 15, 2016) (granting summary judgment based on Plaintiffs' failure to demonstrate "a viable measure of restitution, such as a 'price premium' model in which an expert isolates the amount of the price attributable to the false representation.") While Plaintiffs here have a solid damage model consistent with *Chowning*, litigation inherently carries risk. (*See* Tregillis Decl.)

Given that this case involves nationwide class claims (excluding California) and a class period extending through June 17, 2022, Plaintiffs would also have to overcome other hurdles Defendants would be expected to place in Plaintiffs' way with regards to class certification and liability. For example, Defendants would likely make arguments similar to those in their motion to strike the nationwide class allegations early in the *Khan* Litigation. This includes reliance on *Mazza v. American Honda Motor Co.*, for the proposition that differences between California law and the consumer protection laws of other states potentially creates barriers to nationwide certification. 666 F.3d 581, 591 (9th Cir. 2012). Notably, consumers even from states whose consumer protection statutes, or case law interpreting those statutes, are not so consumer-friendly would stand to benefit from receiving the Gift Cards and free shipping.

Plaintiffs additionally anticipate having to overcome a class action waiver and arbitration clause Defendants allegedly placed on their websites under their standard terms and conditions as of October 31, 2020. Plaintiffs also anticipate that Defendants would raise a statute of limitations challenge to truncate the class period by arguing that the *Khan* Litigation did not toll the limitations period under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because this action was brought as a separate action from the

*Khan* Litigation. *See*, *e.g.*, *Torres v. Wells Fargo Bank*, No. CV 17-9305-DMG (RAOx), 2018 WL 6137126, at *2 (C.D. Cal. Aug. 28, 2018). Although Plaintiffs believe they would ultimately prevail with meritorious legal and factual arguments, Defendants would raise the above-mentioned arguments. Defendants would also likely challenge the suitability of venue in California (since the claims of the California class representatives were addressed in the *Khan* settlement), applicability of California law to purchases outside of California, and whether any of the individual state statute causes of action would survive a motion for summary judgment. Even if Plaintiffs were successful, there is no guarantee that the Ninth Circuit would agree with their position. These are all significant risks to the claims of the Class and the length of the class period that weigh in favor of a settlement over continued litigation.

Moreover, Plaintiffs would face years of litigation against experienced defense counsel. Without a settlement, this case would force Plaintiffs to conduct further class discovery, successfully prosecute a motion for class certification and potentially oppose a Rule 23(f) petition to the Ninth Circuit, conduct merits discovery, successfully oppose summary judgment, undertake expert discovery, make pretrial disclosures and filings, and try the case. And, even if Plaintiffs prevail at trial, they may have to oppose a lengthy appeal. In contrast, a settlement ensures Class Members promptly receive the significant benefits negotiated for them.

Further, the expert and case-related costs alone in this type of class action would likely fall between $500,000 to $1,000,000 based on Class Counsel's experience. (Ibrahim Decl. ¶33.) Plaintiffs have obtained a significant benefit for all Class Members with sizable Gift Cards to purchase any item on Defendants' websites. These Gift Cards may be used by class members without having to pay for shipping—an added benefit valued at $7.45 per class member that would be difficult for Plaintiffs to argue is legally recoverable if this case went to trial. Under the Settlement, the guaranteed, immediate, and automatic monetary benefit to the Class is in excess of $197 Million, which is approximately 45 cents on the dollar when compared to what the Class may recover after a risky and lengthy

discovery, motions, trial, and appeals process. (*See* Tregillis Decl. ¶¶ 52-62.)

Moreover, by virtue of Plaintiffs' lawsuit, Defendants have agreed to make permanent the changes made to their business practices on a nationwide basis. They are required to provide clear and conspicuous disclosures on their websites and email marketing campaigns as displayed to consumers across the country so that they understand that the original prices advertised on the sites are not intended to reflect the former prices at which Defendants' merchandise sold. Plaintiffs further contend this injunctive relief, alone, is valued at $341.7 Million over the first three years. (Tregillis Decl. ¶¶63-71.) In sum, this first Rule 23(e)(2)(C) factor weighs heavily in favor of preliminary approval.

> b. *The claims process and distribution of relief are effective*

The Court must next consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C) and 2018 Advisory Comm. Notes. Additionally, "the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, class members face no obstacles to receiving the benefits of the Settlement because those who do not opt out will *automatically* (without the need to file a claim) receive their Gift Cards with free shipping and no restrictions or expiration date. Because Defendants are online-only retailers, all their customers had to create online profiles where they were required to provide their email addresses. The Gift Cards may thus be distributed to all Class Members electronically, eliminating the need for a claims process. (Reed Decl. ¶15.) Thus, this is far better than a traditional settlement where only a small fraction of class members benefits due to dependence on locating and reaching class members and requiring them to submit a claim. Moreover, the Gift Cards give Class Members a large variety of attractive products, including thousands of products that would not require Class Members to incur any out-of-pocket cost.

> c. *The attorneys' fees request is reasonable*

The Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has

interpreted the amended Rule 23(e)(2) as imposing an obligation on district courts to "examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-a-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)). In considering the proposed award of attorney's fees, the Court must scrutinize the settlement for any "subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Id.* at 1023 (quoting *Bluetooth,* 654 F.3d at 947). Thus, the Court must evaluate the settlement for three such "subtle signs" of collusion between class and defense counsel: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 1023.

As noted above, although this inquiry normally occurred at the final approval stage prior to the amendments to Rule 23(e), the rule now requires as the first step of the preliminary approval analysis to show "that the court will likely be able to (i) approve the proposal" under the final approval factors of Rule 23(e)(2), *see* Fed. R. Civ. P. 23(e)(1)(B)(i), which includes consideration of the factor under Rule 23(e)(2)(C)(iii).

(A)    Class counsel's fee request is not disproportionate

The Settlement satisfies the first *Bluetooth* factor because Class Counsel will not be receiving a "disproportionate distribution of the settlement," *Bluetooth*, 654 F.3d at 947.

*First*, the attorneys' fees and costs are not coming out of the monetary benefits that will be distributed to the Class and, thus, do not at all reduce the benefits to the Class.

*Second*, the fee request is a mere **2.1%** of the Settlement's monetary value. The monetary value of the settlement, before adding the value of injunctive relief, is $197.4 Million. This is calculated by multiplying the total number of Gift Cards (11,312,701) expected to be distributed to the approximate 9.4 million Class Members by the $17.45

value of the Gift Cards ($10 Gift Card plus $7.45 value of free shipping that is normally charged by Defendants). Dividing $4,197,000 in proposed fees and costs into $197.4 million yields 2.1 percent. This is well below the accepted benchmark in the Ninth Circuit taking into consideration both monetary and non-monetary relief is 25%. *See Bluetooth,* 654 F.3d at 942. Furthermore, although Plaintiffs have obtained the same results for non-California class members as they did for the California settlement class in the *Khan* Litigation and plainly achieved a result that dwarfs the monetary value of the settlement in the *Khan* Litigation ($197.4 million versus $33 million), Class Counsel's fee and costs request is *less* than the amount requested and awarded by the Court in the *Khan* Litigation (i.e, $4,197,000 versus $4,750,000).[7] From all angles, the proposed fee request is not disproportionate to Class Members' recovery.

**Third**, when injunctive relief is considered, as it should be, the attorneys' fees requested amount to approximately 0.78**%** of the total recovery, further allaying any disproportionality concern, especially in light of the 25% benchmark. "When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016); *see also Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's fee award where injunctive relief offered "generated benefits far beyond the cash settlement fund"); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value includes injunctive relief). Thus, for example, in *Miller v. Ghirardelli Chocolate Co.*, the Court included the value of removing various terms from packaging as part of the common fund from which to calculate attorneys' fees. No. 12-cv-04936-LB, 2015 WL 758094, at *1, 5 (N.D. Cal. Feb. 20, 2015).

Here, as described in section III.B.2, *supra*, Plaintiffs contend the Settlement

---

[7] Indeed, even if the Court combined the attorneys' fees and costs awarded in the *Khan* Litigation ($4,750,000) with the requested fees in this litigation ($4,197,000) and divided this sum by the combined total monetary value achieved for the Class in the two cases ($33 million plus $197.4 million), Plaintiffs' total fees and costs are still only 3.88 percent of the combined settlement value—a modest percentage well below the 25% benchmark.

24

provides for significant and meaningful injunctive relief. According to Plaintiffs' highly experienced and qualified damages expert, the changes to the U.S. Websites "have been designed and defined to eliminate any misunderstanding that consumers may have had about Defendants' prices, based on a suggestion that the advertised reference prices have actually been charged consumers." (Tregillis Decl. ¶ 69.) As a result, "by eliminating any misunderstanding that consumers have had about Defendants' prices, the extent and value of which has been evidenced in their responses to the Marketing Expert's survey, indicating the extent of the price difference that was necessary to account for respondents' perceptions about the pricing used by Defendants, that value will be restored to consumers with the elimination of that misunderstanding." (*Id.*) With this informed understanding, Mr. Tregillis calculates the discounted value of the injunctive relief over the course of the next three years as approximately $341.7 Million. (*Id.* ¶¶63-71.) This figure is calculated using $131 million in damages consumers suffered in the year 2021 (the most recent year for which Plaintiffs have data). (*Id.*) Mr. Tregillis explains that, if the amount of sales in the future is the same—considering the trend of increased sales, but also the potential decrease in sales with the elimination of deception—then the future value of an injunction is $131 million per year, which, if discounted to present value, amounts to $341.7 Million to U.S. consumers (excluding California) over the next three years. (*Id.*) Notably, because Defendants are required to maintain these changes perpetually, the injunctive relief negotiated in the Settlement is actually worth much more.

As such, when the minimum value of injunctive relief ($341.7 Million) is combined with the minimum value of monetary relief ($197.4 million), the proposed attorneys' fees and costs of $4,197,000 amount to about 0.78% of the value provided to the Class, which is clearly not disproportionate under the current acceptable benchmark of 25%.

**Fourth**, Class Counsels' fees will not come out of the benefits to be paid to the Class, meaning that Class Members will receive their full benefits regardless of the attorneys' fees the Court allows.

**Fifth**, the proposed award of fees also does not "shortchange" the class and is

properly balanced against the relief provided for the Class because Class Counsel have worked substantial hours and overcome many hurdles, including avoiding dismissal, successfully defeating Defendants' personal jurisdiction challenge, overcoming Defendants' resistance to important discovery, and fighting back their sweeping effort to have this case stricken. Class Counsel have also taken an enormous risk by pursuing this case on contingency. *See Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX), 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020).

**Sixth**, the proposed fee award is also not disproportionate to the amount of the Settlement because the Gift Cards are not "coupons" within the meaning of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1711, *et seq.*[8]

CAFA requires courts (1) to apply "heightened scrutiny" to settlements that award "coupons" to class members, and (2) to base fee awards on the coupons' redemption value, rather than on their face value. *In re EasySaver Rewards Litig.*, 906 F.3d 747, 754–55 (9th Cir. 2018) (citing 28 U.S.C. § 1712). "Thus, delineating settlements that award cash or cash-equivalent certificates from those awarding coupons affects the calculation of attorneys' fees." *Seegert v. Lamps Plus, Inc.*, 377 F. Supp. 3d 1127, 1130 (S.D. Cal. 2018) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1182–86 (9th Cir. 2013)).

Congress did not define "coupon" when passing CAFA. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015). However, the Ninth Circuit has outlined three factors to guide the inquiry of whether proposed class relief is a coupon: "(1) whether class members have to 'hand over more of their own money before they can take advantage of' a credit, (2) whether the credit is valid only 'for select products or services,' and (3) how much flexibility the credit provides, including whether it expires or is freely transferrable." *Easysaver*, 906 F.3d at 755 (quoting *Online DVD*, 779 F.3d at 951).

Applying this test, the Gift Cards here are clearly not "coupons" and thus any fee award would not be based on redemption value. The Gift Cards have no expiration dates,

---

[8] Importantly, the Court found at both the preliminary and final approval stages in the *Khan* Litigation that the Gift Cards awarded to California settlement class members were not "coupons" under CAFA. (Khan D.E. 148 at 11; 199 at 11 n. 5.) Because the Gift Cards in this Settlement are the same, the Court should simply readopt its analysis here.

blackout dates, minimum purchase requirements, or fees (for inactivity or otherwise), and may be used in conjunction with other offers and promotions. (Settlement at ¶¶ 2.1(a)(iii), (iv), (vi), (vii), (xii).) The U.S. Websites, where the Gift Cards may be used, include thousands of items available for sale for $10 or less. (*See*, *e.g.*, Stipulation ¶19; Tregillis Decl. ¶¶57-59.) In addition, there are no limits on transferability and the cards may be "stacked," subject only to a right Defendants to request an investigation from the settlement administrator with respect to any request to "stack" more than $500 worth of gift cards (to avoid fraud and to attempt to ensure the cards are used for personal use). (Settlement at ¶¶ 2.1(a)(viii)-(x).) Lost Gift Cards will be replaced upon request. (*See id.* at ¶2.1(a)(xiii).) All these facts show that the Settlement is not a "coupon" settlement.

Because the Gift Cards are not "coupons," the calculation of Class Counsels' attorneys' fees should be based on their monetary value, which is $197.4 million without even accounting for the benefits conferred on the Class from injunctive relief. This supports the conclusion that the proposed fees are not disproportionate to the Settlement.

(B)    The clear sailing provision is not collusive

As concerning the second *Bluetooth* factor, while the Settlement contains a "clear sailing" provision whereby Defendants agree not to oppose Class Counsels' request for attorneys' fees and costs in an amount that does not exceed $4,197,000, the mere presence of such a provision does not render a settlement collusive. *See*, *e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260–61 (C.D. Cal. 2016). To the contrary, several facets of the Settlement in this case demonstrate that there was no collusion whatsoever.

*First*, as discussed above in section V.A.2, *supra*, this Settlement was negotiated at arms-length with the assistance of a highly respected retired district judge in two separate mediation sessions, as well as through subsequent direct communications between counsel to finalize the details of the final agreement. (Ibrahim Decl. ¶¶37-39.) *See Bluetooth*, 654 F.3d at 948 (presence of mediator is a factor weighing in favor of non-collusiveness).

*Second*, Class Counsel negotiated attorneys' fees only after the material terms of the Settlement covering benefits for the Class had been agreed upon by the parties.

27

(Ibrahim Decl. ¶38); *see Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *13 (S.D. Cal. 2012) (objection to clear sailing agreement overruled because fee amount was negotiated separately and after the class settlement was finalized).

*Third*, under the Settlement, unawarded fees do not revert to Defendants. Instead, if the Court decides not to award class counsel the full amount of fees and costs of $4,197,000, any amount short of this sum will be awarded to one, or both, of the *cy pres* organizations proposed by the parties, or if found by the Court not to be acceptable, to a *cy pres* organization selected by the Court. (Settlement at §2.5.) This, too, is a factor courts find is an indication of an absence of collusion even where the class settlement has a clear sailing provision. *See*, *e.g.*, *Spann*, 211 F. Supp. 3d at 1260–61 (even though the settlement contained a clear sailing provision, "the absence of a kicker provision stating that all fees not awarded would revert to defendant[ ], weighs against a finding of collusion.") (internal quotations omitted). Therefore, there was no collusion under the second *Bluetooth* factor.

(C)   There is no reversion of fees to Defendants

The third and final *Bluetooth* factor also does not support a finding of collusion because, as already discussed in the previous section, the Settlement does not contain a "kicker" or "reverter" clause that returns unawarded fees to the defendant. *Bluetooth*, 654 F.3d at 947. Rather, any unawarded fees will be paid to a *cy pres* recipient. Designating one or more *cy pres* beneficiaries in a class settlement for attorneys' fees not awarded by the Court is one well established method of mitigating against collusion between class counsel and defense counsel. *See id.* (provision whereby "all fees not awarded would revert to defendants *rather than be added to the cy pres fund* or otherwise benefit the class" was an indicia of collusion) (emphasis added); *Martin v. Marriott Int'l, Inc.*, No. CV 18-00494 JAO-RT, 2021 WL 4888973, at *5 (D. Haw. Oct. 19, 2021) (no collusion in part because unawarded fees designated to *cy pres* beneficiary); *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD, 2021 WL 1736807, at *13 (N.D. Cal. May 3, 2021) (same); *LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, at *10 (N.D. Cal. Mar. 26, 2013) (danger of collusion undercut by plaintiff's counsel's offer

to reduce fee request by directing $200,000 to *cy pres*); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 4831157, at *7 (N.D. Cal. Oct. 12, 2011) (inference of unfairness could have been avoided by diverting unawarded attorney's fees to *cy pres*).

In addition, given that there are over 9.4 million class members, dividing unawarded attorneys' fees equally among class members would result in *de minimis* additional recovery for each class member. *See Easysaver,* 906 F.3d at 761-62 (no abuse of discretion in approval of distribution of $3 million in unclaimed settlement funds to *cy pres* recipients where distribution of this amount to more than 1 million class members would result in "de minimis" recovery.) Directing any such funds to a *cy pres* recipient thus puts them to a more beneficial use for consumers similarly situated to the Class.

### 4.    *The Proposal Treats Class Members Equitably.*

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes. Thus, under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018); *see also True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010).

No such concerns exist in this case. All Class Members, no matter which of the four subject websites they bought from, what they bought, or whether they still have their order confirmations, will all be treated the same: they will each receive a $10 Gift Card with free shipping for each brand's website from which they bought merchandise. *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *7 (S.D. Cal. Jan. 31, 2020) (factor met at preliminary approval because "the settlement treats each class member equally" where each class member could make the same claim). This

equal treatment makes sense because all Class Members were uniformly exposed to the same deceptive discounting practice during the respective class period.

That the Settlement provides for the class representatives to each receive a $1,500 incentive award does not improperly grant them preferential treatment. Rather, it is an appropriate amount to compensate them for their time and dedication to the case, and the total payment for the 12 class representatives of $18,000 constitutes a miniscule fraction of the total monetary value of the settlement of $197.4 Million. *See Online DVD*, 779 F.3d at 947-48 (upholding $5,000 incentive awards that were 417 times larger than $12 gift cards because the awards were only 0.17% of the total $27 Million settlement fund); *Ahmed v. HSBC BANK USA*, No. ED CV 15-2057 FMO (SPx), 2019 WL 13027266, at *7 (C.D. Cal. Dec. 30, 2019) ($5,000 incentive award "presumptively reasonable").

**B.    Provisional Certification of the Settlement Class Should Be Granted.**

**1.    *The Proposed Class Satisfies the Prerequisites of Rule 23(a)***

**Numerosity.**  Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable . . ." Here, this requirement is easily met because there are more than 9.4 million class members. (Stipulation at ¶12, Ex. 1.)

**Commonality.**  Rule 23(a)(2) requires that the case present "questions of law or fact common to the class." The putative class must show that their claims "depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Commonality has been "construed permissively," and its requirements deemed "minimal." *Hanlon*, 150 F.3d at 1019-20. It does not "mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (internal quotations omitted).

For their claims under the UCL, FAL, and CLRA, Plaintiffs need only "show that members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.*, 552 F.3d

934, 938 (9th Cir. 2008) (internal quotations omitted). "This inquiry does not require individualized proof of deception reliance and injury." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) (internal quotations omitted).

Similarly, Plaintiffs' California consumer protection claims based on the *omission* of material information are also actionable. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *see also Warner Const. Corp. v. City of Los Angeles*, 2 Cal.3d 285, 294 (1970) (summarizing the three situations under California law where there is a duty to disclose in the absence of fiduciary or confidential relations).

That Plaintiffs seek preliminary approval of a nationwide settlement class (excluding California) is not an impediment to certification. That is because "[s]ubject to constitutional limitations and the forum state's choice-of-law rules, a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 823 (1985)).[9]

Within this legal framework, Plaintiffs' claims share numerous overarching questions of law or fact. The key common questions driving this litigation include whether Defendants advertised reference prices and discounts off the reference prices during the class periods, whether Defendants' representations and omissions were likely to deceive, whether they were material, whether Defendants owed a duty to disclose, and whether Plaintiffs and the Class are entitled to damages. (*See* SAC at ¶167.) These questions are capable of classwide resolution. In other words, determining the truth or falsity of one or more of these questions will resolve issues "central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. This case, therefore, satisfies commonality.

***Typicality.*** Rule 23(a)(3) requires the putative class to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To

---

[9] Even if the Court were confronted with the prospect of having to apply the separate laws of dozens of jurisdictions (which it is not because Plaintiffs contend California law should be applied to the entire class), such a concern would merely present "a significant issue for trial manageability[.]" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019). But "[i]n *settlement cases*, such as the one at hand, *the district court need not consider trial manageability issues.*" *Id.* (emphasis added).

31

meet the typicality requirement, Plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011).

Here, Plaintiffs' and Class Members' claims all arise from Defendants' uniform misrepresentations and/or omissions of material facts. Each of the class representatives, just like all other Class Members, purchased Defendants' products during the class period, were exposed to the same deceptive pricing schemes on Defendants' websites, did not receive the truth from Defendants about the reference prices and promotions, and relied on the inflated reference prices and promotions in making their purchases.[10]

*Adequacy.* Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class." "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020).

As explained above and established by the declarations of the class representatives and Class Counsel, both questions are easily satisfied.[11]

### 2. The Proposed Class Satisfies Rule 23 Predominance and Superiority

*Predominance.* As noted, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members . . ." This "inquiry asks the court to make a global determination of whether common questions prevail over individualized ones." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "[A]n individual question is one where members of a

---

[10] (Habberfield Decl. ¶¶2-7; Kalu Decl. ¶¶2-8; Runnells Decl. ¶¶2-9; Cachadina Decl. ¶¶2-7; Huebner Decl. ¶¶2-14; Valiente Decl. ¶¶2-7; V. Walton Decl. ¶¶2-7; Murphy Decl. ¶¶2-6; Hill Decl. ¶¶2-7; Stewart Decl. ¶¶2-11; Thimot Decl. ¶¶2-10; M. Walton Decl. ¶¶2-8.)
[11] (Habberfield Decl. ¶¶11-13; Kalu Decl. ¶¶12-14; Runnells Decl. ¶¶13-15; Cachadina Decl. ¶¶11-13; Huebner Decl. ¶¶18-20; Valiente Decl. ¶¶11-13; V. Walton Decl. ¶¶11-13; Murphy Decl. ¶¶10-12; Hill Decl. ¶¶11-13; Stewart Decl. ¶¶15-17; Thimot Decl. ¶¶14-16; M. Walton Decl. ¶¶12-14; Ibrahim Decl. ¶¶2-41.)

32

proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Id.* "When common questions present a significant aspect of a case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." *Hanlon*, 150 F.3d at 1022. Here, common issues predominate both as to questions of liability and damages.

### *Common Issues Relating to Liability Predominate*

Common issues predominate over individualized inquiries as it relates to Defendants' liability for Plaintiffs' claims for violation of the UCL, FAL, and CLRA, and for common law fraud and unjust enrichment. As alleged in the SAC, Plaintiffs' claims are premised on whether the reference prices and sales advertised on each of the three websites at issue are false or misleading. (SAC at ¶¶1, 37-45.) According to Plaintiffs, the reference prices advertised on the sites are misleading and deceptive because they do not represent the former price at which the product sold in the recent past. (*Id.*)

Here, the misleading reference prices (also referred to by Defendants as "original" or "full" prices) were *uniformly* displayed on the sites across *all* products sold during the class periods at issue. (NC Dep. at 37:22-39:5, 75:18-22, 129:7-18; MB Dep. at 50:23-51:23, 76:23-77:15, 92:1-92:3; SB Dep. at 47:8-48:13; Ibrahim Decl. Ex. 156.) Similarly, the misleading sitewide promotions available on the sites for a given day were advertised on the home landing page of each of the sites during the class periods. (NC Dep. at 61:9-13, 75:18-22, 97:19-98:13; JH Dep. at 30:8-18; MB Dep. at 28:4-10, 37:24-38:24, 56:20-57:4; SB Dep. at 45:2-13, 54:1-16, 98:10-18.) The same reference prices and promotions were displayed on the websites to all consumers in the U.S. (NC Dep. at 28:22-29:24, 61:9-13, 97:19-98:13; JH Dep. at 29:19-30:3; MB Dep. at 37:24-38:24, 56:20-57:4.)

Indeed, common evidence in the form of Defendants' promotional calendars, enables Plaintiffs to demonstrate the use of discounts to which the Class was exposed on a daily basis for the class period for all four U.S. Websites.(NC Dep. at 61:9-62:1, 75:18-

76:4, 94:8-95:1, 97:19-98:13, 148:18-149:17; JH Dep. at 39:9-18; MB Dep. at 34:1-16, 37:24-38:24; SB Dep. at 45:2-13, 54:1-16, 98:10-18; Ibrahim Decl. Exs. 43-46, 48-49, 49A, 71-74, 74A-C.) Common evidence in the form of sales transaction data from the class period for the subject websites is also available. It captures every sales transaction, reference price advertised to the purchaser for each transaction, the actual amount paid by the purchaser, and other pertinent information. (Stipulation at ¶¶2-7.)

The daily sale or promotion Defendants typically advertise on their websites are a sitewide percentage off discount (e.g., "50% OFF EVERYTHING") that is automatically applied or applied after the customer enters a promo code displayed on the site, or an "up to" a certain percentage off discount for all products on the sites (e.g., "UP TO 70% OFF EVERYTHING"). (JH Dep. at 31:16-32:22; SB Dep. at 118:7-16, 119:2-15.) Importantly, where Defendants run an "up to" promotion, Defendants still provide sitewide discounts relatively consistent with the deep discounts customarily offered. (Stipulation at ¶¶8-11.) In short, deep sales were and are perpetually run on the U.S. Websites.

Also important to the predominance analysis, prior to June 17, 2022 when disclosures were added to the websites pursuant to the injunctive relief requirements of the California settlement in the *Khan* Litigation, no consumers received any disclosure telling them the truth, namely, that the advertised reference prices are not former prices, that advertised discounts are not based on former prices, and that the references prices are merely Defendants' opinion of the full retail value of the product at issue. (NC Dep. at 113:1-14, 118:2-17, 123:3-17, JH Dep. at 19:6-19, 20:6-21:21, 25:4-17, 44:3-9; MB Dep. at 143:8-25, 148:7-19; SB Dep. at 47:8-49:13, 55:10-25, 57:6-14, 88:15-91:1; Ibrahim Decl. Exs. 39, 42, 134, 142, 156, 158, 159.)

As a result, relevant to Plaintiffs' statutory consumer protection claims and common law fraud claim based on affirmative misrepresentations, *all putative class members were exposed to the same false representations*. Likewise, relevant to Plaintiffs' statutory claims and common law fraudulent concealment claims based on *omissions* of material facts, *no putative class members were exposed to any disclosures explaining the truth about the*

*advertised reference prices and promotions on the sites*.

Furthermore, common issues predominate because discovery confirms that prior to the June 17, 2022, changes to the U.S. Websites, Plaintiffs believe or would intend to show Defendants' pricing practices were misleading to consumers. Plaintiffs confirmed that, although the products offered for sale on the sites are represented to customers as *always* selling at a discount or promotion, the discounts and promotions are *not* based on actual, former prices. Other than the first week or two when an item is first introduced to Defendants' sites, that item would not typically sell at the full reference price for the remainder of the time it was offered for sale on the sites, which could be for months or years.[12] (NC Dep. at 113:1-115:5, 135:15-136:12; JH Dep. at 39:19-40:2, 54:6-12, 54:20-55:6, 70:13-71:14; SB Dep. at 83:15-24, 85:16-86:2, 92:8-14.) Defendants did not include a disclaimer to consumers on their sites explaining that the reference prices are not intended to be former prices; instead, according to Defendants, the advertised reference prices merely constitute Defendants' *opinion* of what the full retail value of their products are, which are based on factors that have very little, if anything, to do with their own former prices. (JH Dep. at 19:6-19, 20:6-21:21, 25:4-17, 44:3-9, 65:3-17; SB Dep. at 88:15-91:1.) This is significant because Defendants' items are sold exclusively through their own websites. (JH Dep. at 67:9-68:3; MB Dep. at 26:14-27:7.) Thus, they cannot claim that the reference prices are based on the market price of what other companies charge for their items. *People v. Superior Court (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019) ("[W]hen a retailer sells in-house goods, the retailer's *actual* prices regarding those goods constitute their market prices" and hence, its actual prices "provide an adequate basis for determining whether the retailer's advertised former price claims comply with section 17501.") (emphasis in original).

Finally, although each of Plaintiffs' claims require proof of reliance, it is well-settled that Plaintiffs need not demonstrate individualized reliance on specific

---

[12] The only exception to this that were identified were by the PLT witnesses who pointed out there were infrequent scenarios where customers forgot to enter the promotion code to apply the discount available on a given day or there were technical glitches. (NC Dep. at 68:11-70:3; JH Dep. at 38:1-19,)

misrepresentations. *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). Rather, "a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Id.* The test for materiality is whether "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Id.* at 327. These principles also apply to Plaintiffs' common law and statutory claims premised on omissions. *See Daniel,* 806 F.3d at 1225.

Here, Defendants acknowledge that they utilize pricing and discount practices to increase traffic to their sites and increase sales. (NC Dep. at 98:14-99:4; MB Dep. at 33:11-19.) The survey findings of Plaintiffs' marketing expert also confirms that Defendants' representations concerning their pricing and discounts are material to customers' purchasing decisions, a concept confirmed by previous studies and literature. (Tregillis Decl. at ¶¶17-20, 22-29.) Indeed, there is no plausible argument that pricing is not material to purchasing decisions. *Konik v. Cable*, No. CV 07-763 SVW (RZX), 2009 WL 10681970, at *18 (C.D. Cal., Dec. 2, 2009); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 277 (2001) ("The price almost always is the most important term of the bargain.")).

### Common Issues Relating to Damages Predominate

At least where class certification is contested, the plaintiffs are merely required to show that class damages match their theory of liability. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013); *see also Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (explaining that *Comcast* stands "only for the proposition that 'plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability'" and any "[u]ncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.") (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013). "[T]he mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Pulaski,* 802 F.3d at 987. "Class wide damages calculations under the UCL, FAL, and CLRA are particularly forgiving. California law 'requires only that some reasonable basis of computation of

damages be used, and the damages may be computed even if the result reached is an approximation.'" *Lambert*, 870 F.3d at 1183 (quoting *Pulaski*, 802 F.3d at 989).

Here, Plaintiffs' expert economist performed a calculation of the aggregate estimated losses of the Class utilizing the findings of a survey prepared by Plaintiffs' marketing expert. (Tregillis Decl. ¶¶22-52.) He calculated the estimated price premium between what consumers who were exposed to the deceptive reference prices and discount promotions would be willing to pay for Defendants' products versus what they would pay if they were told the true reference price (i.e., the prices at which Defendants typically sold the product in the recent past) and true discount. (*Id.*) He also confirmed that the methodology is tied to Plaintiffs' theory of liability. (*Id.*) Plaintiffs' damage methodology therefore satisfies the predominance requirement under *Comcast*. *See Lambert*, 870 F.3d at 1184 (the question at class certification is only whether the plaintiff "has presented a workable method."); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 543 (N.D. Cal. 2015).

**Superiority.**   Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The class action method is considered superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Here, due to the sheer number of Class Members (over 9.4 million) combined with the relatively small amount of damages at issue for each Class Member, it is not economically feasible to litigate this case through individual lawsuits.

For the foregoing reasons, Plaintiffs have satisfied the requirements of Rule 23(a) and (b)(3). Plaintiffs' request to certify the proposed settlement class should be granted.

### 3.   *Injunctive Relief Class Prerequisites Under Rule 23 Are Satisfied*

Plaintiffs also meet the requirements of Rule 23(b)(2), which permits certification for injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Predominance and superiority are self-evident" under Rule 23(b)(2). *Dukes*, 564 U.S. at

363. Here, Plaintiffs' available remedies include injunctive relief. Cal. Bus. & Prof. Code §§ 17203, 17535; Cal. Civ. Code § 1780(a)(2). Because Defendants are required to maintain changes to the websites that would be uniformly applicable to every Class Member who visits the sites, the injunctive relief here applies "generally to the class." The Settlement thus provides meaningful injunctive relief to redress Plaintiffs' claims. Absent the Settlement, such relief would only be available to the Class after prevailing at trial.

## C.     The Notice Plan Should Be Approved.

"Before the district court approves a class settlement under Rule 23(e), it is 'critical' that class members receive adequate notice." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019). For notice to a class proposed to be certified for purposes of settlement under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice may be made by United States mail, electronic means, or another type of appropriate means. *Id.* "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." *Id.*

Plaintiffs' notice program satisfies these requirements. Because Defendants are online-only retailers, Class Members can be adequately notified of the Settlement by email at the address on file with Defendants. (Reed Decl. ¶¶8-9; Settlement at §3.4(b).) Where there is no email address or the settlement administrator determines that notice has not been delivered by email, that Class Member will receive a postcard notice by mail. (*Id.*, ¶10-13; Settlement at §3.4(c).) Publication notice will also be displayed as a branded content article on USATODAY.com for a 30-day period to satisfy the CLRA requirements. (*Id.*, ¶14; Settlement at §§1.21, 3.4(d)); Cal. Civ. Code § 1781(d) & (e).

KCC will also create a settlement website posting a copy of the Full Notice (Settlement at Ex. C), the SAC, the Settlement, Preliminary Approval Order, and a list of frequently asked questions and answers. (*Id.*, ¶9, 19; Settlement at §3.4(a).) Finally, the settlement administrator will handle dissemination of the notice to public officials required by CAFA. (Reed Decl. ¶21; Settlement at § 3.3.)

The notice procedures will accurately inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing, and the rights of all parties. The various notices all provide information on how Class Members can object and opt out of the Class (with 60 days' allowance to do so), along with information about appearing at the final approval hearing. (Settlement at Exs. B-E.) Class Members are informed about how they can receive a Gift Card—namely, that they will automatically receive their Gift Card(s) if they do not opt out. (Settlement at Ex. C at 5-7.) They are informed about the amount of the class representatives' proposed incentive awards and Class Counsels' attorneys' fee request. (Settlement at Ex. C at 6.) The notice also provides the contact information of Class Counsel. (Settlement at Ex. C at 7-8.) The Parties here have created the forms of notice, which will satisfy both the substantive and manner of distribution requirements of Rule 23 and due process. (*See* Settlement, Exs. B-E, I.)

In sum, these proposed methods of giving notice are appropriate because they provide a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the proposed Settlement. Thus, the notices and notice procedures amply satisfy the requirements of due process.

But the Settlement goes beyond simply notifying the Class of the Settlement and how they can receive the benefits of the Settlement. It also requires Defendants and the Settlement Administrator to remind Class Members through multiple avenues that they have received their Gift Cards. (Settlement at §§ 3.4(f)-(h), Ex. J; Reed Decl. ¶¶16-18.)

## VI.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant this Motion and enter the [Proposed] Preliminary Approval Order.

Dated: April 10, 2023                    Respectfully submitted,

                                         ALMADANI LAW

                                         /s/ Yasin M. Almadani
                                         Yasin M. Almadani, Esq.


                                         AI LAW, PLC

                                         /s/ Ahmed Ibrahim
                                         Ahmed Ibrahim, Esq.

                                         *Attorneys for Plaintiffs Individually and*
                                         *On Behalf of All Others Similarly Situated*