1  ALMADANI LAW
   Yasin M. Almadani, State Bar No. 242798
2  4695 MacArthur Court, Suite 1100
   Newport Beach, CA 92660
3  Ph: 949-877-7177
   Fax: 949-877-8757
4  yma@lawalm.com

5  AI LAW, PLC
   Ahmed Ibrahim, State Bar No. 238739
6  4695 MacArthur Court, Suite 1100
   Newport Beach, CA 92660
7  Ph.:  949-266-1240
   Fax:  949-266-1280
8  aibrahim@ailawfirm.com

9  Attorneys for Plaintiffs, Individually
   and On Behalf of All Others Similarly Situated

10            **UNITED STATES DISTRICT COURT**

11           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 12  LAURA HABBERFIELD, an individual, KEONA KALU, an individual, KATIE RUNNELLS, an individual, JUANITA CARMET CACHADINA, an individual, SARAH HUEBNER, an individual, YESENIA VALIENTE, an individual, VERONICA WALTON, an individual, LISA MURPHY, an individual, NICOLE HILL, an individual, NICOLE STEWART, an individual, ME'LISA THIMOT, an individual, and MARIKA WALTON, an individual, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, PRETTYLITTLETHING.COM USA INC., a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, NASTYGAL.COM USA INC., a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, and DOES 1-10, inclusive. <br><br> Defendants. | **CASE NO.: 2:22-CV-03899-GW-JEMx** <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** <br><br> **DECLARATION OF AHMED IBRAHIM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF PROCEDURE FOR AND FORM OF NOTICE** <br><br> **Hearing Information:** <br><br> Date: May 18, 2023 <br> Time: 8:30 a.m. <br> Courtroom: 9D <br> Judge: Hon. George H. Wu <br><br> Action Filed: June 7, 2022 <br><br> Trial Date: TBD |

1

**DECLARATION OF AHMED IBRAHIM**

I, Ahmed Ibrahim, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all state and federal courts in California, and counsel of record in this litigation for Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton, on behalf of themselves and all others similarly situated ("Plaintiffs," the "Class," or "Class Members"). I am submitting this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Settlement.  The facts stated in this declaration are based upon my own personal knowledge, and if called as a witness, I could and would testify competently about the same.

## QUALIFICATIONS AS CLASS COUNSEL

2.      I undertook undergraduate studies at the University of California, Berkeley, where I graduated with a Bachelor of Science degree in Business Administration in December 1999.  I graduated from law school in 2005 from the University of California, Hastings College of the Law.  After graduating from law school, I joined the Orange County office of Snell & Wilmer, LLP, a large multi-practice firm based in Phoenix, Arizona, where I practiced law in the firm's commercial litigation department.  In 2011, I joined Eagan Avenatti, LLP, where I continued practicing law in the field of commercial and other complex civil litigation, including class actions.  In early March 2019, I left Eagan Avenatti to start my own practice, AI Law, where I continue to focus on commercial litigation and class action matters.

3.      While at Snell & Wilmer, I spent more than five years working on a variety of complex commercial litigation matters and successfully defended and prosecuted matters for clients in a number of different industries and involving many fields of law. These included cases asserting fraud, violation of the California Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq.*), and other business torts.  It also included complex cases involving breach of contract, environmental claims, misappropriation of trade

2

secrets, trademark infringement, real estate disputes, construction disputes, and many other types of civil disputes.

4.      While at Eagan Avenatti, I spent more than seven and a half years continuing my work in complex commercial litigation, primarily representing individual and corporate plaintiffs in large dollar disputes across the country.  I also acquired significant experience in class action litigation.  For example, I assisted with the representation of a major telecommunications company against a class action brought by alleged victims of wiretapping in a high-profile suit.  This case resulted in a favorable settlement for the client, and I was also one of the principal attorneys on the team that obtained several summary judgment dismissals and nuisance settlements for the client in individual civil suits brought by alleged victims.  I also gained valuable class action experience through my participation in the Eden Memorial Park Litigation, where I was on a team of attorneys representing families of persons buried at a Jewish cemetery near Los Angeles in a case alleging the cemetery had a practice of engaging in various wrongdoing affecting gravesites that it failed to disclose to class members.  This case settled during trial in a settlement valued at $80.5 million.

5.      I am also class counsel in the case styled *Carmelo Treviso v. National Football Museum Inc.*, No. 5:17-cv-00472 (N.D. Ohio).  The Court granted class certification and appointed me, along with my co-counsel in Ohio, as class counsel.

6.      I was also appointed class counsel by this Court in the following three related and consolidated actions:  (1) *Khan v. Boohoo.com USA Inc.*, No. 2:20-cv-03332-GW-JEMx, (2) *Hilton v. PrettyLittleThing.com USA Inc.*, No. 2:20-cv-04658-GW-JEMx, and (3) *Lee v. NastyGal.com USA Inc.*, No. 2:20-cv-04659-GW-JEMx (together, the "*Khan* Litigation").  In December 2022, the Court granted final approval of the class action settlement in the *Khan* Litigation and entered final judgment in the case.

7.      Mr. Almadani and I have had recent success teaming up as co-counsel in 2022 by trying two successful jury trials (one in this courthouse before Judge Snyder) resulting in multimillion dollar verdicts.

3

*Declaration of Ahmed Ibrahim in Support of Plaintiffs' Motion*
*for Preliminary Approval of Class Action Settlement*                     *Case No. 2:22-cv-03899-GW (JEMx)*

8.      With respect to the adequacy prerequisite of Rule 23(a)(4), I am not aware of any actual or potential conflicts between myself or my co-counsel, Yasin Almadani of Almadani Law, and any members of the proposed Settlement Class, nor do I believe there are any such conflicts. Further, I am not aware of any conflicts between any of the named Plaintiffs and any member of the proposed Settlement Class. My firm and co-counsel will continue to vigorously prosecute this action on behalf of Plaintiffs and the Class.

## THE SIGNIFICANT WORK PERFORMED BY COUNSEL IN THIS CASE

9.      This action is a continuation of the *Khan* Litigation, which, like this case, was also originally brought as a nationwide class action against Defendants involving the same deceptive pricing scheme as alleged in this case.  Importantly, in the operative complaints in the *Khan* Litigation, the plaintiffs sought certification of a nationwide class of purchasers from the U.S. websites of the three brands that are also at issue here, namely, https://us.boohoo.com  and/or https://boohooman.com/us (the "Boohoo U.S. Websites"), https://prettylittlething.us (the "PLT U.S. Website"), and https://nastygal.com (the "Nasty Gal U.S. Website") (collectively, the "U.S. Websites").

10.      Because the nationwide claims outside of California in the *Khan* Litigation would be dismissed without prejudice if, as was anticipated, the Court would grant final approval, on June 7, 2022, my co-counsel and I filed this action to continue pursuing nationwide class relief (excluding relief for California purchasers) against Defendants on behalf of Plaintiffs Habberfield, Kalu, Runnells, Cachadina, Huebner, Valiente, Veronica Walton, Murphy, Hill, and Stewart.  In the complaint, we sought essentially the same nationwide relief on behalf of said plaintiffs as was requested by the plaintiffs in the *Khan* Litigation based on the same allegations of false advertising and deceptive pricing on Defendants' U.S. Websites.

11.      With this clear overlap of the claims and issues between the *Khan* Litigation and this action, as well as the Court formally ordering this action consolidated with the *Khan* Litigation for pretrial purposes, the discovery and motion practice from the *Khan* Litigation is plainly applicable to this action. It thus benefited the efforts of Plaintiffs and

4

*Declaration of Ahmed Ibrahim in Support of Plaintiffs' Motion
for Preliminary Approval of Class Action Settlement*                    *Case No. 2:22-cv-03899-GW (JEMx)*

us in prosecuting this action and ultimately negotiating the Settlement presented here. In other words, the Settlement here was only made possible by the work that had already been done by myself and my co-counsel in the *Khan* Litigation. Defendants acknowledge this fact in paragraph 21 of the Stipulation in Support of Motion for Preliminary Approval of Class Settlement. Accordingly, the discussion in the ensuing paragraphs of the work we performed in the *Khan* Litigation is relevant to this motion.

12.     Prior to filing the initial complaint in the *Khan* Litigation, I worked closely with my co-counsel, Yasin Almadani of Almadani Law, and attorney Daniel Wang. We painstakingly investigated the facts giving rise to the allegations in this litigation for all the U.S. Websites.  We also performed extensive legal research to determine, among other things, the legal validity of the claims at issue, class certification of those claims based on the factual allegations, damages available to the class, and procedural issues such as venue and multistate class certification.  We also procured the named plaintiffs (Farid Khan, Haya Hilton, and Olivia Lee (hereafter, the "*Khan* Plaintiffs")) in the *Khan* Litigation to serve as the putative class representatives in this case.  They supplied us with information concerning their purchases to support the claims of the Class, and their experience purchasing items on the U.S. Websites. This significantly assisted with our investigation of the claims in this litigation.

13.     Based on the facts gathered and legal research we performed, we spent considerable time drafting the complaint in the lead action in the *Khan* Litigation, namely, *Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW-JEMx (C.D. Cal.), and filed the complaint on April 9, 2020.

14.     Thereafter, we drafted similar complaints in *Hilton v. PrettyLittleThing.com USA Inc., et al.*, No. 2:20-cv-04658-GW-JEMx (C.D. Cal.), and *Lee v. NastyGal.com USA Inc., et al.*, No. 2:20-cv-04659-GW-JEMx (C.D. Cal.), and filed these complaints on May 26, 2020.

15.     Subsequently, we met and conferred with Defendants' counsel on a potential motion to dismiss.  Defendants' counsel argued, among other things, that we had not sued

5

*Declaration of Ahmed Ibrahim in Support of Plaintiffs' Motion*
*for Preliminary Approval of Class Action Settlement*                    *Case No. 2:22-cv-03899-GW (JEMx)*

the correct entities because, allegedly, the United Kingdom entities Boohoo.com UK Limited, PrettyLittleThing.com UK Limited, and Nasty Gal Limited (the "UK Limited Entities") were responsible for operating the U.S. Websites for the respective brands. They also asserted that there was an insufficient basis for personal jurisdiction over Defendant Boohoo Group PLC ("Boohoo Group"). We therefore amended the *Khan* Plaintiffs' complaints by, among other things, adding the UK Limited Entities as defendants and significantly bolstering the allegations of their complaints relating to personal jurisdiction and alter ego. On August 7, 2020, we filed these amended complaints on behalf of the *Khan* Plaintiffs.

16.     After filing the operative complaints, Defendants' counsel would not accept service of the complaints on behalf of the UK Limited Entities. We were therefore forced to research the complex and arcane legal requirements for serving a foreign entity, to select an appropriate and legally valid method for service, and executing service, which Defendants never contested. Because of Defendants' decision to not accept service on behalf of the UK Limited Entities, this resulted in different service dates and the somewhat cumbersome multiple motions to dismiss that were ultimately filed and the multiple responses that were before the Court. These were ultimately consolidated for hearing and ruled upon together by the Court.

17.     On September 4, 2020, Defendants filed their motion to dismiss and strike the operative complaints in the *Khan* Litigation, pursuant to Rule 12(b)(2), 12(f), and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' motion covered a wide range of issues, including jurisdiction, standing, and pleading sufficiency. Defendants argued, among other things, that (1) the Court lacked personal jurisdiction over Boohoo Group, (2) Plaintiffs sued the wrong entities, (3) all non-California class allegations should be stricken, (4) Plaintiffs lacked standing, (5) Plaintiffs' pre-litigation CLRA notices were non-compliant, and (6) Plaintiffs' claims were not properly pled. We prepared a robust and comprehensive opposition to Defendants' motion, which included a detailed declaration full of exhibits contesting Defendants' personal jurisdiction arguments.

18.     On November 16, 2020, the Court denied Defendants' Rule 12(f) motion to strike and Rule 12(b)(6) motion to dismiss in its entirety in the *Khan* Litigation. With regards to personal jurisdiction, the Court found the *Khan* Plaintiffs "produced enough reason for the Court to conclude that they are entitled to an opportunity to take jurisdictional discovery to solidify a basis for a proper assertion of personal jurisdiction over" Boohoo Group. The Court thus deferred ruling until after we conducted jurisdictional discovery.

19.     In order to delineate the scope of permissible jurisdictional discovery, the Court ordered the parties to meet and confer.  After several status conferences and the parties' joint status reports laying out their respective positions at length over various disputed issues (including, for example, Defendants' arguments that Plaintiffs should not be permitted to take remote depositions during the height of the COVID-19 pandemic), the Court established the limits and parameters of allowable jurisdictional discovery, and set a further briefing schedule to address personal jurisdiction and a hearing date on the motion.

20.     We then prepared a set of written discovery relating to personal jurisdiction and on December 30, 2020, propounded interrogatories, document demands, and requests for admission on Defendant Boohoo Group PLC.   However, on January 15, 2021, due to our considerable efforts, Boohoo Group dropped its personal jurisdiction challenge by formally withdrawing its motion.

21.     In early 2021, we propounded written class discovery on behalf of the *Khan* Plaintiffs on Defendants in the consisting of two sets of interrogatories and document demands, and one set of requests for admission. Because Defendants, in our view, did not adequately respond to this discovery, we were forced to file a motion to compel further discovery pursuant to the joint stipulation procedure under Local Rule 37-1.  In April 2021, Magistrate Judge McDermott issued two separate orders granting our motion, in significant part, and denying the *Khan* Plaintiffs' motion, in certain respects.

22.     In March 2021, we responded to written class discovery propounded by

Defendants upon the *Khan* Plaintiffs, consisting of interrogatories, document demands, requests for admission.

23.    Defendants also filed a motion to compel discovery.  However, on July 19, 2021, Judge McDermott denied the motion in its entirety, the only exception being that the *Khan* Plaintiffs were ordered to provide a verification confirming they had no documents responsive to one document demand.

24.    In response to our document demands, Defendants produced more than 546,000 pages of responsive documents, which does not include voluminous spreadsheets and data.  In total, up to the present date, Defendants have produced more than 250 Gigabytes of data in response to our requests.  We incurred the significant cost and expense to load this data into a cloud database to facilitate review of the documents.  Over many months during 2021 spanning countless hours, our team reviewed these documents for the purpose of conducting depositions and preparing our class certification motion.

25.    In the meantime, because we found evidence that his testimony would be relevant to class issues, in June 2021, we noticed the deposition of Boohoo Group's Executive Chairman, Mahmud Kamani.  On July 7, 2021, Defendants filed a motion for protective order to quash his deposition pursuant to the joint stipulation procedure in Local Rule 37-1.  We vigorously opposed the motion.  On July 28, 2021, Judge McDermott again sided with us, rejecting Defendants' arguments, and concluding that "Plaintiffs have presented evidence that Mr. Kamani has unique personal non-repetitive knowledge of facts relevant to this suit and to class certification[.]"  Mr. Kamani was thus ordered to appear for deposition.

26.    In late January and early February 2022, we deposed, via Zoom, four Rule 30(b)(6) corporate representatives designated by Defendants on behalf of the Boohoo/BoohooMAN, PrettyLittleThing, and Nasty Gal brands to testify concerning class topics central to the allegations of wrongdoing. In addition, we conducted an additional three interviews of key defense witnesses on relevant topics, including of Boohoo Group's Chief Financial Officer, Neil Catto. These depositions were particularly challenging due

8

to the significant time difference between California and the United Kingdom, which required, as a compromise between counsel, for us to begin our depositions at 6:00 a.m. Pacific Standard Time.  Importantly, all the written, document, deposition, and interview discovery we conducted was directed to Defendants' activities on a nationwide basis in the event the contemplated settlement in the case was not finalized and we would need to prosecute and seek class certification of the *Khan* Plaintiffs' nationwide class claims.

27.     The parties executed the settlement agreement in the *Khan* Litigation on May 20, 2022.  On June 3, 2022, the Court granted preliminary approval of the class action settlement in the *Khan* Litigation.

28.     As noted, on June 7, 2022, we filed this action on behalf of Plaintiffs.  Then on June 22, 2022, we filed a First Amended Complaint ("FAC") on behalf of the ten original plaintiffs listed above in paragraph __ to clarify that they were not pursuing relief on behalf of California class members in light of the class settlement in the *Khan* Litigation.

29.     But nevertheless, on June 28, 2022, Defendants filed a "Motion to Enforce Settlement Agreement and Strike *Habberfield* First Amended Complaint, or in the Alternative to Stay Settlement Administration, and for Sanctions." Defendants sought a swift dismissal of this nationwide class action without the Court considering any merits of the claims alleged in the complaint. This was an incredible filing as Mr. Almadani and I were in the middle of a complex jury trial in Judge Snyder's courtroom when Defendants elected to file this motion. We made Defendants aware of this, but they chose to file it anyway. We worked hard to conduct the research on the issues raised and draft the briefs to vigorously oppose Defendants' motion.  The Court held a hearing on August 22, 2022. In a comprehensive and detailed ruling, the Court rejected all of Defendants' arguments and denied their motion.  The Court thus reinstated the schedule for final approval of the settlement in the Khan Litigation, which had been stayed while the Court considered Defendants' motion.

30.     In addition to all the work in prevailing in Defendants' challenges to the

pleadings in the *Khan* Litigation and discovery in that case, our hard work in dismantling what we believed were meritless arguments by Defendants in their motion to strike the complaint in this action appeared to be extremely beneficial to being able to settle the case. That is because shortly after the Court's denial of Defendants' motion to strike this action, Defendants reached out to us seeking to reinitiate settlement discussions. To this end, on August 31, 2022, the parties filed a stipulation in which we stated, among other things, that we "agree and jointly request that the *Habberfield* Action be consolidated with the related *Khan* action for pretrial purposes and stayed" until the Court decided on final approval of the settlement in the *Khan* Litigation, and that during the period of the stay, we "wish to engage in settlement discussions in the *Habberfield* Action and shall be permitted to participate in discovery for this purpose as long as all parties mutually agree to do so." The Court approved the stipulation and ordered this action consolidated with the *Khan* Litigation for pretrial purposes the next day.

31.    Pursuant to a stipulation between the parties, on April 6, 2023, the Court permitted us to file a Second Amended Complaint ("SAC") on behalf of Plaintiffs, which is the operative complaint in this action.  In the SAC, we added two putative class representatives—Me'Lisa Thimot, a resident of Illinois, and Marika Walton, a resident of New York.

32.    In total, we have procured 12 named plaintiffs/class representatives representing 7 different states to bring and maintain this class action lawsuit against Defendants. The SAC contains 13 claims for relief. Each of the named plaintiffs have cooperated with us by searching for and providing the information and documents needed to substantiate their purchases and their claims against Defendants. They have all provided factual input for the lawsuit, and reviewed and approved the complaint (or in the case of Ms. Thimot and Ms. Marika Walton, the Second Amended Complaint).  My co-counsel and I have kept all of them up to date on a regular basis on the progress of the case and the Settlement.  They have all made themselves available when called upon, including with regards to reviewing and approving the Settlement.

33.     The work described above has been undertaken by Mr. Almadani, me (and our respective firms), and Mr. Wang, an experienced attorney of more than 10 years from whom we have received significant assistance in prosecuting this case. The three of us have taken on this case on a contingency basis at significant risk.  We have already put in countless hours to prosecute the nationwide class claims asserted in this case (which began with the nationwide claims asserted in the *Khan* Litigation) and address all the obstacles described above.  Based on the more than 30 years of collective experience between Mr. Almadani and me, which includes litigation of complex commercial cases and class actions, we estimate that if the case does not result in a final binding settlement and we have to continue to litigation, litigation costs would likely fall between $500,000 to $1,000,000.

34.     Together with Mr. Almadani of Almadani Law, I believe we are more than capable of fairly and adequately representing the interests of Plaintiffs and the putative classes, of vigorously prosecuting the claims in this class action litigation, and of devoting the financial resources necessary to successfully litigate this case.  Mr. Almadani and I have worked tirelessly, and continue to work, to diligently to protect the interests of Plaintiffs and the putative classes.

## THE SETTLEMENT NEGOTIATIONS

35.     Attached hereto as Exhibit 1 is a true and correct copy of the Class Action Settlement Agreement and Release (the "Settlement") fully executed by the parties and counsel.  Below is a summary of the negotiations that ultimately led to the Settlement.

36.     The parties had commenced settlement negotiations in the *Khan* Litigation by agreeing to private mediation before the Honorable Irma Gonzalez (Ret.) from the U.S. District Court for the Southern District of California. A detailed synopsis of all the painstaking efforts that went into negotiating the settlement in that case are set forth in my declaration in support of our motion for preliminary approval of class settlement filed in the *Khan* Litigation. Just by way of summary, we, along with defense counsel, initially participated in four separate mediation sessions with Judge Gonzalez. After a general

framework for a potential settlement was laid at these initial sessions, we met with defense counsel in person and began an ongoing and regular dialogue where we negotiated intensely all the detailed and intricate aspects of the settlement, provision by provision. These direct negotiations with defense counsel occurred over eight (8) months in dozens of video conferences and phone calls. We then reengaged Judge Gonzalez for a final mediation session on May 4, 2022, where we finalized the settlement agreement, leading to its final execution by the parties on May 20, 2022.

37.     As we did in the *Khan* Litigation, the parties again enlisted the assistance of Judge Gonzalez to assist us with regards to settling this action.  Along with defense counsel, we initially participated in an in-person mediation session with Judge Gonzalez on October 4, 2022 at the JAMS office in San Diego. Although the case did not settle at that time, a framework for a potential settlement was laid at this initial session.

38.     The parties then agreed to participate in a second mediation session with Judge Gonzalez on November 15, 2022, at which time we reached agreement in principle on the material terms of the settlement that is now being presented to the Court.  In reaching the Settlement Agreement, as we did in the *Khan* Litigation, we were careful to negotiate the material terms of the settlement covering benefits for the class prior to negotiating class counsel's fees and costs.  Specifically, Mr. Almadani and I were persistent in making sure Defendants agreed to the identical material terms and conditions they agreed to in the *Khan* Litigation, including most importantly with regards to the monetary benefits of the $10 Gift Card with complimentary shipping, for all purchasers from the 49 states and U.S. territories outside of California.  It was not until Defendants agreed to these same terms, conditions, and benefits from the *Khan* Litigation for the putative class members in this action that we commenced negotiating attorneys' fees and service awards for the class representatives in this case.

39.     After the second mediation with Judge Gonzalez, the parties engaged in numerous direct communications by videoconference, phone, and e-mail to negotiate and finalize all the detailed and intricate aspects of the Settlement, beginning with a

12

memorandum of understanding delineating the material terms of the parties' agreement, and ending on April 6, 2023, with a final signed Settlement Agreement.

40.    As described above, we had already conducted extensive discovery relating to the nationwide claims and business activities of Defendants in the *Khan* Litigation that could be used to benefit this litigation. Nevertheless, because the end-date of the class period in this action post-dated the Court's preliminary approval order in the *Khan* Litigation, we sought to update the financial data, promo calendars, and other information pertinent to the Settlement and to confirm that the information and data discovered in the *Khan* Litigation continued to apply to this action. On March 8, 2023, I sent a letter requesting additional and updated documents and data. Over the next several weeks, defense counsel complied with our requests.

41.    On March 23, 2023, Mr. Almadani and I conducted a comprehensive interview of Boohoo Group's Chief Financial Officer (Neil Catto) from the United Kingdom to go over the additional information provided by defense counsel. The information obtained from the documents produced by Defendants and the interview ultimately resulted in the Stipulation in Support of Motion for Preliminary Approval of Class Settlement concurrently filed with the Court herewith.

42.    As set forth in section 2.4(a) of the Settlement, Defendants agree to pay all costs associated with settlement administration up to a maximum amount of $1,000,000. This amount is based on an estimate prepared by Kurtzman Carlson Consultants LLC ("KCC"), the class administrator that has been selected to administer this settlement by executing the notice and administration plan set forth in the Settlement.

43.    Other than the Settlement, no other agreement exists that would be required to be identified under Rule 23(e)(3).

## **OTHER EVIDENCE SUBMITTED IN SUPPORT OF THE MOTION**

44.    Attached hereto as Exhibit 2 is a true and correct copy of the Notice of Deposition of Boohoo.com USA, Inc., Boohoo.com UK Limited, Boohoo Group PLC, PrettyLittleThing.com USA Inc., PrettyLittleThing.com Limited, NastyGal.com USA

13

Inc., and Nasty Gal Limited Pursuant to Rule 30(b)(6).  This was served electronically upon the Defendants in the *Khan* Litigation on January 24, 2022.  Defendants designated Nicki Capstick and Jonathan Haycock as their corporate representatives relating to certain of the topics on behalf of PrettyLittleThing, and designated Murray Beckett and Samuel Brocklebank as to certain of the topics on behalf of Boohoo/BoohooMAN and Nasty Gal.  Other topics from the notice were covered in witness interviews we conducted of other individuals designated by Defendants.

45.     Attached hereto as Exhibit 3 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Nicki Capstick, which occurred on January 28, 2022.  This includes the face page, oath page, court reporter's signature page, and the witness' signed errata page.

46.     Attached hereto as Exhibit 4 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Jonathan Haycock, which occurred on January 31, 2022.  This includes the face page, oath page, court reporter's signature page, and the witness' signed errata page.

47.     Attached hereto as Exhibit 5 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Murray Beckett, which occurred on February 1, 2022.  This includes the face page, oath page, court reporter's signature page, and the witness' signed errata page.

48.     Attached hereto as Exhibit 6 are true and correct copies of excerpts from the transcript of the Rule 30(b)(6) deposition of Samuel Brocklebank, which occurred on February 3, 2022.  This includes the face page, oath page, court reporter's signature page, and the witness' signed errata page.

49.     Attached hereto as Exhibit 39 is a true and correct copy of a product display page from the PLT U.S. Website, which was authenticated as Exhibit 39 at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

50.     Attached hereto as Exhibit 42 is a true and correct copy of a product display page from the PLT U.S. Website, which was authenticated as Exhibit 42 at the Rule

14

30(b)(6) corporate representative deposition of Nicki Capstick.

51.     Attached hereto as Exhibit 43 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000013, which is the PLT Promo Calendar for 2016.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

52.     Attached hereto as Exhibit 44 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000010, which is the PLT Promo Calendar for 2017.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

53.     Attached hereto as Exhibit 45 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000011, which is the PLT Promo Calendar for 2018.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

54.     Attached hereto as Exhibit 46 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000012, which is the PLT Promo Calendar for 2019.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

55.     Attached hereto as Exhibit 48 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000014, which is the PLT Promo Calendar for 2020.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

56.     Attached hereto as Exhibit 49 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00546058, which is the PLT Promo Calendar for 2021.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Nicki Capstick.

57.     Attached hereto as Exhibit 49A is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00546192, which is the PLT Promo Calendar for the portion of 2022 from January up through at least the end of the class period on June

15

17, 2022.  Defendants agreed at the interview of Mr. Catto on March 23, 2022 that the information in this document accurately captures the sales and promotions advertised on https://prettylittlething.us on the dates set forth in the spreadsheet.

58.     Attached hereto as Exhibit 71 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00082505, which is the BoohooMAN USA Promo Calendar for 2017 through 2020.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Murray Beckett.

59.     Attached hereto as Exhibit 72 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00000126, which is the Boohoo USA Promo Calendar for 2016 through 2020.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Murray Beckett.

60.     Attached hereto as Exhibit 73 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00001131, which is the Nasty Gal USA Promo Calendar for 2017 through 2020.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Murray Beckett.

61.     Attached hereto as Exhibit 74 is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00082505, which is the Boohoo and Nasty Gal USA Promo Calendar for 2021.  Defendants stipulated that this document is a business record and is authentic at the Rule 30(b)(6) corporate representative deposition of Murray Beckett.

62.     Attached hereto as Exhibit 74A is a true and correct copy of a spreadsheet produced by Defendants in discovery as D00546189, which is the Boohoo USA Promo Calendar for March 8, 2021 through at least the end of the class period on June 17, 2022. Defendants agreed at the interview of Mr. Catto on March 23, 2022 that the information in this document accurately captures the sales and promotions advertised on

16

1    https://us.boohoo.com on the dates set forth in the spreadsheet.

2    63.     Attached hereto as Exhibit 74B is a true and correct copy of a spreadsheet

3    produced by Defendants in discovery as D00546190, which is the BoohooMAN USA

4    Promo Calendar for 2021 through at least the end of the class period on June 17, 2022.

5    Defendants agreed at the interview of Mr. Catto on March 23, 2022 that the information

6    in this document accurately captures the sales and promotions advertised on

7    https://boohooman.com/us on the dates set forth in the spreadsheet.

8    64.     Attached hereto as Exhibit 74C is a true and correct copy of a spreadsheet

9    produced by Defendants in discovery as D00546191, which is the Nasty Gal USA Promo

10   Calendar for 2022 from the beginning of the year through at least the end of the class

11   period on June 17, 2022.  Defendants agreed at the interview of Mr. Catto on March 23,

12   2022 that the information in this document accurately captures the sales and promotions

13   advertised on https://us.boohoo.com on the dates set forth in the spreadsheet.

14   65.     Attached hereto as Exhibit 134 is a true and correct copy of a thumbnail

15   display of products from the NG U.S. Website, which was authenticated as Exhibit 134 at

16   the Rule 30(b)(6) corporate representative deposition of Murray Beckett.

17   66.     Attached hereto as Exhibit 140 is a true and correct copy of a home landing

18   page from the BH U.S. Website, which was authenticated as Exhibit 142 at the Rule

19   30(b)(6) corporate representative deposition of Murray Beckett.

20   67.     Attached hereto as Exhibit 156 is a true and correct copy of a product display

21   page from the BH U.S. Website, which was authenticated as Exhibit 156 at the Rule

22   30(b)(6) corporate representative deposition of Samuel Brocklebank.

23   68.     Attached hereto as Exhibit 158 is a true and correct copy of a product display

24   page from the NG U.S. Website, which was authenticated as Exhibit 158 at the Rule

25   30(b)(6) corporate representative deposition of Samuel Brocklebank.

26   69.     Attached hereto as Exhibit 159 is a true and correct copy of a product display

27   page from the BoohooMAN U.S. Website, which was authenticated as Exhibit 159 at the

28   Rule 30(b)(6) corporate representative deposition of Samuel Brocklebank.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 10th day of April 2023.

_____

Ahmed Ibrahim

18

# EXHIBIT 1

**CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**

**THIS CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE ("*Agreement*")** is entered into by and between Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton individually, and in their respective capacity on behalf of the Settlement Class (collectively "Plaintiffs"), on the one hand, and Defendants Boohoo Group PLC ("Boohoo Group"), Boohoo.com USA, Inc., Boohoo.com UK Limited ("Boohoo Defendants"), Prettylittlething.com USA, Inc., Prettylittlething.com Limited ("PLT Defendants"), NastyGal.com USA, Inc., and Nasty Gal Limited ("Nasty Gal Defendants") (collectively "Defendants"), on the other hand, (collectively referred to as the "Parties" or singularly "Party") to effect the Settlement set forth herein, subject to Court approval.

**RECITALS**

A. On June 7, 2022, Plaintiffs filed a class action lawsuit in the United States District Court for the Central District of California ("District Court") styled *Laura Habberfield et al. v. Boohoo.com USA, Inc.*, *et al.*, Case No. 2:22-cv-03899 GW (JEMx), as amended by a First Amended Class Action Complaint filed on June 22, 2022 (the "Habberfield Action") against Defendants on behalf of a class of all individuals in the United States, excluding California, who purchased one or more "boohoo" products from the websites https://us.boohoo.com and https://www.boohooman.com/us/ or associated mobile phone applications ("Boohoo U.S. Websites") between April 9, 2016, through June 17, 2022; or who purchased one or more "PrettyLittleThing" products from the website https://prettylittlething.us or associated mobile phone application(s) ("PLT U.S. Website") between May 19, 2016 through June 17, 2022; or who purchased one or more "Nasty Gal" products from the website https://nastygal.com or associated mobile phone application(s) ("Nasty Gal U.S. Website") between March 1, 2017, through the June 17, 2022, at a purportedly discounted price and have not returned those purchases for a refund or store credit.

B. On June 13, 2022, the Habberfield Action was transferred to Judge Wu as a related case to *Farid Khan v. Boohoo.com USA, Inc., et al.*, Case No. 2:20-cv-03332 GW (JEMx) (the "Khan Action"), *Haya Hilton v. Prettylittlething.com USA Inc., et al.*, Case No.: 2:20-cv-004658 GW (JEMx) (the "Hilton" Action), and *Olivia Lee v. NastyGal.com USA, Inc., et al.*, Case No.: 2:20-cv-004659 GW (JEMx) (the "Lee" Action) (collectively, the "Khan Consolidated Actions") pursuant to General Order 21-01.

C. On September 2, 2022, the Court consolidated the Khan Consolidated Actions and the Habberfield Action for pretrial purposes.

D. On October 4, 2022, the Parties engaged in an in-person mediation session in an effort to resolve the Habberfield Action with the Hon. Irma E. Gonzales (Ret.) of JAMS, Inc. While the Parties made progress regarding a possible framework for a settlement, a settlement was not reached at that time.

E. On November 15, 2022, the Parties engaged in an additional half-day mediation session to continue their settlement discussions, which ultimately resulted in a proposed resolution of the Habberfield Action for memorialization of the settlement terms in a written Agreement. Furthermore, while the Parties agreed that the discovery conducted in the Khan Consolidated Actions largely overlaps with and is applicable to the Habberfield

Action and the Habberfield Action could not have settled without it, the Parties agreed that Plaintiffs would conduct supplemental discovery for due diligence purposes and Defendants would cooperate with this effort as agreed to by the Parties.

**F.** On June 3, 2022, the Court entered an order preliminarily approving settlement of the Khan Consolidated Actions, which provided settlement benefits to a class consisting of Defendants' customers in California only and further provided for changes to the Boohoo U.S. Websites, the Nasty Gal U.S. Website, and the PLT U.S. Website ("Khan Settlement"). On December 19, 2022, the Court held a final approval hearing for the Khan Settlement and granted final approval of the Khan Settlement.

**G.** This agreement memorializes the terms of the Parties' settlement, which is intended to fully and finally resolve the claims of the nationwide class members in the 49 states, or a commonwealth or territory of the United States, other than California, as defined below as the "Settlement Class" or the "Settlement Class Members."

**H.** Plaintiffs and their counsel believe that the claims asserted in the Habberfield Complaint in the Habberfield Action have merit. Defendants have denied, and continue to deny, any and all allegations of wrongdoing, liability or damages to any person whatsoever alleged in the Khan Consolidated Actions and Habberfield Action, and believe the claims asserted by Plaintiffs are wholly without merit. Nonetheless, the Parties have concluded that litigation could be protracted and expensive, and desire that the Habberfield Action relating to the nationwide class members (excluding California) be fully and finally settled in the manner and upon the terms and conditions set forth herein in order to, among other things, limit further expense, inconvenience, and risk and to avoid the costs of litigation and trial and settle and dispose of, fully and completely and forever, any and all claims or causes of action alleged in the Habberfield Action relating to all nationwide class members (excluding California). The Parties also have considered the risks of continued litigation and the benefits of the proposed Agreement, and have considered the costs, risks, and delays associated with the prosecution of this complex and time-consuming litigation, as well as the likely appeals of any rulings in favor of either Plaintiffs or Defendants.

**I.** Following settlement of the Habberfield Action and the Khan Consolidated Actions, the Parties intend that all potential claims arising from Defendants' pricing practices on the Boohoo U.S. Websites, the Nasty Gal U.S. Website, and the PLT U.S. Website as described in the Complaints for these matters have been finally compromised and settled.

## AGREEMENT

**NOW, THEREFORE,** in consideration of the covenants and agreements set forth herein, Plaintiffs, on behalf of themselves and the Settlement Class, and Defendants, hereby stipulate to the resolution of the Habberfield Action, subject to Court approval, under the following terms and conditions:

1. **DEFINITIONS.** In addition to the definitions included in the Recitals above, and in later sections of this Agreement, the following shall be defined terms for purposes of this Agreement. Some of the definitions in this section use terms that are defined later in the section. All defined terms are capitalized:

   1.1 As used herein, the term **"*Settlement Administrator*"** means a third-party settlement administrator to administer the notice, exclusions, objections, and settlement relief distribution process provided for in the Agreement. Plaintiffs shall choose and retain the Settlement Administrator and Defendants shall retain the right to audit and review

the work of the Settlement Administrator. The Settlement Administrator must meet Defendants' data security requirements, execute Exhibit A to the Protective Order in the Habberfield Action, and execute a retention agreement that includes data security requirements. The Settlement Administrator may be removed and replaced by agreement of the Parties or by order of the Court.

1.2     As used herein, the term **"Settlement Administrator Costs"** means all costs of the Settlement Administrator, including, but not limited to, the cost of providing notice to the Settlement Class and administering the terms set forth in this Agreement related to the distribution of compensation to Settlement Class Members and tracking opt-out requests consistent with this Agreement. Defendants shall pay all Settlement Administrator Costs up to a maximum amount of $1,000,000.00. Defendants shall retain the right to audit and review the Settlement Administrator Costs but shall not limit, dictate, or withhold payment for costs defined as Settlement Administrator Costs up to the above stated maximum amount.

1.3     As used herein, the terms **"Settlement Class"** and **"Settlement Class Members"** mean the following: All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website during the Class Period.

1.4     As used herein, the term **"Class List"** means the list of the names of the Settlement Class Members, the website(s) from which they made a Qualifying Purchase, their e-mail addresses, their phone numbers, and their physical mailing addresses (all to the extent known).

1.5     As used herein, the term "**Class Member ID**" means a unique identifying code assigned to each Settlement Class Member by the Settlement Administrator.

1.6     As used herein, the term **"Class Period"** means the following:
   1.6.1     For the Boohoo U.S. Websites, from April 1, 2016, through June 17, 2022, the date Defendants made changes to their websites in accordance with the Khan Settlement and as agreed upon by the Parties under Section 2.10 of this Agreement to be implemented and maintained across all the territories referenced above in Section 1.3.
   1.6.2     For the PLT U.S. Website, from April 1, 2016, through June 17, 2022, the date Defendants made changes to their websites in accordance with the Khan Settlement and as agreed upon by the Parties under Section 2.10 of this Agreement to be implemented and maintained across all the territories referenced above in Section 1.3.
   1.6.3     For the Nasty Gal U.S. Website, from February 28, 2017, through June 17, 2022, the date Defendants made changes to their websites in accordance with the Khan Settlement and as agreed upon by the Parties under Section 2.10 of this Agreement to be implemented and maintained across all the territories referenced above in Section 1.3.

1.7     As used herein, the term **"Class Released Claims"** means all manner of actions, causes of action, claims, demands, rights, suits, obligations, debts, contracts,

agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, which Settlement Class Members have or may have, arising out of or relating to any of the acts, omissions or other conduct by Defendants alleged or otherwise referred to in the Complaint in the Habberfield Action. This Agreement does not bind any persons or class members outside of the Settlement Class Members as defined in Section 1.3.

1.8   As used herein, the term "**Class Releasors**" means all Settlement Class Members who do not timely and sufficiently request to be excluded from the proposed Settlement, and each of their respective successors, assigns, legatees, heirs, and personal representatives.

1.9   As used herein, the term "**Defendants**" or "**Released Parties**" means the named Defendants in the Habberfield Action and all direct and indirect subsidiaries, affiliates, parent companies, holding companies or other companies or business entities owned or controlled by any of the named Defendants in the Habberfield Action that are specifically related to the brands boohoo, boohooMan, PrettyLittleThing, and NastyGal. To the extent Defendant Boohoo Group PLC or any of its subsidiaries owns, operates, or otherwise controls any business entities that sell brands other than the brands listed above, those brands, companies, subsidiaries, and/or business entities are not included within the definition of "Defendants."

1.10  As used herein, the term "**Defendants' Counsel**" means the law firm of Eversheds Sutherland (US) LLP.

1.11  As used herein, the term "**Email Notice**" means the legal notice summarizing the proposed terms of this Agreement, as approved by Class Counsel, Defendants' Counsel, and the Court, to be provided to Settlement Class Members under **Sections 3.2 through 3.4** of this Agreement via electronic mail. The Email Notice shall be substantially similar to the form attached as **Exhibit B**.

1.12  As used herein, the term "**Fairness Hearing**" means the final hearing(s) to be held by the Court to consider and determine whether the Agreement should be approved as fair, reasonable, and adequate, and whether the Final Order and Judgment approving the Agreement should be entered.

1.13  As used herein, the term "**Final Order and Judgment**" means the Court's grant of final approval of the Agreement following the Fairness Hearing. The proposed Final Order and Judgment that Plaintiffs submit to the Court for its approval shall be substantially similar to the form attached as **Exhibit H**.

1.14  As used herein, the term "**Final Settlement Date**" means the date on which the latest of the following events occurs: (i) if there are no objections filed by any Settlement Class Member, the date the Court has entered the Final Order and Judgment; (ii) the expiration of the time for filing an appeal if there are any objections filed by any Settlement Class Member that were not voluntarily withdrawn or dismissed and no timely appeal has been filed; (iii) in the event that there are any objections that have

been filed by any Settlement Class Member and an appeal or other effort to obtain review has been initiated, the date after any and all such appeals or other review(s) have been finally concluded or dismissed in favor of the Final Order and Judgment, any mandates have been returned to the Court, and the Final Order and Judgment is no longer subject to review, whether by appeal, petitions for rehearing, petitions for rehearing *en banc*, petitions for *certiorari*, or otherwise; or (iv) the withdrawal of the last objection to the Settlement.

1.15   As used herein, the term "**Full Notice**" means the full legal notice of the proposed Agreement terms, as approved by Class Counsel, Defendants' counsel, and the Court, to be provided to Settlement Class Members under **Sections 3.2 through 3.4** of this Agreement. The Full Notice shall be substantially similar to the form attached as **Exhibit C**.

1.16   As used herein, the term "**Gift Card**" means a single-use Gift Card as further defined in Section 2.1(a).

1.17   As used herein, the term "**Named Plaintiffs**" means Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton, both in their individual capacities and as a representative of their respective Settlement Class.

1.18   As used herein, the terms "**Plaintiffs' Counsel**" and "**Class Counsel**" mean Almadani Law and AI Law, PLC.

1.19   As used herein, the term "**Preliminary Approval Order**" means the order provisionally certifying the Settlement Class for settlement purposes only, approving and directing notice, and setting the Fairness Hearing. The proposed Preliminary Approval Order that Plaintiffs submit to the Court for its approval shall be substantially similar to the form attached as **Exhibit A**.

1.20   As used herein, the term "**Preliminary Fairness Hearing**" means the preliminary hearing(s) to be held by the Court to consider and determine whether the Agreement should be approved as fair, reasonable, and adequate, and whether the Preliminary Approval Order approving the Agreement should be entered.

1.21   As used herein, the term "**Publication Notice**" means the legal notice summarizing the proposed Agreement terms, as approved by Class Counsel, Defendants' Counsel, and the Court, to be provided to Settlement Class Members via publication in the USA Today digital edition once a week for four consecutive weeks pursuant California Civil Code Section 1781(d) and (e) and Government Code Section 6064. The Publication Notice shall be substantially similar to the form attached as **Exhibit D**.

1.22   As used herein, the term "**Qualifying Purchase**" means the purchase of any product by a Settlement Class Member from the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website within the Class Period.

1.23  As used herein, the term "***Unknown Claims***" means with respect to the Class Released Claims only, the unknown claims referenced in **Section 1.7** of this Agreement. Plaintiffs and the Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

1.24  As used herein, the term "***Settlement***" means the settlement of the Habberfield Action and related claims effectuated by this Agreement.

1.25  As used herein, the term "***Settlement Website***" means the website that shall be created for settlement administration purposes and administered by the Settlement Administrator at a URL to be jointly approved by the Parties.

## 2.  SETTLEMENT TERMS.

2.1  **Award to the Class.** Each Settlement Class Member who does not timely opt out consistent with the terms of Section 3.9 herein, shall automatically receive one $10.00 Gift Card for each of the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website from which one or more Qualifying Purchases were made during the Class Period.

**(a)** Characteristics of the Gift Cards.

    i.  *Value*.  The Gift Card may be used for $10.00 toward any purchase of merchandise on the U.S. website from which a Settlement Class Member made one or more Qualifying Purchases.  For example, if a Settlement Class Member made one or more Qualifying Purchases on the PLT U.S. Website, then the Class Member will receive one Gift Card for use on the PLT U.S. Website only toward a purchase on that website. Customers of the boohooman.com/us/ website will receive a Gift Card for redemption on the us.boohoo.com website, which carries products for both brands - BoohooMAN and Boohoo. Furthermore, consistent with the shipping and handling provision below, Settlement Class Members will also receive a waiver of Defendants' customary shipping and handling charges, which on average have historically amounted to $7.45 per order across the U.S. Websites implicated in this Action during the class period, for an additional benefit to each class Member of $7.45.

ii.   *No Requirement for Claim to be Filed*.  There is no requirement for a claim to be filed as Settlement Class Members who do not timely opt out of the class settlement shall automatically receive a Gift Card by electronic means.

iii.   *No Expiration Date and No Reversion to Defendants*. The Gift Cards do not have an expiration date. Defendants shall not cancel the Gift Cards or revert the Gift Cards back to Defendants.

iv.   *No Minimum Purchase Requirement*. The Gift Cards will not have a minimum purchase requirement meaning that a customer need not make any minimum purchase in order to use a Gift Card. In other words, a Settlement Class Member may purchase any item or combination of items for up to $10.00 in one transaction without incurring any out-of-pocket expense or use the $10.00 toward an item or combination of items that is greater than $10.00.

v.   *Multiple Gift Cards Permitted*.  The Settlement Class Members for each set of Defendants shall be counted independently. For example, if a Settlement Class Member made a Qualifying Purchase during the Class Period from the Boohoo U.S. Websites, from the PLT U.S. Website,  and from the Nasty Gal U.S. Website, that Settlement Class Member would be entitled to a total of three (3) Gift Cards. A Settlement Class Member may only receive one Gift Card per brand (with BoohooMAN and Boohoo counting  as a single brand) and may only use the Gift Card on the website where the Qualifying Purchase was made.  For example, a Gift Card issued for use on the PLT U.S. Website may only be used on the PLT U.S. Website and  not be used on the Boohoo U.S. Websites, Nasty Gal U.S. Website, nor any other website owned or operated by Defendants or their subsidiaries.

vi.   *No Blackout Dates*. The Gift Cards can be used on any date; there are no blackout dates on which the Gift Cards cannot be used.

vii.   *No Restriction on Use with Other Offer or Promotion*. The Gift Cards shall not have any restrictions on use with other offers, discounts, or promotions.

viii.   *No Restriction on Transferability*. The Gift Cards will be freely transferable. Settlement Class Members who receive a Gift Card may give their Gift Card to someone else.

ix.   *Stackability Permitted*. The Gift Cards shall be fully

stackable. To use more than one Gift Card on a single transaction, the Settlement Class Member or user must surrender the multiple Gift Cards to the Settlement Administrator to obtain a new Gift Card code in the total amount of the surrendered Gift Cards. The Settlement Administrator, together with Defendants, shall ensure that Settlement Class Members' ability to stack the gift cards is as seamless and instantaneous as possible, and not impeded in any way unless an investigation is triggered pursuant to the $500 fraud-prevention-triggering limit identified below. Eight (8) years after entry of the Final Approval Order, Defendants shall assume the responsibility to stack the Gift Cards upon a Settlement Class Member's request made to Defendants' customer service department. Forty-five (45) days prior to the commencement of Defendants' assumption of this responsibility, the Settlement Administrator shall contact Defendants and make arrangements for a smooth transition.

x. *Fraud and Commercial Activity Prevention on Stackability*. Because the Gift Cards are intended for personal use and because the Parties would like to prevent fraud, Defendants shall engage the Settlement Administrator to prevent the use of Gift Cards resulting from the accumulation of a substantial and unusually high number of Gift Cards through fraud or commercial activity. Defendants, however, may trigger a fraud or commercial activity investigation by the Settlement Administrator only where a transaction has a stacking value of $500 or more. The administration of and decisions on the prohibitions on fraud or commercial activity shall be solely in the discretion of the Settlement Administrator with no interference from Defendants consistent with Section 3.7.

xi. *Payment for Shipping and Handling Waived*. There will be no requirement for Settlement Class Members to pay any shipping charges when a Gift Card is used. However, because Defendants do not normally offer free shipping, and shipping charges are customarily applied by Defendants, Class Members will have one transaction to use a Gift Card. Any unused value would apply to shipping and handling that is otherwise waived. Therefore, if a Settlement Class Member uses a $10 Gift Card to purchase product(s) for a total of $10 before shipping and handling, all shipping and handling charges will be waived, and that Settlement Class Member would receive the item(s) without having to pay anything out of pocket. If, for example, the Settlement Class Member uses a $10 Gift Card to purchase product(s) for a total of $8 before shipping and handling, all shipping and handling charges except $2 will be waived, and that

Settlement Class Member would receive the item(s) without having to pay anything out of pocket. Finally, if, for example, the Settlement Class Member uses a $10 Gift Card to purchase product(s) for a total of $15 before shipping and handling, all shipping and handling charges will be waived, and that Settlement Class Member would receive the item(s) having paid $5 out of pocket for the charges for the product(s) in excess of the $10 Gift Card.

xii.  *No Fees*.  There will be no fees on the Gift Card for inactivity or for any other reason.

xiii.  *No Cash Redemption But Replacement Allowed*. The Gift Cards are only redeemable for the purchase of merchandise on Defendants' websites, and shall not be redeemable for cash or new gift cards. However, a lost Gift Card may be replaced upon request to the Settlement Administrator, pursuant to which the Settlement Administrator shall replace the Gift Card at no cost to the Settlement Class Member by emailing to the Settlement Class Member a duplicate copy of the Gift Card referenced in Section 2.2 below. Eight (8) years after entry of the Final Approval Order, Defendants shall assume the responsibility of Gift Card replacement at no cost to the Settlement Class Members by emailing to any Settlement Class Member a duplicate copy of the Gift Card referenced in Section 2.2 below upon the Settlement Class Member's request made to Defendants' customer service department. Forty-five (45) days prior to the commencement of Defendants' assumption of this responsibility, the Settlement Administrator shall contact Defendants and make arrangements for a smooth transition.

**2.2  Distribution.**  Each class member who does not elect to opt out shall automatically receive a Gift Card from Defendants with no requirement for a claim to be filed. The Gift Cards will be distributed according to the provisions in Section 3.4 below.

**2.3  Incentive Awards to Named Plaintiffs.** The Parties acknowledge that the Named Plaintiffs must move the Court for approval of any incentive award (the "Incentive Awards") in recognition of their efforts and activities in furtherance of both the litigation and this Agreement. Each Named Plaintiff agrees they will not seek an Incentive Award of greater than $1,500.00. Defendants agree not to oppose a request by Named Plaintiffs for such Incentive Awards. Named Plaintiffs further agree that, in any event, Defendants will not be obligated to pay any Incentive Award in excess of $1,500.00 for each Named Plaintiff or in excess of $18,000.00 in total Incentive Awards. Incentive Awards shall be payable to the Named Plaintiffs by Defendants, if approved by the Court, within fourteen (14) calendar days after all of the following events have occurred: (a) the Final  Settlement Date, and (b) each of the Named Plaintiffs have provided Defendants' Counsel with a Form W-9 and payment instructions. No interest shall be paid on the Incentive Awards.  The Parties represent

that their negotiation of, and agreement to, the compensation paid to the Named Plaintiffs, subject to the Court's approval, did not occur until after the substantive terms of this Agreement had been negotiated  and agreed to in principle.

**2.4**   **Settlement Administrator Costs and Attorneys' Fees and Costs.** The Parties acknowledge that there will be certain Settlement Administrator Costs associated with the Settlement, including the cost of providing notice to the Class and administering the terms set forth in this Agreement related to the distribution of compensation to Settlement Class Members and managing opt-out requests and objections consistent with this Agreement. The Parties also acknowledge that Plaintiffs will move the Court for approval of an award to Class Counsel for Attorneys' Fees and Costs.

   **(a)** Settlement Administrator Costs. The Parties agree that Defendants shall pay all costs associated with the Settlement Administrator up to a maximum amount of $1,000,000.00.  Within ten (10) calendar days of the Court's entry of the Preliminary Approval Order, Defendants shall make initial payment to the Settlement Administrator of $200,000 to retain the services of the Settlement Administrator, and within (60) calendar days of the Court's entry of the Preliminary Approval Order, Defendants shall make an additional payment of $290,000 necessary to effectuate the class notice provisions ordered by the Court. Class Counsel will ensure that the Settlement Administrator has supplied Defendants with its Form W-9 prior to the date payment is due. Defendants shall timely make additional payment(s) to the Settlement Administrator as those costs are incurred, and Defendants shall make final payment(s) to the Settlement Administrator after entry of the Final Approval Order.  Payments to the Settlement Administrator shall be made by wire to the bank account identified by the Settlement Administrator. Any Settlement Administrator Costs in excess of $1,000,000.00 shall be paid by Class Counsel. Defendants retain the right to audit and review the Settlement Administrator Costs. The Parties agree that Defendants shall in no event be obligated to pay more than $1,000,000.00 in total towards Settlement Administrator Costs. In the event that the Final Settlement Date does not occur, any amounts actually used by the Settlement Administrator for notice and administration shall not be refundable to Defendants and shall remain the responsibility of Defendants.  If Defendants have paid for Settlement Administrator costs that the Settlement Administrator has not used or incurred, any such amounts shall be refunded to Defendants.

   **(b)** Attorneys' Fees and Costs. The Parties agree that Class Counsel and any other attorney, law firm, expert, vendor, or other third party associated with Class Counsel shall seek an award of no more than $4,197,000.00, in the aggregate, for fees and costs. Defendants agree not to oppose Class Counsel's request for Attorneys' Fees and Costs in an amount that does not exceed $4,197,000.00. If the Court approves this Agreement and an award of Attorneys' Fees and Costs to  Class Counsel, Defendants agree to pay the Attorneys' Fees and Costs approved  by the Court to Class Counsel upon the occurrence of all of the following: (a) the Final Settlement Date, and (b) Class Counsel's delivery to Defendants of a Form W-9 for Almadani Law and AI Law, PLC. Any such

payment shall be made within fourteen (14) calendar days of the occurrence of the later of these events; such payment shall be made in one lump sum to the law firms of Almadani Law and AI Law, PLC, and shall be wired to a bank account identified by Class Counsel or as otherwise instructed by Class Counsel. No interest shall be paid on the Attorneys' Fees and Costs award. The Parties represent that the amount of the Attorneys' Fees and Costs to be requested by Class Counsel was negotiated at arm's-length, and only after agreement was reached on all substantive terms of the Settlement. The Parties agree that Defendants shall in no event be obligated to pay more than $4,197,000.00, in total, towards Attorneys' Fees and Costs, which does not include the Settlement Administrator Costs referenced in Section 2.4(a) above. Subject to approval by the Court, Class Counsel shall have control over and responsibility to distribute any payment of fees and costs to any other attorney, law firm, expert, vendor, or other third party associated with Class Counsel that may claim entitlement to fees and costs under this Settlement or as a result of the Habberfield Action.

**2.5    No Reversion in Class Counsel's Attorneys' Fees and Costs.** The Parties agree that if the Court awards Class Counsel an amount for Class Counsel's Attorneys' Fees and Costs which is less than $4,197,000.00, the difference between the amount awarded by the Court and $4,197,000.00 will not revert back to Defendants, but shall instead be donated to a *cy pres* recipient organization, which would benefit the class or be specifically germane to the issues in the case. Plaintiffs propose that the funds be donated to the National Consumer Law Center (NCLC). Defendants propose that the funds be donated to the Better Business Bureau (or BBB) National Programs. The Parties agree to allow the Court to select which of these two organizations should be the *cy pres* recipient of unawarded Attorneys' Fees and Costs, if any, or to divide the funds equally between the two organizations. If the Court finds that neither organization should receive the funds because it would not be beneficial to the class or would not be specifically germane to the issues in the case, the Parties agree that said funds be donated to an organization independently chosen by the Court.

**2.6    No Tax Advice.** Nothing in this Settlement, or statements made during the negotiation of its terms, shall constitute tax advice by Plaintiffs or Plaintiffs' Counsel or by Defendants or Defendants' Counsel. All Parties are responsible to pay the taxes they would owe under the respective tax laws. For example, each Plaintiff and Settlement Class Member is solely responsible for any taxes, if any, on that particular Plaintiff or Settlement Class Member's recovery under this Settlement.

**2.7    Release to All Settlement Class Members.** Upon entry of the Final Order and Judgment, Class Releasors shall be deemed to have fully, finally, and forever released and discharged all Class Released Claims (including Unknown Claims as defined in Section 1.23) against all Released Parties as set forth in the Final Order and Judgment. However, this Agreement does not bind any persons or class members outside of the Settlement Class Members as defined in Section 1.3.

**2.8    Release by Named Plaintiffs.** In addition to the releases made by the Settlement Class Members set forth in **Sections 1.7 through 1.9** above, effective upon entry of

the Final Order and Judgment, the Named Plaintiffs make the additional following general release of all past or present claims, known or unknown, relating to the Habberfield Action that are the subject of this Agreement, against the Released Parties. Upon entry of the Final Order and Judgment, the Named Plaintiffs, and each of their successors, assigns, legatees, heirs, and personal representatives release and forever discharge the Released Parties, from all manner of actions, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, relating to the Habberfield Action that are the subject of this Agreement, known or unknown, in law or equity, fixed or contingent.

In connection with the release of the Claims relating to the Habberfield Action that are the subject of this Agreement, the Named Plaintiffs, and each of Named Plaintiffs' successors, assigns, legatees, heirs, and personal representatives,  shall be deemed to have expressly waived any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code and any other similar provision statute, rule, and legal doctrine similar, comparable, or equivalent under federal or state law to California Civil Code § 1542, which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each Party shall be deemed to have expressly waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, contingent or non-contingent claim with respect to the Claims related to the Habberfield Action that are the subject of this Agreement, whether or not concealed or hidden, without regard to subsequent discovery or existence of different or additional facts.

Named Plaintiffs fully understand that the facts on which this Agreement is to be executed may be different from the facts now believed by Named Plaintiffs and Class Counsel to be true and expressly accept and assume the risk of this possible difference in facts and agree that the Agreement will remain effective despite any difference in facts. Further, Named Plaintiffs agree that this waiver is an essential and material term of this release and this Agreement that underlies it and that without such waiver this Agreement would not have been accepted.

Defendants understand and agree that Plaintiffs will not release any current or future claims against Defendants that are not related to the Habberfield Action that are the subject of this Agreement.

**2.9   No Admission of Liability or Wrongdoing.** This Agreement reflects the Parties' compromise and resolution of disputed claims. Its constituent provisions, and any and all drafts, communications, and discussions relating thereto, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law

(including, but not limited to, matters respecting Class certification) by any person, including Defendants, and shall not be offered or received in evidence  or requested in discovery in the Habberfield Action or any other action or proceeding as evidence of an admission or concession. Defendants have denied and continue to deny each of the claims and contentions alleged by Plaintiffs in the Habberfield Action. Defendants have repeatedly asserted and continue to assert defenses thereto, and have expressly denied and continue to deny any wrongdoing or legal liability arising out of any of the facts or conduct alleged in the Habberfield Action.

**2.10 Injunctive Relief.** No later than fourteen (14) days after the entry of the Preliminary Approval Order, Defendants agree to make and/or maintain the following changes to their marketing and advertising on the Boohoo U.S. Websites, PLT U.S. Website, and Nasty Gal U.S. Website.

**2.10.1 Compliance with the Law.** Defendants agree that their comparison pricing practices in the United States as of the date of this Agreement, and continuing forward, will not violate then-existing Federal or California law, including California's specific price comparison advertising statutes and Federal Trade Commission ("FTC") regulations, including without limitation, the FTC Pricing Guides, 16 C.F.R. § 233.2. Defendants also agree that any comparison price to which Defendants refer in their price comparison advertising in the United States will comply and be consistent with the terms of this Agreement. To the extent that Defendants choose to engage in comparative value advertising as contemplated by the Federal Trade Commission Guideline 16 C.F.R. § 233.2, Defendants shall either base comparison prices on the actual retail prices at which substantial sales of similar items are being made in the relevant market or, if Defendants choose to use their own opinion of the value of their products as a comparison price, then they must clearly and conspicuously inform their customers in compliance with and consistent with the terms of this Agreement.

**2.10.2 Maintenance of Changes in Website Practices.** Defendants agree to maintain the following changes to the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website consistent with Section 2.10.2 of the Khan Settlement for all territories referenced in Section 1.3 of this Agreement, which were implemented on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website on June 17, 2022:

**(a)** For any product advertised on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website whose price is available for sale at a discount or markdown from its original price or full price, whether via an automatically applied sitewide discount or promotion, a sitewide discount or promotion applied via an advertised promotion or coupon code, an "up to" a certain percentage off promotion, via a markdown by virtue of the product being in a "Sale" category, or for any other discount or promotion off of the price reflecting Defendants' opinion of the full retail value, Defendants agree to change the product display pages for each such product display page on their

U.S. Websites to include a Pricing Policy disclaimer box in a format consistent with the examples attached as **Exhibit G**. The Pricing Policy disclaimer box shall be conspicuously displayed at all times on each such product page and shall not be in hidden click-to-reveal form. The Pricing Policy disclaimer box shall also contain an asterisk (*) at the beginning of the heading displaying the Pricing Policy disclaimer.

**(b)** The language in the Pricing Policy disclaimer box will be the following:

*Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors.*

*That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!*

**(c)** Any product advertised on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website whose price is available for sale at a discount or markdown from its original price or full price, whether via an automatically applied sitewide discount or promotion, a sitewide discount or promotion applied via an advertised promotion or coupon code, an "up to" a certain percentage off promotion, via a markdown by virtue of the product being in a "Sale" category, or for any other discount or promotion off of the price reflecting Defendants' opinion of the full retail value, shall have an asterisk (*) displayed next to the original price or full price in order to draw the attention of customers visiting the page to read the Pricing Policy disclaimer.

**(d)** Any time that products are advertised on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website for sale at a discount or markdown from their original price or full price, whether via an automatically applied sitewide discount or promotion, a sitewide discount or promotion applied via an advertised promotion or coupon code, an "up to" a certain percentage off promotion, via a markdown by virtue of the product being in a "Sale" category, or for any other discount or promotion off of the price reflecting Defendants' opinion of the full retail value, Defendants agree to clearly and conspicuously display the following Pricing Policy disclaimer language:  (i) on their "Landing Pages" and product display pages advertising such promotion(s), discounts, or sales available for that day, or (ii) on any e-mails advertising such promotions, discounts, or sales available on the U.S. Websites sent to U.S. customers and e-mail subscribers:

*Discounts may not be based on former prices. See pricing policy.*

Landing Pages are the respective homepages of the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website, as well as any and all pages that a customer may initially land on upon clicking a link (not on the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S.

Website) advertising a sale or promotion as defined in the preceding paragraph (e.g., a link in an online advertisement or on social media).

The language "*See Pricing Policy*" shall have a hyperlink that takes the customer directly to the Pricing Policy disclaimer in the terms and conditions for the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website.

**(e)** The Pricing Policy language displayed on the product pages will also be added to the terms and conditions for the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website.

**(f)** Defendants agree to summarize the changes to the U.S. Websites in each of the forms of Class Notice described below in Section 3.4.

**(g)** Defendants shall operate their U.S. Websites consistent with the provisions in Section 2.10 and agree to make and/or maintain the changes reflected above in a format consistent with the examples attached as **Exhibit G**.

**(h)**  Defendants may modify or make design, template, layout, stylistic,  content or any other changes to the Boohoo U.S. Websites, the PLT U.S. Website, and the Nasty Gal U.S. Website as needed, provided that the changes comport with the terms of this Settlement Agreement.  As long as modifications comport with the terms of this Settlement Agreement, such modifications may be made by Defendants in their own discretion and without Court approval.

### 3.  CLASS NOTICE AND CLAIMS PROCEDURES.

**3.1  Cooperation to Obtain Court Approval.** The Parties will individually and jointly take all reasonable steps necessary to secure the Court's approval of this Agreement as provided in this Section.

**3.2  Preliminary Approval and Provisional Class Certification.** Plaintiffs shall file their motion for preliminary approval as soon as reasonably possible and no later than the deadline set by the Court. The motion shall request that the Court:

**(a)** preliminarily approve this Agreement as fair, adequate, and reasonable;

**(b)** approve the form, manner, and content of the Full Notice, Email Notice, Postcard Notice, and Publication Notice described in **Section 3.4** of this Agreement, and attached as **Exhibits B through E**;

**(c)** set deadlines for the filing of objections to, and exclusions from, the Settlement, for the filing of a motion for final approval of the Settlement and for fees and costs and Incentive Awards for the Named Plaintiffs, and to schedule the date of the Fairness Hearing, consistent with the following:

  a. Deadline for Settlement Administrator to send Email Notice to Settlement Class Members: Sixty (60) calendar days following the

15

Court's issuance of the Preliminary Approval Order (Postcard Notice to be sent thereafter, as necessary, consistent with section 3.4(c) of this Agreement, but no later than ten (10) days after Email Notice is sent);

b. Deadline for Settlement Administrator to commence Publication Notice: Thirty (30) calendar days following the Court's issuance of the Preliminary Approval Order;

c. Deadline for mailing objections to the Clerk of the Court and counsel for the Parties:  Sixty (60) calendar days from the date on which the Settlement Administrator disseminates Email Notice of the Preliminary Approval Order (hereafter, the "Objection Deadline");

d. Deadline for Opting Out:  Sixty (60) calendar days from the date on which the Settlement Administrator disseminates Email Notice of the Preliminary Approval Order (hereafter, the "Exclusion Deadline");

e. Deadline for Settlement Administrator to serve on Class Counsel and Defendants' Counsel a list of Class Members who have timely and validly excluded themselves from the Settlement Class: Ten (10) calendar days after objection/opt-out deadline (Class Counsel shall file this list with the Court at or before the Final Approval Hearing);

f. Deadline for filing motion for final approval and for attorneys' fees, costs, and individual incentive awards for the Named Plaintiffs:  No later than fourteen (14) calendar days before the deadline for Class Members to submit objections to the Settlement or to opt out of the Settlement;

g. Deadline for Class Counsel and/or Defendants to respond to any objection: no later than seven (7) days prior to the Final Approval Hearing (Class Counsel and/or Defendants have the right, but not the obligation, to respond);

h. Date of Fairness Hearing:  At least 160 calendar days following the Court's issuance of the Preliminary Approval Order;

**(d)** provisionally certify the Class under Federal Rule of Civil Procedure 23 for Settlement purposes only;

**(e)** stay all proceedings in the Habberfield Action until the Court renders a final decision on approval of the Agreement and sets a briefing schedule for the papers in support of the Final Order;

**(f)** conditionally appoint Named Plaintiffs as the Class Representatives for Settlement purposes only;

**(g)** conditionally appoint the law firms of Almadani Law and AI Law, PLC as Class Counsel for Settlement purposes only; and

**(h)** enter the Preliminary Approval Order, which shall be substantially similar to the form attached as **Exhibit A**. Defendants shall not oppose the motion for preliminary approval, but shall be permitted, although not required, to file their own brief or statement of non-opposition in support of the Preliminary Approval Order.

**3.3   CAFA Notice.**  Defendants' Counsel, with the assistance of the Settlement Administrator, will comply with the notice provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715, including without limitation by serving the required documents on the Attorney General of the United States and the Attorney General for all States, excluding California, and will provide the required notice within 10 days after the proposed settlement is filed in Court and at least 90 days before final approval is granted.

**3.4   Class Notice.** Subject to the Court entering the Preliminary Approval Order, the Parties agree that Defendants, through the retained Settlement Administrator, will provide the Class with notice of the proposed Agreement by the following methods.

**(a) Settlement Website.** The Settlement Administrator will post the Full Notice on an Internet website ("Internet Posting") specifically created for the Settlement. The Full Notice shall be substantially similar to the form attached as **Exhibit C**. The Internet Posting will also contain the operative Complaint for the Habberfield Action, Agreement, and Preliminary Approval Order. The Internet Posting shall be operative starting on or before twenty-one (21) calendar days after entry of the Preliminary Approval Order. The Internet Posting shall remain active at least until the Final Settlement Date.

**(b) Email Notice.** Defendants and the Settlement Administrator shall use reasonable efforts to identify their customers who made a Qualifying Purchase who may be Settlement Class Members and for whom an email address can be determined from Defendants' records or other sources available to the Settlement Administrator. The Settlement Administrator will send an Email Notice to those Settlement Class Members for whom Defendants have, or the Settlement Administrator can find, an email address. The Email Notice shall be substantially similar to the form attached as **Exhibit B**, and will provide the web address of the Settlement Website with a live, clickable, user-friendly link, as well as an email and mailing address to contact the Settlement Administrator. The Settlement Administrator will provide the Email Notice within sixty (60) calendar days after entry of the Preliminary Approval Order. The Email Notice shall include a disclaimer stating that the email is a legal communication being sent pursuant to a court order and is not being sent by or on behalf of Defendants.

**(c) Postcard Notice.**  Only after it has attempted to disseminate the First Email Notice, the Settlement Administrator shall disseminate by regular U.S. mail a Postcard Notice to all Settlement Class Members for whom the Settlement Administrator is unable to identify an email address or for whom the Settlement Administrator has determined through industry standard technologies, practices, and methods that the email address(es) it has available to it are not active or

working, or have likely not received the Email Notice.  The content of the Postcard
Notice shall be consistent with the provisions in this Section, informing the
Settlement Class Member that a Gift Card has been awarded to that Class Member
and will be automatically distributed to her/him via email to an email address
provided by the Class Member unless the Class Member timely opts out. The
Postcard Notice will be substantially similar to the form attached as **Exhibit E**,
and shall provide the web address of the Settlement Website, as well as an email
and mailing address to contact the Settlement Administrator. The Settlement
Administrator shall provide the Postcard Notice as soon as reasonably feasible
after determining that Postcard  Notice is necessary. The costs of the Postcard
Notice will be paid from the Settlement Administrator Costs. Any Settlement
Class Member who receives Postcard Notice must provide to the Settlement
Administrator a valid email address where the Gift Card may be received
electronically as described in this Section. The Settlement Administrator shall
provide for Settlement Class Members noticed via postcard a simple, user-friendly
form on the Settlement Website where such Class Members can enter the email
address at which the Gift Card would be received.  The Postcard Notice shall
include a disclaimer stating that the email is a legal communication being sent
pursuant to a court order and is not being sent by or on behalf of Defendants.

(d) **Publication Notice.** The Settlement Administrator will publish a Publication
Notice on the internet pursuant to Section 1.21.  This Publication Notice will be
substantially similar to the form attached as **Exhibit D**, and will provide the web
address of the Settlement Website with a live, clickable, user-friendly link, as well
as an email and mailing address to contact the Settlement Administrator.

(e) **Distribution of Gift Cards.**  Within twenty-one (21) calendar days of Final
Approval of the Class Settlement by the Court, the Settlement Administrator shall
electronically distribute the Gift Cards, substantially in the form attached as
**Exhibits F and I**, to all Settlement Class Members who have not timely opted out
as follows. For the Class Members that did not require Postcard Notice, the Gift
Cards shall be distributed via email to the respective email addresses on file with
the Class Administrator. For the Class Members that required Postcard Notice, the
Gift Cards shall be distributed via email to the respective email addresses provided
to the Settlement Administrator by the Postcard Notice recipients. Each Gift Card
will contain a unique code or link by which the Gift Card, including the shipping
and handling waiver, shall be seamlessly applied to a purchase.

(f) **Social Media Reminder to Use the Gift Cards by Settlement Administrator.**
Within three (3) business days of final approval of the Settlement Agreement,
Defendant shall provide the Settlement Administrator with content for a social
media campaign designed to advertise the Class Settlement and provide reminders
to Settlement Class Members to use their Gift Cards. This content for the social
media campaign will be substantially similar to the form attached as **Exhibit J**.
The Settlement Administrator will be responsible for this social media campaign
and will design the program to maximize exposure to class as to timing of any
posts and location on any particular social media platform.  The Social Media
campaign shall be designed and executed in a manner to ensure that the Settlement
Administrator's total cost does not exceed $1,000,000.00.

(g) **Notice on Defendants' Landing Pages, i.e., "In-Store" of Distribution of Gift Cards.**  Within one (1) week of distribution of the Gift Cards following Final Approval, Defendants shall conspicuously display the following notice on each of the subject U.S. Websites' landing pages for a period of sixty (60) days: "Class Action Settlement: Check Your Email for $10 Gift Cards Plus Complimentary Shipping on Any Purchase. Click here for additional information: [Live Link to Settlement Website]."

(h) **Defendants' Marketing Campaign.**  Subject to Court approval and in addition to any Court-ordered notifications, Defendants shall send at least four (4) marketing emails to its U.S. customers who have not opted out of receiving marketing emails to remind the customers about the Gift Cards every forty-five (45) calendar days within the first six months of the Gift Cards being distributed to Settlement Class Members. Defendants shall send the marketing emails on or about the following schedule: the 45th Day, the 90th Day, the 135th Day, and the 180th Day after distribution of the Gift Cards by the Settlement Administrator.

3.5   **Proof of Notice.** No later than thirty (30) calendar days before the deadline for Plaintiffs to file their brief in support of the Final Order and Judgment, the Settlement Administrator will serve upon Class Counsel a declaration confirming that notice to the Settlement Class has been provided in accordance with this Agreement and shall identify the total number of Settlement Class Members that have not opted out and the total number of Gift Cards that will be distributed to Settlement Class Members taking into account the fact that certain Class Members may receive more than one Gift Card.  Class Counsel will file such declaration with the Court.

3.6   **Claims Procedure.**  Settlement Class Members are not required to submit a claims form in order to receive a Gift Card.  Instead, the Gift Cards shall be distributed automatically to all Settlement Class Members who have not timely opted out of the Settlement.

3.7   **Fraud and Commercial Activity Prevention.** Since the Gift Cards are intended for personal use and because the Parties want to prevent and avoid fraud in the use of the Gift Cards, Defendants shall engage the Settlement Administrator to prevent the use of Gift Cards resulting from the accumulation of a substantial and unusually  high number of Gift Cards through fraud or commercial activity. Defendants, however, may trigger a fraud or commercial activity investigation by the Settlement Administrator only where a transaction has a stacking value of $500 or more.  An investigation will be triggered on each occasion that a request is made that Gift  Cards totaling $500.00 or more be stacked.  The administration of and decisions on the prohibitions on fraud or commercial activity shall be final and unappealable and shall be solely in the discretion of the Settlement Administrator with no interference from Defendants or any Party.  The Settlement Administrator, together with Defendants, shall ensure that Settlement Class Members' ability to stack the Gift Cards is as seamless and instantaneous as possible, and not impeded in any way unless an investigation is triggered pursuant to the $500.00 triggering limit identified above. The Settlement Administrator shall provide notice via email to Class  Counsel and

Defendant's Counsel within one business day regarding the initiation of any such investigation.  To the extent requested by the Settlement Administrator, Class Counsel and Defendants' Counsel will cooperate and provide information in connection with any such investigation.

**3.8    Objections.** Any Settlement Class Member who has not submitted a timely written exclusion request pursuant to **Sections 3.2 and 3.9** of this Agreement and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement contemplated in this Agreement, may elect to object to this Agreement by delivering via U.S. Mail, FedEx, or UPS a timely written objection to the Court, Settlement Class Counsel, and Defendants' Counsel, consistent with the Objection Deadline set forth in Section 3.2.

(a) To be timely, a written objection to the Settlement contemplated in this Agreement must be submitted no later than the Objection Deadline. The submission date is deemed to be the date the objection is deposited in the U.S. Mail, FedEx, or UPS as evidenced by the postmark. It shall be the objector's responsibility to ensure receipt of any objection by the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator at the addresses listed in the Full Class Notice (*see* Exhibit C and section 5.23) posted by the Settlement Administrator on the Settlement Website. The Court shall not accept untimely objections.

(b) Any written objection to the Settlement contemplated in this Agreement must be made individually (no group or class objections will be accepted) and must contain: (1) the name and case number of the Habberfield Action; (2) the Settlement Class Member's full name, address, telephone number, and Class Member ID; (3) the words "Notice of Objection" or "Formal Objection"; (4) in clear and concise terms, *all* legal and factual arguments supporting the objection, including supporting documentation; (5) facts supporting the person's status as a Settlement Class Member (e.g., either any unique identifier included by the Settlement Administrator in his/her notice, or the date and location of his/her relevant purchases, including supporting documentation); (6) the Settlement Class Member's signature and the date; and (7) the following language immediately above the Settlement Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding Class Membership are true and correct to the best of my knowledge." Settlement Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any objections (whether by a subsequent objection, intervention, appeal, or any other process)  to this Agreement. Arguments not raised in the written objections shall be deemed intentionally waived.

(c) Settlement Class Members have the option, but not the obligation, to appear at the Fairness Hearing, either in person or through counsel hired at the Settlement Class Member's expense, to object to this Settlement Agreement. However, Settlement Class Members (with or without counsel) intending to make an appearance at the Fairness Hearing must so inform the Parties and the Court on or before the Objection Deadline by providing a "Notice of Intention to Appear" to the Court, Class Counsel, and Defendants' Counsel. Furthermore, no objector shall be permitted to argue any grounds for objection that are not clearly and timely stated

in their corresponding written objection and all such untimely grounds shall be deemed waived.

**3.9  Opting Out of the Class.** Settlement Class Members may elect to opt out, that is, to not to be part of the Class and not to be bound by this Agreement. To make this election, the Settlement Class Member must send a signed letter or postcard to the Settlement Administrator, consistent with the Exclusion Deadline set forth in Section 3.2, stating: (a) the name and case number of the Habberfield Action from which the Settlement Class Member seeks to be excluded; (b) the full name, email address, physical address, telephone number, and Class Member ID of the person requesting exclusion; and (c) a signed statement that the Settlement Class Member is a legitimate Settlement Class Member in the referenced Habberfield Action and does not wish to participate in the Settlement of the Habberfield Action, postmarked no later than the Exclusion Deadline. The Settlement Administrator must serve on Class Counsel and Defendants' Counsel a list of Settlement Class Members who have timely and validly excluded themselves from the Settlement Class within twenty-one (21) calendar days after the Exclusion Deadline.

**3.10  Final Order and Judgment.** At least thirty-five (35) days before the Fairness Hearing or as otherwise ordered by the Court, Plaintiffs must apply to the Court for entry of Final Order and Judgment. Such an order shall be substantially similar to the form attached as **Exhibit H**. Class Counsel shall draft the motion papers, and Defendants' Counsel will not oppose the motion. Defendants shall be permitted, but not required, to file their own brief or statement of non-opposition in support of the Final Order and Judgment.

**3.11  Judgment and Enforcement.** The Parties agree that if the Court grants final approval of the proposed Agreement and enters Final Order and Judgment, the Final Order and Judgment shall include a provision for the retention of the Court's jurisdiction over the Parties to enforce the terms of this Agreement.

**3.12  Defendants to Provide Class List.**  Defendants shall provide the Class List to Class Counsel and the Settlement Administrator within thirty (30) days of the Preliminary Approval Order for the notices identified in Section 3.4 to be timely disseminated. Defendants and Plaintiffs agree that all Class List information shall be treated as highly confidential proprietary information, and that the contents of the Class List shall not be shared with third parties other than the Settlement Administrator and that the Settlement Administrator and its agents, affiliates and/or subcontractor (if any) shall be required to strictly preserve the confidentiality of the Class List.

### 4.   TERMINATION OF THE AGREEMENT.

**4.1  Right to Terminate Agreement for Either Party.** Either Party has the right to terminate and withdraw from this Agreement at any time prior to the Final Fairness Hearing if (a) there is a change in the law from the United States Congress, the United States Supreme Court, or the United States Court of Appeals for the Ninth Circuit, that materially changes the legal criteria by which the validity of this Settlement, any individual provision of this Settlement, or the value provided to Settlement Class Members by this Settlement is required to be reviewed, evaluated, or assessed, or (b)

the Court makes an order materially inconsistent with the terms of this Agreement (except for an order reducing the Attorneys' Fee award or the Plaintiffs' individual Incentive Awards). Materiality shall be decided by the Court upon the Parties' right to submit briefing on the issue with a limit of no more than ten (10) pages per side. Class Counsel retain their right to appeal any decision by the Court regarding the Attorneys' Fees and Costs or Incentive Payments.

4.2 **Defendants' Right to Terminate for Opt-Outs.** Defendants have the option, but not the obligation, to terminate this Agreement if more than three thousand (3,000) of the proposed Settlement Class Members elect to opt out from the Class.

4.3 **Effect of Settlement if Agreement is Not Approved.** This Agreement was entered into only for the purpose of Settlement of the Habberfield Action. With the exception of Section 2.4(a), in the event that this Agreement is Terminated by either Party, the Court conditions its entry of either the Preliminary Approval Order or the Final Order and Judgment on any material modifications of this Agreement that are not acceptable to all Parties, if the Court does not approve this Agreement or enter the Final Order and Judgment, or if the Final Settlement Date does not occur for any reason, then this Agreement shall be deemed null and void *ab initio* and the Parties shall be deemed restored to their respective positions *status quo ante*, as if this Agreement was never executed. In that event: (a) the Preliminary Approval Order and all of its provisions will be vacated by its own terms; (b) the Habberfield Action will revert to the status that existed before the Plaintiffs filed their motion for approval of the Preliminary Approval Order; and (c) no term or draft of this Agreement, or any part of the Parties' Settlement discussions, negotiations or documentation will have any effect or be admissible into evidence for any purpose in the Habberfield Action or any other proceeding. If the Court does not approve this Agreement or enter the Final Order and Judgment for any reason, or if the Final Settlement Date does not occur for any reason, Plaintiffs shall retain all their rights to prosecute the Habberfield Action as a class action and Defendants shall retain all their rights to object to the maintenance of the Habberfield Action as a class action, and nothing in this Agreement or other papers or proceedings related to this Agreement shall be used as evidence or argument by any Party concerning whether the Habberfield Action may properly be maintained as a class action provided however, that Defendants will nonetheless bear any Settlement Administration Costs in accordance with Section 2.4(a).

## 5.   ADDITIONAL PROVISIONS.

5.1 **Court Approval.** All time periods and dates described in this Agreement are subject to the Court's approval. These time periods and dates may be modified by the Court, subject to notice requirements to the Settlement Class that the Court may impose.

5.2 **Fair, Adequate, and Reasonable Agreement.** The Parties agree this Agreement and Settlement reflected herein is fair, adequate, and reasonable and this Agreement was the result of extensive informed, intense, non-collusive, and arms-length negotiations, taking into account all relevant factors, present and potential.

5.3 **Real Parties in Interest.** In executing this Agreement, the Parties warrant and

represent that except as provided herein, neither the claims or causes of action released herein nor any part thereof have been assigned, granted, or transferred in any way to any other person, firm, or entity.

**5.4**   **Voluntary Agreement.** This Agreement is being executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm, or entity.

**5.5**   **Binding on Successors.** This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

**5.6**   **Parties Represented by Counsel.** The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

**5.7**   **Authorization.** Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each Party is fully entitled and duly authorized to give this complete and final release and discharge.

**5.8**   **Severability.**  If any provision or any part of this Agreement thereof shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

**5.9**   **Entire Agreement.** This Agreement, and the exhibits thereto, contain(s) the entire agreement between the Parties and constitute the complete, final, and exclusive embodiment of their agreement with respect to the Habberfield Action. This Agreement is executed without reliance on any promise, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement.

**5.10** **Construction and Interpretation.** Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them. This Agreement has been, and must be construed to have been, drafted by all the Parties to it, so that any rule that construes ambiguities against the drafter will have no force or effect.

**5.11** **Headings and Formatting of Definitions.** The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement. Similarly, bolding and italicizing of definitional words and phrases is solely for the Parties' convenience and may not be used to interpret this Agreement. The headings and the formatting of the text in the definitions do not define, limit, extend, or describe the Parties' intent or scope of this Agreement.

**5.12 Exhibits.** The exhibits to this Agreement are integral parts of the Agreement, and are hereby incorporated and made a part of this Agreement, as though fully set forth in the Agreement.

**5.13 Modifications and Amendments.** No amendment, change, or modification of this Agreement or any part thereof shall be valid unless in writing signed by the Parties or their counsel.

**5.14 Governing Law.** This Agreement is entered into in accordance with the laws of the State of California, and shall be governed by and interpreted in accordance with the laws of the State of California, without regard to its conflict of law principles.

**5.15 Further Assurances.** Each of the Parties hereto shall execute and deliver any and all additional papers, documents, and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of its obligations hereunder to carry out the express intent of the Parties hereto.

**5.16 Agreement Constitutes a Complete Defense.** To the extent permitted by law, this Agreement may be pled as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceedings that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

**5.17 Cooperation of the Parties.** The Parties acknowledge that it is their intent to consummate this Agreement and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions contained herein and to exercise their best efforts to accomplish the foregoing terms and conditions of this Agreement. Specifically, the Parties agree to prepare and execute all documents, to seek Court approvals, defend Court approvals, and to do all things reasonably necessary to complete the Settlement described herein. Further, the Parties will comply in good faith with the terms and conditions of this Agreement. Should any dispute arise among the Parties or their respective counsel regarding the implementation or interpretation of this Agreement, Class Counsel and Defense Counsel shall meet and confer in an attempt to resolve such disputes prior to submitting such disputes to the Court.

**5.18 Execution Date.** This Agreement shall be deemed executed upon the last date of execution by all of the undersigned.

**5.19 Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation, effectuation, implementation, and enforcement of this Agreement.

**5.20 Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

**5.21 Recitals.** The Recitals are incorporated by this reference, and are part of this Agreement.

**5.22 Inadmissibility.** This Agreement (whether approved or not approved, revoked, or made ineffective for any reason) and any proceedings or discussions related to it are inadmissible as evidence of any liability or wrongdoing whatsoever in any court or tribunal in any state, territory, or jurisdiction. Further, this Agreement shall not be construed or offered or received into evidence as an admission, concession, or presumption that class certification is appropriate, except to the extent necessary to consummate this Agreement and the binding effect of the Final Order and Judgment.

**5.23 Notices.** Any notice, instruction, application for Court approval or application for Court orders sought in connection with this Agreement or other document to be given by any Party to any other Party shall be in writing and e-mailed, delivered personally, or sent by registered or certified mail, postage prepaid, if to Defendants to the attention of Defendants' Counsel, and if to Settlement Class Members to the attention of Class Counsel on their behalf. The addresses of the Court, Class Counsel, Defense Counsel, and the Settlement Administrator are as follows:

| **The Court** | **Class Counsel** | **Defendants' Counsel** | **Settlement Administrator** |
|---|---|---|---|
| Hon. George H. Wu<br>United States Courthouse<br>Central District of California<br>350 West 1st Street<br>Courtroom 9D, 9th Floor<br>Los Angeles, CA 90012 | ALMADANI LAW<br>Yasin M. Almadani<br>4695 MacArthur Ct., Ste. 1100<br>Newport Beach, CA 92660<br><br>AI LAW, PLC<br>Ahmed Ibrahim<br>4695 MacArthur Ct., Ste. 1100<br>Newport Beach, CA 92660 | EVERSHEDS SUTHERLAND (US) LLP<br>Ronald W. Zdrojeski<br>1114 6th Avenue, 40th Floor<br>New York, NY 10036<br><br>EVERSHEDS SUTHERLAND (US) LLP<br>Ian S. Shelton<br>500 Capitol Mall, Suite 1750<br>Sacramento, CA 95814 | Boohoo/PrettyLittleThing/NastyGal<br>Nationwide Pricing Class Action Settlement Administrator<br>P.O. Box 6188<br>Novato, CA 94948-6188 |

**5.24 List of Exhibits.** The Following exhibits are attached to this Agreement:

**Exhibit A: [Proposed] Preliminary Approval and Provisional Class Certification Order**

**Exhibit B: Email Notice**

**Exhibit C: Full Notice**

**Exhibit D: Publication Notice**

**Exhibit E: Postcard Notice**

**Exhibit F: Gift Card Exemplars**

**Exhibit G: Pricing Policy Disclaimers Exemplars (Product Page, Landing Page, Advertisement) for the Boohoo U.S. Websites**

**Exhibit H: [Proposed] Final Order**

**Exhibit I: Notice of Distribution of Gift Cards**

**Exhibit J: Social Media Campaign Advertisement**

**AGREED TO AND EXECUTED BY:**

Dated: April 5, 2023

Laura Habberfield
*Plaintiff and Class Representative*

Dated: April 5, 2023

Keona Kalu
*Plaintiff and Class Representative*

Dated: April 5, 2023

Katie Runnells
*Plaintiff and Class Representative*

Dated: April 5, 2023

Juanita Carmet Cachadina
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Sarah Huebner
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Yesenia Valiente
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Veronica Walton
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Lisa Murphy
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Nicole Hill
*Plaintiff and Class Representative*

Dated: April ___, 2023

Nicole Stewart
*Plaintiff and Class Representative*

Dated: April _5_, 2023

Me'Lisa Thimot
*Plaintiff and Class Representative*

Dated: April  5 , 2023

Marika Walton
*Plaintiff and Class Representative*

Dated: April 6, 2023

JOHN LYTTLE, CEO
BOOHOO GROUP, PLC

_____
John Lyttle on behalf of Boohoo Group PLC

_____
John Lyttle on behalf of Boohoo.com USA, Inc.

_____
John Lyttle on behalf of Boohoo.com UK Ltd.

_____
John Lyttle on behalf of PrettyLittleThing.com USA Inc.

_____
John Lyttle on behalf of PrettyLittleThing.com UK Ltd.

_____
John Lyttle on behalf of NastyGal.com USA Inc.

_____
John Lyttle on behalf of Nasty Gal Ltd.

**APPROVED AS TO FORM AND CONTENT:**

Dated: April 5 , 2023                    Respectfully submitted,

                                         ALMADANI LAW

                                         _____
                                         Yasin M. Almadani, Esq.


                                         AI LAW, PLC

                                         _____
                                         Ahmed Ibrahim, Esq.

                                         *Attorneys for Plaintiffs Individually and*
                                         *On Behalf of All Others Similarly Situated*


                                         EVERSHEDS SUTHERLAND (US) LLP


                                         _____
                                         Ronald W. Zdrojeski, Esq.


                                         _____
                                         Ian Shelton, Esq.

                                         *Attorneys for Defendants*

30

**APPROVED AS TO FORM AND CONTENT:**

Dated: April __, 2023                    Respectfully submitted,

                                         ALMADANI LAW

                                         _____

                                         Yasin M. Almadani, Esq.

                                         AI LAW, PLC

                                         _____

                                         Ahmed Ibrahim, Esq.

                                         *Attorneys for Plaintiffs Individually and*
                                         *On Behalf of All Others Similarly Situated*

                                         EVERSHEDS SUTHERLAND (US) LLP

4/4/2023                                 *Ronald Zdrojeski*
                                         _____
                                         Ronald W. Zdrojeski, Esq.

4/4/2023                                 *Ian Shelton*
                                         _____
                                         Ian Shelton, Esq.

                                         *Attorneys for Defendants*

| CLASS COUNSEL | DEFENDANTS' COUNSEL |
|---|---|
| ALMADANI LAW<br>Yasin M. Almadani (SBN 242798)<br>yma@lawalm.com<br>4695 MacArthur Court, Suite 1100<br>Newport Beach, CA 92660<br>Phone: 949-877-7177<br>Fax: 949-877-8757 | EVERSHEDS SUTHERLAND (US) LLP<br>Ronald W. Zdrojeski (admitted *PHV*)<br>ronzdrojeski@eversheds-sutherland.com<br>1114 6th Avenue, 40th Floor<br>New York, NY 10036<br>Phone: 212-389-5000<br>Fax:    212-389-5099 |
| AI LAW, PLC<br>Ahmed Ibrahim (SBN 238739)<br>aibrahim@ailawfirm.com<br>4695 MacArthur Court, Suite 1100<br>Newport Beach, CA 92660<br>Phone:  949-266-1240<br>Fax:    949-266-1280 | EVERSHEDS SUTHERLAND (US) LLP<br>Ian S. Shelton (SBN 264863)<br>ianshelton@eversheds-sutherland.com<br>500 Capitol Mall, Suite 1750<br>Sacramento, CA 95814<br>Phone: 916-844-2965<br>Fax:  916-241-0501 |

# Exhibit A

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAURA HABBERFIELD, an individual, KEONA KALU, an individual, KATIE RUNNELLS, an individual, JUANITA CARMET CACHADINA, an individual, SARAH HUEBNER, an individual, YESENIA VALIENTE, an individual, VERONICA WALTON, an individual, LISA MURPHY, an individual, NICOLE HILL, an individual, NICOLE STEWART, an individual, on behalf of themselves and all others similarly situated, | **CASE NO.: 2:22-cv-03899 GW (JEMx)** |

**CASE NO.: 2:22-cv-03899 GW (JEMx)**

**CLASS ACTION**

**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CONDITIONALLY CERTIFYING THE SETTLEMENT CLASS, PROVIDING FOR NOTICE, AND SCHEDULING ORDER**

HON. GEORGE H. WU
United States District Judge

Plaintiffs,

v.

BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, PRETTYLITTLETHING.COM USA INC., a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, NASTYGAL.COM USA INC., a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, and DOES 1-10, inclusive,

Defendants.

WHEREAS, on June 7, 2022, Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed a class action lawsuit in this Court, as amended by a First Amended Class Action Complaint filed on June 22, 2022, against Defendants Boohoo Group PLC, Boohoo.com USA, Inc., Boohoo.com UK Limited, PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively, "Defendants") (the litigation described herein shall be referred to hereafter as the "Action");

WHEREAS, the Action was brought by Plaintiffs on behalf of a class of all individuals in the United States, excluding California, who purchased one or more "boohoo" products from the websites https://us.boohoo.com and https://www.boohooman.com/us/ or associated mobile phone applications ("Boohoo U.S. Websites") between April 1, 2016, through June 17, 2022; or who purchased one or more "PrettyLittleThing" products from the website https://prettylittlething.us or associated mobile phone application(s) ("PLT U.S. Website") between April 1, 2016 through June 17, 2022; or who purchased one or more "Nasty Gal" products from the website https://nastygal.com or associated mobile phone application(s) ("Nasty Gal U.S. Website") between February 28, 2017, through the June 17, 2022, at a purportedly discounted price and have not returned those purchases for a refund or store credit;

WHEREAS, on September 1, 2022, the Court consolidated this class action litigation (the "Action") for pretrial purposes with the following related actions:  (1) *Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW (JEMx), (2) *Hilton v. PrettyLittleThing.com USA, Inc., et al.*, 2:20-cv-04658-GW (JEMx), and (3) *Lee v. NastyGal.com USA, Inc., et al.*, 2:20-cv-04659-GW (JEMx) (collectively referred to hereafter as the "Khan Action");

WHEREAS, Plaintiffs and Defendants have entered into a Class Action Settlement

Agreement and Release, filed April 10, 2023, after arms-length settlement discussions (the "Settlement");

WHEREAS, the Court has received and considered the Settlement, including the accompanying exhibits;

WHEREAS, the Parties have made an application for an order preliminarily approving the settlement of the Action, for the full and final resolution of the claims in the Action asserted by the class members on the terms and conditions set forth in the Settlement, and for the dismissal of the claims in the Action;

WHEREAS, the Court has reviewed the Parties' application for such order, and has found good cause for same.

NOW, THEREFORE, IT IS HEREBY ORDERED:

**A.    The Settlement Class Is Conditionally Certified.**

Pursuant to Federal Rule of Civil Procedure 23, and for settlement purposes only, the Court hereby certifies the following Classes:

(a)    All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://us.boohoo.com or https://www.boohooman.com/us/ or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class Counsel.

(b)    All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://prettylittlething.us or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class Counsel.

(c)    All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://nastygal.com or associated mobile phone applications between February 28, 2017 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class

3

Counsel.

2.      This conclusion is supported by the Court's finding, pursuant to Federal Rule
of Civil Procedure 23(e)(1)(B)(ii), that it will likely be able to certify the Classes for
purposes of judgment on the Settlement. More specifically, the Court finds that the parties
have shown, at this stage, that they will likely be able to demonstrate that the prerequisites
for a class action under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) have
been met, including: (a) numerosity, (b) commonality, (c) typicality, (d) adequacy of the
class representatives and Class Counsel, (e) predominance of common questions of fact
and law among the Classes for purposes of settlement, and (f) superiority.

3.      Pursuant to Federal Rule of Civil Procedure 23, the Court hereby appoints
the Plaintiffs in the Action, Laura Habberfield, Keona Kalu, Katie Runnells, Juanita
Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy,
Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton, as the class
representatives.

4.      Having considered the factors set forth in Federal Rule of Civil Procedure
23(g)(1), the Court hereby appoints Yasin Almadani and his firm Almadani Law, and
Ahmed Ibrahim and his firm AI Law, PLC, as Class Counsel.

**B.      The Class Settlement Agreement Is Preliminarily Approved and Final
Approval Schedule Set.**

5.      The Court hereby preliminarily approves the Settlement and the terms and
conditions set forth therein, including the Injunctive Relief provisions of section 2.10 of
the Settlement, subject to further consideration at the Final Approval Hearing (referred to
in the Settlement as the "Fairness Hearing") described below.

6.      The Court has conducted a preliminary assessment of the Settlement and
hereby finds, pursuant to Federal Rule of Civil Procedure 23(e)(1)(B)(i), that it will likely
be able to approve the Settlement under the factors set forth in Federal Rule of Civil
Procedure 23(e)(2) for fairness, reasonableness, and adequacy of the Settlement.

7.      Pursuant to Federal Rule of Civil Procedure 23(e), the Court will hold a Final

4

Approval Hearing on a day that is at least 160 days after entry of this Order.  Accordingly, the Final Approval Hearing will take place on November 2, 2023 at 8:30 a.m., in the Courtroom of the Honorable George H. Wu, United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California 90012, Courtroom 9D, for the following purposes:

(a)    finally determining whether the Classes meet all applicable requirements of Federal Rule of Civil Procedure 23 and, thus, the Classes should be certified for purposes of effectuating the Settlement;

(b)    determining whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement is fair, reasonable and adequate and should be approved by the Court;

(c)    considering the application of Class Counsel for an award of attorneys' fees and reimbursement of costs, as provided for under the Agreement;

(d)    considering the applications of Plaintiffs for class representative incentive awards, as provided for under the Settlement;

(e)    considering whether the Court should enter the [Proposed] Final Order and Judgment;

(f)    considering whether the release of the Class Released Claims as set forth in the Settlement should be provided; and

(g)    ruling upon such other matters as the Court may deem just and appropriate.

8.    The Court may continue or adjourn the Final Approval Hearing and later reconvene such hearing without further notice to Class Members (defined in the Settlement in section 1.3 and referred to therein as the "Settlement Class Members").

9.    The Parties may further modify the Settlement prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the settlement provided thereunder. The Court may approve the Settlement with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Class Members.

10. Plaintiffs' applications for attorneys' fees, costs, and incentive awards must be filed no later than September 7, 2023, which is fourteen (14) days before the deadline for Class Members to submit objections to the Settlement or to opt out of the Settlement. All additional papers in support of the Settlement, or in support of the application for an award of attorneys' fees and expenses and/or class representative incentive awards, must be filed with the Court and served at least seven (7) days prior to the Final Approval Hearing.

## C.   The Court Approves the Form and Method of Class Notice

11. The Court approves, as to form and content, the proposed Email Notice, Full Notice, Publication Notice, and Postcard Notice, which are Exhibits B, C, D, and E, respectively, to the Settlement.  The Court further approves, as to form and content, the Notice of Distribution of Gift Cards, which Exhibit I to the Settlement.

12. The Court finds that the distribution of Notice substantially in the manner and form set forth in the Settlement meets the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

13. The Court approves the designation of Kurtzman Carson Consultants LLC ("KCC") to serve as the Court-appointed Settlement Administrator for the settlement. The Settlement Administrator shall cause the Publication Notice and Full Notice to be published, to disseminate Email Notice and Postcard Notice pursuant to the terms set forth in the Settlement, and supervise and carry out the notice procedure, the distribution of benefits under the Settlement, and other administrative functions, and shall respond to Class Member inquiries, as set forth in the Settlement and this Order under the direction and supervision of the Court. Where dissemination of Postcard Notice is necessary under Section 3.4(c) of the Settlement, the Settlement Administrator shall mail all such Postcard Notices no later than ten (10) days after dissemination of Email Notice.

14. The Court directs the Settlement Administrator to establish a Settlement Website, making available copies of this Order, Class Notice (i.e., the Full Notice, Email

6

Notice, Postcard Notice, and Publication Notice), the Settlement and all Exhibits thereto, a toll-free hotline, and such other information as may be of assistance to Class Members or required under the Settlement. The Class Notice shall be made available to Class Members through the Settlement Website on the date notice is first published and continuously thereafter through the Final Settlement Date (and on the websites of Class Counsel at their option during the same period).

15.     The Settlement Administrator is ordered to publish the Publication Notice in the manner set forth in section 1.21 of the Settlement once every week for four (4) consecutive weeks beginning no later than thirty (30) days after entry of this Order.

16.     The costs of Notice, distribution of benefits to Class Members under the Settlement, creating and maintaining the Settlement Website, and all other Settlement Administrator and Notice expenses shall be paid by Defendants up to the maximum sum specified in the Settlement in accordance with the applicable provisions of the Settlement.

**D.      Procedure for Class Members to Participate in the Settlement**

17.     Class Members are not required to submit a claim form in order to receive the benefits of the Settlement. Instead, the benefits in the form of the Gift Cards described in the Settlement (see section 2.1) shall be distributed to all Class Members who have not timely opted out of the Settlement

18.     The Settlement Administrator shall otherwise have the authority to accept or reject claims, if any, submitted by persons claiming to be Class Members in accordance with the Settlement.

19.     Any Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel who is qualified to appear in the jurisdiction. All Class Members who do not enter an appearance will be represented by Class Counsel.

**E.      Procedure for Requesting Exclusion from the Class**

20.     All Class Members who do not timely exclude themselves from one or more of the Classes shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Classes.

21.    Any person falling within the definition of one or more of the Classes may, upon his or her request, be excluded from the Classes. To make this election, such person must send a signed letter or postcard to the Settlement Administrator no later than September 22, 2023, which is at least 120 calendar days from the date of this Order, stating: (a) the name and case number of the Action from which the Class Member seeks to be excluded, (b) the full name, email address, physical address, telephone number, and Class Member ID (available on the notice) of the person requesting exclusion; and (c) a signed statement that the Class Member is a legitimate Class Member in the Action and does not wish to participate in the Settlement of the Action, postmarked no later than the deadline stated above.

22.    Any Class Member who does not send a signed request for exclusion postmarked or delivered on or before the time period described above will be deemed to be a Class Member for all purposes and will be bound by all judgments and further orders of this Court related to the settlement of the Action and by the terms of the Settlement, if finally approved by the Court. All persons who submit valid and timely requests for exclusion in the manner set forth in the Settlement shall have no rights under the Settlement and shall not be bound by the Settlement or the Final Order and Judgment.

23.    Within ten (10) calendar days after September 22, 2023, the Settlement Administrator shall serve on Class Counsel and Defendants' Counsel a list of Class Members who have timely and validly excluded themselves from the Settlement Class. Class Counsel shall file this list with the Court at or before the Final Approval Hearing.

### F.    Procedure for Objecting to the Settlement

24.    Any Class Member wishing to object to or oppose the approval of this Settlement, the motion for the incentive award to Plaintiffs, and/or Class Counsels' motion for attorneys' fees and costs, shall file with the Court a written objection no later than September 22, 2023, which is at least 120 calendar days from the date of this Order. The objecting Class Member must send a copy of the written objection and supporting documents to the Court, Class Counsel, Defendants' counsel, and the Settlement

Administrator listed in section 5.23 of the Settlement Agreement. To be timely, a written objection to the Settlement must be submitted no later than the above-stated deadline. The submission date is deemed to be the date the objection is deposited in the U.S. Mail, FedEx, or UPS as evidenced by the postmark. It shall be the objecting Class Member's responsibility to ensure receipt of any objection by the Court, Class Counsel, Defendants' Counsel, and the Settlement Administrator.

25.    The objection must contain:

(a)    the name and case number of the Action;

(b)    the Class Member's full name, address, telephone number, and Class Member ID (available on the notice);

(c)    the words "Notice of Objection" or "Formal Objection";

(d)    in clear and concise terms, all legal and factual arguments supporting the objection, including supporting documentation;

(e)    facts supporting the person's status as a Class Member (e.g., either any unique identifier included by the Settlement Administrator in his or her notice such as the Class Member ID, or the date and location of his or her relevant purchases);

(f)    the Class Member's signature and the date;

(g)    the following language immediately above the Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding Class Membership are true and correct to the best of my knowledge"; and

(h)    for Class Members intending to make an appearance at the Final Approval Hearing (with or without counsel), the objection must also be accompanied by a "Notice of Intention to Appear"

26.    Any Class Member who fails to timely file and serve a written Objection containing all the information listed in (a) through (h) of the previous paragraph shall be deemed to have waived any objections and will be foreclosed from making any objections (whether by a subsequent objection, intervention, appeal, or any other process) to the

Settlement. Arguments not raised in the written objections shall be deemed intentionally waived.

27.    If any objection is received by the Settlement Administrator, but not filed with the Court, the Settlement Administrator shall forward the Objection and all supporting documentation to Class Counsel and Counsel for Defendants. The failure of the Class Member to file the written objection with the Court shall be grounds for striking and/or overruling the objection, even if the objection is submitted to the Settlement Administrator.

28.    Class Counsel will file with the Court their motions and briefs in support of Final Approval, the requested incentive awards for Plaintiffs, and attorneys' fees and costs, no later than September 8, 2023, which is fourteen (14) days before the deadline for Class Members to object to the Settlement or opt out of the Settlement.

29.    Class Counsel and/or Defendants have the right, but not the obligation, to respond to any objection no later than seven (7) days prior to the Final Approval Hearing. The party so responding shall file a copy of the response with the Court, and shall serve a copy, by regular mail, hand or overnight delivery, to the objecting member of the Class or to the individually hired attorney for the objecting member of the Settlement Class; to Class Counsel; and to Defendants' Counsel.

30.    Based on the parties' Settlement Agreement and the foregoing provisions, the schedule in this matter shall be as follows:

| Event | Date/Deadline |
|---|---|
| Preliminary Order Issued | Thursday, May 25, 2023 |
| Deadline to Commence Publication Notice | Monday, June 26, 2023 |
| Deadline to Send Email Notice | Monday, July 24, 2023 |
| Deadline to Mail Postcard Notice | Thursday, August 3, 2023 |
| Deadline to File Motion for Final Approval and Motion for Attorneys' Fees, Costs, and Incentive Awards | Friday, September 8, 2023 |

10

| Deadline to Object or Opt Out | Friday, September 22, 2023 |
|---|---|
| Deadline for Settlement Administrator to Provide Opt-Out List to Counsel | Monday, October 2, 2023 |
| Deadline to Respond to Objections | Thursday, October 26, 2023 |
| Final Approval/Fairness Hearing | Thursday, November 2, 2023 |

31.    All discovery in this Action is STAYED pending further order of the Court.


Dated: _____, 2023

_____
Hon. George H. Wu
United States District Judge

11

# Exhibit B

From:  Settlement Administrator for Boohoo/PrettyLittleThing/Nasty Gal Nationwide Pricing Class Action Settlement
To:      JonQClassMember@domain.com
Re:      Legal Notice of Class Action Settlement

Class Member ID: XXXXXXXX

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

*Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx)

This notice is to inform you of the settlement of the class action lawsuit referenced above (the "Action") with Boohoo/BoohooMAN, PrettyLittleThing, and Nasty Gal, the "Defendants" in this case. Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively, the "Plaintiffs" or "Class Representatives") allege that Defendants engaged in a deceptive pricing scheme by advertising artificially inflated original prices on their U.S. websites in that they rarely sold their products at the advertised original price. Plaintiffs allege Defendants routinely marked down and discounted these inflated prices, which gave customers the false impression that they were getting a deal or bargain. Plaintiffs contend Defendants have violated various consumer protection and false advertising laws and have committed fraud. Defendants deny all of the allegations made in the Action. The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuits to avoid the uncertainties and expenses associated with ongoing litigation.

**Am I a Class Member?**  You are a Settlement Class Member in one or more of the three separate cases if:

- You purchased products in any state or U.S. territory other than California from Boohoo/BoohooMAN's U.S. websites from April 1, 2016, through June 17, 2022;

- You purchased products in any state or U.S. territory other than California from PrettyLittleThing's U.S. website from April 1, 2016, through June 17, 2022; or

- You purchased products in any state or U.S. territory other than California from Nasty Gal's U.S. website from February 28, 2017, through June 17, 2022.

**What Can I Get?** Defendants will provide Gift Cards with Free Shipping to customers outside of California who purchased products from Defendants. Those individuals included in the settlement who chose not to opt out of the settlement will automatically receive one or more $10 Gift Cards by email that may be used with no shipping charges on the U.S. website of the Defendant company above that provided the Gift Card. There is no requirement to file a claim.

You are eligible to receive up to three Gift Cards, one from Boohoo/BoohooMAN, one from PrettyLittleThing, and one from Nasty Gal, depending on whether you purchased items from the U.S. websites of one or more of these companies during the Class Periods reflected above.

**How Do I Get a Gift Card?** There is no requirement to file a claim. If you do not affirmatively opt out within the prescribed time period, you will automatically receive one to three Gift Cards in the above-styled case depending on whether you purchased from one, two, or all three of the Defendants identified above. You will receive the Gift Card(s) at the email address you have on file with each Defendant. If you would like to provide a different email address to receive your Gift Card(s), you may contact the Settlement Administrator to make arrangements.

**What are My Other Options?** You may exclude yourself from the Settlement Class by sending a letter to the Settlement Administrator no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue Defendants over the legal issues in the lawsuit. You and/or your lawyer also have the right to object to the proposed settlement and appear before the Court to present the reasons for your objection. Your written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [URL].  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims against Defendants and their affiliates that this settlement resolves will be released.

**Who Represents Me?** The Court has appointed Yasin M. Almadani, Esq. of Almadani Law and Ahmed Ibrahim, Esq. of AI Law, PLC to represent you and other Settlement Class Members. These attorneys are called Class Counsel. You will not be charged out of pocket for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA 90012. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $1,500 each for their services in helping to bring and settle this case. Defendants have agreed that Class Counsel may be paid reasonable attorneys' fees in an amount to be determined by the Court. Any amounts awarded by the Court to Class Counsel or Class Representatives will be paid separately by Defendants and will not reduce the amount of Gift Card value available to Settlement Class Members.

**How Do I Get More Information?** For more information, including a more detailed Class Notice, a copy of the Settlement Agreement and other documents, go to [URL], contact the settlement administrator by calling (800) 000-000 or by writing to Boohoo/PrettyLittleThing/Nasty Gal Nationwide Pricing Class Action Settlement Administrator, [address], or contact Class Counsel by emailing YMA@LawALM.com or AIbrahim@AILawFirm.com.

# Exhibit C

UNITED STATES DISTRICT COURT–CENTRAL DISTRICT OF CALIFORNIA

# If you bought products from Boohoo, BoohooMAN, PrettyLittleThing, or NastyGal, you may be eligible for a $10 Gift Card with Free Shipping.

*A federal court authorized this Notice. It is not a solicitation from a lawyer.*

- A settlement has been reached with Boohoo/BoohooMAN, PrettyLittleThing, and NastyGal ("Defendants") in the class action lawsuit about the pricing and sales advertising of Defendants' products styled: *Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx).

- Defendants have agreed to settle the lawsuits and provide Gift Cards with Free Shipping to customers outside California who purchased Products from Defendants. Those individuals included in the settlement who chose not to opt out of the settlement will automatically receive one or more $10 Gift Cards by email that may be used with no shipping charges on the U.S. website of the Defendant company above that provided the Gift Card. There is no requirement to file a claim.

- You are eligible to receive up to three Gift Cards, one from Boohoo/BoohooMAN, one from PrettyLittleThing, and one from NastyGal depending on whether you purchased products from one or more of these companies during the time periods reflected below.

- You are included in this settlement as a Settlement Class Member of Boohoo/BoohooMAN if you purchased products in any state or U.S. territory other than California from Boohoo/BoohooMAN from April 1, 2016, through June 17, 2022.

- You are included in this settlement as a Settlement Class Member of PrettyLittleThing if you purchased products in any state or U.S. territory other than California from PrettyLittleThing from April 1, 2016, through June 17, 2022.

- You are included in this settlement as a Settlement Class Member of NastyGal if you purchased products in any state or U.S. territory other than California from NastyGal from February 28, 2017, through June 17, 2022.

- Your rights are affected whether or not you act. Read this Notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **NO REQUIREMENT TO SUBMIT A CLAIM FORM** | There is no requirement to file a claim to receive your Gift Card with Free Shipping. If you do not timely and affirmatively opt out, you will give up the right to sue Defendants in a separate lawsuit about the legal claims this settlement resolves. |
| **ASK TO BE EXCLUDED DEADLINE: [PAO + 120]** | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Defendants related to the legal claims this settlement resolves. However, you will give up the right to receive the Gift Cards from this settlement. |

| | |
|---|---|
| **OBJECT TO THE SETTLEMENT DEADLINE: [PAO + 120]** | If you do not exclude yourself from the settlement, you may object to it by writing to the Court about why you don't like the settlement. If you object but do not opt out, you will still remain a part of the class and automatically receive the Gift Card(s) for which you are eligible, but you will give up the right to sue Defendants in a separate lawsuit about the legal claims this settlement resolves. |
| **GO TO A HEARING ON [PAO + 160]** | You may object to the settlement and ask the Court for permission to speak at the Final Approval Hearing about your objection. |
| **DO NOTHING** | You will automatically receive one or more $10 Gift Cards by email, but you will give up the right to sue, continue to sue, or be part of another lawsuit against Defendants about the legal claims resolved by this settlement. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the settlement.

## WHAT THIS NOTICE CONTAINS

**I.   BASIC INFORMATION** ............................................................................. **PAGE #**

   1.   Why was this Notice issued?
   2.   What is this lawsuit about?
   3.   What is a class action?
   4.   Why is there a settlement?

**II.   WHO IS INCLUDED IN THE SETTLEMENT** .................................................. **PAGE #**

   5.   How do I know whether I am part of the settlement?
   6.   Are there exceptions to being included?
   7.   What if I am still not sure whether I am part of the settlement?

**III.   THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** .................. **PAGE #**

   8.   What does the settlement provide?
   9.   How much will my payment be?

**IV.   HOW TO GET A SETTLEMENT PAYMENT—SUBMITTING A CLAIM FORM** ....... **PAGE #**

   10.  How do I get a payment from the settlement?
   11.  When would I get my settlement payment?
   12.  What rights am I giving up to get a payment and stay in the Settlement Class?
   13.  What are the Released Claims?

**V.   THE LAWYERS REPRESENTING YOU** ....................................................... **PAGE #**

   14.  Do I have a lawyer in this case?
   15.  How will the lawyers be paid?

**VI.   EXCLUDING YOURSELF FROM THE SETTLEMENT** ..................................... **PAGE #**

   16.  How do I get out of the settlement?
   17.  If I exclude myself, can I still get a payment from this settlement?
   18.  If I do not exclude myself, can I sue Defendants or the Released Parties for the same legal claims later?

**VII.   OBJECTING TO THE SETTLEMENT** ........................................................ **PAGE #**

   19.  How do I tell the Court that I do not like the settlement?
   20.  May I come to Court to speak about my objection?
   21.  What is the difference between objecting to the settlement and asking to be excluded from it?

**VIII.   THE COURT'S FINAL APPROVAL HEARING** ............................................ **PAGE #**

   22.  When and where will the Court decide whether to approve the settlement?
   23.  Do I have to come to the hearing?
   24.  May I speak at the hearing?

**IX.   IF YOU DO NOTHING** .......................................................................... **PAGE #**

   25.  What happens if I do nothing at all?

**X.   GETTING MORE INFORMATION** .............................................................. **PAGE #**

   26.  How do I get more information?

# I.   BASIC INFORMATION

### 1.  Why was this Notice issued?

A court authorized this Notice because you have a right to know about the proposed settlement of the three separate class action lawsuits to which this Notice relates and about all of your options before the Court decides whether to grant final approval to the settlement. This Notice explains the lawsuit, the settlement, your legal rights, what benefits are available, and who can get them.

Judge George H. Wu of the United States District Court for the Central District of California is overseeing this class action styled *Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx). This case will be referred to in this Notice as the "Action."  The proposed settlement resolves the legal claims in this lawsuit on behalf of non-California purchasers of items from Defendants. The individuals that filed these lawsuits, Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton, are called "Plaintiffs" and the companies they sued—respectively, Boohoo/BoohooMAN, PrettyLittleThing, and NastyGal—are called "Defendants."

### 2.  What is this lawsuit about?

This lawsuit is about Defendants' pricing policies and advertised sales. Plaintiffs allege that Defendants engaged in a deceptive pricing scheme by advertising artificially inflated original prices in that they rarely sold their products at the advertised original price. Plaintiffs allege Defendants routinely marked down and discounted these inflated prices on their websites, which gave customers the false impression that they were getting a deal or bargain.  Plaintiffs contend Defendants have violated various California consumer protection and false advertising laws and have committed fraud. Defendants deny all of the allegations made in the Action.

### 3.  What is a class action?

In a class action, one or more people called Class Representatives (in this case, Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton) sue on behalf of other people with similar claims. Together, the people included in the class action are called a Class or Class Members. One court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

### 4.  Why is there a settlement?

The Court has not determined whether Class Representative or Defendants are right. Instead, both parties agreed to a settlement. This way, they avoid the cost and burden of a trial and the people affected can get benefits. The Class Representatives and their attorneys think the settlement is best for all Settlement Class Members.

# II.   WHO IS INCLUDED IN THE SETTLEMENT

### 5.  How do I know whether I am part of the settlement?

The settlement includes all persons who do not timely opt out ("Settlement Class Members") and made purchases from Defendants outside of California as follows:

You are included in this settlement as a Settlement Class Member of Boohoo/BoohooMAN if you purchased products from Boohoo/BoohooMAN in any state or U.S. territory other than California from April 9, 2016, through June 17, 2022 (the Class Period for Boohoo/BoohooMAN).

You are included in this settlement as a Settlement Class Member of PrettyLittleThing if you purchased products from PrettyLittleThing in any state or U.S. territory other than California from May 19, 2016, through June 17, 2022 (the Class Period for PrettyLittleThing).

You are included in this settlement as a Settlement Class Member of NastyGal if you purchased products from NastyGal in any state or U.S. territory other than California from March 1, 2017, through June 17, 2022 (the Class

Period for NastyGal).

**6.  Are there exceptions to being included?**

Yes. The settlement does not include: (1) individuals who bought products from Defendants in California, (2) Defendants and their officers, directors, and employees; (3) any person who files a valid and timely Request for Exclusion; and (4) judicial officers and their immediate family members and associated court staff assigned to the case.

**7.  What if I am still not sure whether I am part of the settlement?**

If you are not sure whether you are included, call 1-XXX-XXX-XXXX, go to www.Website.com or write to the lawyers listed in Question 19 below and/or the Settlement Administrator.

## III.   THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

**8.  What does the settlement provide?**

Defendants have agreed to provide benefits to Settlement Class Members to settle the lawsuits. Each Settlement Class Member who does not timely opt out shall automatically receive one or more $10 Gift Cards. You will receive one $10 Gift Card for each of the following websites (https://us.boohoo.com/https://boohooman.com/us, https://prettylittlething.us., and https://nastygal.com) from whom you have made a purchase outside California during the Class Periods identified in Question 5, up to a maximum of three Gift Cards. The Gift Card may be used for a single $10 purchase transaction for merchandise available on the U.S. website from which a Settlement Class Member made a purchase. You will not be required to pay shipping charges for your purchase. There is no expiration date, no minimum purchase requirement, no blackout dates, no restriction on use with other offers or promotions, no fees, no restrictions on transferability, and with very limited exceptions, stacking of multiple Gift Cards will be permitted.

For example, if you made a purchase outside California on https://prettylittlething.us during the applicable Class Period, then you will receive a Gift Card for use on the PrettyLittleThing U.S. Website only toward a purchase on that website. If you made purchases outside California on https://prettylittlething.us and https://us.boohoo.com/https://boohooman.com/us during the applicable Class Period, then you will receive two Gift Cards, one each for use on the PrettyLittleThing U.S. Website and the boohoo U.S. Website. And, if you made purchases outside California on https://prettylittlething.us, https://us.boohoo.com or https://boohooman.com/us, and https://nastygal.com during the applicable Class Period, then you will receive three Gift Cards, one each for use on the PrettyLittleThing U.S. Website, the boohoo U.S. Website, and the NastyGal U.S. Website. Customers of the https://boohooman.com/us/ website will receive a Gift Card for redemption on the http://us.boohoo.com website, which carries products for both brands - BoohooMAN  and Boohoo.

**9.  How much will my Gift Card be?**

Those individuals included in the settlement who chose not to opt out of the settlement will automatically receive one or more $10 Gift Cards with Free Shipping (valued at $7.45), for a total potential value of $17.45 (inclusive of the Free Shipping) per Gift Card.

## IV.   HOW TO GET A SETTLEMENT GIFT CARD

**10. How do I get a payment from the settlement?**

There is no requirement to file a claim to receive your Gift Card with Free Shipping. If you do not affirmatively opt out within the prescribed time period, you will automatically receive a Gift Card at the email address that you have on file with Defendants.

## 11. When would I get my settlement payment?

The Court will hold a hearing on [Final Approval Hearing date] to decide whether to grant final approval to the settlement. If the Court approves the settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed as soon as possible, only if and when the Court grants final approval to the settlement and after any appeals are resolved.

## 12. What rights am I giving up to get a payment and stay in the Settlement Class?

Unless you exclude yourself, you will remain a part of the Settlement Class. If the settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You won't be able to sue, continue to sue, or be part of any lawsuit against Defendants and the Released Parties that relates to the legal issues resolved by this settlement. The rights you are giving up are called Released Claims (see next question).

## 13. What are the Released Claims?

If and when the settlement becomes final, Settlement Class Members who do not timely and sufficiently request to be excluded from the proposed settlement will permanently release all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses, and attorneys' fees, in law or equity, fixed or contingent, known or unknown, which Settlement Class Members have or may have, arising out of or relating to any of the acts, omissions, or other conduct by Defendants alleged or otherwise referred to in the operative complaint in the Action. The settlement does not bind any persons or class members outside of the Settlement Class Members.

The "Released Parties" will include the named Defendants in the Action (specifically, Boohoo Group PLC, Boohoo.com USA, Inc., Boohoo.com UK Limited, Prettylittlething.com USA, Inc., Prettylittlething.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited), and all direct and indirect subsidiaries, affiliates, parent companies, holding companies or other companies or business entities owned or controlled by any of the named Defendants in the Action that are specifically related to the brands boohoo, boohooMan, PrettyLittleThing, and NastyGal. To the extent Defendant Boohoo Group PLC or any of its subsidiaries owns, operates, or otherwise controls any business entities that sell brands other than the brands listed above, those brands, companies, subsidiaries, and/or business entities are not included within the definition of "Defendants."

More detail about the claims you will be releasing are described in Sections 1.6 through 1.8 and 2.7 through 2.8 of the Settlement Agreement, available at www.Website.com.

## V.   THE LAWYERS REPRESENTING YOU

## 14. Do I have a lawyer in this case?

Yes. Judge Wu appointed Yasin M. Almadani, Esq. of Almadani Law and Ahmed Ibrahim, Esq. of AI Law, PLC to represent you and other Settlement Class Members as "Class Counsel." These law firms and these lawyers are experienced in handling similar cases. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Class Counsel will ask the Court for an award of attorneys' fees and expenses of up to $4,197,000. They will also ask the Court to approve $1,500 service awards to each of the twelve Class Representatives. The Court may award less than these amounts. Any amounts awarded by the Court to Class Counsel or Class Representatives will be paid separately by Defendants and will *not* reduce the amount of Gift Card value available to Settlement Class Members. Furthermore, any amount of attorneys' fees and expenses not awarded to Class Counsel will be paid by Defendants to a charitable organization, but will *not* reduce the amount of Gift Card value available to Settlement Class Members.

## VI.   EXCLUDING YOURSELF FROM THE SETTLEMENT

If you want to keep the right to sue or continue to sue Defendants or the Released Parties about the legal claims in this case, and you do not want to receive a Gift Card from this settlement, you must take steps to get out of the Settlement Class. This is called excluding yourself from or opting out of the settlement.

### 16. How do I get out of the settlement?

To exclude yourself from the Settlement Class of the Action, you must submit a written request for exclusion. Your request for exclusion must include: (a) the name and case number of this Action from which you seek exclusion (i.e., *Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx)); (b) your full name, email address, physical address, telephone number, and Class Member ID; and (c) a signed statement that you are a legitimate Settlement Class Member of the referenced lawsuit and you do not wish to participate in the Settlement of the lawsuit. Your request for exclusion must be mailed to the Settlement Administrator at the address below so it is <u>postmarked</u> no later than **[PAO + 120]**:

Boohoo/PrettyLittleThing/NastyGal
Nationwide Advertising Class Action Settlement Administrator
P.O. Box 6188
Novato, CA 94948-6188

More details about the exclusion process are described in Sections 3.2 and 3.9 of the Settlement Agreement, available at www.Website.com.

### 17. If I exclude myself, can I still get a Gift Card from this settlement?

No. If you exclude yourself, you are telling the Court that you don't want to be part of the settlement. You can only get one or more Gift Cards if you stay in the settlement.

### 18. If I do not exclude myself, can I sue Defendants or the Released Parties for the same legal claims later?

No. Unless you exclude yourself, you are giving up the right to sue Defendants and the Released Parties for the claims that this settlement resolves. You must exclude yourself from *this* lawsuit to start or continue with your own lawsuit or be part of any other lawsuit against Defendants or any of the Released Parties for the claims that this settlement resolves.

## VII.   OBJECTING TO THE SETTLEMENT

You can tell the Court if you don't agree with the settlement or any part of it.

### 19. How do I tell the Court that I do not like the settlement?

If you are a Settlement Class Member, you can object to the settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. Your objection must be in writing and made individually (no group or class objections will be accepted), and must include: (1) the name and case number of this Action to which you are objecting (i.e., *Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx)); (2) the Settlement Class Member's full name, address, telephone number, and Class Member ID; (3) the words "Notice of Objection" or "Formal Objection"; (4) in clear and concise terms, all legal and factual arguments supporting the objection, including supporting documentation; (5) facts verified under oath supporting the person's status as a Settlement Class Member (e.g., either any unique identifier included by the Settlement Administrator in his/her notice, or the date and location of his/her relevant purchases, including supporting documentation); (6) the Settlement Class Member's signature and the date; and (7) the following language immediately above the Settlement Class Member's signature and date: "I declare under penalty of perjury under the laws of the United States of America that the foregoing statements regarding Class Membership are true and correct to the best of my knowledge." Settlement Class Members who fail to make objections in this manner will be deemed to have waived any objections and will be foreclosed from making any

objections (whether by a subsequent objection, intervention, appeal, or any other process) to this Agreement. Arguments not raised in the written objections shall be deemed intentionally waived. Mail your objection to all the addresses listed below underlined postmarked on or before **[PAO + 120]**.

| The Court | Class Counsel | Defendants' Counsel | Settlement Administrator |
|---|---|---|---|
| Hon. George H. Wu<br>United States Courthouse<br>Central District of California<br>350 West 1st Street<br>Courtroom 9D, 9th Floor<br>Los Angeles, CA 90012 | ALMADANI LAW<br>Yasin M. Almadani<br>4695 MacArthur Ct., Ste. 1100<br>Newport Beach, CA 92660<br>Ph: 949-877-7177<br>Fax: 949-877-8757<br>yma@lawalm.com<br><br>AI LAW, PLC<br>Ahmed Ibrahim<br>4695 MacArthur Ct., Ste. 1100<br>Newport Beach, CA 92660<br>Ph.: 949-266-1240<br>Fax: 949-266-1280<br>aibrahim@ailawfirm.com | EVERSHEDS SUTHERLAND (US) LLP<br>Ronald W. Zdrojeski<br>1114 6th Avenue, 40th Floor<br>New York, NY 10036<br>Ph: (212) 389-5000<br>Fax: (212) 389-5099<br>ronzdrojeski@eversheds-sutherland.com<br><br>EVERSHEDS SUTHERLAND (US) LLP<br>Ian S. Shelton<br>500 Capitol Mall, Suite 1750<br>Sacramento, CA 95814<br>Ph: (916) 844-2965<br>Fax: (916) 241-0501<br>ianshelton@eversheds-sutherland.com | Boohoo/PrettyLittleThing/NastyGal Nationwide Advertising Class Action Settlement Administrator<br>P.O. Box 6188<br>Novato, CA 94948-6188 |

More details about the objection process are described in Sections 3.2 and 3.8 of the Settlement Agreement, available at www.Website.com.

## 20. May I come to Court to speak about my objection?

Yes. You or your attorney may speak at the Final Approval Hearing about your objection. To do so, you must include a statement in your objection indicating that you or your attorney intends to appear at the Final Approval Hearing. Remember, your objection must be underlined postmarked by **[PAO + 120]** and sent to all the addresses in Question 19.

More details about the objection process are described in Sections 3.2 and 3.8 of the Settlement Agreement, available at www.Website.com.

## 21. What is the difference between objecting to the settlement and asking to be excluded from it?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you remain a Settlement Class Member (that is, you do not exclude yourself). Excluding yourself is telling the Court that you don't want to be part of the settlement. If you exclude yourself, you cannot object because the settlement no longer affects you.

## VIII. THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak consistent with Question 20, but you don't have to.

## 22. When and where will the Court decide whether to approve the settlement?

The Court will hold a Final Approval Hearing at _:__ _.m. on [date] at the United States Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA 90012. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. It will also consider whether to approve Class Counsel's request for an award of attorneys' fees and expenses, as well as the Class Representatives' service awards. If there are

objections, the Court will consider them. Judge Wu will listen to people who have asked to speak at the hearing (*see* Question 20 above). After the hearing, the Court will decide whether to approve the settlement.

### 23. Do I have to come to the hearing?

No. Class Counsel will answer any questions Judge Wu may have. However, you are welcome to come to the hearing at your own expense. If you send an objection, you do not have to come to court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary.

### 24. May I speak at the hearing?

Yes. You may ask the Court for permission to speak at the Final Approval Hearing (see Question 20 above). However, Settlement Class Members (with or without counsel) intending to make an appearance at the Final Approval Hearing must so inform the Parties and the Court on or before the Objection Deadline by providing a "Notice of Intention to Appear" to the Court, Class Counsel, and Defendants' Counsel. Furthermore, no objector shall be permitted to argue any grounds for objection that are not clearly and timely stated in their corresponding written objection and all such untimely grounds shall be deemed waived. Your notice of intention to appear must be filed <u>and</u> postmarked on or before **[PAO + 120]**.

More details about the objection process are described in Sections 3.2 and 3.8 of the Settlement Agreement, available at www.Website.com.

## IX.   IF YOU DO NOTHING

### 25. What happens if I do nothing at all?

If you are a Settlement Class Member and you do nothing, you will automatically receive one or more $10 Gift Cards, but you will give up the rights explained in Questions 16-21, including your right to start a new lawsuit, continue with a lawsuit, be part of any other lawsuit against Defendants and the Released Parties about the legal issues resolved by this settlement, or to object to the settlement.

## X.   GETTING MORE INFORMATION

### 26. How do I get more information?

This Notice summarizes the proposed settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents and information are available at www.Website.com. Additional information is also available by calling 1-XXX-XXX-XXXX or by writing to the Settlement Administrator (see Question 16). Publicly-filed documents can also be obtained by visiting the U.S. Courthouse located at 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA 90012 during business hours or accessing the Court's online docket via PACER.

# Exhibit D

Court Authorized Legal Notice

# If you bought products from Boohoo, BoohooMAN, PrettyLittleThing, or Nasty Gal, you may be eligible for a $10 Gift Card with Free Shipping.

*Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx)

A settlement has been reached in the class action lawsuit referenced above (the "Action") with Boohoo/BoohooMAN, PrettyLittleThing, and Nasty Gal, the "Defendants" in this case. Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively, the "Plaintiffs" or "Class Representatives") allege that Defendants engaged in a deceptive pricing scheme by advertising artificially inflated original prices on their U.S. websites in that they rarely sold their products at the advertised original price. Plaintiffs allege Defendants routinely marked down and discounted these inflated prices, which gave customers the false impression that they were getting a deal or bargain. Plaintiffs contend Defendants have violated various consumer protection and false advertising laws and have committed fraud. Defendants deny all of the allegations made in the Action. The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuits to avoid the uncertainties and expenses associated with ongoing litigation.

**Am I a Settlement Class Member?**  You are a class member in one or more of the three cases referenced above if:

- You purchased products in any state or U.S. territory other than California from Boohoo/BoohooMAN's U.S. websites from April 1, 2016, through June 17, 2022.
- You purchased products in any state or U.S. territory other than California from PrettyLittleThing's U.S. website from April 1, 2016, through June 17, 2022.
- You purchased products in any state or U.S. territory other than California from Nasty Gal's U.S. website from February 28, 2017, through June 17, 2022.

**What Can I Get?** Defendants will provide Gift Cards with Free Shipping to customers outside of California who purchased products from Defendants. Those individuals included in the settlement who chose not to opt out of the settlement will automatically receive <u>one or more $10 Gift Cards</u> by email that may be used with <u>no shipping charges</u> on the U.S. website of the Defendant company above that provided the Gift Card. There is no requirement to file a claim. You are eligible to receive up to three Gift Cards, one from Boohoo/BoohooMAN, one from PrettyLittleThing, and one from Nasty Gal depending on your purchase history.

**How Do I Get a Gift Card?** There is no requirement to file a claim. If you do not affirmatively opt out within the prescribed time period, you will automatically receive one to three Gift Cards in the above-styled case depending on whether you purchased from one, two, or all three of the Defendants identified above. You will receive the Gift Card(s) at the email address you have on file with each Defendant. If you would like to provide a different email address to receive your Gift Card(s), you may contact the Settlement Administrator to make arrangements.

**What are My Other Options?** You may exclude yourself from the Settlement Class by sending a letter to the Settlement Administrator no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue Defendants over the legal issues in the lawsuit. You and/or your lawyer also have the right to object to the proposed settlement and appear before the Court to the present the reasons for your objection. Your written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [URL]. If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims against Defendants and their affiliates that this settlement resolves will be released.

**Who Represents Me?** The Court has appointed Yasin M. Almadani, Esq. of Almadani Law and Ahmed Ibrahim, Esq. of AI Law, PLC to represent you and other Settlement Class Members.  These attorneys are called Class Counsel. You will not be charged for these lawyers out of pocket. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA 90012. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $1,500 each for their services in helping to bring and settle this case. Defendants have agreed that Class Counsel may be paid reasonable attorneys' fees in an amount to be determined by the Court. Any amounts awarded by the Court to Class Counsel or Class Representatives will be paid separately by Defendants and will not reduce the amount of Gift Card value available to Settlement Class Members.

**How Do I Get More Information?** For more information, including a more detailed Class Notice, a copy of the Settlement Agreement and other documents, go to [URL], contact the settlement administrator by calling (800) 000-000 or by writing to Boohoo/PrettyLittleThing/Nasty Gal Nationwide Pricing Class Action Settlement Administrator, [address], or contact Class Counsel by emailing YMA@LawALM.com or AIbrahim@AILawFirm.com.



www.[website].com

# Exhibit E

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

OUR RECORDS INDICATE YOU PURCHASED PRODUCTS FROM THE U.S. WEBSITES OF BOOHOO, BOOHOOMAN, PRETTYLITTLETHING, AND/OR NASTY GAL, AND YOU MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

BOOHOO, BOOHOOMAN
PRETTYLITTLETHING
NASTY GAL Nationwide Pricing Class Action Settlement
Settlement Administrator
P.O. Box 6188
Novato, CA 94948-6188

Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

Class Member ID: XXXXXXXX

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

**Notice of Proposed Class Action Settlement**
**Boohoo/BoohooMAN/PrettyLittleThing/Nasty Gal Nationwide Pricing Litigation**

*Habberfield v. Boohoo.com USA, Inc.*, No. 2:22-cv-03899-GW (JEMx)

This notice is to inform you of the settlement of the class action lawsuit referenced above (the "Action") with Boohoo/BoohooMAN, PrettyLittleThing, and Nasty Gal, the "Defendants" in this case. Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively, the "Plaintiffs" or "Class Representatives") allege that Defendants engaged in a deceptive pricing scheme by advertising artificially inflated original prices on their U.S. websites in that they rarely sold their products at the advertised original price. Plaintiffs allege Defendants routinely marked down and discounted these inflated prices, which gave customers the false impression that they were getting a deal or bargain. Plaintiffs contend Defendants have violated various consumer protection and false advertising laws and have committed fraud. Defendants deny all of the allegations made in the Action. The Court has not determined who is right. Rather, the Parties have agreed to settle the lawsuits to avoid the uncertainties and expenses associated with ongoing litigation.

**Am I a Settlement Class Member?**  You are a class member in the case referenced above if:

- You purchased products in any state or U.S. territory other than California from Boohoo/BoohooMAN's U.S. websites from April 1, 2016, through June 17, 2022.
- You purchased products in any state or U.S. territory other than California from PrettyLittleThing's U.S. website from April 1, 2016, through June 17, 2022.
- You purchased products in any state or U.S. territory other than California from Nasty Gal's U.S. website from February 28, 2017, through June 17, 2022.

**What Can I Get?** Defendants will provide Gift Cards with Free Shipping to customers outside of California who purchased products from Defendants. Those individuals included in the settlement who choose not to opt out of the settlement will automatically receive <u>one or more $10 Gift Cards</u> by email that may be used with <u>no shipping charges</u> on the U.S. website of the Defendant company above that provided the Gift Card. There is no requirement to file a claim. You are eligible to receive up to three Gift Cards, one from Boohoo/BoohooMAN, one from PrettyLittleThing, and one from Nasty Gal, depending on whether you purchased items from the U.S. websites of one or more of these companies during the Class Periods reflected above.

**How Do I Get a Gift Card?** There is no requirement to file a claim. If you do not affirmatively opt out within the prescribed time period, you will automatically receive a Gift Card from each of the Defendant companies from whose website you purchased items. You will receive the Gift Card(s) at the email address you have on file with Defendants. If you would like to provide a different email address to receive your Gift Card(s), you may contact the Settlement Administrator to make arrangements.

**What are My Other Options?** You may exclude yourself from the Settlement Class by sending a letter to the Settlement Administrator no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue Defendants over the legal issues in the lawsuit. You and/or your lawyer also have the right to object to the proposed settlement and appear before the Court to present the reasons for your objection. Your written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [URL].  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims against Defendants and their affiliates that this settlement resolves will be released.

**Who Represents Me?** The Court has appointed Yasin M. Almadani, Esq. of Almadani Law and Ahmed Ibrahim, Esq. of AI Law, PLC to represent you and other Settlement Class Members.  These attorneys are called Class Counsel. You will not be charged out of pocket for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Courthouse, 350 West 1st Street, Courtroom 9D, 9th Floor, Los Angeles, CA 90012. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representatives $1,500 each for their services in helping to bring and settle this case. Defendants have agreed that Class Counsel may be paid reasonable attorneys' fees in an amount to be determined by the Court. Any amounts awarded by the Court to Class Counsel or Class Representatives will be paid separately by Defendants and will not reduce the amount of Gift Card value available to Settlement Class Members.

**How Do I Get More Information?** For more information, including a more detailed Class Notice, a copy of the Settlement Agreement and other documents, go to [URL], contact the settlement administrator by calling (800) 000-000 or by writing to Boohoo/PrettyLittleThing/Nasty Gal Nationwide Pricing Class Action Settlement Administrator, [address], or contact Class Counsel by emailing YMA@LawALM.com or AIbrahim@AILawFirm.com.

———

Settlement Administrator for
Boohoo/PrettyLittleThing/Nasty Gal Nationwide
Pricing Class Action
c/o [Settlement Administrator]
PO Box 6188
Novato, CA 94948-6188

XXX

# Exhibit F





## $10
## PLUS COMPLIMENTARY
## SHIPPING & HANDLING





# Exhibit G

PLT





NEW IN    SALE    CLOTHING    SPRING    SWIM    PLUS    FIGURE    DRESSES    TOPS    SHOES    ACCESSORIES    HOME    BEAUTY    THE EDIT

50% OFF EVERYTHING* + EXTRA 15% OFF FOR ALL NEW CUSTOMERS ON THE PLT APP
DISCOUNTS MAY NOT BE BASED ON FORMER PRICES . SEE PRICING POLICY

ANY FORM ABOUT PRETTYLITTLETHING.COM LTD OR ABOUT ITS PRODUCTS OR SERVICES. NOTE THAT THE ARBITRATION PROVISIONS OF CLAUSE 10 DO NOT APPLY TO ANY INDEMNIFICATION CLAIMS OR ACTIONS BROUGHT AGAINST YOU BY US PURSUANT TO THIS SECTION.

13    Pricing Policy

Pricing Policy. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

14    Import Duty

- If you order Products from our site for delivery outside the UK, they may be subject to import duties and taxes which are levied when the delivery reaches the specified destination. You will be responsible for payment of any such import duties and taxes. Please note that We have no control over these charges and cannot predict their amount. Please contact your local customs office for further information before placing your order.
- Please also note that you must comply with all applicable laws and regulations of the country for which the products are destined. We will not be liable for any breach by you of any such laws.

15    Written Communications

Applicable laws require that some of the information or communications We send to you should be in writing. When using our site, you accept that communication with us will be mainly electronic. We will contact you by e-mail or provide you with information by posting notices on our website. For contractual purposes, you agree to this electronic means of



READY FOR THE FUTURE Guidelines

FABRIC & CARE ⊕

SHIPPING ⊕

RETURNS ⊕

*Pricing Policy

Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assesment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

| Shop The Look | You May Also Like |
| --- | --- |

**boohoo WW**



additional terms between you and Zip available at https://zip.co/uk/terms-conditions/. For more information about how Zip will handle your personal data see their Privacy Policy, available here.

5. If We accept and process your order where there is a pricing error that is obvious and unmistakable and which could reasonably have been recognised by you as a mispricing, We may end the Contract, refund to you any sums you have paid under the Contract and require the return of any Products provided to you.

6. If you wish to apply a voucher code to your order, you must enter the relevant code during the online checkout process. Only one voucher code can be used per order and additional terms and conditions may apply in respect of each voucher code. We reserve the right to decline to accept any voucher code that is invalid for your order or that has expired.

**Pricing Policy**

1. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this.

**8. YOUR RIGHT TO CANCEL THE CONTRACT (EEA CUSTOMERS ONLY)**

1. If you are a consumer in the European Economic Area ("EEA"), you have a legal right to cancel a Contract if you change your mind until 14 days after you receive (or someone you nominate receives) the Products, unless the Products are split into several deliveries over different days in which case you will have until 14 days after the day you receive (or someone you nominate receives) the last delivery.

2. If you wish to cancel a Contract under clause 8.1, you just need to communicate this to us within the timescale set out in clause 8.1. The easiest way to do this is to contact us by email at customerservices@boohoo.com or by post at boohoo, PO Box 553, Burnley, BB1 9GD.You may use a copy of the cancellation form available here, but you are not required to do so.

3. The right to cancel a Contract under clause 8.1 does not apply to cosmetics and pierced jewellery or on swimwear and lingerie if the hygiene seal is not in place or has been broken.

4. If you cancel a Contract under clause 8.1 after the Products have been dispatched to you, you must return them to us. You must send off the Products within 14 days of telling us that you wish to cancel the Contract. We will pay the costs of your returns if you use our returns service in accordance with the Returns Policy here, but if you do not use this service in accordance with our instructions then you will be responsible for the cost of returning Products to us. Please see our Returns Policy here for further information about how to return Products to us.



WHAT'S THIS?

FREE SHIPPING!** USE CODE: SHIP



SPRING SAVINGS - UP TO 80% OFF!*
*Discounts may not be based on former prices. See pricing policy

boohoo    WOMENS    MENS    What are you looking for?

NEW IN    ALL CLOTHING    PLUS SIZE CLOTHING    DRESSES    TOPS    SPRING    OCCASION WEAR    FESTIVAL OUTFITS    SHOES & ACCESSORIES    BEAUTY    SHOP BY FIT    SALE

## PRODUCT DETAILS

## COMPLETE THE LOOK

ENERGY-SAVING MODE

WHAT'S THIS?

Give flower power vibes with this floral dress; the perfect piece to brighten up your closet all year round. Featuring an all-over flower pattern, this **flower dress** suits everyone wanting to tap into that girly side of them. Style this versatile **floral summer dress** with neutral accessories to not take away from the main event, the dress. Pair it with white sneakers for a day exploring a new city, or dress it up with wedge espadrilles for date night.
100% Polyester. Do not dry clean. Model wears UK size 10.

#GZZ39021

*Pricing Policy
Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

SHOES & ACCESSORIES    SHOP NOW

NEW SEASON    SHOP NOW

**boohooMAN**





boohooMAN.com

   

0

NEW IN    CLOTHING    GOING OUT    ACTIVE    PLUS & TALL    MAN    SHOES & ACCESSORIES    SALE

pay using Afterpay or Klarna such payments will be subject to additional terms between you and these payment providers. Afterpay terms available at www.afterpay.com/en-US/terms-of-service. See www.afterpay.com/en-US/how-it-works for further information about Afterpay. For more information about how Afterpay will handle your personal data see their Privacy Policy, available at [https://www.afterpaytouch.com/privacy-policy]. Information and terms relating to Klarna can be found here. For more information about how Klarna will handle your personal data see their Privacy Policy, available at https://www.klarna.com/us/privacy-policy/ .

5. If We accept and process your order where there is a pricing error that is obvious and unmistakable and which could reasonably have been recognized by you as a mis-pricing, We may end the Contract, refund to you any sums you have paid under the Contract and require the return of any Products provided to you.

6. If you wish to apply a voucher code to your order, you must enter the relevant code during the online checkout process. Only one voucher code can be used per order and additional terms and conditions may apply in respect of each voucher code. We reserve the right to decline to accept any voucher code that is invalid for your order or that has expired.

PRICING POLICY

1.Pricing Policy. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

8. RETURNS

1. As an alternative to using your rights under clause 8.1, you may wish to return an item using our USA returns service. For further information on returns please see our Returns Policy

9. FAULTY PRODUCTS

 **boohooMAN**.com    

NEW IN    CLOTHING    GOING OUT    *ACTIVE*    PLUS & TALL    MAN    SHOES & ACCESSORIES    SALE



⊕ Hover to zoom

  

Waiting for criteo-partners.tremorhub.com...

### Style Notes

We all know about t-shirts and vests, light layers which have stood the test of time. T-shirts are a seasonless staple which gives your wardrobe a solid foundation to build off. Whether you're about a plain tee, printed, striped or long-sleeve or you're flexing something oversized for a comfortably casual look, make sure your outfits have the foundations they need with our range of tees and vests. Combine a plain white tee with denim and trainers for a versatile everyday outfit or pair with cropped trousers to secure minimalistic vibes.

DELIVERY INFO                                                    +

RETURNS INFO                                                    +

**\*Pricing Policy**

Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

**Nasty Gal**





directly incurred by us as a consequence of your breach of these Terms and Conditions.

We reserve the right to change or add to these Terms and Conditions for security, legal or regulatory requirements. We will give you at least one month's notice of any such changes or additions.

If you require further information about our Terms and Condition, or your use of your Gift Card, please contact a member of our customer services team at: groupcomplaints@boohoo.com

### PRICING POLICY

Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out with your new Nasty, it's important to acknowledge that you understand this.

### PROMOTION TERMS AND CONDITIONS

Official Nasty Gal promotion codes entitle you to an offer on your online order from www.nastygal.com. Please note, promotion codes can only be used once per transaction and cannot be used in conjunction with any other promotion or offer. Selected lines and beauty products are excluded from promotion code discounts. Automated promotions cannot be used in conjunction with any other promotion codes or offers. Promotion codes are territory specific, remain our property, are not transferable and are not valid for the purchase of gift cards or gift vouchers. There is no cash alternative. Promotion codes and related offers are not open to employees of nastygal.com and we reserve the right to withdraw them and refuse or restrict any order at any time. Promotion codes are only valid on nastygal.com for payments made by residents of the United Kingdom and Ireland in Sterling, where enabled, Euros, US or Australian dollars. Payment by Euros, US or Australian dollars can be enabled by selecting the appropriate flag in the dropdown currency selection menu in the top right-hand corner on the homepage.

### Terms and Conditions relating to Nasty Gal Survey – Chance to win $500 voucher

The promoter of Nasty Gal Survey – Chance to win $500 voucher ("Prize Draw") is Nasty Gal Limited of 49/51 Dale Street, Manchester M1 2HF ("Promoter").






take you from happy hour catch ups to date nights and parties.

- Floral Print Satin Cut Out Long Sleeve Dress
  - High Quality Satin Fabric
- Flattering Fit and Flare Silhouette
  - Statement Floral Pattern
  - Unique High Neckline
  - Zip Fastening in Back

Model wears a size M (US size 6/UK size 10).

SKU: #BGG17122

**\*Pricing Policy**
Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out with your new Nasty, it's important to acknowledge that you understand this.

| Shipping & Returns | Size Guide |
|---|---|

You have 28 days to return. Click here for our returns policy.

| USA Standard Shipping | $11.99 | USA Express Shipping | $14.99 |
|---|---|---|---|

















14:03 ... 5G

# PRETTYLITTLETHING

DISCOUNTS MAY NOT BE BASED ON FORMER PRICES

## SEE PRICING POLICY

Q Search...

 

 

### Class Action Settlement   ✕

Check your email for $10 Gift Cards Plus
Complimentary Shipping on Any
Purchase.Click here for additional information:
Boohoo/PrettyLittleThing/NastyGal California
Pricing Settlement



SHOP NOW

*EXCL BEAUTY & NEW IN THIS WEEK

NEW CUSTOMERS GET AN EXTRA 15% OFF CODE:
NEW15

    

Home   Shop   Bag   Wishlist   My PLT

14:05
◀ PLT

≡ **PRETTYLITTLETHING**   Q   ♥   🛍

Need Help?

50% OFF EVERYTHING* + EXTRA 15% OFF FOR ALL NEW
CUSTOMERS ON THE PLT APP
DISCOUNTS MAY NOT BE BASED ON FORMER PRICES - SEE
PRICING POLICY

NOT APPLY TO ANY INDEMNIFICATION CLAIMS OR ACTIONS BROUGHT AGAINST YOU BY US PURSUANT TO THIS SECTION.

13   Pricing Policy

Pricing Policy. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

14   Import Duty

If you order Products from our site for delivery outside

14:05    •Ill 5G 🔋

DISCOUNTS MAY NOT BE BASED ON FORMER PRICES
<u>SEE PRICING POLICY</u>

PRETTYLITTLETHING Oatmeal Sport Hoodie    ⌄ ⤴

~~.00~~ **$21.00** (50% OFF)

**ADD TO BAG**

Select 'ADD TO BAG' to see available sizes

**BUY NOW, PAY LATER WITH**

 **Klarna.**   **afterpay**   **QUADPAY**

CMT3109

*Pricing Policy

Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assesment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

**PRODUCT DETAILS**    ⊕

**SIZE GUIDE**    ›

**FABRIC AND CARE**    ⊕

**DELIVERY**    ›

 Home     Shop     Bag     Wishlist     My PLT

I'm looking for...

*Discounts may not be based on former prices. See pricing policy




HOME


SHOP


CART


WISHLIST


PROFILE

## PRICING POLICY

✕

\*Pricing Policy. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

CLOSE

13:59



FREE SHIPPING!*

BOYFRIEND DENIM OVERALLS          $23.00 $65.00*

DETAILS          SHIPPING          RETURNS

**spring savings** up to

# 80% OFF

Excludes Just Landed, Beauty & selected lines. Promotion automatically applies at checkout

## *PRICING POLICY

*Pricing Policy. Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

## RECENTLY VIEWED







$36.00 $72.00          $36.00 $55.00          $53.00 $105.00
-50%                   -35%                   -50%

13:56    5G

I'm looking for...

*Discounts may not be based on former prices. **See pricing policy**




# 50% OFF
# EVERYTHING*

*Excludes sale & selected lines. Promotion automatically applies.

## APP EXCLUSIVE



Home    Shop    Cart    Wishlist    Profile

13:57    .ıll 5G 🔋

## PRICING POLICY 

Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!

**CLOSE**

13:57                                        5G

Oversized Front And Back Graphic T-shirt          $30.00*

DETAILS        |        SHIPPING        |        RETURNS

**SPREAD THE COST WITH**   afterpay⬦

**\*Pricing Policy**

Our percentage off promotions, discounts, or sale markdowns are
customarily based on our own opinion of the value of this product,
which is not intended to reflect a former price at which this
product has sold in the recent past. This amount represents our
opinion of the full retail value of this product today based on our
own assessment after considering a number of factors. That's why
before checking out, it's important you acknowledge that you
understand this. Cool with that? Great, happy shopping!

**Recently Viewed**        |        Similar Items



14:00

I'm looking for...

*Discounts may not be based on former prices. See pricing policy



APP EXCLUSIVE
**EXTRA 20% OFF EVERYTHING***
(Yep, even sale) USE CODE: EXTRA20
*Excludes Selected Lines

ES & SWIMWEAR    SHOP DRESSES & SWIMWEAR    SHOP DRE



60% OFF
*everything*

*Excluding Selected Lines & Sale

OR

50% OFF
*everything*

+ Free Express Shipping**


Home


Shop


Cart


Crushes


Profile

14:00

## PRICING POLICY



Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors. That's why before checking out with your new Nasty, it's important to acknowledge that you understand this.

CLOSE



Floral Print Satin Cut Out Long Sleev...

Floral Print Satin Cut Out Long
Sleeve Dress

$124.00*



DETAILS | SHIPPING | RETURNS

APP EXCLUSIVE
**EXTRA 20% OFF EVERYTHING***
(Yep, even sale) USE CODE: EXTRA20

*Excludes Selected Lines

**\*Pricing Policy**

Our percentage off promotions, discounts, or sale markdowns are
customarily based on our own opinion of the value of this product,
which is not intended to reflect a former price at which this product
has sold in the recent past. This amount represents our opinion of
the full retail value of this product today based on our own
assessment after considering a number of factors. That's why
before checking out with your new Nasty, it's important to
acknowledge that you understand this.

Recently Viewed

**boohoo**   new in / dresses / inspire me



# 60% OFF EVERYTHING + EXTRA 15% OFF

USE CODE **EXTRA15** | ENDS MIDNIGHT

OUR SECRET SALE HAS LANDED

## Shop Now >

Discounts may not be based on former prices. See pricing policy.

New In | Dresses | Shoes | Inspire Me



Unlimited Next Day Delivery for 1 Year 9.99



*50% off everything excluding sale, is automatically applied and applicable to selected lines only. Limited time only.

Privacy Notice · Unsubscribe · Customer Services
This email was sent to phil.devine@booho.com. boohoo.com and BOOHOO are registered trade marks and trading names of BOOHOO.COM UK LTD, a company registered in England and Wales (no. 0572315432). Registered office: 49–51 Dale Street, Manchester, M1 2HF.

# Exhibit H

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10   LAURA HABBERFIELD, an individual,        **CASE NO.: 2:22-cv-03899 GW (JEMx)**
     KEONA KALU, an individual, KATIE
11   RUNNELLS, an individual, JUANITA         **CLASS ACTION**
     CARMET CACHADINA, an individual,
12   SARAH HUEBNER, an individual,            **FINAL SETTLEMENT ORDER AND**
     YESENIA VALIENTE, an individual,         **JUDGMENT**
13   VERONICA WALTON, an individual,
     LISA MURPHY, an individual, NICOLE
14   HILL, an individual, NICOLE              HON. GEORGE H. WU
     STEWART, an individual, on behalf of     United States District Judge
15   themselves and all others similarly
     situated,
16
                    Plaintiffs,
17
                         v.
18
     BOOHOO.COM USA, INC., a Delaware
19   corporation, BOOHOO.COM UK
     LIMITED, a United Kingdom private
20   limited company, BOOHOO GROUP
     PLC, a Jersey public limited company,
21   PRETTYLITTLETHING.COM USA
     INC., a Delaware corporation,
22   PRETTYLITTLETHING.COM
     LIMITED, a United Kingdom private
23   limited company, NASTYGAL.COM
     USA INC., a Delaware corporation,
24   NASTY GAL LIMITED, a United
     Kingdom private limited company, and
25   DOES 1-10, inclusive,

26                  Defendants.

27

28

IT IS HEREBY ADJUDGED AND DECREED THAT:

1.     This Judgment incorporates by reference the definitions in the Class Action Settlement Agreement and Release dated April ▢, 2023 (the "Settlement"), attached hereto as Exhibit A, and all capitalized terms used herein shall have the same meanings as set forth in the Settlement unless set forth differently herein. The terms of the Settlement are fully incorporated in this Judgment as if set forth fully here.

2.     The Court has jurisdiction over the subject matter of this action and all Parties to the action, including all Settlement Class Members who do not timely exclude themselves from one or more of the Classes. The list of excluded Settlement Class Members was previously filed with the Court and is attached hereto as Exhibit B.

3.     Pursuant to Federal Rule of Civil Procedure 23, the Court hereby certifies the following Classes:

> (a)     All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://us.boohoo.com or https://www.boohooman.com/us/ or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class Counsel (the "Boohoo Class").

> (b)     All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://prettylittlething.us or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class Counsel (the "PrettyLittleThing Class").

> (c)     All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://nastygal.com or associated mobile phone applications between February 28, 2017 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this Action, and any partner or employee of Class Counsel (the "Nasty Gal Class").

4.     Pursuant to Federal Rule of Civil Procedure 23(c)(3), all such persons or

2

entities who satisfy the Class definition above, except those Settlement Class Members who timely and validly excluded themselves from the Class, are Settlement Class Members bound by this Judgment.

5.     For settlement purposes only, the Court finds:

(a)     Pursuant to Federal Rule of Civil Procedure 23(a), Laura Habberfield is a member of the Nasty Gal Class, her claims are typical of the Nasty Gal Class, and she fairly and adequately protected the interests of the Nasty Gal Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Laura Habberfield as a class representative of the Nasty Gal Class;

(b)     Pursuant to Federal Rule of Civil Procedure 23(a), Keona Kalu is a member of the Boohoo Class and Nasty Gal Class, her claims are typical of the Boohoo Class and Nasty Gal Class, and she fairly and adequately protected the interests of the Boohoo Class and Nasty Gal Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Keona Kalu as a class representative of the Boohoo Class and Nasty Gal Class;

(c)     Pursuant to Federal Rule of Civil Procedure 23(a), Katie Runnells is a member of the Boohoo Class, her claims are typical of the Boohoo Class, and she fairly and adequately protected the interests of the Boohoo Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Katie Runnells as a class representative of the Boohoo Class;

(d)     Pursuant to Federal Rule of Civil Procedure 23(a), Juanita Carmet Cachadina is a member of the Boohoo Class and Nasty Gal Class, her claims are typical of the Boohoo Class and Nasty Gal Class, and she fairly and adequately protected the interests of the Boohoo Class and Nasty Gal Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Juanita Carmet Cachadina as a class representative of the Boohoo Class and Nasty Gal Class;

(e)     Pursuant to Federal Rule of Civil Procedure 23(a), Sarah Huebner is a member of the Boohoo Class, her claims are typical of the Boohoo Class, and she

fairly and adequately protected the interests of the Boohoo Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Sarah Huebner as a class representative of the Boohoo Class;

(f)     Pursuant to Federal Rule of Civil Procedure 23(a), Yesenia Valiente is a member of the PrettyLittleThing Class, her claims are typical of the PrettyLittleThing Class, and she fairly and adequately protected the interests of the PrettyLittleThing Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Yesenia Valienta as a class representative of the PrettyLittleThing Class;

(g)     Pursuant to Federal Rule of Civil Procedure 23(a), Veronica Walton is a member of the Boohoo Class, her claims are typical of the Boohoo Class, and she fairly and adequately protected the interests of the Boohoo Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Veronica Walton as a class representative of the Boohoo Class;

(h)     Pursuant to Federal Rule of Civil Procedure 23(a), Lisa Murphy is a member of the PrettyLittleThing Class, her claims are typical of the PrettyLittleThing Class, and she fairly and adequately protected the interests of the PrettyLittleThing Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Lisa Murphy as a class representative of the PrettyLittleThing Class;

(i)     Pursuant to Federal Rule of Civil Procedure 23(a), Nicole Hill is a member of the Boohoo Class, her claims are typical of the Boohoo Class, and she fairly and adequately protected the interests of the Boohoo Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Nicole Hill as a class representative of the Boohoo Class;

(j)     Pursuant to Federal Rule of Civil Procedure 23(a), Nicole Stewart is a member of the Boohoo Class, PrettyLittleThing Class, and Nasty Gal Class, her claims are typical of the Boohoo Class, PrettyLittleThing Class, and Nasty Gal

Class, and she fairly and adequately protected the interests of the Boohoo Class, PrettyLittleThing Class, and Nasty Gal Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Nicole Stewart as a class representative of the Boohoo Class, PrettyLittleThing Class, and Nasty Gal Class;

(k)     Pursuant to Federal Rule of Civil Procedure 23(a), Me'Lisa Thimot is a member of the Boohoo Class and PrettyLittleThing Class, her claims are typical of the Boohoo Class and PrettyLittleThing Class, and she fairly and adequately protected the interests of the Boohoo Class and PrettyLittleThing Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Me'Lisa Thimot as a class representative of the Boohoo Class and PrettyLittleThing Class;

(l)     Pursuant to Federal Rule of Civil Procedure 23(a), Marika Walton is a member of the Boohoo Class, her claims are typical of the Boohoo Class, and she fairly and adequately protected the interests of the Boohoo Class throughout the proceedings in this action. Accordingly, the Court hereby appoints Marika Walton as a class representative of the Boohoo Class;

(m)    The Classes meet all the requirements of Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) for certification of the class claims alleged in the operative complaint in this action, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representative and Class Counsel; (e) predominance of common questions of fact and law among each of the Classes for purposes of settlement; and (f) superiority; and

(n)     Having considered the factors set forth in Rule 23(g)(1) of the Federal Rules of Civil Procedure, Class Counsel have fairly and adequately represented the Classes for purposes of entering into and implementing the Settlement. Accordingly, the Court hereby appoints Class Counsel as counsel to represent the Settlement Class Members.

6.      Persons who filed timely exclusion requests are not bound by this Judgment or the terms of the Settlement and may pursue their own individual remedies against

Defendants Boohoo Group PLC, Boohoo.com USA, Inc., Boohoo.com UK Limited, PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively, "Defendants"). However, such excluded parties are not entitled to any rights or benefits provided to Settlement Class Members by the terms of the Settlement. The list of persons and entities excluded from one or more of the Classes because they filed timely and valid requests for exclusion is attached hereto as Exhibit B.

7.     The Court directed that notice be given to Settlement Class Members by publication, e-mail, mail, and other means pursuant to the notice program proposed by the Parties in the Settlement and approved by the Court. The declaration from Kurtzman Carson Consulting (KCC) attesting to the dissemination of notice to the Classes demonstrates compliance with this Court's Order Granting Preliminary Approval of Class Settlement. The notice program set forth in the Settlement successfully advised Settlement Class Members of the terms of the Settlement, the Final Approval Hearing (referred to in the Settlement as the "Fairness Hearing"), and their right to appear at such hearing; their rights to remain in or opt out of one or more of the Classes and to object to the Settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Classes.

8.     The distribution of notice to the Classes constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. § 1715, and any other applicable law.

9.     Pursuant to Federal Rule of Civil Procedure 23(e)(2), the Court finds after a hearing and based upon all submissions of the Parties and other persons that the Settlement proposed by the Parties is fair, reasonable, and adequate. The terms and provisions of the Settlement are the product of arms-length negotiations conducted in good faith and with the assistance of an experienced mediator and former United States district judge, the Honorable Irma E. Gonzalez (Ret.). The Court has considered any timely objections to the

Settlement and finds that such objections are without merit and should be overruled. Approval of the Settlement will result in substantial savings of time, money and effort to the Court and the Parties, and will further the interests of justice.

10. Upon entry of this Final Settlement Order and Judgment, the named Plaintiffs, and each Settlement Class Member other than those listed on Exhibit B, shall be deemed to have fully, finally, and forever released and discharged all Class Released Claims against all Released Parties, as defined in the Settlement.

11. All Settlement Class Members who have not timely and validly submitted requests for exclusion are bound by this Judgment and by the terms of the Settlement.

12. Plaintiffs initiated this action, acted to protect the Classes, and assisted their counsel. Their efforts have produced the Settlement entered into in good faith that provides a fair, reasonable, adequate, and certain result for the Classes. Plaintiff Laura Habberfield is entitled to an incentive award of $1,500. Plaintiff Keona Kalu is entitled to an incentive award of $1,500. Plaintiff Katie Runnells is entitled to an incentive award of $1,500. Plaintiff Juanita Carmet Cachadina is entitled to an incentive award of $1,500. Plaintiff Sarah Huebner is entitled to an incentive award of $1,500. Plaintiff Yesenia Valiente is entitled to an incentive award of $1,500. Plaintiff Veronica Walton is entitled to an incentive award of $1,500. Plaintiff Lisa Murphy is entitled to an incentive award of $1,500. Plaintiff Nicole Hill is entitled to an incentive award of $1,500. Plaintiff Nicole Stewart is entitled to an incentive award of $1,500. Plaintiff Me'Lisa Thimot is entitled to an incentive award of $1,500. Plaintiff Marika Walton is entitled to an incentive award of $1,500. Class Counsel is entitled to reasonable attorneys' fees and costs, which the Court finds to be $4,197,000. Claims administrator Kurtzman Carson Consultants, LLC is entitled to a maximum amount of $1,000,000 for settlement administration costs.

13. The Court hereby dismisses with prejudice the claims of the Settlement Class Members in this action and the Released Parties are hereby released from all further liability for the Released Claims.

14. Without affecting the finality of this Judgment, the Court reserves jurisdiction

7

over the implementation, administration and enforcement of this Judgment and the Settlement, and all matters ancillary thereto.

15.    The Court finding that no reason exists for delay in ordering final judgment pursuant to Federal Rule of Civil Procedure 54(b), the clerk is hereby directed to enter this Judgment forthwith.

16.    The Parties are hereby authorized without needing further approval from the Court to agree to and adopt such modifications and expansions of the Settlement that are consistent with this Judgment and do not limit the rights of Settlement Class Members under the Settlement.

IT IS SO ORDERED.


Dated: _____, 2023          _____
                                  Hon. George H. Wu
                                  United States District Judge

8

# Exhibit I

From:   Settlement Administrator for Boohoo Nationwide Pricing Class Action
To:      JonQClassMember@domain.com
Re:     Your Boohoo $10 Gift Card with Free Shipping and Handling!

Class Member ID: XXXXXXXX

**CLASS ACTION SETTLEMENT GIFT CARD**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

*Habberfield v. Boohoo.com USA, Inc., et al.*
Case No. 2:22-cv-03899 GW (JEMx)



Dear [customer],

Below, please find the codes for your $10.00 Gift Card and for complimentary free shipping. Information regarding these codes can be found below.

$10.00 Code: [Code]
Free Shipping Code:  [Code]

- ▪ $10 Single-Use Gift Card with Free Shipping
- ▪ No Expiration Date
- ▪ No Minimum Purchase Requirement
- ▪ No Fees
- ▪ No Blackout Dates

- No Restriction on Use with Other Offers or Promotions
- No Restrictions on Transferability
- Multiple Gift Cards May Be Combined (visit the website here [LINK] to combine; you must provide the original email address and both the Gift Card and free shipping codes to combine)
- Replaceable if Lost (contact Settlement Administrator [live link])

**What should you do if your Boohoo Code is not working?**  If you are having trouble using your $10 Gift Card and Free Shipping, please try the following steps below. If you are still having trouble, please reach out again.

1. As a Boohoo Class Member, you should have received two codes: (1) a $10 Code; and (2) a Free Shipping Code. To utilize free shipping, first enter the Free Shipping Code in the following Promo code box on the checkout page:



Proceed with entering shipping information. To use your $10 Code, there is an option to enter a "Gift voucher" on the Billing page above Payment method, which is where you should enter the $10 Code provided in our email:



The codes must be entered in the order and in the boxes stated above. The $10 Code will not work in the Promo code box, and the Free Shipping Code will not work in the Gift voucher box.

2. Ensure you are logged into your Boohoo account using the email address which received the $10 Code and Free Shipping Code. The $10 Code and Free Shipping Code will not work if you are logged into another account associated with a different email address.

3.   Be sure to copy and paste the codes from the email you received to ensure accuracy—the codes are case-sensitive. We do not recommend typing the codes in manually because it increases the risk of error.

4.   Your Boohoo $10 Code and Free Shipping Code may not be redeemed on other websites, such as Nasty Gal or PrettyLittleThing. These can be redeemed for use only on Boohoo's website.

5.   If you would like to combine your Boohoo $10 Code with another Class Member's Boohoo $10 Code, you must visit the website, [LINK], to combine, along with the original email addresses assigned to all $10 Codes you wish to combine, and the original Shipping Codes. You may not combine Free Shipping Codes. If you would like to transfer your Boohoo $10 Code and Free Shipping Code to a third party, you must visit the same website to transfer those codes to the third party's email address.

Please contact us if you have any additional questions.

Thank you,

Settlement Administrator

[Email]

From:  Settlement Administrator for Nasty Gal Nationwide Pricing Class Action
To:    JonQClassMember@domain.com
Re:    Your NastyGal $10 Gift Card with Free Shipping and Handling!

Class Member ID: XXXXXXXX

## CLASS ACTION SETTLEMENT GIFT CARD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

*Habberfield v. NastyGal.com USA, Inc., et al.*
Case No.: 2:22-cv-03899 GW (JEMx)



Dear [customer],

Below, please find the codes for your $10.00 Gift Card and for complimentary free shipping. Information regarding these codes can be found below.

$10.00 Code: [Code]
Free Shipping Code:  [Code]

- $10 Single-Use Gift Card with Free Shipping
- No Expiration Date
- No Minimum Purchase Requirement
- No Fees
- No Blackout Dates

- No Restriction on Use with Other Offers or Promotions
- No Restrictions on Transferability
- Multiple Gift Cards May Be Combined (visit the website here [<mark>LINK</mark>] to combine; you must provide the original email address and both the Gift Card and free shipping codes to combine)
- Replaceable if Lost (contact Settlement Administrator [<mark>live link</mark>])

**What should you do if your Nasty Gal Code is not working?** If you are having trouble using your $10 Gift Card and Free Shipping, please try the following steps below. If you are still having trouble, please reach out again.

1. As a Nasty Gal Class Member, you should have received two codes: (1) a $10 Code; and (2) a Free Shipping Code. To utilize free shipping, first enter the Free Shipping Code in the following Promo code box on the checkout page:



Proceed with entering shipping information. To use your $10 Code, there is an option to enter a "Gift voucher" on the Billing page above Payment method, which is where you should enter the $10 Code provided in our email:



The codes must be entered in the order and in the boxes stated above. The $10 Code will not work in the Promo code box, and the Free Shipping Code will not work in the Gift voucher box.

2. Ensure you are logged into your Nasty Gal account using the email address which received the $10 Code and Free Shipping Code. The $10 Code and Free Shipping Code will not work if you are logged into another account associated with a different email address.

3.  Be sure to copy and paste the codes from the email you received to ensure accuracy—the codes are case-sensitive. We do not recommend typing the codes in manually because it increases the risk of error.

4.  Your Nasty Gal $10 Code and Free Shipping Code may not be redeemed on other websites, such as Boohoo or PrettyLittleThing. These can be redeemed for use only on Nasty Gal's website.

5.  If you would like to combine your Nasty Gal $10 Code with another Class Member's Nasty Gal $10 Code, you must visit the website, [LINK] to combine, along with the original email addresses assigned to all $10 Codes you wish to combine, and the original Shipping Codes. You may not combine Free Shipping Codes. If you would like to transfer your Nasty Gal $10 Code and Free Shipping Code to a third party, you must visit the same website to transfer those codes to the third party's email address.

Please contact us if you have any additional questions.

Thank you,

Settlement Administrator

[Email]

From:    Settlement Administrator for PrettyLittleThing Nationwide Pricing Class Action
To:        JonQClassMember@domain.com
Re:        Your PrettyLittleThing $10 Gift Card with Free Shipping and Handling!

Class Member ID: XXXXXXXX

**CLASS ACTION SETTLEMENT GIFT CARD**

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

*Habberfield v. Prettylittlething.com USA Inc., et al.*
Case No.: 2:22-cv-03899 GW (JEMx)

Dear [customer],

Below, please find the token for your $10.00 gift card and for complimentary free shipping. Information regarding this can be found below.

By clicking on the below token, you are activating the token on the account that is associated with this email, and you will no longer be able to transfer or combine this gift card. If you would like the token associated with a different email **do not click the token link**, instead please visit our website to request the token be transferred to a different email address by clicking here: [LINK]

$10.00 and Free Shipping Token: [Token ID]

Activate your token here:  [URL Token]

- ▪ $10 Single-Use Gift Card with Free Shipping
- ▪ No Expiration Date
- ▪ No Minimum Purchase Requirement
- ▪ No Fees
- ▪ No Blackout Dates
- ▪ No Restriction on Use with Other Offers or Promotions
- ▪ No Restrictions on Transferability
- ▪ Multiple Gift Cards May Be Combined (visit the website here [LINK] to combine, you must provide the original email address and the token to combine)
- ▪ Replaceable if Lost (contact Settlement Administrator [live link])

**What should you do if your PrettyLittleThing Code is not working?** If you are having trouble using your $10 Gift Card and Free Shipping, please try the following steps below. If you are still having trouble, please reach out again.

1.  As a PrettyLittleThing Class Member, you should have received a token link for a $10 Code and Free Shipping. Ensure you are logged into your PrettyLittleThing account with the email address which received the Gift Card. This is the email address that the Gift Card and Free Shipping is assigned to, and if you are logged in with a different email address, the Gift Card and Free Shipping cannot be redeemed.

2.  We recommend first logging out of your account before clicking the "Activate your token" link. After logging out, you can simply click the "Activate your token" link to utilize the Gift Card and Free Shipping and for logging into the account associated with the email address which received the Gift Card. The Gift Card and Free Shipping cannot be redeemed by copying and pasting the token code into the Coupon Code box at checkout as it will not be recognized.

3.  If you would like to transfer your PrettyLittleThing Gift Card to a different email address than the one which received the Gift Card, you must visit the website, [LINK], to do so. If you wish to transfer your Gift Card, then do not click the "Activate your token" link or your Gift Card and Free Shipping will be permanently assigned to the account associated with the email address which received the Gift Card. If this is an old account you are no longer using, and you have already clicked "Activate your token," the Gift Card and Free Shipping have already been applied to this account. Please follow the instructions on PrettyLittleThing's website on the FAQ page to access "What should I do if I forgot my Password?", in order to login to your old account and utilize the Gift Card and Free Shipping.

4.  If you would like to combine your PrettyLittleThing Gift Card with another Class Member's PrettyLittleThing Gift Card, you must visit the website, [LINK], to combine the Gift Cards, along with the original email addresses assigned to all Gift Cards you wish to combine. You may not combine Free Shipping Codes. If you wish to combine your Gift Card, then do not click the "Activate your token" link or your Gift Card and Free Shipping will be permanently assigned to the account associated with the email address which received the Gift Card.

5.   Your PrettyLittleThing Gift Card and Free Shipping may not be used on other websites. They can be redeemed for use only on PrettyLittleThing's website.

Please contact us if you have any additional questions.

Thank you,

Settlement Administrator

[email]

# Exhibit J

# Shopped on boohoo?

## Live in the USA (outside California)?

Check your email for your

# $10 GIFT CARD

and

# FREE SHIPPING

**CLICK HERE** for more information



SHOPPED ON BOOHOOMAN,
LIVE IN THE U.S.A
(OUTSIDE CALIFORNIA)?

CHECK YOUR EMAIL FOR YOUR
**$10 GIFT CARD AND FREE SHIPPING**

**CLICK HERE FOR MORE INFORMATION**

boohooMAN



SHOPPED ON

# NASTY GAL

LIVE IN THE U.S.A
(OUTSIDE CALIFORNIA)?

CHECK YOUR EMAIL
FOR YOUR $10 GIFT CARD
AND FREE SHIPPING...

Click here for more information



# EXHIBIT 2

1  Yasin M. Almadani (Cal. Bar No. 242798)
   ALMADANI LAW
2  4695 MacArthur Ct., Suite 1100
   Newport Beach, CA 92660
3  T (949) 877-7177 | F (949) 877-8757
   YMA@LawAlm.com
4
   Ahmed Ibrahim (Cal. Bar No. 238739)
5  AI LAW, PLC
   4695 MacArthur Ct., Suite 1100
6  Newport Beach, CA 92660
   T (949) 266-1240 | F (949) 266-1280
7  aibrahim@ailawfirm.com

8  *Attorneys for Plaintiffs*

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FARID KHAN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-03332-GW-JEMx<br><br>Consolidated for Pretrial Purposes with:<br>No. 2:20-cv-04658-GW-JEM<br>No. 2:20-cv-04659-GW-JEM<br><br>Hon. George H. Wu<br><br>NOTICE OF DEPOSITION OF BOOHOO.COM USA, INC., BOOHOO.COM UK LIMITED, BOOHOO GROUP PLC, PRETTYLITTLETHING.COM USA INC., PRETTYLITTLETHING.COM LIMITED, NASTYGAL.COM USA INC., AND NASTY GAL LIMITED, PURSUANT TO RULE 30(b)(6)<br><br>Date:        January 28, 2022<br>Time:       6:00 a.m. PST<br>Place:      Remote Means<br>                 (Videoconference Technology)<br><br>Action Filed: April 9, 2020<br><br>Trial Date:   TBD |

**TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that Plaintiffs Farid Khan ("Khan"), Haya Hilton ("Hilton"), and Olivia Lee ("Lee") (collectively, "Plaintiffs"), by and through their attorneys of record, on behalf of themselves and members of the putative class they each represent, will take the deposition of Defendants Boohoo Group PLC, Boohoo.com USA, Inc., Boohoo.com UK Limited, PrettyLittleThing.com USA, Inc., PrettyLittleThing.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively, "Defendants") pursuant to Rule 30(b)(6) on the topics specified below. The deposition of will take place beginning January 28, 2022 at 6:00 a.m. Pacific Time, and may be adjourned and continue from day to day, excluding Sundays and holidays, until completed, and may occur over several days. The depositions will be taken upon oral examination before a Certified Shorthand Reporter and will be recorded by video.

Due to the ongoing COVID-19 global pandemic, the depositions will be taken by utilizing a secured web-based option, by utilizing a video teleconferencing option (e.g., Zoom), or telephonically, to provide remote and/or virtual access for the witness, counsel for the witness, the deposing party, and all other parties wishing to participate in the deposition via the internet and/or telephone. Plaintiffs reserve the right to record the deposition either by stenographic means by a court reporter certified to record depositions or a digital reporter utilizing state-of-the-art digital recording equipment. Both the court reporter and digital reporter are authorized to administer the oath and lawfully serve as the deposition officer in connection with the deposition.

Please take note that the deposition officer may also be remote and out of the presence of the deponent via one of the options above for the purposes of providing the oath/affirmation to the deponent and capturing the proceeding. Plaintiffs further reserve the right to utilize the following: (1) record the deposition utilizing audio or video technology; (2) instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in Realtime; (3) exhibit display or capture technology in which any exhibit reviewed by the deponent during the deposition can be captured visually; and (4) to conduct this deposition utilizing a paperless exhibit display process or virtual display platform.

The parties are advised that, in lieu of a paper set of exhibits, exhibits may be provided and displayed digitally to the deposition officer, deponent, parties and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

The matters for examination at the deposition are as follows.  Plaintiffs seek to depose the officer(s), director(s), managing agent(s), or other person(s) designated by Defendants who consent to testify on Defendants' behalf, and are knowledgeable about the matters set forth below so that they are qualified and prepared to testify about all information known or reasonably available to Defendants about said matters.

1.     The corporate structure and organization for Defendants, along with their subsidiaries that own and operate Defendants' U.S. websites that are the subject of this lawsuit, including but not limited to, for example, information about the divisions and departments in each of the subsidiaries, their function, and the board and corporate governance hierarchy and management hierarchy.

2.     Operation of the subject websites, including but not limited to, for example, which entities and departments/divisions are responsible for operating the U.S. websites, including content, pricing, marketing, advertising, product selection, hosting and IT management, and finances.

3.     Defendants' use of "reference prices" on their U.S. websites throughout the class period, as referred to in this lawsuit, including but not limited to, for example, the policies, formal or informal, used to set and change these prices, the persons involved in setting, changing, and approving these prices, the methodology used to set or change these prices, including the data points or metrics utilized in determining and changing these prices, the relationship (if any) between these prices and sales or selling prices (*see* next topic), the relationship (if any) between these prices and profit margins, the relationship (if any) between these prices and prices for the same products in countries other than the United States, any software or other tools (if any) used to assist with setting these prices, and the various terms used internally by Defendants to refer to these prices.

4.      Defendants' use of "sales prices" or "selling prices," i.e. the prices at which the items are actually offered for sale on their U.S. websites, throughout the class period as referred to in this lawsuit, including but not limited to, for example, the policies, formal or informal, used to set and change these prices, the persons involved in setting, changing, and approving these prices, the methodology used to set or change these prices, including the data points or metrics utilized in determining and changing these prices, the relationship (if any) between these prices and reference prices (*see* previous topic), the relationship (if any) between these prices and profit margins, the relationship (if any) between these prices and prices for the same products in countries other than the United States, any software or other tools (if any) used to assist with setting these prices, and the various terms used internally by Defendants to refer to these prices.

5.      The setting of sales and markdowns on the Defendants' websites in the United States, including but not limited to, for example, the sales and markdowns advertised on the website, methods of advertisements such as email blasts, text, social media, who decides which sales and markdowns to advertise, what goes into the decisions, and the side-wide sales that were run across on the U.S. websites for the relevant class period.

6.      All material aspects of the sales spreadsheets produced in discovery, including, but not limited to, what each column means, verification that the data is authentic and accurate, what the information in the spreadsheet represents, and confirmation that Defendants have produced all pricing data in their possession responsive to Plaintiffs' requests for production.

7.      The production of promotional calendars and whether they accurately represent the promotions that were advertised on Defendants' U.S. websites for each day represented in the documents, what each of the promotions means and represents, to which products the promotions apply and which products are excluded, how it is decided as to which promotion will be advertised for a given day, and confirmation that all promotional calendars applicable to this lawsuit have been produced.

8.      Defendants' Responses to Requests for Admission and Plaintiffs' Interrogatory No. 16, including the reasons why certain requests were denied and others were admitted, the information and data behind the admissions and denials, and amendments to the responses.

9.      Consumer marketing surveys and research (whether done in-house or through outside firms) conducted by Defendants, who the brands consider their target markets, and what generally were Defendants' findings in connection with any surveys and research performed.

10.     Summary level financial data for Defendants' U.S. activities during the relevant class periods broken down by year, including but not limited to, for example, annual sales figures, cost of goods sold, gross margins, variable costs, overhead costs, and net profits and margins.

11.     Verification of the total number of California class members and how Defendants arrived at that number, and a confirmation that Defendants will continue to faithfully keep track of the class members pursuant to the parties' agreement.

12.     Verification of the figure Defendants provided to representing Defendants' average shipping cost and the methodology used to calculate that figure.

Please contact the noticing attorney at least three (3) calendar days prior to the deposition to advise that it is your desire to appear and participate via this remote method so that the necessary hyperlinks, credentials, call-in numbers, firm name, email address, services, testing and information, if necessary, can be arranged and provided to you prior to the proceeding(s).

The deposition will be taken for the purposes of discovery, for use at trial in this matter, and for any other purpose permitted under the Federal Rules of Procedure, and Plaintiffs specifically reserve the right to use at trial any such video, recording or transcript of the deposition.

/       /       /

/       /       /

/       /       /

NOTICE OF DEPOSITION OF BOOHOO DEFENDANTS PURSUANT TO RULE 30(b)(6)

Defendants must inform Plaintiffs, through their respective attorneys of record, of the need, if any, for an interpreter for said deposition within three (3) days prior to the deposition date. If an interpreter is requested, it is required by the above-named deponent to inform Plaintiffs through his respective attorneys of record within 24 hours of any cancellation or costs will be owed to Plaintiffs' counsel at the time of deposition.

Dated:  January 24, 2022

ALMADANI LAW

By: _____

Yasin M. Almadani, Esq.

AI LAW, PLC

Ahmed Ibrahim, Esq.

*Attorneys for Plaintiff*

NOTICE OF DEPOSITION OF BOOHOO DEFENDANTS PURSUANT TO RULE 30(b)(6)

## **PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is as follows:  Almadani Law, 4695 MacArthur Ct., Suite 1100, Newport Beach, California 92660.

On **January 24, 2022**, I served the document(s) listed immediately below on each person(s) and/or entity(ies) named below by causing the document(s) to be mailed, hand-delivered, e-mailed, or faxed, as indicated herein:

- NOTICE OF DEPOSITION OF THE BOOHOO, PRETTYLITTLETHING, AND NASTYGAL DEFENDANTS PURSUANT TO RULE 30(b)(6)

Person(s) and/or entity(ies) served as follows:

| [ ]  BY MAIL | I caused such envelope with postage fully prepaid thereon to be placed in the United States Mail within Los Angeles County. |
|---|---|
| [ ]  BY OVERNIGHT MAIL | I caused such document(s) to be placed in a box or other facility regularly maintained by an express mail carrier, in an envelope designated by such carrier with delivery fees fully prepaid thereon, or provided for, addressed to the person on whom it is to be served, within Los Angeles County. |
| [ ]  BY FACSIMILE | I caused such document(s) to be faxed to the number(s) indicated in the attached service list. |
| [ ]  BY HAND-DELIVERY | I caused such document(s) to be delivered by hand to each person(s) and/or entity(ies) named in the attached service list. |
| [X]  BY E-MAIL | I caused such document(s) to be electronically transmitted to the e-mail address(es) reflected in the attached service list. |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **January 24, 2022**, at La Mirada, California.

Yasin M. Almadani, Esq.

# EXHIBIT 3

# FILED CONDITIONALLY UNDER SEAL

# EXHIBIT 4

# FILED CONDITIONALLY UNDER SEAL

# EXHIBIT 5

# FILED
# CONDITIONALLY
# UNDER SEAL

# EXHIBIT 6

# FILED CONDITIONALLY UNDER SEAL

# EXHIBIT 39



# EXHIBIT 42

Home  /  PRETTYLITTLETHING Stone Colour Block Zip Sweat Jumpsuit






## PRETTYLITTLETHING STONE COLOUR BLOCK ZIP SWEAT JUMPSUIT

~~$68.00~~

**$41.00** (40% OFF)

**Color:** Stone



**US Size:**

| | | | | |
|---|---|---|---|---|
| 0 (XS) | 2 (S) | 4 (S) | 6 (M) | 8 (M) |
| 10 (L) | 12 (L) | | | |

Size Guide

SELECT SIZE   ♡



| Pay in 4 easy instalments every 2 weeks with **Klarna** | Pay in 4 easy instalments every 2 weeks with **afterpay** |

FURTHER REDUCTIONS - UP TO 80% OFF EVERYTHING* - HURRY LIMITED TIME ONLY

CMN3532

PRETTYLITTLETHING Stone Colour Block Zip Sweat Jumpsuit

Give your off-duty look a chilled vibe with this jumpsuit doll. Featuring a colour blocked design with a zip front and tie waist detail, we're obsessed. Style with fresh kicks for a statement weekend worthy combo.

- Length approx 132cm/52" (Based on a sample size UK 8)
- Model wears size UK 8/ EU 36/ AUS 8/ US 4
- Model Height - 5ft 6"



Share

# EXHIBIT 43

FILED
CONDITIONALLY
UNDER SEAL – LODGED
AS NON-PAPER COPY
PURSUANT TO L.R. 11-
5.1 (SEE DOCKET ENTRY
131)

# EXHIBIT 44

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 45

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 46

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 48

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 49

FILED
CONDITIONALLY
UNDER SEAL – LODGED
AS NON-PAPER COPY
PURSUANT TO L.R. 11-
5.1 (SEE DOCKET ENTRY
131)

# EXHIBIT 49A

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 71

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 72

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 73

FILED
CONDITIONALLY
UNDER SEAL – LODGED
AS NON-PAPER COPY
PURSUANT TO L.R. 11-
5.1 (SEE DOCKET ENTRY
131)

# EXHIBIT 74

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 74A

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 74B

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 74C

FILED CONDITIONALLY UNDER SEAL – LODGED AS NON-PAPER COPY PURSUANT TO L.R. 11-5.1 (SEE DOCKET ENTRY 131)

# EXHIBIT 134







Plus Size Gingham Floral Midi Skirt
~~$60.00~~ $30.00

Collared Button Down Gabardine Mac
~~$162.00~~ $81.00

Ditsy Floral Print Long Sleeve Midi Dress
~~$99.00~~ $49.50

Knitted One Shoulder Top and Cardigan Set
~~$79.00~~ $39.50

Recycled Checkerboard Cropped Top
~~$30.00~~ $15.00

Petite Long Sleeve Wrap Satin Mini Dress
~~$69.00~~ $34.50

Real Leather Drawstring Waist Straight Leg Pants
~~$260.00~~ $80.70

Recycled Checkerboard Cropped Racer Vest
~~$26.00~~ $13.00

Graffiti Print Cropped Mesh Top
~~$39.00~~ $19.50

Satin Co Ord Wide Leg Pant
~~$79.00~~ $39.50

Get it in time for Valentine's Day - Download the app for exclusive FREE SHIPPING*

# EXHIBIT 142

















# EXHIBIT 156



# EXHIBIT 158



# EXHIBIT 159

