EVERSHEDS SUTHERLAND (US) LLP
Ronald W. Zdrojeski (admitted PHV)
ronzdrojeski@eversheds-sutherland.com
1114 6th Avenue, 40th Floor
New York, NY 10036
Telephone:  (212) 389-5000
Facsimile:   (212) 389-5099

EVERSHEDS SUTHERLAND (US) LLP
Ian S. Shelton (CA Bar No. 264863)
ianshelton@eversheds-sutherland.com
500 Capitol Mall, Suite 1750
Sacramento, CA 95814
Telephone:  (916) 844-2965
Facsimile:   (916) 241-0501

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LAURA HABBERFIELD, an individual, on behalf of herself and all others similarly situated, et al.<br><br>Plaintiffs,<br><br>v.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, et al.,<br><br>Defendants. | Case No. 2:22-cv-03899 GW (JEMx)<br><br>**STIPULATION IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>**<u>REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL</u>** |

This Stipulation is made by Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively, "Plaintiffs"), on the one hand, and Defendants Boohoo Group PLC ("Boohoo Group"), Boohoo.com USA Inc., Boohoo.com UK Limited, PrettyLittleThing.com USA Inc., PrettyLittleThing.com UK Limited, NastyGal.com USA Inc., and Nasty Gal Limited (collectively, "Defendants"), on the other hand. The

parties hereby stipulate to the following:

1. Boohoo Group is the ultimate parent of Boohoo.com UK Limited, PrettyLittleThing.com UK Limited, and Nasty Gal Limited, which are internet retailers selling women's and men's clothing, footwear, accessories, and beauty products direct to consumers throughout the world, including the United States. Boohoo Group owns the three brands that are the subject of this litigation: boohoo (which includes boohooMAN) ("BH"), PrettyLittleThing ("PLT"), and Nasty Gal ("NG"). In addition to operations located in the United Kingdom, boohoo, boohooMAN, and PLT each have a marketing office with employees in the Los Angeles area. Shares of Boohoo Group are publicly traded on AIM, a sub-market on the London Stock Exchange.

2. Defendants collected and produced the available information reflecting company sales transactions during the class period for the dates reflected below. Because Defendants do not maintain sales transaction data in individual spreadsheet format, Defendants collected the available historical information from company databases and produced the sales transaction data as individual spreadsheets, assigning each spreadsheet the bates-numbers referenced below.

    a.    PLT: D00000871-D00000999, D00546193 (Feb 29, 2016 – Jan 28, 2021);

    b.    PLT: D00546059-D00546080, D00546193 (Jan 29, 2021 – Nov 29, 2021);

    c.    PLT: D00546132-D00546153, D00546193 (Nov 30, 2021 – June 17, 2022);

    d.    BH: D00001000-D00001125 (Mar 28, 2016 – Jan 24, 2021);

    e.    BH: D00546081-D00546102 (Jan 25, 2021 – Dec 7, 2021);

    f.    BH: D00546118-D00546131, D00546195 (Dec 7, 2021 – June 17, 2022);

    g.    NG: D00001000-D00001125 (Feb 28, 2017 – Jan 24, 2021);

    h.  NG: D00546081-D00546102 (Jan 25, 2021 – Dec 7, 2021);

    i.  NG: D00546118-D00546131, D00546195 (Dec 7, 2021 – June 17, 2022).

  3.  The sales data identified in the previous paragraph represents the complete and accurate U.S. sales data available to the Defendants for the dates indicated, and all data represents sales to U.S. customers.

  4.  For the spreadsheets reflecting boohoo, boohooMan, and NastyGal sales data, the columns presented in each spreadsheet should be interpreted as denoting the following:

    a.  "Website" reflects the U.S. website from which an item was ordered, with "BOO" identifying U.S. boohoo website, "GAL" identifying the U.S. Nasty Gal website, and "MAN" identifying the U.S. boohooMan website.

    b.  "WebsitePrice" reflects, based on the available historic records maintained by Defendants, the original or full price of the respective product (what Plaintiffs have called the "reference price" in this litigation) advertised on the U.S. website on the date reflected.

    c.  "ActualSoldPrice" reflects the actual price at which the respective product was sold (inclusive of any discounts and promotions) on the U.S. website on the date reflected.

    d.  "EstimatedCost" reflects the acquisition cost of the product from the product supplier, inclusive of all freight and import duty costs, to Defendants' warehouses in the U.K.

    e.  All figures are reflected in U.S. Dollars ("USD") unless otherwise indicated. For the very few items that are not in USD, those items were sold to U.S. customers but were paid for using the currency identified.

    f.  "boohooInternalSystemID" reflects the internal system order number for the respective order, i.e., not the customer-facing order number.

3

*Stipulation in Support of Motion for*        Case No. 2:22-cv-03899 GW (JEMx)
*Preliminary Approval of Class Settlement*

5. For the spreadsheets reflecting PrettyLittleThing sales data, the columns presented in each spreadsheet should be interpreted as denoting the following:

    a. "Gross Original Price LC" reflects the original or full price of the respective product (what Plaintiffs have called the "reference price" in this litigation) on the U.S. PLT website on the date reflected.

    b. "Gross Markdown LC" reflects the dollar markdown on products in the "Sale" category on the U.S. PLT website.

    c. "Gross Post Markdown LC" reflects the actual advertised sale price of the respective products in the "Sale" category on the U.S. website.

    d. "Gross Promotion Discount LC" reflects the dollar markdown under an advertised sitewide promotion on the U.S. PLT website.

    e. "Gross Product Sales LC" reflects the final price actually paid by a customer after accounting for all discounts and inclusive of tax.

    f. "Net Product Sales LC" reflects the final price paid by a customer accounting for all discounts and exclusive of sales tax.

    g. "Product Cost" reflects the cost of the product inclusive of shipping to Defendants' warehouse.

    h. "LC" denotes "Local Currency" and all figures in columns with "LC" are in USD. The figures in columns without LC are in Great Britain pound sterling ("GBP")

    i. "Region" denotes the state in which the product was sold. For entries missing in this column, it is reasonable to assume that the contact information provided by the customer contained an error or missing data prohibiting Defendants from identifying the particular state for that customer.

6. To the extent there is any inconsistency between the sales data and the information reflected in the promotional calendars, the parties have carefully reviewed the available information and determined it would be reasonable to rely on the

4

1 promotional calendars to reflect the historical promotions applied.

2     7.    If any of the sales data referenced above reflects aberrations or variations in the prices advertised for products on Defendants' U.S. websites on any given day, taking the mode of the price on that day is a reasonable approach to interpreting the data.

8. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

9. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

10. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

11. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

---

[1] Italicized text (¶¶ 8-11) is designated as "Confidential."

[redacted]

12. The document attached hereto as "Exhibit 1" truly and accurately represents the number of class members through the date reflected. The source of "Exhibit 1" was Defendants' business records, including various databases maintained by Defendants containing customer information and actual sales transaction data recorded as the sales occur in the ordinary course of business. Accordingly, the compilation and summary set forth in "Exhibit 1" is a chart of voluminous business records under Federal Rule of Evidence 1006.

13. Defendants customarily charge shipping and handling to their customers on the four subject websites. The document attached hereto as "Exhibit 2" truly and accurately represents Defendants' average shipping cost for the class period. The source of "Exhibit 2" was Defendants' business records, including various databases maintained by Defendants containing actual sales transaction data recorded as the sales occur in the ordinary course of business and which reside in company databases. Accordingly, the compilation and summary set forth as "Exhibit 2" is a chart of voluminous business records under Federal Rule of Evidence 1006.

14. Attached hereto as "Exhibit 3" is a true and correct copy of summaries of profit and loss statements presently maintained by Defendants for Boohoo for the period covering fiscal year 2017 through at least June 17, 2022, and Nasty Gal for the period covering fiscal year 2018 through at least June 17, 2022. The fiscal year for Boohoo and Nasty Gal commences each year on March 1 and ends on February 28 the following year. Because the organization is currently working on the Boohoo and Nasty Gal year end accounting for fiscal year 2023, it does not have available all final accounting figures, and thus the summaries covering the period March 1, 2022 through June 17

2022, are based off unaudited management information and , do not include some line items described below in the ensuing paragraph that are contained in the prior fiscal year summaries. The source of the information used to create "Exhibit 3" was financial data drawn from U.S. customer sales order transactions and various accounting data for boohoo and Nasty Gal. All of this information is either recorded electronically as it occurs in the ordinary course of business (as in the case of customer sales) or is recorded by company employees in the ordinary course of business at or near the time that the underlying transaction occurs. Accordingly, the compilation and summary set forth as "Exhibit 3" is a chart of voluminous business records under Federal Rule of Evidence 1006.

15. The statements in "Exhibit 3" relate to U.S. sales only and are broken down by sales to California consumers versus sales to the rest of the U.S. The figures in the statements are presented in Great Britain pound sterling (GBP) and are in the thousands. The sales for boohooMAN are included in the statement for Boohoo where indicated. Below is a summary of what each of the line items in "Exhibit 3" means:

    a. "Gross Sales" represents all product sales and taxes before deducting products returned, adding shipping fees (also referred to as "carriage") collected from customers and the impacts of currency exchange rates.

    b. "Sales" represents "Gross Sales" after deducting taxes collected from the customer.

    c. "Net Sales" measures all "Sales" minus products returned and adding shipping fees and the impacts of currency exchange rates.

    d. "Margin" refers to the gross profit margin from the sale of products on the U.S. website in question and is computed by taking "Net Sales" and subtracting the cost of goods sold, which in turn is computed by taking the costs paid to the manufacturers to make the products sold on the sites and the freight costs paid to deliver the products to the Boohoo and Nasty Gal distribution warehouses in the U.K.

  e. "Distribution Costs" refers to costs associated with storing and managing inventory and processing orders in the warehouse for the brand in question in the U.K., along with the total costs of shipping orders to the U.S.

  f. "Marketing Costs" refers to all direct or allocated marketing and advertising costs for U.S. sales, including paid online advertisements (e.g., Google), paid social media advertising (e.g., Facebook, Instagram), billboards, and influencer advertising.

  g. "Overheads" represents the proportion of fixed costs (e.g., staffing costs, rent, utilities, administrative functions, etc.) other than Distribution Costs and Marketing Costs allocated to U.S. sales for the brand in question.

  h. "E B I T D A" refers to earnings before interest, taxes, depreciation, and amortization, which is a measure of how profitable the business is from its sales operations.

  i. "June FM" refers to June Full Month.

16. Attached hereto as "Exhibit 4" is a true and correct copy of summaries of profit and loss statements for PrettyLittleThing for the period covering fiscal year 2017 through at least June 17, 2022. The source of the information used to create "Exhibit 4" was financial data drawn from U.S. customer sales order transactions and various accounting data for PrettyLittleThing. All of this information is either recorded electronically as it occurs in the ordinary course of business (as in the case of customer sales) or is recorded by company employees in the ordinary course of business at or near the time that the underlying transaction occurs. Accordingly, the compilation and summary set forth as "Exhibit 4" is admissible as a chart of voluminous business records under Federal Rule of Evidence 1006.

17. The fiscal year for PrettyLittleThing commences each year on March 1 and ends on February 28 the following year. The statements relate to U.S. sales only and are broken down by sales to California consumers versus sales to the rest of the U.S. The

8

*Stipulation in Support of Motion for Preliminary Approval of Class Settlement*  Case No. 2:22-cv-03899 GW (JEMx)

figures in the statements are presented in Great Britain pound sterling (GBP) and are in the thousands. Below is a summary of what each of the line items in "Exhibit 4" means:

    a.    "Sales" represents all sales of product collected from customers, after deducting taxes collected.

    b.    "Returns" represents the aggregate amount of products purchased by customers that are returned to PrettyLittleThing.

    c.    "Carriage" refers to the aggregate amount collected from customers to ship out the products they purchased to the recipient.

    d.    "FX" is the impact of currency exchange rates.

    e.    "Net Sales" measures all "Sales" minus "Returns" plus "Carriage" and "FX".

    f.    "Stock Provision" is a reserve account used to measure the estimated amount of inventory on-hand whose value has to be adjusted to account for spoilage or obsolescence.

    g.    "Samples" refers to the total amount of inventory distributed without charge to individuals (e.g., influencers) for the purpose of marketing and promoting PrettyLittleThing products and its brand.

    h.    "COS" refers to cost of sales, which is the amount paid to the manufacturers to make the products sold on the site and the freight costs paid to deliver the products to the PrettyLittleThing distribution warehouse in the U.K.

    i.    "Gross Margin" refers to the gross profit margin from the sale of products on the U.S. website and is computed by taking "Net Sales" and subtracting "Stock Provision," "Samples," and "COS."

    j.    "Carriage Costs" refers to the total costs of shipping orders to the U.S.

    k.    "Returns Carriage" refers to the total costs paid by PrettyLittleThing for shipping items returned by customers back to the U.K.

l.  "Carriage Expense" is "Carriage Costs" plus "Returns Carriage."

m.  "Sales Margin" is another measure of gross profit margin that is computed by taking the "Gross Margin" and subtracting "Carriage Expense."

18. Pursuant to the parties' Settlement Agreement, class members have the ability to stack multiple Gift Cards in certain instances, and the Settlement Administrator will implement a process for stacking multiple Gift Cards. Defendants estimate that once Defendants receive the information necessary to stack the Gift Cards from the Settlement Administrator, the process for obtaining a new Gift Card code in the total amount of the surrendered Gift Cards will take approximately 24 hours or one business day. Defendants will use best efforts in facilitating the process of stacking Gift Cards.

19. On any given day, Defendants generally have thousands of products that may be purchased for $10 or less with a wide variety of styles across many different categories on their websites. For example, as of approximately February 28, 2023, Boohoo had 6,153 styles (17.4% of all available styles) on their U.S. website that were for sale at $10 or less; on March 1, 2023, BoohooMAN had 4,408 styles (26.8% of all available styles) on their U.S. website that were for sale at $10 or less; on February 28, 2023, PrettyLittleThing had 12,234 styles (36.2% of all available styles) on their U.S. website that were for sale at $10 or less; and on February 27, 2023, NastyGal had 620 styles (9.9% of all available styles) on their U.S. website that were for sale at $10 or less. Some of the styles available for purchase for $10 or less will have multiple colors available, allowing for an even larger number of available products for sale. These products generally span numerous product styles and categories, including, for example, tops, pants, dresses, skirts, shorts, swimwear, underwear, activewear, lingerie, sleepwear, footwear, accessories, etc. Going further back, as of approximately May 6, 2022, Boohoo had 8,681 styles (22% of all available styles) on their U.S. website that were for sale at $10 or less; BoohooMAN had 1,000 styles (12% of all available styles) on their U.S. website that were for sale at $10 or less; PrettyLittleThing had 7,955 styles (24.3%

10

1  of all available styles) on their U.S. website that were for sale at $10 or less; NastyGal
2  had 1,029 styles (9% of all available styles) on their U.S. website that were for sale at
3  $10 or less. These styles generally span numerous categories, including, for example,
4  tops, pants, dresses, skirts, shorts, swimwear, underwear, activewear, lingerie, sleepwear,
5  footwear, accessories, etc. Going even further back, as of approximately September 29,
6  2021, Boohoo had 7,668 styles (23% of all available styles) on their U.S. website that
7  were for sale at $10 or less; BoohooMAN had 3,296 styles (34% of all available styles)
8  on their U.S. website that were for sale at $10 or less; PrettyLittleThing had 6,971 styles
9  (22.6% of all available styles) on their U.S. website that were for sale at $10 or less; and
10 NastyGal had 1,713 styles (29.6% of all available styles) on their U.S. website that were
11 for sale at $10 or less. Boohoo, BoohooMAN, PrettyLittleThing, and NastyGal fully
12 expect that they will continue to offer into the foreseeable future thousands of products
13 that may be purchased for $10 or less with a wide variety of styles across many different
14 categories on their websites.

15       20.    Defendants Boohoo, PrettyLittleThing, and NastyGal have implemented
16 and will maintain on their U.S. websites across the remaining 49 states and U.S.
17 territories outside of California the website changes and other injunctive relief provisions
18 agreed to in the California-only settlement in the related matters of (1) *Khan v.*
19 *Boohoo.com USA Inc.*, No. 2:20-cv-03332-GW-JEMx, (2) *Hilton v.*
20 *PrettyLittleThing.com USA Inc.*, No. 2:20-cv-04658-GW-JEMx, and (3) *Lee v.*
21 *NastyGal.com USA Inc.*, No. 2:20-cv-04659-GW-JEMx (the "*Khan* Litigation").

22       21.    The parties agree that this case would not have settled without the benefit of
23 the litigation undertaken in the related *Khan* Litigation, including all discovery and
24 depositions taken in that Litigation. The *Khan* Litigation began as nationwide class
25 actions and ultimately resulted in a California class settlement. The litigation and
26 discovery efforts expended by counsel in the *Khan* Litigation overlap entirely with this
27 matter and the work was used extensively to bring about the resolution in this case.
28

Nevertheless, the parties faithfully engaged in additional discovery to ensure that all information and figures were up to date and conformed with the expanded class period in this matter through June 17, 2022.

SO STIPULATED.

*     *     *

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 6, 2023

JOHN LYTTLE, CEO
BOOHOO GROUP, PLC

_____
John Lyttle on behalf of Boohoo Group PLC

_____
John Lyttle on behalf of Boohoo.com USA, Inc.

_____
John Lyttle on behalf of Boohoo.com UK Ltd.

_____
John Lyttle on behalf of PrettyLittleThing.com USA Inc.

_____
John Lyttle on behalf of PrettyLittleThing.com UK Ltd.

_____
John Lyttle on behalf of NastyGal.com USA Inc.

_____
John Lyttle on behalf of Nasty Gal Ltd.

# Exhibit 1

*Privileged and Confidential*
*Prepared for Settlement Purposes Only*
*Protected by Rule 408*
*Inadmissible and Subject to Revision*

## Boohoo, Nasty Gal, PLT Class Member Numbers (*Habberfield*)

49 States (no CA), Incl. DC, Guam, PR, Am. Samoa, USVI, N. Mariana Islands
April 1, 2016 to June 17, 2022 (for Boohoo and PLT)
February 28, 2017 to June 17, 2022 (for Nasty Gal)

**Number of Class Members**
- Number of Boohoo customers (including MAN) – **4,766,122**
- Number of NastyGal customers – **2,102,813**
- Number of PLT customers – **4,443,766**

**Gift Card Distribution**
- Number of Customers who would receive one Gift Card (customers who made a purchase at U.S. website for 1 of 3 brands) – **7,773,765**
- Number of Customers who would receive two Gift Cards (customers who made a purchase at U.S. website for 2 of 3 brands) – **1,396,469 (2,792,938 Gift Cards)**
- Number of Customers who would receive three Gift Cards (customers who made a purchase at U.S. website for 3 brands) – **248,666 (745,998 Gift Cards)**

Total number of Unique Class Members – **9,418,900**
Total number of Gift Cards – **11,312,701**

48542444.1

# Exhibit 2

# FILED CONDITIONALLY UNDER SEAL

# Exhibit 3

# FILED CONDITIONALLY UNDER SEAL

# Exhibit 4

# FILED CONDITIONALLY UNDER SEAL