ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177
Fax: 949-877-8757
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.:  949-266-1240
Fax:   949-266-1280
aibrahim@ailawfirm.com

Attorneys for Plaintiffs, Individually
and On Behalf of All Others Similarly Situated

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA HABBERFIELD, an individual, KEONA KALU, an individual, KATIE RUNNELLS, an individual, JUANITA CARMET CACHADINA, an individual, SARAH HUEBNER, an individual, YESENIA VALIENTE, an individual, VERONICA WALTON, an individual, LISA MURPHY, an individual, NICOLE HILL, an individual, NICOLE STEWART, an individual, ME'LISA THIMOT, an individual, and MARIKA WALTON, an individual, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, PRETTYLITTLETHING.COM USA INC., a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, NASTYGAL.COM USA INC., a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, and DOES 1-10, inclusive.<br><br>                    Defendants. | **CASE NO.: 2:22-CV-03899-GW-JEMx**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Hearing Information:**<br><br>Date:            November 2, 2023<br>Time:           8:30 a.m.<br>Courtroom:  9D<br>Judge:          Hon. George H. Wu<br><br>Action Filed:  June 7, 2022<br><br>Trial Date:     TBD |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE THAT** on November 2, 2023 at 8:30 or as soon thereafter as counsel may be heard in Courtroom 9D of the above-captioned Court located on the 9th Floor at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for the Court to grant final approval of the Class Action Settlement Agreement and Release (the "Settlement") attached as Exhibit 1 to the concurrently filed Omnibus Declaration of Ahmed Ibrahim in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards.

Specifically, Plaintiffs respectfully request that the Court (1) grant final approval of the Settlement; (2) finally certify the Settlement Class; (3) authorize the Settlement Administrator to administer the settlement benefits to members of the Class; (4) order Defendants to comply with the injunctive relief described in the Settlement; (5) enter the final order and judgment concurrently filed herewith (and consistent with the form attached as Exhibit H to the Settlement) (*see* ECF 36-2 at Ex. H); and, (6) rule on Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards.

This motion will be heard concurrent with Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, which will be separately filed.

This motion is made on the grounds that Plaintiffs have satisfied all the requirements for final approval of the proposed class action settlement under Rule 23(e).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Revised Order Granting Preliminary Approval of Class Settlement (ECF 56), the Court's Tentative Ruling on Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (later adopted in substantial part as

the filing ruling of the Court) (ECF 51), and the following evidence:

1. Omnibus Declaration of Ahmed Ibrahim in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Ibrahim Decl.");

2. Omnibus Declaration of Yasin Almadani in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards;

3. Omnibus Declaration of Daniel Wang in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards;

4. Declaration of Lana Cooper Regarding Execution of Class Notice Plan; and

5. Declarations of Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards.

This motion is also based on the pleadings and papers on file herein and any other written and oral arguments that may be presented to the Court.

Plaintiffs also rely on the evidence previously filed with the Court in connection with their Motion for Preliminary Approval of Class Action Settlement, which Plaintiffs incorporate herein by this reference. Plaintiffs have not re-filed this evidence to avoid duplicative filings and excessive materials for the Court and its staff. This evidence includes the following:

1. Stipulation in Support of Motion for Preliminary Approval of Class Settlement (ECF 36-3);

2. Declaration of Christie K. Reed Regarding Proposed Class Notice Plan (ECF 36-5); and

3. Declaration of Christian Tregillis, CPA, ABV, CFF, CLP, in Support of

Motion for Preliminary Approval of Class Settlement (ECF 36-6).

Dated: September 1, 2023

Respectfully submitted,

ALMADANI LAW

*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.


AI LAW, PLC

*/s/ Ahmed Ibrahim*
Ahmed Ibrahim, Esq.

*Attorneys for Plaintiffs Individually and*
*On Behalf of All Others Similarly Situated*

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ............. 3

      A.   The *Khan* Litigation .............................................................. 3

      B.   This Lawsuit Is Filed to Continue the Prosecution of Nationwide
           Claims ...................................................................................... 4

      C.   The Work in the *Khan* Litigation Is Applicable to and Benefited the
           Present Case ............................................................................. 5

           1.   Defendants' Motion to Dismiss ........................................ 6

           2.   Written Discovery, Depositions, and Witness Interviews ....... 7

           3.   Settlement Negotiations in the *Khan* Litigation.................. 8

           4.   The Court Approved the Class Settlement in the *Khan* Litigation ..... 8

      D.   The Court Denied Defendants' Motion to Strike the *Habberfield* Action
           ...................................................................................................... 8

      E.   The Court Consolidated this Action With the *Khan* Litigation ............. 9

      F.   Settlement Negotiations and Confirmatory Discovery ...................... 9

III.  THE TERMS OF THE SETTLEMENT ................................................. 10

      A.   The Settlement Class. ............................................................ 10

      B.   Settlement Consideration ...................................................... 11

           1.   Monetary Benefits to the Class ...................................... 11

           2.   Injunctive Relief Benefits to the Class............................. 12

           3.   Attorneys' Fees, Costs, Incentive Awards, and Administration Costs
                ...................................................................................... 13

           4.   Release and Dismissal of All Claims............................... 15

      C.   The Court Granted Preliminary Approval of the Settlement............. 15

      D.   The Settlement Administrator Disseminated Notice to the Class and the
           Reaction of the Class Has Been Favorable ............................. 16

| | | |
|---|---|---|
| IV. | LEGAL STANDARD | 18 |
| V. | THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL | 19 |
| | A. The Settlement Class Should Remain Certified | 19 |
| | B. The Settlement is Fair, Reasonable, and Adequate | 20 |
| |     1. The Strength of the Case. | 20 |
| |     2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation. | 20 |
| |     3. The Risk of Maintaining Class Action Status Throughout Trial. | 23 |
| |     4. The Amount Offered in the Settlement. | 24 |
| |     5. The Extent of Discovery Completed and the Stage of the Proceedings. | 25 |
| |     6. The Experience and Views of Counsel. | 25 |
| |     7. The Presence of a Governmental Participant. | 26 |
| |     8. The Reaction of the Members of the Class to the Settlement. | 26 |
| |     9. The Class Is Adequately Represented by Plaintiffs and Counsel (Rule 23(e)(2)(A)) | 26 |
| |     10. The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B)). | 27 |
| |     11. The Relief for the Class is Adequate Under Rule 23(e)(2)(C) | 28 |
| |         a. The First, Second, and Fourth Rule 23(e)(2)(C) Factors Favor Final Approval | 28 |
| |         b. The Attorneys' Fee Request Is Reasonable | 28 |
| |           (A) Class counsel's fee request is not disproportionate | 28 |
| |           (B) The clear sailing provision is not collusive | 32 |
| |           (C) There is no reversion of fees to Defendants | 33 |
| |     12. The Proposal Treats Class Members Equitably. | 34 |
| | C. Class Members Received Adequate Notice. | 35 |
| VI. | CONCLUSION | 35 |

**CASES**

*American Pipe & Construction Co. v. Utah,*
    414 U.S. 538 (1974) ............................................................ 21

*Briseno v. Henderson,*
    998 F.3d 1014 (9th Cir. 2021) ........................................... 29

*Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx),
    2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) ........................ 20, 21

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ........................................... 19

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.),*
    213 F.3d 454 (9th Cir. 2000) ............................................ 24

*Elkies v. Johnson & Johnson Servs.*, Inc., No. CV 17-7320-GW (JEMx),
    2020 WL 10055593 (C.D. Cal. June 22, 2020) ....................... 31

*Eisen v. Carlisle & Jacqueline,*
    417 U.S. 156 (1974) ......................................................... 35

*Farrell v. Bank of Am. Corp., N.A.,*
    827 F. App'x 628 (9th Cir. 2020) ........................................ 30

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................…..….. 18, 19

*Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC,
    2011 WL 4831157 (N.D. Cal. Oct. 12, 2011) ......................... 33

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................ 34

*In re Bluetooth Headset Prod. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011)................................................ 29, 32, 33

*In re EasySaver Rewards Litig.,*
    906 F.3d 747 (9th Cir. 2018)................................................ 33

*In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG
    2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................ 19

*In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ........................ 30

*In re Online DVD-Rental Antitrust Litig.,*
    779 F.3d 934 (9th Cir. 2015) ............................................. 34

iii

*In re Pacific Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ........................................................ 25

*LaGarde v. Support.com, Inc.*, No. C12-0609 JSC,
    2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ........................... 33

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) .................................................... 24

*Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB,
    2021 WL 1839989 (S.D. Cal. May 7, 2021) ............................ 26

*Martin v. Marriott Int'l, Inc.*, No. CV 18-00494 JAO-RT,
    2021 WL 4888973 (D. Haw. Oct. 19, 2021) ............................ 33

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) .................................................... 21

*Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD,
    2021 WL 1736807 (N.D. Cal. May 3, 2021) ............................ 33

*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB,
    2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ........................... 30

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ..................................... 24, 25

*Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx),
    2021 WL 4460334 (C.D. Cal., July 19, 2021) ......................... 26

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .............................................. 18, 19

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414 (1968) .................................................................. 23

*Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC),
    2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ........................... 32

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ............................... 32, 33

*Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB,
    2016 WL 4916955 (N.D. Cal. Sept. 15, 2016) ....................... 30

*Torres v. Wells Fargo Bank,* No. CV 17-9305-DMG (RAOx),
    2018 WL 6137126 (C.D. Cal. Aug. 28, 2018) ........................ 21

## FEDERAL STATUTES

28 U.S.C. § 1711 ....................................................................... 31

28 U.S.C. § 1715 ....................................................................... 17

## FEDERAL RULES

Fed. R. Civ. P. 12 ……………………………………………….. 3, 6

Fed. R. Civ. P. 23 ………………………………………………. passim

Fed. R. Civ. P. 30 ……………………………………………….. 7

## STATE STATUTES

Cal. Bus. & Prof. Code § 17200 ............................................. 5

Cal. Bus. & Prof. Code § 17500 ............................................. 5

Cal. Civ. Code § 1750 ............................................................. 5

## I.    INTRODUCTION

On April 6, 2023, Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton on behalf of themselves and all others similarly situated ("Plaintiffs"), and Defendants Boohoo Group PLC ("Boohoo Group"), Boohoo.com USA, Inc., Boohoo.com UK Limited, Prettylittlething.com USA, Inc., Prettylittlething.com Limited, NastyGal.com USA, Inc., and Nasty Gal Limited (collectively "Defendants"), entered into a Class Action Settlement Agreement and Release (the "Settlement"). (*See* Ibrahim Decl. Ex. 1.) The Settlement covers all purchasers of merchandise from Defendants' U.S. websites, excluding California (hereafter, the "Class"). Plaintiffs move for final approval of the Settlement.

Defendants are internet retailers selling women's and men's clothing, shoes, accessories, and beauty products direct to consumers worldwide, including the U.S. Boohoo Group owns the three brands that are the subject of this litigation: Boohoo (which includes BoohooMAN) ("BH"), PrettyLittleThing ("PLT"), and Nasty Gal ("NG").

Plaintiffs contend that during the respective class periods for each of Defendants' U.S. websites ending in June 2022, Defendants perpetually advertised nearly all the products on their sites with deceptive original prices (referred to in the pleadings as "reference prices"). Plaintiffs allege the reference prices were deceptive because Defendants rarely sold their merchandise at the reference prices. Instead, Plaintiffs allege Defendants' reference prices were significantly discounted on a near daily basis by sitewide percentage-off "promotions" or sales (e.g., "50% Off Everything"). Plaintiffs thus allege customers were deceived into a false belief that they were receiving deep discounts, when in reality, they were receiving no such discounts. As a result, Plaintiffs contend Defendants falsely inflated the value of their products and induced class members to buy items they would have never bought, or pay more than they otherwise would have paid, had they known the truth about Defendants' practices. Defendants make no admissions of fact or law and deny liability.

Plaintiffs believe the Settlement provides excellent relief for the Class. The Settlement provides for each Class Member to receive a $10 Gift Card with *free shipping* (additionally valued at $7.45 per Class Member, for a total value of $17.45 per Gift Card) to use towards any purchase of any item on the site from which they made a purchase. The Gift Cards have no expiration dates, blackout dates, minimum purchase requirements, or fees, and may be used in conjunction with other offers and promotions. There are no restrictions on transferability and, when they are transferred to others, multiple Gift Cards may be combined together (i.e., "stacked"). Class Members who bought from more than one of the subject websites may receive multiple Gift Cards—one from each site from which they made a purchase. These websites consistently include thousands of items available for $10 or less across a wide variety of product categories and styles, meaning that Class Members can use their Gift Cards without incurring any out-of-pocket expense or apply the Gift Cards toward a more expensive purchase, all with free shipping. The Class consists of approximately 9.3 million individuals with an anticipated distribution of over 11.3 million Gift Cards. Thus, the monetary value of the Settlement based on the Gift Card and free shipping amounts to approximately $197 Million. (Tregillis Decl. ¶¶53-62.)

Moreover, Class Members do not have to file a claim to receive their benefits. *All* Class Members who do not affirmatively opt out will *automatically receive* the Gift Cards via email. Like cash, the Gift Cards never expire. Their benefits thus forever remain with Class Members until they use them. There is no possibility of reversion to Defendants.

The Settlement also provides impactful injunctive relief to prevent future consumer harm by virtue of the fact that Defendants must fully, prominently, and forever disclose to site visitors that their reference prices *are not based on former prices*, but rather are *merely Defendants' own opinion* of the full retail value of an item. This Settlement legally binds Defendants to make these disclosures to consumers nationwide. These consumers will no longer be misled.

Class Counsels' proposed attorneys' fees and costs are a small fraction (3.7%) of the Settlement's monetary value—far less than the 25% benchmark—with no reversion to

Defendants. The proposed $1,500 incentive awards to the class representatives are well within the norm and are warranted by the time spent by class representatives as described in their declarations concurrently filed with this Motion.

In view of the risks of proceeding with this litigation through class certification, summary judgment, trial, and appeal, this is an excellent result for the Class. Plaintiffs therefore respectfully request the Court to: (1) grant final approval of the Settlement; (2) finally certify the Settlement Class; (3) authorize the Settlement Administrator to administer the settlement benefits to members of the Class; (4) order Defendants to comply with the injunctive relief described in the Settlement; (5) enter final judgment in the form submitted to the Court with this motion; and (6) rule on Plaintiffs' concurrently filed Motion for Attorneys' Fees, Costs, and Service Awards.

## II.  STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

### A.  The *Khan* Litigation

This action is a continuation of the litigation initiated against Defendants in 2020 in the following three related and consolidated actions: (1) *Khan v. Boohoo.com USA Inc.*, No. 2:20-cv-03332-GW-JEMx, (2) *Hilton v. PrettyLittleThing.com USA Inc.*, No. 2:20-cv-04658-GW-JEMx, and (3) *Lee v. NastyGal.com USA Inc.*, No. 2:20-cv-04659-GW-JEMx (together, the "*Khan* Litigation"). Importantly, in the operative complaints in the *Khan* Litigation, the plaintiffs sought certification of a nationwide class of purchasers from the U.S. websites of the three brands that are also at issue here, namely, https://us.boohoo.com and/or https://boohooman.com/us (the "Boohoo U.S. Websites"), https://prettylittlething.us (the "PLT U.S. Website"), and https://nastygal.com (the "Nasty Gal U.S. Website") (collectively, the "U.S. Websites").

Defendants filed Rule 12 motions seeking to dismiss and/or strike seeking to preclude Plaintiffs from being able to proceed with nationwide classes, but the Court declined to do so. (Khan ECF 22, 24, 34.)[1] Defendants answered the complaints and the case proceeded to class discovery on a nationwide basis. (Khan ECF 60-62.)

---

[1] "Khan ECF" refers to the docket in the *Khan* Litigation followed by a docket control number. Page cites refer to the page in the blue PACER header at the top of each page.

After extensive discovery and protracted settlement negotiations both before a retired U.S. district judge and between counsel, the parties in the *Khan* Litigation settled the plaintiffs' claims on a California-only basis on May 20, 2022. (Khan ECF 133-1, Ex. 1.) The settlement expressly stated that it only intended to "fully and finally resolve the claims of the *California* class members and dismiss *without prejudice* the claims of the non-California class members." (Khan ECF 133-1, Ex. 1 at Recital J (emphasis added).)

On June 3, 2022, the Court granted preliminary approval of the class action settlement in the *Khan* Litigation. (Khan ECF 158.) On December 20, 2022, the Court granted final approval of the settlement and entered judgment. (Khan ECF 203.)

**B.    This Lawsuit Is Filed to Continue the Prosecution of Nationwide Claims**

In the meantime, because as noted, the nationwide claims outside of California would be dismissed without prejudice at final approval, on June 7, 2022, Plaintiffs Habberfield, Kalu, Runnells, Cachadina, Huebner, Valiente, Veronica Walton, Murphy, Hill, and Stewart filed this action to continue nationwide class relief (excluding relief for California purchasers) against Defendants that the *Khan* plaintiffs had initiated and litigated up to that point. (ECF 1.)[2] In the complaint, said Plaintiffs sought essentially the same nationwide relief requested by the plaintiffs in the *Khan* Litigation based on the same allegations of false advertising and deceptive pricing on Defendants' U.S. Websites. For example, Plaintiffs asserted claims on a nationwide basis for violations of California consumer protection statutes, common law fraud, and unjust enrichment, and assert that these California claims should be applied to Defendants on a nationwide basis due to Defendants' contacts with, and conduct taking place in, California. (ECF 1 at ¶¶148-312.)

On June 22, 2022, the ten original Plaintiffs filed a First Amended Complaint ("FAC") to clarify that they were not pursuing relief on behalf of California class members in light of the class settlement in the *Khan* Litigation. (ECF 13.)

Pursuant to a stipulation between the parties, on April 6, 2023, the Court permitted Plaintiffs to file a Second Amended Complaint ("SAC"), which is the operative complaint

---

[2] "ECF" denotes  the docket entry in *this* action followed by a docket control number. Page cites refer to the page in the blue PACER header at the top of each page.

in this action. (ECF 32.) In the SAC, Plaintiffs added two putative class representatives—Me'Lisa Thimot, a resident of Illinois, and Marika Walton, a resident of New York.

As a result, the SAC contains the following claims for relief: (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL), (2) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*. ("FAL"), violation of the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*., (4) fraud, (5) fraudulent concealment, (6) restitution for unjust enrichment, (7) violation of the New York State Consumer Protection Statute, (8) violation of the Florida Deceptive & Unfair Trade Practices Act, (9) violation of the Maryland Consumer Protection Act, (10) violation of the Massachusetts State Consumer Protection Law, (11) violation of the Michigan Consumer Protection Act, (12) violation of the Ohio Consumer Sales Practices Act, and (13) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act. Plaintiffs seek certification of claims 1 through 6 on behalf of all nationwide purchasers, excluding California. In the alternative, Plaintiffs seek to certify subclasses of purchasers from New York, Florida, Maryland, Massachusetts, Michigan, Ohio, and Illinois for their common law fraud and restitution claims, as well as under each respective state's consumer protection statute listed above.

### C. The Work in the *Khan* Significantly Benefited the Present Case

The present action, in substantial part, is a continuation of the nationwide class claims originally brought in the *Khan* Litigation. With this clear overlap of the claims and issues between the *Khan* Litigation and this action, as well as the Court formally ordering this action consolidated with the *Khan* Litigation for pretrial purposes, the discovery and motion practice from the *Khan* Litigation is plainly applicable to this action. It thus benefited the efforts of Plaintiffs and Class Counsel in prosecuting this action and ultimately negotiating the Settlement presented here. In other words, the Settlement here was only made possible by the work that had already been done in the *Khan* Litigation.[3]

---

[3] However, as will be addressed in more detail in the concurrently-filed Motion for Attorneys' Fees, Costs, and Service Awards, this is not to say that Class Counsel's efforts and the risk they took on should be minimized, dismissed, or deemed irrelevant to their

*(footnote cont'd on next page)*

Importantly, Defendants in the Stipulation of their Chief Executive Officer filed previously with Plaintiffs' preliminary approval motion acknowledged that:

> [T]his case would not have settled without the benefit of the litigation undertaken in the related *Khan* Litigation, including all discovery and depositions taken in that Litigation. The *Khan* Litigation began as nationwide class actions and ultimately resulted in a California class settlement. The litigation and discovery efforts expended by counsel in the *Khan* Litigation overlap entirely with this matter and the work was used extensively to bring about the resolution in this case.

(Stipulation in Support of Motion for Preliminary Approval of Class Settlement, ECF 36-3 (the "Stipulation") at ¶ 21.) Accordingly, the following brief discussion of discovery and motion practice in the *Khan* Litigation is relevant to this motion.

### 1. Defendants' Motion to Dismiss

On September 4, 2020, Defendants filed a motion to dismiss and strike the operative complaints in each of the three actions in the *Khan* Litigation pursuant to Rule 12(b)(2), 12(f), and 12(b)(6) of the Federal Rules of Civil Procedure, raising numerous issues, including jurisdiction, standing, and pleading sufficiency. (*See, e.g.*, Khan ECF 22 and 24.) Defendants argued, among other things, that (1) the Court lacked personal jurisdiction over Boohoo Group, (2) Plaintiffs Khan, Hilton, and Lee (the "*Khan* Plaintiffs") sued the wrong entities, (3) all non-California class allegations should be stricken, (4) the *Khan* Plaintiffs lacked standing, (5) the *Khan* Plaintiffs' pre-litigation CLRA notices were non-compliant, and (6) the *Khan* Plaintiffs' claims were not properly pled. (*See* Khan ECF 22 at 6-7.) The *Khan* Plaintiffs filed a comprehensive opposition, and a detailed declaration full of exhibits contesting Defendants' personal jurisdiction arguments. (Khan ECF 27.)

On November 16, 2020, the Court denied Defendants' Rule 12(f) motion to strike and Rule 12(b)(6) motion to dismiss in its entirety. (Khan ECF 34 at 6-16.) Regarding personal jurisdiction, the Court found Plaintiffs were entitled to conduct jurisdictional discovery relating to Boohoo Group. (Khan ECF 34 at 8-9.) Shortly after Plaintiffs sent

---

fee request in this case. Class Counsel had no guarantee that Defendants would be willing to agree to this Settlement. They thus had to take on substantial risk of a large and complex nationwide class action and to structure the case with the expectation that Defendants would contest class certification and liability. This included decisions to maximize the chances of legal success in the event the case went the distance by including 12 class representatives from multiple states, causes of actions from those states, and alleging subclasses as an alternative to nationwide certification.

discovery, Boohoo Group dropped its jurisdictional challenge. (Khan ECF 57.)

### 2. *Written Discovery, Depositions, and Witness Interviews*

In early 2021, Plaintiffs served written class discovery on Defendants in the *Khan* Litigation. (Ibrahim Decl. ¶ 14.) The *Khan* Plaintiffs had to file a lengthy motion to compel further discovery responses. (Khan ECF 67.) In April 2021, Magistrate Judge McDermott issued two separate orders granting the *Khan* Plaintiffs' motion, in significant part, and denying the *Khan* Plaintiffs' motion, in certain respects. (Khan ECF 71, 73.)

In March 2021, the *Khan* Plaintiffs responded to Defendants' written class discovery. (Ibrahim Decl. ¶ 15.) Defendants also filed a motion to compel. (Khan ECF 76.) However, on July 19, 2021, Judge McDermott denied the motion in its entirety, the only exception being that the *Khan* Plaintiffs were ordered to provide a verification confirming they had no documents responsive to one document demand. (Khan ECF 83.)

Not including voluminous spreadsheets and data, Defendants produced more than 546,000 pages of documents responsive to the *Khan* Plaintiffs' document demands. (Ibrahim Decl. ¶ 17.) In total, up to the present date, Defendants have produced more than 250 Gigabytes of data. (*Id.*) Class Counsel and their team reviewed these documents to conduct depositions and prepare their class certification motion. (*Id.*)

In the meantime, in June 2021, Plaintiffs noticed the deposition of Boohoo Group's Executive Chairman. (Ibrahim Decl. ¶ 18.) On July 7, 2021, Defendants moved for a protective order to quash the deposition, which the *Khan* Plaintiffs opposed. (Khan ECF 78.) On July 28, 2021, Judge McDermott again sided with the *Khan* Plaintiffs, ordering the Chairman to sit for his deposition. (Khan ECF 89 at 3.)

In late January and early February 2022, the *Khan* Plaintiffs deposed four Rule 30(b)(6) corporate representatives designated by Defendants on behalf of the BH, PLT, and NG brands to testify concerning class topics central to the allegations of wrongdoing. (Ibrahim Decl. ¶20.) In addition, Plaintiffs' counsel conducted an additional three deposition-like interviews of key defense witnesses on relevant topics. (*Id.*) The Plaintiffs in this case heavily relied on all this work to litigated and settle the case nationwide.

### 3.    *Settlement Negotiations in the Khan Litigation*

The parties commenced settlement negotiations in the *Khan* Litigation by agreeing to private mediation before the Honorable Irma Gonzalez (Ret.) from the U.S. District Court for the Southern District of California. (Ibrahim Decl. ¶ 37.) The parties initially participated in four separate mediation sessions with Judge Gonzalez. (*Id.*) After a general framework for a potential settlement was laid at these initial sessions, the parties met in person and began an ongoing and regular dialogue where they negotiated intensely all the detailed and intricate aspects of the settlement, provision by provision. (*Id.*) The direct negotiations between counsel occurred over eight (8) months in dozens of video conferences and phone calls. (*Id.*) The parties then reengaged Judge Gonzalez for a final mediation session on May 4, 2022, where they finalized the settlement agreement, leading to its final execution by the parties on May 20, 2022. (*Id.*)

### 4.    *The Court Approved the Class Settlement in the Khan Litigation*

As noted, on June 3, 2022, the Court granted preliminary approval of the class action settlement in the *Khan* Litigation. (Khan ECF 158.) In September 2022, notice was disseminated to the class. (Khan ECF 190 at ¶¶7-10.) Out of the more than 1.5 million class members who received notice, only 33 class members opted out of the class and there were no objections to the settlement. (Khan ECF 190 at ¶¶6-8; 198 at ¶¶3-4.)

On December 20, 2022, the Court granted final approval of the settlement, as well as the Khan Plaintiffs' motion for attorneys' fees, costs, and service awards in its entirety. (Khan ECF 199, 201.) The Court entered final judgment the same day. (Khan ECF 203.)

### D.    **The Court Denied Defendants' Motion to Strike the *Habberfield* Action**

After the settlement in the *Khan* Litigation was signed and preliminarily approved, this action was filed on June 7, 2022, followed by the FAC on June 22, 2022. (ECF 1, 13.)

On June 28, 2022, Defendants filed a "Motion to Enforce Settlement Agreement and Strike *Habberfield* First Amended Complaint, or in the Alternative to Stay Settlement Administration, and for Sanctions." (Khan ECF 159.) Defendants sought a swift dismissal of this nationwide class action without the Court considering any merits of the claims

alleged in the complaint. Class Counsel fully briefed the issue for the Court and the Court held a hearing on August 22, 2022. The Court rejected all of Defendants' arguments and denied the motion. (Khan ECF 181, 185.) The Court found that because Plaintiffs in this action were not plaintiffs in the *Khan* Litigation or bound by the class representatives in the *Khan* Litigation, they had no obligation to seek leave to amend or intervene in the *Khan* Litigation, and could not have possibly breached the settlement. (Khan ECF 181 at 2.) The Court thus reinstated the schedule for final approval of the settlement in the *Khan* Litigation, which had been stayed while the Court considered Defendants' motion.

### E.    The Court Consolidated this Action with the *Khan* Litigation

Following the Court's denial of Defendants' motion to strike the *Habberfield* action, on August 31, 2022, the parties in this action filed a stipulation in which they stated, among other things, that they "agree and jointly request that the *Habberfield* Action be consolidated with the related *Khan* action for pretrial purposes and stayed" until the Court decided on final approval of the settlement in the *Khan* Litigation. (ECF 14 at 2.) On September 1, 2022, the Court approved the stipulation and ordered this action consolidated with the *Khan* Litigation for pretrial purposes. (ECF 21.)

### F.    Settlement Negotiations and Confirmatory Discovery

As described in further detail below in section II.F, *infra*, the parties participated in two separate mediations before the Honorable Irma Gonzalez (Ret.), United States District Judge on October 4, 2022 and November 15, 2022. (Ibrahim Decl. ¶¶ 38-40.)

Class Counsel as described above already conducted extensive discovery relating to the nationwide claims and business activities of Defendants in the *Khan* Litigation that could be used to benefit this litigation. (Ibrahim Decl. ¶ 41; Stipulation at ¶ 21.) Nevertheless, because the end-date of the class period in this action post-dated the Court's preliminary approval order in the *Khan* Litigation, Class Counsel sought to update the information pertinent to the Settlement and to confirm that the information discovered in the *Khan* Litigation continued to apply to this action. (Ibrahim Decl. ¶ 41.) On March 8, 2023, Class Counsel requested additional and updated documents and data. (*Id.*) Over the

next several weeks, Defendants' counsel complied with Class Counsel's requests. (*Id.*) On March 23, Class Counsel conducted a comprehensive interview of Boohoo Group's Chief Financial Officer from the United Kingdom to go over the additional information provided by Defendants. (*Id.* ¶ 42.) The information obtained from the documents produced by Defendants and the interview ultimately resulted in the Stipulation in Support of Motion for Preliminary Approval of Class Settlement concurrently filed with the Court. (*Id.*)

## III. THE TERMS OF THE SETTLEMENT

### A. The Settlement Class.

The Settlement defines the class of persons whose claims are being resolved as "[a]ll individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website during the Class Period." (Settlement at § 1.3.)

The term "Class Period" in the Settlement § 1.6 is defined as follows:

- For the Boohoo U.S. Websites, from April 1, 2016 through June 17, 2022.
- For the PLT U.S. Website, from April 1, 2016 through June 17, 2022.
- For the Nasty Gal U.S. Website, from February 28, 2017 through June 17, 2022.

The class period end date of June 17, 2022 was chosen because that is when Defendants implemented changes to their websites in accordance with the settlement benefiting California class members in the *Khan* Litigation and as agreed upon by the parties under Section 2.10 of the Settlement in this case. (Settlement at § 1.6.1; Stipulation ¶ 20.) In other words, this is the date on which Defendants implemented the disclosures regarding their pricing to make clear to all visitors to their sites that their reference prices are not based on former prices and instead merely reflect their own opinion of the value of the products. (See Settlement at § 2.10.2; Stipulation ¶ 20.) Defendants affirmed in the Stipulation that they have implemented, and will maintain, on their U.S. websites across the remaining 49 states and U.S. territories the website changes and other injunctive relief provisions agreed to in the settlement in the *Khan* Litigation. (Stipulation ¶ 20.)

**B. Settlement Consideration**

> *1. Monetary Benefits to the Class*

Under the Settlement, each Class Member who does not timely opt out "shall automatically receive" a $10 gift card to include free shipping (additionally valued at $7.45 per gift card) for single use on each U.S. website from which one or more "Qualifying Purchases" were made during the Class Period (the "Gift Card"). (Settlement at § 2.1; Stipulation at ¶ 13, Ex. 2.) The Settlement covers purchases from the U.S. Websites, which include their associated mobile phone applications. (*Id.*) "Qualifying Purchase" is defined as "the purchase of any product by a Settlement Class Member from the Boohoo U.S. Websites, the PLT U.S. Website, or the Nasty Gal U.S. Website within the Class Period." (*Id.* at § 1.22.) The Gift Cards have the following important attributes:

- All Class Members who do not opt out will automatically receive the Gift Card via email without the need to file a claim. (Settlement at §§ 2.1 and 2.1(a)(ii).)

- Each Gift Card has a face value of $10.00 plus free shipping and handling (Settlement at § 2.1(a)(i)), which provides Class Members considerable choice and variety in using the Gift Cards without having to incur any out-of-pocket costs. "On any given day, Defendants generally offer thousands of styles that may be purchased for $10 or less with a wide variety of styles across many different categories on their websites." (Stipulation at ¶ 19; Tregillis Decl. at ¶¶ 57-59.)

- Class Members do not have to pay any shipping charges when a Gift Card is used, but because Defendants do not normally offer free shipping and are thus incurring a significant cost as a result of this benefit, the Gift Cards must be used in one transaction. (Stipulation at ¶ 13.) The value of this benefit is at least $7.45 based on Defendants' customary shipping and handling charges on average per order across the U.S. Websites during the Class Period. (Settlement at § 2.1(a)(i)(xi); Stipulation at ¶ 13, Ex. 2; Tregillis Decl. at ¶¶ 60-62.)

- The Gift Cards do not expire. Defendants cannot cancel the Gift Cards and they cannot revert to Defendants under any circumstance. (Settlement at § 2.1(a)(iii).)

- There is no minimum purchase requirement to use the Gift Cards and they may be used toward any purchase. (*Id*. at § 2.1(a)(iv).)

- There are no blackout dates restricting use. (*Id*. at § 2.1(a)(vi).)

- The Gift Cards may be used with other offers and promotions. (*Id*. at § 2.1(a)(vii).)

- The Gift Cards may be freely transferred or given to others. (*Id*. at § 2.1(a)(viii).)

- The Gift Cards are stackable, meaning that multiple Gift Cards from the same website may be combined to use in a single transaction. (*Id*. at § 2.1(a)(ix).)

- There are no fees for inactivity or any other reason. (*Id*. at § 2.1(a)(xii).)

- The Gift Cards may be used on the site from which a Class Member made a purchase. (*Id*. at § 2.1(a)(i).) For example, if a Class Member bought from the PLT

U.S. Website, she will receive one Gift Card to use on the PLT site only. (*Id.*)

- If Class Members bought from multiple sites, they may receive multiple Gift Cards—one for each website from which a purchase was made (with Boohoo and BoohooMAN counting as one site). (*Id.* at § 2.1(a)(v).) Class Members may thus be entitled to a total of three (3) Gift Cards if they made a purchase on all three sites.

- Lost Gift Cards will be replaced upon request. (*Id.* at § 2.1(a)(xiii).)

### 2. *Injunctive Relief Benefits to the Class*

The Settlement provides for significant injunctive relief whereby Defendants are *legally bound* to maintain on their websites across every U.S. state and territory (not just California) important disclosures concerning their marketing and advertising practices. (Settlement at § 2.10.) Specifically, Defendants must make clear and conspicuous disclosures on their product display pages whenever they advertise a discount off the original or full price (i.e., the "reference price"). (*Id.*) The disclosures advise the customer that the original price advertised is not intended to be a former price, but instead merely reflects Defendants' opinion of the full value, as follows:

> *Our percentage off promotions, discounts, or sale markdowns are customarily based on our own opinion of the value of this product, which is not intended to reflect a former price at which this product has sold in the recent past. This amount represents our opinion of the full retail value of this product today based on our own assessment after considering a number of factors.*

> *That's why before checking out, it's important you acknowledge that you understand this. Cool with that? Great, happy shopping!*

(Settlement at § 2.10.2(b).) Both the disclosure and the original price on the product display page must have an asterisk to alert the customer that the disclaimer relates to the displayed original price. (*Id.* at § 2.10.2(a), (c).) The disclosure cannot be hidden in a "click to reveal" format, but must constantly be viewable under the header "Pricing Policy" on the product display pages. (*Id.* at § 2.10.2(a).) This full disclosure must also be displayed on the terms and conditions of each of the U.S. Websites. (*Id.* at § 2.10.2(e).)

Defendants must also include a short disclosure on all landing pages, product display pages, and emails sent to customers containing advertisements of discounts from an original or full price. (*Id.* at § 2.10.2(d).) This disclaimer must state: "*Discounts may not be based on former prices. See pricing policy*." (*Id.*) The phrase "See pricing policy" must be hyperlinked directly to the full pricing disclosure. (*Id.*)

These changes must be in a format consistent with Exhibit G to the Settlement, which provides a visual mockup of what the changes look like on the U.S. Websites. (Settlement at § 2.10.2, Ex. G.) Importantly, these mockups demonstrate that the disclosures are visible to customers to satisfy the conspicuousness requirement. (*Id.* at Ex. G.) As shown on Exhibit G, Defendants must include the short form disclaimer in the *center* of the top banner on the home landing page of their websites and product display pages where they advertise their percent-off promotion for a given day (including on the mobile application version); moreover, the short form disclaimer shall be *bolded*, and the font size must be large enough to match the discount messaging that it accompanies. (*Id.* at Ex. G.) Exhibit G also shows that the short form disclaimer shall be bolded, centered, and of equal font size to the accompanying promotional message on all emails sent to customers advertising a sale or discount off an original price. (*Id.* at Ex. G.)

There is no end date on the required disclosures, i.e., they shall be maintained forever on the subject websites. (*See id.* at § 2.10.2.)

The Settlement also contains a provision titled "Compliance with the Law." (*Id.* at § 2.10.1.) This clause requires Defendants to "agree that their comparison pricing practices in the United States . . . will not violate then-existing Federal or California law . . ." (*Id.*)

### 3. Attorneys' Fees, Costs, Incentive Awards, and Administration Costs

As noted, the Settlement provides a monetary value of $17.45 per Class Member consisting of a $10 Gift Card with free shipping valued at $7.45 per person. For the 9,351,169 Class Members covering an anticipated 11,302,703 Gift Cards[4] to be distributed as identified by Defendants (*see* Cooper Decl. ¶ 6 & Stipulation at Ex. 1), this computes to a total monetary value of the Settlement of approximately $197 Million, which does not account for the value of injunctive relief. (Tregillis Decl. at ¶¶ 53-62.) If this matter were to go to trial, Plaintiffs would produce proof to demonstrate that the injunctive relief would be valued at an additional $341.7 Million over the next three years. (*Id.* at ¶¶ 63-71.)

---

[4] There are more Gift Cards than Class Members because a substantial number of Class Members purchased from multiple U.S. Websites. (*See* Stipulation at Ex. 1.) Such Class Members are entitled to receive multiple Gift Cards—one from each of the U.S. Websites from which they made a purchase. (*See* Settlement at § 2.1(a)(v).)

In consideration of obtaining these significant benefits for the Class, the many hours spent by Class Counsel, the significant funds Class Counsel has spent on litigation costs, including experts, in pursuing this litigation against Defendants in the *Khan* Litigation and continuing the nationwide class claims from the *Khan* Litigation in this case, and the risks taken by Class Counsel, the Settlement provides that Class Counsel may seek an award of attorneys' fees and costs up to $4,197,000 with no opposition from Defendants. (Settlement at § 2.4(b).) However, this case is more appropriately viewed from a comprehensive nationwide perspective as this case has always been a nationwide case from the inception of *Khan*, and the results in this consolidated case cannot be divorced from the efforts and resources expended in *Khan*. This case simply does not exist without *Khan*. Therefore, the appropriate approach here is to combine the fee and cost request in the *Khan* Litigation with the fee and costs request here and compare the total amount requested with the total recovery for the nationwide Class, including California and non-California members. Under this more accurate approach, Class Counsel have achieved a total monetary value for the full nationwide Class of $230 Million ($33 Million for California and $197 Million for the rest of the nation), and on that basis are requesting a total of $8,644,749 in fees (with $4,158,212 being requested in this case). Counsel are also requesting a total of $305,251 in costs (with $38,788 requested here). Therefore, Class Counsel's fee request amounts to 3.7% of the $230 Million monetary value recovered for the comprehensive nationwide Class, achieving the purpose of the *Khan* Litigation.

Furthermore, the parties agree that if the Court awards an amount less than $4,197,000 in fees and costs being requested here, the difference will *not revert* to Defendants. (Settlement at § 2.5.) Instead, it will be donated to *cy pres*—either the National Consumer Law Center (as proposed by Plaintiffs) or the Better Business Bureau National Programs (proposed by Defendants), or divided equally between the two organizations, as determined by the Court in its discretion. (*Id.* at § 2.5.) If the Court finds that neither organization should receive the funds, the unawarded fees will be donated to an organization selected by the Court. (*Id.*)

The Settlement further provides that each of the three class representatives may seek an incentive award not to exceed $1,500 with no opposition from Defendants. (*Id*. at §2.3.)

Defendants also agree to pay all costs associated with settlement administration in an amount that does not exceed $1,000,000. (Settlement at § 2.4(a).) This amount is based on an estimate prepared by Kurtzman Carson Consultants LLC ("KCC"), the selected settlement administrator, to execute the notice and administration plan set forth in the Settlement. (Ibrahim Decl. ¶ 43.) The entire $1,000,000 is to be used with no reversion back to Defendants. (*See* Settlement at § 3.4(f), Ex. J.)[5]

### 4. *Release and Dismissal of All Claims*

Defendants deny liability. (*Id*. at § 2.9) Thus, in exchange for the above-described benefits of the Settlement, the individual Plaintiffs and all Class Members who do not timely opt out agree to a standard release against Defendants and other affiliated entities. (*Id*. at §§ 1.7, 1.8, 1.9, 2.7, 2.8.) Following final approval, the claims of the Settlement Class Members will be dismissed with prejudice. (Settlement, Ex. H at ¶ 13.)

### C. The Court Granted Preliminary Approval of the Settlement

On May 18, 2023, the Court granted Plaintiffs' Motion for Preliminary Approval of the Class Settlement. (ECF 51, 56.) The Court issued a detailed tentative ruling that was later adopted as the final ruling of the Court. (ECF 51.)

With regards to the Settlement, the Court stated it "has little trouble agreeing that preliminary approval of the settlement is appropriate here." (ECF 51 at 8.) The Court found "the proposed settlement surpasses what is necessary for the Court to give its preliminary approval thereto and to set the case for a hearing on final approval thereof." (ECF 51 at

---

[5] The Court expressed some concerns in its preliminary approval tentative ruling over the amount agreed upon to be paid to KCC in light of the lesser amount paid to KCC in connection with the *Khan* settlement. But as Class Counsel explained at oral argument, this amount was necessary because there are approximately 6 times more class members in this Settlement. That means, among other things, a significantly larger amount of postage for postcard notice for class members who do not have valid e-mail addresses, 6 times more e-mail and phone inquiries to respond to, and, because the Gift Cards do not expire, 8 years of ongoing support for a larger number of class members to field and manage stacking requests. (ECF 36-5 at ¶ 19.) The Court agreed that the increased sum allotted for KCC was justified as reflected the preliminary approval order entered by the Court. (ECF 56 at ¶ 16.)

15.) In addition to finding issues of certification of the Settlement Class under Rule 23(b)(3) had been satisfied, the Court, without prejudging whether final approval of the Settlement would be appropriate, stated with regards to preliminary approval that:

- The Class has been adequately represented by class counsel and counsel "easily" meet the "qualifications" requirement. (ECF 51 at 7, 9.)[6]
- The Settlement was negotiated at "arms-length" as shown by the negotiations in mediation sessions and the fact that attorneys' fees were not discussed until the material terms of the Settlement had been agreed upon. (ECF 51 at 8, 11-12, n.12.)
- Although reserving its decision on fees for final approval, the $4,197,000 sought amounts to 2.1% of the monetary value calculated for the Settlement, which is not drawn on a common fund and thus will not reduce the money available to class members via the gift cards. Further, any amount of fees not awarded would not be returned to Defendants, but instead would be distributed to *cy pres*. (ECF 51 at 12.)
- The Settlement is "clearly a product of having taken into account the 'costs, risks, and delay of trial and appeal.'" (ECF 51 at 13.)
- Plaintiffs persuasively explained why the Settlement should not be considered a "coupon" settlement. (ECF 51 at 13.)
- The notice plan "is the best notice practicable under the circumstances, and satisfies due process[.]" (ECF 51 at 14.)[7]

On May 18, the Court entered a formal preliminary approval order. (ECF 56.)

### D. The Settlement Administrator Disseminated Notice to the Class and the Reaction of the Class Has Been Favorable

The Court appointed KCC as the Settlement Administrator in connection with the Settlement. (ECF 56 at ¶ 13.) As described in the concurrently filed declaration of Lana Cooper, a Vice President with KCC Class Action Services, LLC, KCC executed on the class notice plan outlined in the Settlement and approved by the Court, which consists of (1) e-mail notice, (2) postcard notice by mail, (3) publication notice on the USA Today website, (4) a long form notice posted on a dedicated class settlement website, and (5) notice to public officials as required under the Class Action Fairness Act (28 U.S.C. § 1711, *et seq.*) (CAFA). (Cooper Decl. ¶ 2; *see also* ECF 36-5.)

---

[6] Although the Court initially indicated in its tentative ruling that it would not certify the Settlement Class for all 12 class representatives and that Class Counsel would have to select two class representatives only (ECF 51 at 7-8 & n. 6-7), after oral argument at the preliminary approval hearing, the Court ultimately granted preliminary approval of the Settlement for all 12 class representatives. (ECF 56 at ¶ 3.)

[7] In its tentative ruling, the Court provided "several nits/suggestions concerning the various forms of proposed Notice and proposed preliminary approval order[.]" (ECF 51 at 15.) The parties adopted all of these suggestions and revised the proposed preliminary approval order and class notices. (*See* ECF 53, 54.)

More specifically, on or about June 8, 2023, KCC established a dedicated website for this class settlement at www.BoohooNationwidePricingSettlement.com where KCC posted the long-form class notice and other important documents relating to the case (e.g., operative complaints, the Settlement, etc.), and included answers to frequently asked questions. (Cooper Decl. ¶ 12.) Visitors are also able to find email and phone contact information for class counsel and the settlement administrator. (*Id.*) Also on June 8, KCC established and continues to maintain a 24-7 toll-free telephone hotline for potential class members to call and obtain information about the Settlement. (*Id.*)

Defendants identified 9,351,169 unique persons on the Class List. (Cooper Decl. ¶ 6.) Based on this list, beginning on July 10, 2023, KCC caused notice of the proposed class action to be e-mailed to 10,580,658 email addresses. (*Id.* at ¶ 7, Ex. C.) Of these e-mails, only 173,254 were deemed to be unsuccessfully delivered. (*Id.*)

Then on July 27, 2023, KCC printed and mailed out 854,672 postcard notices to class members deemed unsuccessful for e-mail or for whom KCC did not have a valid e-mail address. (Cooper Decl. ¶ 8, Ex. D.) Since then, KCC has received only 5,861 Postcard Notices returned by the U.S. Postal Service with undeliverable addresses. (*Id.* at ¶ 9.)

Beginning on June 16, 2023, KCC also caused publication notice to be distributed as a branded content article on USAToday.com. (Cooper Decl. ¶ 11, Ex. E.)

On April 18, 2023, KCC provided notice as required under 28 U.S.C. § 1715 under CAFA to the U.S. Attorney General, the Attorneys General of all individual states and the District of Columbia, and the five recognized U.S. Territories, as well as parties of interest to this Action. (Cooper Decl. ¶¶ 3-5, Ex. A.)

Opt-out requests must be postmarked no later than September 15, 2023. (ECF 56 at ¶ 30.) As of the date of filing this Motion, from the more than 9 million class members who have been successfully notified of the Settlement, KCC has received only fourteen (14) total requests for exclusion. (Cooper Decl. ¶ 14, Ex. G.)

Objections to the Settlement must be postmarked by September 15, 2023. (ECF 158 at ¶¶21-22; ECF 187 at 2.) As of the current date, Class Counsel has received zero (0)

objections to the Settlement and is not aware of any objections having been submitted to the Court or Defendants. (Ibrahim Decl. ¶ 45; *see also* Cooper Decl. ¶ 15.)

As noted, there is no claims process because the Settlement provides that all class members who did not timely request to be excluded from the Settlement will automatically be entitled to receive a Gift Card by e-mail. (Cooper Decl. ¶ 16.) Accordingly, after final approval, KCC will oversee the distribution of Gift Cards to class members. (*Id.*) KCC will also be responsible for administering a targeted social media campaign to remind class members to use their gift cards. (*Id.* at ¶ 20.)

In addition to KCC fielding questions from class members, Class Counsel have also received numerous e-mail inquiries from class members and have devoted time to communicate with class members to answer these inquiries and requests for information. (Ibrahim Decl. ¶46.)

## IV.   LEGAL STANDARD

Settlement of a class action lawsuit requires court approval. Fed. R. Civ. P. 23(e). Before a district court grants approval, it must determine that the settlement would be "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e)(2). The Ninth Circuit previously instructed district courts that, in deciding whether or not to approve a class settlement in accordance with Rule 23(e), the Court could consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). This list of factors was not intended to be exhaustive, and the Court was required to consider the applicable factors in the context of the case before the Court. *Officers for Justice,* 688 F.2d at 625.

Amendments to Rule 23 that took effect in December 2018 have formalized the consideration somewhat further. Now, in order for a Court to determine that a settlement

is "fair, reasonable, and adequate," the Court must first consider whether:

    (A)    the class representatives and counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief;
        (iii) the terms of any proposed award of attorney's fees and costs; and
        (iv) any agreement required to be identified;

    (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). As is apparent, these rule-based mandatory considerations overlap with certain of the factors the Ninth Circuit previously indicated should be considered.

Despite the importance of fairness, the Court should also be mindful of the Ninth Circuit's "strong judicial policy" favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation[.]") While balancing these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice,* 688 F.2d at 625. The Court should not reach the merits of the case or form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

## V.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Settlement Class Should Remain Certified

The Court explained in its May 2023 ruling on Plaintiffs' Motion for Preliminary

Approval why certification of the Class for settlement purposes was warranted. (ECF 51, 56.) No facts that would affect the Rule 23(e) inquiry have changed since the Court's ruling, and this Motion incorporates by reference the prior analysis and evidence as set forth in the Motion for Preliminary Approval (ECF 36) and the Court's preliminary approval ruling (ECF 51, 56.) Accordingly, the Court need not revisit class certification here, and the Class should remain certified for settlement. *See In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at *4 (N.D. Cal. Apr. 24, 2019).

## B.    The Settlement is Fair, Reasonable, and Adequate

Although the pre-amendment factors traditionally recognized by the Ninth Circuit arguably do not need to be considered in deciding whether the settlement is fair, reasonable, and adequate, Plaintiffs discuss and apply these factors below in the interests of completeness. This is followed by a review of the factors specifically enumerated in the amended Rule 23(e)(2). As shown below, application of these factors demonstrates that the Settlement before the Court is fair, reasonable, and adequate.

### 1.    *The Strength of the Case.*

Plaintiffs have a strong case. They defeated Defendants' Rule 12(b)(6) and 12(f) motion to dismiss. Defendant Boohoo Group dropped its Rule 12(b)(2) personal jurisdiction challenge. As shown in their Motion for Preliminary Approval, Plaintiffs also developed a highly persuasive evidentiary record in discovery demonstrating that Defendants ran near daily sales and discounts on the U.S. Websites, uniform class exposure to the allegedly false reference prices and fake discounts, and that the advertised reference prices and discounts were not based on former prices. (*See* ECF 36-1 at 40-43.) Defendants' advertised reference prices are instead based merely on their *opinion* of what the full retail value of their products are. (*Id.*) But prior to the *Khan* settlement and this Settlement requiring Defendants to make changes to the U.S. Websites for all consumers nationwide, Defendants did not have to disclose this to U.S. consumers. (ECF 36-1 at 42.)

### 2.    *The Risk, Expense, Complexity, and Likely Duration of Litigation.*

"[U]nless the settlement is clearly inadequate, its acceptance and approval are

preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Here, continuing to pursue litigation in lieu of settlement poses significant risk, expense, complexity, and delay in resolution. Plaintiffs are confident they would be able to obtain class certification, formulated a viable damages model based on a sound marketing survey and well-settled and accepted economic methodologies (*see* Tregillis Decl.), and successfully prove their claims at trial. But juries are unpredictable and may not find Defendants' pricing and sales practices deceptive despite the evidence. There is also a small risk that Plaintiffs' model for computing classwide damages would not be acceptable to the Court or the Ninth Circuit. *See*, *e.g.*, *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *12 (C.D. Cal. Mar. 15, 2016) (granting summary judgment based on the failure to demonstrate "a viable measure of restitution, such as a 'price premium' model in which an expert isolates the amount of the price attributable to the false representation.") While Plaintiffs here have a solid damage model consistent with *Chowning*, litigation inherently carries risk. (*See* Tregillis Decl.)

Moreover, because this case involves *nationwide* class claims (excluding California) and a class period extending through June 17, 2022, Plaintiffs would also have to overcome other hurdles Defendants would be expected to place in Plaintiffs' way. For example, Defendants would likely make arguments similar to those in their motion to strike the nationwide class allegations early in the *Khan* Litigation, including reliance on *Mazza v. American Honda Motor Co.*, for the proposition that differences between California law and the consumer protection laws of other states potentially create barriers to nationwide certification. 666 F.3d 581, 591 (9th Cir. 2012). Notably, consumers even from states whose consumer protection laws and case law are not consumer-friendly would stand to benefit from receiving the Gift Cards and free shipping.

Plaintiffs additionally anticipate having to overcome a class action waiver and arbitration clause Defendants allegedly placed on their websites under their standard terms and conditions as of October 31, 2020. Plaintiffs also anticipate that Defendants would

raise a statute of limitations challenge to truncate the class period by arguing that the *Khan* Litigation did not toll the limitations period under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), because this action was brought as a separate action from the *Khan* Litigation. *See, e.g.*, *Torres v. Wells Fargo Bank*, No. CV 17-9305-DMG (RAOx), 2018 WL 6137126, at *2 (C.D. Cal. Aug. 28, 2018). If Plaintiffs did not prevail on these issues, millions of individuals would be removed from the Class instead of being compensated under the Settlement. Defendants would also likely challenge the suitability of venue in California (since none of the class representatives made their purchases from California), applicability of California law to purchases outside of California, and the viability of the individual state law claims on summary judgment. Even if Plaintiffs were successful on any of these issues, there is no guarantee that the Ninth Circuit would agree with their positions. These are all significant risks to the claims of the Class and the length of the class period that weigh in favor of a settlement over continued litigation.

Moreover, Plaintiffs would face years of litigation against experienced defense counsel. Without a settlement, this case would force Plaintiffs to conduct further class discovery, defend 12 depositions of the class representatives, successfully prosecute a motion for class certification and potentially oppose a Rule 23(f) petition to the Ninth Circuit, conduct merits discovery, oppose summary judgment, undertake expert discovery, make pretrial disclosures and filings, and try the case. And, even if Plaintiffs prevail at trial, they may have to oppose a lengthy appeal. In contrast, a settlement ensures Class Members promptly receive the significant benefits negotiated for them.

Further, the expert and case-related costs alone in this type of class action would likely fall between $500,000 to $1,000,000 based on Class Counsel's experience. (Ibrahim Decl. ¶ 33.) Plaintiffs have obtained a significant benefit for all Class Members with sizable Gift Cards to purchase any item on Defendants' websites. These Gift Cards may be used by class members without having to pay for shipping—an added benefit valued at $7.45 per class member that would be difficult for Plaintiffs to argue is legally recoverable if this case went to trial. Under the Settlement, the guaranteed, immediate, and automatic

monetary benefit to the Class is in excess of $197 Million, which is approximately 45 cents on the dollar when compared to what the Class may recover after a risky and lengthy discovery, motions, trial, and appeals process. (*See* Tregillis Decl. ¶¶ 52-62.)

Moreover, by virtue of Plaintiffs' lawsuit, Defendants have agreed to make permanent the changes made to their business practices on a nationwide basis. They are required to provide clear and conspicuous disclosures on their websites and email marketing campaigns as displayed to consumers across the country (not just in California) so that they understand that the original prices advertised on the sites are not intended to reflect the former prices at which Defendants' merchandise sold.

On this point, any suggestion that the injunctive relief had already been achieved for all U.S. consumers as a result of the *Khan* settlement would not be accurate. Without this Settlement, Defendants were free—unbounded by any court order or contractual obligation—to implement technological changes whereby the disclosures on their websites would be visible only to California consumers, while continuing their deceptive marketing to consumers in the remaining states. Indeed, Defendants have the technological capability of displaying different sites to consumers in different regions of the world, which is, in fact, their current practice as reflected by the different sites they operate in places like the United Kingdom, other countries in Europe, Australia, and other regions. The injunctive relief resulting from the Settlement here, therefore, was extremely important to ensure that the nationwide class was not depending merely on actions taken *voluntarily* on the U.S. Websites by Defendants following the injunctive relief negotiated as to the sites as displayed in California. Rather, this Settlement ensures Defendants are *forever legally bound* to provide clear and conspicuous disclosures to *all* U.S. consumers. Without this Settlement, Defendants could have simply reneged on its purely voluntary decision to make changes to their websites following the *Khan* settlement.

### 3. The Risk of Maintaining Class Action Status Throughout Trial.

Plaintiffs have not obtained class certification other than for settlement purposes. Although they are confident a motion for class certification would be granted, even if this

occurred, there is no guarantee that further developments in the case would not have caused consideration anew of that conclusion. This risk factor is therefore no worse than neutral with respect to whether the Settlement should be given final approval.

### 4. *The Amount Offered in the Settlement.*

"Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance . . . is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000). But "[w]hile a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." *Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) (omitting internal citation).

Here, the monetary benefits of the Settlement consisting of $10 Gift Cards with free shipping valued at $7.45 for 11.3 million Gift Cards for over 9.3 million class members generates a total monetary value of $197 Million. As noted, this is better than 45 cents on the dollar when compared to what class members could have hoped to achieve with a full victory according to Plaintiffs' damage model. (ECF 36-6 (Tregillis Decl.) at ¶¶ 52-53, 62.) Significantly, these benefits are automatically awarded to class members without the need to make a claim, and there is no possibility of reversion. In addition, the Settlement provides for relevant and meaningful injunctive relief for the Class as described above. (Settlement at §§ 2.10-2.10.2(h).) These settlement terms have apparently been received favorably by the Class, as there have been only fourteen (14) exclusion requests to date out of a total of approximately 9.3 million class members. Therefore, this factor weighs in favor of final approval.

### 5. *The Extent of Discovery Completed and the Stage of the Proceedings.*

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. Nevertheless, here, the Settlement was completed after Plaintiffs had reached a relatively advanced stage of discovery based on the nationwide discovery conducted in the *Khan* Litigation and the follow-on confirmatory discovery done in this case. (Ibrahim Decl. ¶¶14-20.). Class counsel reviewed over 546,000 pages of documents produced by Defendants. Plaintiffs obtained extensive written discovery responses and also responded to Defendants' written discovery. Plaintiffs also litigated multiple discovery disputes before the Magistrate Judge in which Plaintiffs mostly prevailed. They took four corporate representative depositions and conducted an additional four deposition-like interviews of key defense witnesses on relevant topics. Plaintiffs thus had sufficient information about the case to make an informed decision about settlement.

### 6. *The Experience and Views of Counsel.*

In assessing the adequacy of the terms of a settlement, "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation[.]" *Nat'l Rural*, 221 F.R.D. at 528 (internal quotations and citations omitted). This is because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, both Class Counsel endorsing this Settlement have extensive experience in complex litigation, spanning over 35 years between them, including numerous trials as an Assistant U.S. Attorney, a federal clerkship, complex litigation experience at large firms, including trials, and class action litigation experience. (Ibrahim Decl. ¶¶ 47-57; Almadani Decl. ¶¶ 2-8; *see also* Wang Decl.) Indeed, they have had recent success teaming up as co-counsel in 2022 by trying two successful jury trials (one in this courthouse) resulting in multimillion dollar verdicts. (Ibrahim Decl. ¶¶ 7-8, 53-54.) The Court here stated

Plaintiffs' counsel "easily" meets the qualifications requirement. (ECF 51 at 7.) Therefore, this factor therefore weighs in favor of approving the Settlement.

### 7. The Presence of a Governmental Participant.

No governmental entity participated in the settlement of this case. The settlement administrator did, however, provide notice to the U.S. Attorney General and the Attorneys General of individual states. (Cooper Decl. ¶¶ 3-5.) This factor is therefore neutral.

### 8. The Reaction of the Members of the Class to the Settlement.

There have only been fourteen (14) opt-outs to date with an estimated 9.3 million class members receiving notice of the Settlement, and there have been no objections. This de minimis opt-out rate reflects an overwhelmingly positive reaction to the Settlement.

### 9. The Class Is Adequately Represented by Plaintiffs and Counsel

Turning now to the fairness factors the Court must consider under Rule 23(e)(2), the first such factor is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "This analysis includes the nature and amount of discovery undertaken in the litigation." *Ochinero v. Ladera Lending, Inc.*, No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *4 (C.D. Cal., July 19, 2021). The analysis is also "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Loreto v. Gen. Dynamics Info. Tech., Inc.*, No. 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *7 (S.D. Cal. May 7, 2021).

Here, the class representatives and counsel have more than adequately represented the class. The class representatives have provided all information needed for the case to counsel, provided factual input for the lawsuit, reviewed and approved the complaints, made themselves available when called upon, and have kept up to date on the progress of the case, including with regards to reviewing and approving the Settlement.[8]

Further, as summarized in section II, *supra*, Class Counsel have vigorously prosecuted this case on behalf of the Class, including the work they did in the *Khan*

---

[8] (Ibrahim Decl. ¶ 27; Habberfield Decl. ¶¶ 8-16; Kalu Decl. ¶¶ 9-17; Runnells Decl. ¶¶ 11-17; Cachadina Decl. ¶¶ 8-16; Valiente Decl. ¶¶ 8-16; Huebner Decl. ¶¶ 15-23; V. Walton Decl. ¶¶ 8-16; Murphy Decl. ¶¶ 7-15; Hill Decl. ¶¶ 8-16; Stewart Decl. ¶¶ 12-20; Thimot Decl. ¶¶ 11-19; M. Walton Decl. ¶¶ 9-17.)

26

Litigation, which Defendants acknowledge "overlap[ped] entirely with this matter" and "was used extensively to bring about the resolution in this case." (Stipulation at ¶ 21.) By way of summary, Class Counsel investigated the validity of claims arising from Defendants' practices on three different websites, procured 12 separate class representatives, filed an elaborate nationwide complaint pleading claims from eight different states, defeated Defendants' challenges to the pleadings and personal jurisdiction, conducted extensive written discovery, conducted many depositions and interviews of Defendants' executives and managers, prevailed in multiple discovery motions, defeated Defendants' sweeping effort to strike Plaintiffs' ability to bring this action, which, significantly, was directly followed by Defendants' expressed willingness to negotiate a resolution (*see* Khan ECF 181, 185; ECF 14), and conducted follow up confirmatory discovery to supplement prior documents and data. In addition, both Class Counsel have extensive experience in complex litigation as discussed above.

### 10. The Proposal Was Negotiated at Arm's Length (Rule 23(e)(2)(B))

The second Rule 23(e)(2) factor the Court must evaluate is whether the settlement "proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This factor is "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), 2018 Advisory Comm. Notes. "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e), 2018 Advisory Comm. Notes.

The settlement here was the product of diligent arm's length negotiations. Like the *Khan* Litigation, the parties again enlisted the assistance of Judge Irma Gonzalez, a highly respected retired federal district judge. (Ibrahim Decl. ¶ 37.) After Plaintiffs defeated Defendants' motion to strike this action, the parties initially participated in an in-person mediation session with Judge Gonzalez on October 4, 2022 in San Diego. (*Id.*) Although the case did not settle at that time, a framework for a potential settlement was laid at this

initial session. (*Id.*) The parties then agreed to participate in a second mediation session on November 15, 2022, at which time they reached agreement in principle on the material terms of the settlement presented here. (*Id.* ¶ 38.) In reaching the Settlement, the parties were careful to negotiate the material terms of the settlement covering benefits for the class prior to negotiating fees and costs. (*See id.*) After the second mediation, the parties engaged in numerous direct communications by videoconference, phone, and e-mail to negotiate and finalize all the detailed and intricate aspects of the Settlement, beginning with a memorandum of understanding delineating the material terms of the parties' agreement, and ending on April 6, 2023, with a final signed Settlement Agreement. (*Id.*)

### 11. The Relief for the Class is Adequate Under Rule 23(e)(2)(C)

Under the third Rule 23(e)(2) factor, the Court must consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). The Settlement satisfies these factors.

#### a. The First, Second, and Fourth Rule 23(e)(2)(C) Factors Favor Final Approval

First, as discussed above, the "costs, risks, and delay of trial and appeal" support final approval.

Second, the proposed method of distributing relief to the Class also favors final approval because under the Settlement, they automatically receive by e-mail the benefits of the Gift Card award and free shipping if they did not exclude themselves from the Class. Because Defendants are online-only retailers, all their customers had to create online profiles where they were required to provide their e-mail addresses. The Gift Cards may thus be distributed to all Class Members electronically, eliminating the need for a claims process. (Cooper Decl. ¶ 16.) Thus, this is far better than a traditional settlement where only a small fraction of class members benefits due to dependence on locating and

reaching class members and requiring them to submit a claim.

Third, other than the Settlement itself, there is no agreement required to be identified under Rule 23(e)(3). (Ibrahim Decl. ¶ 44.)

b. *The Attorneys' Fees Request Is Reasonable*

The Settlement should be given final approval because Class Counsel's fee request is reasonable and justified. The Ninth Circuit has interpreted the amended Rule 23(e)(2) as imposing an obligation on district courts to "examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that courts must balance the 'proposed award of attorney's fees' vis-a-vis the 'relief provided for the class' in determining whether the settlement is 'adequate' for class members." *Briseno v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)(C)). The Court must scrutinize the settlement for any "subtle signs that class counsel have allowed pursuit of their own self-interests to infect the negotiations." *Id.* at 1023 (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). Thus, the Court must evaluate the settlement for three such "subtle signs" of collusion between class and defense counsel: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class." *Id.* at 1023.

(A)     Class counsel's fee request is not disproportionate

The Settlement satisfies the first *Bluetooth* factor because Class Counsel will not be receiving a "disproportionate distribution of the settlement," *Bluetooth*, 654 F.3d at 947.

***First***, the attorneys' fees and costs are not coming out of the monetary benefits that will be distributed to the Class and, thus, do not at all reduce the benefits to the Class.

***Second***, the fee request is a mere **3.7%** of the Settlement's monetary value. As discussed above, the monetary value of the comprehensive nationwide settlement, before adding the value of injunctive relief, is $230 Million. This is calculated by multiplying the

total number of unrestricted Gift Cards (13,221,918) expected to be distributed across the entire nation, each with an approximate value of $17.45 ($10 Gift Card plus $7.45 value of free shipping that is normally charged by Defendants). Dividing $8,644,749 total fee request across all matters into $230 Million (the full recovery nationwide) yields 3.7 percent. This is well below the accepted benchmark in the Ninth Circuit of 25% taking into consideration just the monetary relief for the Class. *See Bluetooth,* 654 F.3d at 942. If this case were to be examined in isolation (divorced from *Khan*), the 3.7% figure would drop to 2.1% (arrived at by dividing $4,158,212 into $197 Million). But given the posture of this litigation, 3.7% is the correct figure. Furthermore, although Plaintiffs have obtained the same results for non-California class members as they did for the California settlement class in the *Khan* Litigation and plainly achieved a result that dwarfs the monetary value of the settlement in the *Khan* Litigation ($197 million versus $33 million), Class Counsel's fee and costs request is *less* than the amount requested and awarded by the Court in the *Khan* Litigation (i.e, $4,197,000 versus $4,750,000). From all angles, the proposed fee request is not disproportionate to Class Members' recovery.

**Third**, when injunctive relief is considered, the attorneys' fees requested would be proportionally even less, further allaying any disproportionality concern. *Taylor v. Meadowbrook Meat Co., Inc.*, No. 3:15-cv-00132-LB, 2016 WL 4916955, at *5 (N.D. Cal. Sept. 15, 2016) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers."); *see also Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 631 (9th Cir. 2020) (upholding district court's fee award where injunctive relief offered "generated benefits far beyond the cash settlement fund"); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *1, 5 (N.D. Cal. Feb. 20, 2015) (including value of removing various terms from packaging as part of the common fund from which to calculate attorneys' fees); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value includes injunctive relief);

**Fourth**, Class Counsels' fees will not come out of the benefits to be paid to the

Class, meaning that Class Members will receive their full benefits regardless of the attorneys' fees the Court allows.

*Fifth*, the proposed award of fees also does not "shortchange" the class and is properly balanced against the relief provided for the Class because Class Counsel have worked substantial hours and overcome many hurdles as described above. Class Counsel have also taken an enormous risk by pursuing this case with all the uncertainties of obtaining nationwide class certification, overcoming an arbitration clause and class waiver, and defeating potential statute of limitations and venue challenges, and doing all this on a contingency basis. *See Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX), 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020).

*Sixth*, the proposed fee award is also not disproportionate to the amount of the Settlement because the Gift Cards are not "coupons" within the meaning of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1711, *et seq.*[9] This topic has been discussed at length in the Motion for Preliminary Approval here and in the prior motions in the *Khan* litigation. For brevity, Plaintiffs will not repeat the discussion here. In short, because the Gift Cards are not "coupons," the calculation of Class Counsels' attorneys' fees should be based on their monetary value, which is $197 million without even accounting for the benefits conferred on the Class from injunctive relief. This supports the conclusion that the proposed fees are not disproportionate to the Settlement.

But on this topic, Plaintiffs wish to address an important point. In its preliminary approval tentative ruling, the Court stated that "in assessing Plaintiffs' valuation figures at least for purposes of a future fee award, the Court will require Plaintiffs' counsel, at the final approval stage, to inform the Court of what percent of the gift cards issued in the *Khan* settlement have been redeemed since the December 2022 final approval of that settlement, and the total overall dollar figure (dollar value plus free-shipping value) such redemption(s) represent(s)." (ECF 51 at 12 n.10.) However, KCC is unable to determine

---

[9] Importantly, the Court found at both the preliminary and final approval stages in the *Khan* Litigation, as well as in its preliminary approval order in this case, that the Gift Cards awarded to California settlement class members were not "coupons" under CAFA. (*Khan* ECF 148 at 11; 199 at 11 n. 5; ECF 51 at 13-14.) This analysis should be readopted here.

or even estimate the redemption percentage of Gift Cards by Class Members in connection with the *Khan* settlement or this Settlement. (Cooper Decl. ¶ 19.) That is because Class Members are not required to submit a claim form in order to receive a Gift Card, and instead, will automatically receive the Gift Cards via e-mail if they did not timely opt-out of the Settlement. (*Id.*) The Gift Cards do not have an expiration date so they may be used in the future at any time. (*Id.*) Like cash, they are good for life.

Rather, because this is not the more conventional settlement where class members have to submit a formal claim to receive the benefits available under the class settlement, the important metric for the Court to consider is how many class members have received, and are now owners of, the Gift Cards. KCC estimates that over 90% of class members will receive their settlement benefit. (Cooper Decl. ¶ 18.) In the *Khan* litigation, approximately 96% of class members received one or more Gift Cards. (*Id.* at ¶ 17.) Class Counsel pointed this out at the preliminary approval hearing, and the Court advised that it would consider this information. Plaintiffs submit this is very important in deciding Class Counsel's fee request.

(B)     The clear sailing provision is not collusive

As concerning the second *Bluetooth* factor, while the Settlement contains a "clear sailing" provision whereby Defendants agree not to oppose Class Counsels' request for attorneys' fees and costs in an amount that does not exceed $4,197,000, the mere presence of such a provision does not render a settlement collusive. *See*, *e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1260–61 (C.D. Cal. 2016). To the contrary, several facets of the Settlement in this case demonstrate that there was no collusion whatsoever.

*First*, as discussed above, this Settlement was negotiated at arms-length with the assistance of a highly respected retired district judge in two separate mediation sessions, as well as through subsequent direct communications between counsel to finalize the details of the final agreement. (Ibrahim Decl. ¶¶ 37-39.) *See Bluetooth*, 654 F.3d at 948 (presence of mediator is a factor weighing in favor of non-collusiveness).

*Second*, Class Counsel negotiated attorneys' fees only after the material terms of

32

the Settlement covering benefits for the Class had been agreed upon by the parties. (Ibrahim Decl. ¶ 38); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA (WMC), 2012 WL 5392159, at *13 (S.D. Cal. Nov. 5, 2012) (overruling objection to clear sailing agreement because fee amount was negotiated separately and after the class settlement was finalized).

*Third*, under the Settlement, unawarded fees do not revert to Defendants. Instead, if the Court decides not to award class counsel the full amount of fees and costs of $4,197,000, any amount short of this sum will be awarded to *cy pres*. (Settlement at §2.5.) This, too, is an indication of an absence of collusion even where the settlement has a clear sailing provision. *See, e.g., Spann*, 211 F. Supp. 3d at 1260–61 (although settlement had a clear sailing provision, "the absence of a kicker provision stating that all fees not awarded would revert to defendant[ ], weighs against a finding of collusion.") (internal quotations omitted). Therefore, there was no collusion under the second *Bluetooth* factor.

(C)     There is no reversion of fees to Defendants

The third and final *Bluetooth* factor also does not support a finding of collusion because, as already discussed in the previous section, the Settlement does not contain a "kicker" or "reverter" clause that returns unawarded fees to the defendant. *Bluetooth*, 654 F.3d at 947. Rather, any unawarded fees will be paid to a *cy pres* recipient. This is one well established method of mitigating against collusion between class counsel and defense counsel. *See id.* (provision whereby "all fees not awarded would revert to defendants *rather than be added to the cy pres fund* or otherwise benefit the class" was an indicia of collusion) (emphasis added); *Martin v. Marriott Int'l, Inc.*, No. CV 18-00494 JAO-RT, 2021 WL 4888973, at *5 (D. Haw. Oct. 19, 2021) (no collusion in part because unawarded fees designated to *cy pres* beneficiary); *Miguel-Sanchez v. Mesa Packing, LLC*, No. 20-CV-00823-VKD, 2021 WL 1736807, at *13 (N.D. Cal. May 3, 2021) (same); *LaGarde v. Support.com, Inc.*, No. C12-0609 JSC, 2013 WL 1283325, at *10 (N.D. Cal. Mar. 26, 2013) (danger of collusion undercut by plaintiff's counsel's offer to reduce fee request by directing $200,000 to *cy pres*); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 4831157, at *7 (N.D. Cal. Oct. 12, 2011) (inference of unfairness could have been

avoided by diverting unawarded attorney's fees to *cy pres*).

In addition, given that there are over 9.3 million class members, dividing unawarded attorneys' fees equally among class members would result in *de minimis* additional recovery for each class member. *See In re EasySaver Rewards Litig.*, 906 F.3d 747, 761-62 (9th Cir. 2018) (approval of $3 million distribution in unclaimed settlement funds to *cy pres* recipients not abuse of discretion where distribution of sum to over 1 million class members would result in "de minimis" recovery.) Directing any such funds to *cy pres* thus puts them to a more beneficial use for consumers similarly situated to the Class.

### 12. The Proposal Treats Class Members Equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes. Thus, under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018).

No such concerns exist in this case. All Class Members, no matter which of the four subject websites they bought from, what they bought, or whether they still have their order confirmations, will all be treated the same: they will each receive a $10 Gift Card with free shipping for each brand's website from which they bought merchandise. This equal treatment makes sense because all Class Members were uniformly exposed to the same deceptive discounting practice during the respective class period. The Court agreed with Plaintiffs that this factor favors approval of the Settlement. (ECF 51 at 11.) The $1,500 service awards do not create concerns here because it is an appropriate amount to compensate class representatives for their time and dedication to the case, and the total payment of $18,000 is a miniscule fraction of the total monetary value of the settlement

of $197 Million. *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards that were 417 times larger than $12 gift cards because the awards were only 0.17% of the total $27 Million settlement fund).

### C. Class Members Received Adequate Notice.

Final approval is proper if the Court determines that notice to the Class was "the best notice that is practicable under the circumstances[.]" Fed. R. Civ. P. 23(c)(2)(B); *see also Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173 (1974). Rule 23 specifically permits notice to be provided by "electronic means" and "United States mail" as it was here. Fed. R. Civ. P. 23(c)(2)(B). The content of notice "must clearly and concisely state in plain, easily understood language" essential settlement information, such as the nature of the action, the class definition, how and when class members may request exclusion, and the binding effect of a class judgment. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

At preliminary approval, the Court approved the proposed notice plan, which called for a multi-prong program by KCC. (*See* ECF 51 at 14-15.) As summarized above, KCC successfully executed on this plan as the Court directed, as summarized in the concurrently filed declaration from KCC. (*See* Cooper Decl. ¶¶ 2-13.) The content of the notice documents provided all the requisite information in plain, easily understood language. (*See* Cooper Decl. Exs. C-F (attaching copies of the notice documents).) Out of more than 9.3 million notices disseminated, there have been only fourteen (14) opt-outs, and to date, no objections have been received. (*Id.* at ¶¶ 14-15.) Notably, the notice plan is nearly identical to the program KCC implemented in the *Khan* Litigation where notices and Gift Cards were successfully distributed to California class members who, like the Class Members here, were customers of Defendants on the U.S. Websites. Accordingly, notice to the Class in this case satisfies Rule 23(c)(2)(B).

## VI. CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court: (1) grant final approval of the Settlement; (2) finally certify the Settlement Class; (3) authorize KCC to administer the settlement benefits to members of the Class; (4) order Defendants to

comply with the injunctive relief described in the Settlement; (5) enter the final order and judgment in the form concurrently filed herewith (and consistent with Exhibit H to the Settlement); and, (6) rule on Plaintiffs' Motion for Attorneys' Fees, Costs, and Service awards, filed concurrently herewith.

Dated: September 1, 2023                    Respectfully submitted,

                                            ALMADANI LAW

                                            */s/ Yasin M. Almadani*
                                            Yasin M. Almadani, Esq.


                                            AI LAW, PLC

                                            */s/ Ahmed Ibrahim*
                                            Ahmed Ibrahim, Esq.

                                            *Attorneys for Plaintiffs Individually and*
                                            *On Behalf of All Others Similarly Situated*