ALMADANI LAW
Yasin M. Almadani, State Bar No. 242798
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph: 949-877-7177 | Fax: 949-877-8757
yma@lawalm.com

AI LAW, PLC
Ahmed Ibrahim, State Bar No. 238739
4695 MacArthur Court, Suite 1100
Newport Beach, CA 92660
Ph.: 949-266-1240 | Fax: 949-266-1280
aibrahim@ailawfirm.com

*Attorneys for Plaintiffs, Individually and
On Behalf of All Others Similarly Situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA HABBERFIELD, an individual, et al., on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>BOOHOO.COM USA, INC., a Delaware corporation, BOOHOO.COM UK LIMITED, a United Kingdom private limited company, BOOHOO GROUP PLC, a Jersey public limited company, PRETTYLITTLETHING.COM USA INC., a Delaware corporation, PRETTYLITTLETHING.COM LIMITED, a United Kingdom private limited company, NASTYGAL.COM USA INC., a Delaware corporation, NASTY GAL LIMITED, a United Kingdom private limited company, and DOES 1-10, inclusive,<br><br>        Defendants. | **CASE NO.: 2:22-CV-03899-GW-JEMx**<br><br>Consolidated for Pretrial Purposes with:<br>No. 2:20-cv-03332-GW-JEM<br>No. 2:20-cv-04658-GW-JEM<br>No. 2:20-cv-04659-GW-JEM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>**Hearing Information:**<br><br>Date:      November 2, 2023<br>Time:     8:30 a.m.<br>Courtroom: 9D<br>Judge:    Hon. George H. Wu<br><br>Action Filed: June 7, 2022<br><br>Trial Date:   TBD |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE THAT** on November 2, 2023, at 8:30 a.m. or as soon thereafter as counsel may be heard in Courtroom 9D of the above-captioned Court located on the 9th Floor at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Farid Khan, Haya Hilton, and Olivia Lee, on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel of record, will and hereby do move for an order pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, granting attorneys' fees, litigation costs, settlement administration costs and service awards.

This motion will be heard concurrently with Plaintiffs' Motion for Final Approval of Class Action Settlement, which will be separately filed.

Dated: September 1, 2023

Respectfully submitted,

ALMADANI LAW

*/s/ Yasin M. Almadani*
Yasin M. Almadani, Esq.

AI LAW, PLC

*/s/ Ahmed Ibrahim*
Ahmed Ibrahim, Esq.

*Attorneys for Plaintiffs Individually and*
*On Behalf of All Others Similarly Situated*

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................... 1

II.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................. 4

III. THE SETTLEMENT BENEFITS TO THE CLASS.................................... 7

IV. THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS .................................................................. 9

A.  CLASS COUNSEL'S FEES SHOULD BE MEASURED BASED ON THE FULL VALUE OF THE SETTLEMENT BECAUSE THE COURT HAS FOUND THAT THIS IS NOT A COUPON SETTLEMENT ........................................................................................ 9

B.  THE FEE REQUEST IS JUSTIFIED UNDER THE PERCENTAGE OF THE BENEFIT METHOD AND IS WELL BELOW THE 25% BENCHMARK ........................................ 9

C.  THE *VIZCAINO* FACTORS SUPPORT PLAINTIFFS' FEE REQUEST ............................. 12

  1.  *Class Counsel Achieved an Excellent Result* ..................................... 12

  2.  *The Risk of Litigation Also Supports the Fee Request* ...................... 14

  3.  *The Skill of Counsel and Work Performed Support the Fee Request* ............... 15

  4.  *The Risks Class Counsel Has Undertaken by Pursuing this Case on a Contingency Basis Along With the Financial Burdens Also Support the Fee Request* 16

  5.  *The Settlement Provides a Significant Benefit to Nationwide Consumers*......... 16

D.  WHILE A LOADSTAR CROSSCHECK IS NOT NECESSARY HERE, THE REQUEST FOR FEES AND COSTS IS FAIR AND REASONABLE UNDER A LODESTAR CROSS-CHECK ........ 17

  1.  *Class Counsel's Hourly Rates Are Reasonable* ................................. 17

  2.  *The Hours Billed by Class Counsel Are Reasonable*......................... 24

  3.  *All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar* 29

E.  CLASS COUNSEL'S OUT-OF-POCKET EXPENSES SHOULD BE AWARDED................. 30

3

F.   THE REQUESTED SERVICE AWARDS FOR PLAINTIFFS ARE REASONABLE ................ 32

V.   CONCLUSION ....................................................................................... 35

# TABLE OF AUTHORITIES

## CASES

Page(s)

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................ 12

*Addison v. Monarch & Assocs., Inc., No. EDCV 14-358-GW*
(CWX), 2018 WL 6616662 (C.D. Cal. Jan. 25, 2018) .............................. 18

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*,
    No. 09 MDL 2007-GW, 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) 12,17

*Ahmed v. HSBC BANK USA*, No. ED CV 15-2057 FMO(SPx),
    2019 WL 13027266 (C.D. Cal. Dec. 30, 2019) ........................................ 34

*Aram Terteryan v. Nissan Motor Acceptance Corp.*, No. CV 16-2029-GW-KSx,
    2022 U.S. Dist. LEXIS 159383, at *24 (C.D. Cal. Aug. 21, 2022) .......... 10

*In re Bluetooth Headset Prods. Liability Litig.*,
    654 F.3d 935 (9th Cir. 2011) .............................................................. 11,17

*Brady Mktg. Co. Inc. v. Kai U.S.A. Ltd., No. 3:16-cv-*
1878-MO, 2018 ........................................................................................ 21

*Chalmers v. City of Los Angeles*,
    796 F.2d 1205–11 (9th Cir. 1986) .......................................................... 18

*Chowning v. Kohl's Dep't Stores, Inc., No. CV 15-08673 RGK*
(SPx), 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016) .................... 14, 24, 31

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) .................................................................................. 31

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) .......................................................... 30

*In re EasySaver Rewards Litig.*,
    906 F.3d 747–55 (9th Cir. 2018) .............................................................. 9

*Elkies v. Johnson & Johnson Servs., Inc., No. CV 17-7320-GW*
(JEMX), 2020 WL 10055593 (C.D. Cal. June 22, 2020) ........................ 16

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617, 622 (N.D. Cal. 2021) .............................................. 8

*French v. City of Los Angeles, No. EDCV 20-00416 JGB*
(SPx), 2022 WL 2189649 (C.D. Cal. May 10, 2022) .............................. 21

*Gutierrez v. Wells Fargo Bank, N.A., No. C 07-05923 WHA*,
    2015 WL 2438274 (N.D. Cal. May 21, 2015) ........................................ 20

5

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................ 30

*Hefler v. Wells Fargo & Co., No. 16-CV-05479-JST*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................... 20

*Hopkins v. Stryker Sales Corp., No. 11-CV-02786-LHK*,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ............................... 32

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539–571 (9th Cir. 2019) ............................................ 29

*Jasper v. C.R. England, Inc., No. CV 08-5266-GW*
   (CWX), 2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ...................... *17, 25*

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67–70 (9th Cir. 1975) ................................................ 29

*Laffitte v. Robert Half Int'l Inc.*,
   1 Cal. 5th 480 (2016) ....................................................... 12, 25

*In re Lenovo Adware Litig., No. 15-MD-02624-HSG*,
   2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........................... 20

*Mangold v. California Pub. Util. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) .................................................. 11

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021) .................................................... 9

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .................................................. 32

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ........................................... 24, 25

*Nwabueze v. AT & T Inc., No. C 09-01529 SI*,
   2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) ............................. 9

*In re Omnivision Technologies, Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................... 31

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) .................................................. 34

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ............................... 18, 24

*Paul, Johnson, Alston, & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ....................................... 11, 12, 17

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ............................................................. 12, 17

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
    896 F.2d 403 (9th Cir. 1990) ................................................................. 18

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal.1995) ....................................................... 30, 32

*Vincent v. Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) .................................................................. 11

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................. 2, 12, 17 , 30

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    *No. 2672 CRB*, (JSC), 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...... 20

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ............................................................. 17, 29

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 (9th Cir. 2007) .................................................................. 18

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) .................................................................. 30

*Wit v. United Behav. Health*,
    578 F. Supp. 3d 1060 (N.D. Cal. 2022) ................................................. 20

**FEDERAL STATUTES**

28 U.S.C. § 1711 .......................................................................................  8

**FEDERAL RULES**

Fed. R. Civ. P. 12 ......................................................................................  15

Fed. R. Civ. P. 23 ......................................................................................  16

Fed. R. Civ. P. 30 ................................................................................. 23, 28

## I.   INTRODUCTION

This case, along with its companion cases, presents a comprehensive nationwide class settlement (including both California and non-California U.S. consumers) that was accomplished in two steps whereby the claims of California consumers was settled first, followed by the claims of the rest of the nation, but only after significant assumption of risk and extensive litigation by Class Counsel. As a result of the combined settlements between this and the *Khan* Litigation, Defendants are expected to distribute approximately 13,221,918 unrestricted, cash-like gift cards with no expiration date, each valued at $17.45, including free shipping. The Class Members will receive the gift cards automatically without the need for an inconvenient claim-filing process, resulting in a major benefit to the Class. Moreover, the attorneys' fees, litigation costs, settlement administration costs, and service awards in this case were all negotiated separately (*after* the class benefits were finalized) and will not diminish even one *iota* the benefits to be paid to the Class Members, which is another major win for the Class.

After preliminary approval, lead Class Counsel personally attended to and answered innumerable individual inquiries from class members across the nation, which took considerable effort. For example, in one instance, a class member had moved to Japan and wanted free shipping to Japan. Class Counsel engaged in back-and-forth negotiations with Defendants to make this class member's wish come true and secured for her the free shipping to Japan she had requested.

The instant motion for attorneys' fees, costs, and service awards before the Court presents a situation where the only fair way to view the requests is from a global perspective aggregating the figures between this case and the consolidated *Khan* Litigation.[1]  This is because this action—which was consolidated with the *Khan* Litigation—is indisputably a continuation of the *Khan* Litigation that was initiated against Defendants in 2020 by which the *Khan* plaintiffs sought certification of a <u>nationwide</u> class

---

[1] "*Khan* Litigation" refers to the three related and consolidated actions: (1) *Khan v. Boohoo.com USA Inc.*, No. 2:20-cv-03332-GW-JEMx, (2) *Hilton v. PrettyLittleThing.com USA Inc.*, No. 2:20-cv-04658-GW-JEMx, and (3) *Lee v. NastyGal.com USA Inc.*, No. 2:20-cv-04659-GW-JEMx (together, the "*Khan* Litigation").

of purchasers from Defendants' U.S. websites.[2] Every ounce of sweat, diligence, and resources poured into the *Khan* Litigation by Class Counsel—two solo practitioners who risked their practices to take on the colossal Defendants in a very complex case on behalf of U.S. consumers—was instrumental to the prosecution and settlement of this related action. Even Defendants' own Chief Executive Officer acknowledged:

> [T]his case would not have settled without the benefit of the litigation undertaken in the related *Khan* Litigation, including all discovery and depositions taken in that Litigation. The *Khan* Litigation began as nationwide class actions and ultimately resulted in a California class settlement. The litigation and discovery efforts expended by counsel in the *Khan* Litigation overlap entirely with this matter and the work was used extensively to bring about the resolution in this case.

(Stipulation in Support of Motion for Preliminary Approval of Class Settlement, ECF 36-3 (the "Stipulation") at ¶ 21.)

Divorcing this case from the *Khan* Litigation and looking at it in a vacuum would thus not be fair or just. Fairness dictates that Class Counsel be credited for the full breadth of the work and resources that went into bringing about this comprehensive and final nationwide settlement to the claims originally filed by the *Khan* plaintiffs. Bearing this in mind, Class Counsel are the first to recognize that if this case is to be viewed as one large matter resolved in two steps—as it should—then the Court must view the total attorneys' fees requested combined between this and the *Khan* Litigation vis-à-vis the full breadth of attorney hours and costs expended to get to this nationwide result.

Taking this global approach, the first lens from which to view the requests herein is the percentage method because "the primary basis of the fee award remains the percentage method" with 25% of recovery as the benchmark. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002). Here, the total monetary value of the comprehensive nationwide settlement is approximately $230 Million with the non-California Class Members receiving approximately $197 Million and the California Class Members receiving approximately $33 Million. A fee benchmark of 25% on the total settlement

---

[2] Defendants' websites at issue in the *Khan* Litigation and here are the same: https://us.boohoo.com  and/or https://boohooman.com/us (the "Boohoo U.S. Websites"), https://prettylittlething.us (the "PLT U.S. Website"), and https://nastygal.com (the "Nasty Gal U.S. Website") (collectively, the "U.S. Websites")

amount result in a benchmark figure of $57.5 Million between this and the *Khan* Litigation, but Class Counsel are not requesting anywhere near this amount.

Class Counsel here are requesting **$4,158,212** in attorney fees, which means that for both this matter and the *Khan* Litigation *combined*, Class Counsel are requesting a total of approximately **$8,641,749** in attorney's fees ($4,483,537 in the *Khan* Litigation, which has already been approved, and an additional $4,158,212 in this case, yet to be approved). Thus, from a global perspective considering the full nationwide settlement amount and comparing it to the *combined* fee request of $8,641,749 results in a modest fee request of **3.7%** of the total settlement value ($230 Million), which is among the lowest seen in the caselaw. If this case is viewed in isolation of the *Khan* Litigation, that figure drops to 2%, arrived at by dividing $4.16 Million by $197 Million. But as explained above, the fair and appropriate way to assess this case is in combination with the *Khan* Litigation, with the correct figure for the percentage method being 3.7%.

Moving on to the lodestar cross-check, Class Counsel factored in the total attorney hours expended over the past three-and-a-half (3½) years to achieve the complete nationwide settlement and compared it to the $8,641,749 total in fees requested across all consolidated matters. This resulted in a multiplier of **2.45**, which Class Counsel submit is very reasonable given the risks assumed by Class Counsel, their efficiency and success throughout the litigation, the excellent result they achieved for the nationwide Class, and the multipliers that have been granted in other such cases, including by this Court. *See* Appendix A. While this Court is of course not bound by any district court decision, including its own, Class Counsel urge this Court to view their request in light of the caselaw discussed below and in Appendix A.

The out-of-pocket costs to Class Counsel among the consolidated cases totaled $305,251, of which $38,788 is being requested as a part of the current settlement. This is a fraction of the amount Class Counsel had budgeted and allocated to litigate the nationwide claim first filed in the *Khan* Litigation and then continued here in *Habberfield*. Indeed, the total hard costs to take this matter through class certification and trial would

3

have been $500,000 to $1,000,000, if not more, which means that by continuing with the *Habberfield* litigation, Class Counsel were risking a substantial portion of their respective small practices. Class Counsel, nevertheless, took on this risk for the nationwide class and achieved a stellar result with tenacity, resolve, and efficiency—not by stacking the case with countless attorneys to run up the tab for the benchmark as is oft done.

Class Counsel also negotiated a standout deal with the Settlement Administrator whereby the Administrator agreed to charge only $1 Million for the administration and distribution of over <u>11 million</u> gift cards nationwide (with nearly half this amount allotted to postage) when the administration and distribution of about <u>2 million</u> gift cards in California alone had cost $350,000. The per capita cost was thus slashed in half.

Finally, Class Counsel negotiated a service award of $1,500 per Class Representative here, each of whom devoted considerable time to the case and exposed themselves publicly for the benefit of consumers in their respective states and nationwide. This amount is a modest fraction of the $5,000 service award this Court approved for each of the *Khan* Litigation class representatives, who admittedly spent more time and energy and deserved more. Class Counsel submit that the downward adjustment they have already made for the request here is reasonable and fair.

At each step, Class Counsel have tried to take the principled and reasonable road that would both protect the class and be looked upon favorably by this Court. Class Counsel have worked tirelessly to achieve a tremendous result in the most efficient manner possible. They thus seek this Court's approval of their motion for fees, costs, and service awards for the reasons more fully discussed below.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

The statement of facts and procedural history are detailed in Plaintiffs' Motion for Final Approval of Class Action Settlement (the "Final Approval Motion") (ECF 62), to be considered concurrently with this Motion. Therefore, in order to avoid duplication and save the Court's time, Plaintiffs incorporate herein by reference the statement of facts in their Final Approval Motion (ECF 62 at 3-10) and summarize the highpoints below.

This matter is a continuation of the *Khan* Litigation, which was filed as a nationwide class action to address Defendants' deceptive pricing practices (ECF 62 at 3-6), seeking damages and injunctive relief for a nationwide class. (*See* operative complaints in *Khan* Litigation.) Because Defendants' pricing practices were the centerpiece of their marketing strategy, Defendants fought tooth and nail from case inception, even refusing to accept service for certain entities, putting Plaintiffs to the difficult task of foreign service (*see e.g.*, *Khan* ECF 18). This was followed by a slew of motions to dismiss the case and the nationwide claims based on a myriad of grounds essentially throwing in the kitchen sink. (ECF 62 at 6-7.) Plaintiffs opposed each and every such attempt, and Defendants' motions were all rejected after months of protracted litigation. (ECF 62 at 6-7.) <u>This case benefited considerably from Class Counsel's efforts and those rulings.</u>

After nine months of pre-discovery motion practice, Class Counsel earned Plaintiffs the right to conduct discovery pertaining to nationwide class certification, including written discovery and depositions. (ECF 62 at 7.) Discovery too was not easy. (*Id*.) Defendants objected at every step, leading to litigation over numerous discovery disputes, almost all of which were resolved substantially in Plaintiffs' favor due in no small part to the unrelenting efforts of Class Counsel. This resulted in comprehensive nationwide class discovery, which allowed for the review of hundreds of thousands of important documents and spreadsheets, and numerous foreign depositions and interviews, <u>all of which was used extensively in this continuation case and without which this case could never have settled in such a favorable fashion for the full nationwide class.</u> (*See id*.)

After over a year of discovery, settlement negotiations, and five mediation sessions before the Honorable Irma Gonzalez (Ret.) from the U.S. District Court for the Southern District of California, the parties reached a California-only settlement with the understanding that the nationwide claims could continue to be litigated with non-California plaintiffs, as was done through this continuation case. (ECF 62 at 3-5, 8.)

In moving forward with the *Khan* nationwide claims in this continuation case, Class Counsel considered the substantial and very costly risk of litigating the California claims

5

on a nationwide basis brought by non-California residents, all of whom would also have their own respective state-law claims, each with their own unique set of issues. But Class Counsel put the interests of the nationwide class over their own risks and continued on in this case. And, as expected, when the complaint in this continuation case was filed, Defendants fiercely opposed it in similar fashion to their aggressive litigation approach in the *Khan* Litigation. (ECF 62 at 8-9.) They were met with equally fierce opposition from Plaintiffs and Class Counsel. (*Id.*) The Court ultimately rejected Defendants' bid to strike this case, and allowed the nationwide claims to go forward, consolidating this action with the related *Khan* Litigation. (*Id.*)

Through the litigation in *Khan* and here, Class Counsel always put the nationwide class first and did not accept anything less than what was achieved for the California class members, despite running into a complete impasse with Defendants and fully expecting to litigate the matter through class certification and trial putting their practices at risk. (Ibrahim Decl. ¶39.) The parties ultimately settled, as Class Counsel achieved their objective of securing for the nationwide class the same generous benefits they had secured in the *Khan* settlement, despite significant legal obstacles, such as a class action waiver and arbitration clause for post-October 2020 purchasers, unfavorable state laws, and statute of limitations issues. (*Id.* at ¶¶ 30, 39.)

After the Court granted preliminary approval, lead Class Counsel continued to protect the Class and personally answered countless emails from individual class members, at times engaging in numerous emails with a single class member to ensure their questions were fully addressed. (Ibrahim Decl. ¶46.) For example, in one instance, a class member had moved to Japan and requested free shipping there. Class Counsel negotiated with Defendants to secure free shipping to Japan for this class member. (*Id.*)

At every step, Class Counsel have worked diligently to protect the interests of the nationwide class advanced initially by the *Khan* plaintiffs and continued here by the *Habberfield* plaintiffs. The Court can rest assured that even after the filing of this motion and final approval of the settlement, Class Counsel will continue to personally field

inquiries and protect the interests of the full nationwide class as they always intended.

## III.   THE SETTLEMENT BENEFITS TO THE CLASS

The terms of the Settlement, which the Court preliminarily approved, are detailed in the Final Approval Motion. Thus, to avoid duplication and conserve Court resources, Plaintiffs incorporate herein by reference the settlement terms section in their Final Approval Motion (ECF 62 at 10-17) and focus on the highlights most relevant for the Court's consideration here.

In this continuation settlement involving the remaining 49 states and U.S. territories, Class Counsel obtained the most expansive Class Periods possible, running through June 17, 2022, which is when Defendants implemented the injunctive relief changes to their websites in accordance with the *Khan* Litigation settlement. (ECF 62 at 10-11.) Securing this large Class Period for the nationwide class was no easy task, however, because Defendants had implemented a class action waiver on their websites in 2020, long before the injunctive relief changes were made to the websites. (Ibrahim Decl. ¶30.) But Class Counsel engaged in extensive legal research on this issue and were able to negotiate from a position of strength to obtain the largest reasonable class period. (*Id.*)

Pursuant to the Settlement Agreement, Class Members who choose to not opt out will automatically receive unrestricted, cash-like Gift Cards, each valued at $17.45, including free shipping. (ECF 62 at 11-12.) The Gift Cards have no expiration date, no minimum purchase requirement, no blackout dates, no inactivity fees, may be used with any other offer or promotion, and are freely transferrable and stackable. (*Id*.) The Class Members are entitled to a Gift Card from each of the three subject websites from which they made purchases, making them eligible for more than one Gift Card. (*Id*.)[3]

The Court is well aware that in the normal claims-made settlement, class-member benefits are often left on the table as a result of claims not being timely filed in the overwhelming majority of cases, resulting typically in a claims rate of under 10% of class

---

[3] The only limitation, of which the Court is aware, is that the Gift Cards are to be used in a single transaction, which was unavoidable due to the significant hard costs of free shipping Defendants agreed to cover.

members actually receiving the class benefits. *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 622 (N.D. Cal. 2021) (claims rate of 4-9% is typical for consumer class actions). But here, Class Counsel have negotiated a settlement whereby the Class Members who do not opt out will receive the Gift Cards automatically without the need for an inconvenient claim-filing process, resulting in a class-member-benefit distribution of over 90%, a figure that is unheard of in the class action world. (Cooper Decl. ¶¶ 17-19.)

Most importantly, Class Counsel ensured that the fees and costs of the litigation did not adversely affect the Class Members in any fashion, which is a primary concern of courts on motions for attorneys' fees in class actions. There is no such concern here because the attorneys' fees, litigation costs, settlement administration costs, and service awards were all negotiated separately (*after* the class benefits were finalized) and will not diminish even one *iota* the benefits to be paid to the Class Members—another major victory for the Class. (Ibrahim Decl. ¶ 39.)

In terms of injunctive relief and changes to Defendants' U.S. websites, the *Khan* settlement required Defendants to implement those changes only in California. (Khan ECF 133-1, Ex. 1 at § 2.10.2.) Defendants were thus free at any point in the future to run California-only websites (as they readily do for different regions around the world) while continuing their deceptive pricing practices in the rest of the nation. (*See id.*) The Settlement here has ensured that Defendants are *legally bound* to continue the multiple website disclosures for the entire nation into perpetuity (*see id.*), a result that cannot be understated because corporate entities do not always police themselves well and protect consumers. Rather, it is the legally binding nature of the class settlement that ensures compliance in situations like this.

Since preliminary approval, notice to Class Members has been disseminated by numerous methods, including (1) e-mail notice, (2) postcard notice by mail, (3) publication notice on the USA Today website, (4) a long form notice posted on a dedicated class settlement website, and (5) notice to public officials as required under the Class Action Fairness Act (28 U.S.C. § 1711, *et seq.*) (CAFA). (Cooper Decl. ¶ 2.)

With the overwhelming majority of Class Members having been located via email or postcard and only 14 opt outs to date, it is conservatively anticipated that over 90% of Class Members across the nation (including California and non-California Class Members) will receive their settlement benefit. (Cooper Decl. ¶¶ 14, 18.)

## IV. THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Class Counsel's Fees Should Be Measured Based on the Full Value of the Settlement Because the Court Has Found That This Is Not a Coupon Settlement

In its preliminary approval motion, Plaintiffs explained at length that this is not a coupon settlement. (ECF 36-1 at 33-35) The Court agreed, stating in its ruling: "Also, like in *Khan*, Plaintiffs have persuasively explained why this proposed settlement should not be considered a 'coupon' settlement (which would obligate the Court to apply 'heightened scrutiny' and base any fee award on redemption-value)." (*See* ECF 51 at 13-14 (citing *McKinney-Drobnis v. Oreshack*, 16 F.4th 594 (9th Cir. 2021) and *In re Easysaver Rewards Litig.*, 906 F.3d 747, 754-55 (9th Cir. 2018)). The Court then proceeded to enumerate the many factors to support this conclusion, including the non-restrictive attributes of the Gift Cards and the thousands of items available for Class Members to purchase without having to spend a dime. (*See id.*) As this is not a coupon settlement, no heightened scrutiny is required, and the full settlement value should inform the Court's analysis.

### B. The Fee Request Is Justified Under the Percentage of the Benefit Method and Is Well Below the 25% Benchmark

The benchmark award of attorneys' fees in "common fund" or "constructive common fund" cases is 25%. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). When assessing the value of a fund, "the Court should look to the maximum settlement amount that could be claimed." *Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *11 (N.D. Cal. Nov. 27, 2013).

While this Court customarily adjudicates fee requests in "common fund" cases, this is not a traditional common fund case, because the attorneys' fees here will in no way be drawn from or adversely affect the Class benefits. This alone is a major benefit to the

Class, going to the heart of a primary concern for this and many other courts, namely, that, "to the extent there is value obtained from this settlement, it appears to be going into the pockets of the class members—as it should—as opposed to overwhelmingly into attorneys' coffers." *Aram Terteryan v. Nissan Motor Acceptance Corp.*, No. CV 16-2029-GW-KSx, 2022 U.S. Dist. LEXIS 159383, at *24 (C.D. Cal. Aug. 21, 2022).

This Court has also expressed that, even in the more traditional common fund case, the Ninth Circuit's 25% benchmark "is a benchmark that this Court, in particular, *almost-always adheres to* in cases where there is little active litigation pre-settlement . . . typically reserve[ing] above-benchmark fee awards for cases involving more litigation." *Id*. at *25-26 (emphasis added). This is a case that has seen over three-and-half (3 ½) years of active and hotly contested litigation culminating finally with this nationwide settlement achieved in two steps, starting with the *Khan* settlement, and ending here.

The monetary value of the continuation settlement in this case is approximately $197 Million, which, if combined with the $33 Million value of the *Khan* settlement, results in a combined nationwide settlement value of approximately $230 Million, with each Gift Card being valued at approximately $17.45. (ECF 36-6 (Tregillis Decl.) at ¶¶ 53-62.) This very favorable settlement for the entire nationwide Class was negotiated prior to any discussion of attorneys' fees or costs, separating Class recovery altogether from the attorney fees and costs. (Ibrahim Decl. ¶39.) Thereafter, Class Counsel were able to finalize the deal for the Class by agreeing to accept a fraction of what class counsel normally seek in such cases with such large recoveries.

For this second step to reach a full and comprehensive nationwide settlement, Class Counsel are requesting **$4,158,212** in attorney fees (in addition to the $4,483,537 awarded in the *Khan* settlement) for a combined fee request of approximately **$8,641,749** for the complete nationwide settlement of the claims initiated by the *Khan* Plaintiffs in 2020 and continued by the *Habberfield* plaintiffs here.

The clever approach for Class Counsel under the percentage method would have been to take this case in isolation and divide the $4.16 Million fee request here by the $197

10

Million settlement amount here, resulting in a figure of 2%. While this 2% figure would be more advantageous to their argument, Class Counsel do not believe that this would be accurate because *Khan* started out as a nationwide case, and *Habberfield* simply continued those nationwide claims for the non-California Class Members, drawing directly upon all the successes in *Khan*. Therefore, what Class Counsel are actually requesting is an *additional* $4,158,212 for a total of $8,641,749 Million in the consolidated matters involving a nationwide settlement of $230 Million in total monetary value.[4] This results in a percentage method figure of **3.7%** (not 2%) of the total settlement value. But even under this more conservative and accurate approach, Class Counsel's fee request is far below the 25% benchmark and is a fraction of the percentages routinely sought and awarded in such cases. (*See* Appendix A.)

Indeed, even if this case were a common fund case drawing from the benefits of the Class (which it is not), the request of Class Counsel here would be undeniably reasonable. Indeed, it is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Bluetooth*, 654 F.3d at 941. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Because jurisdiction here is based upon diversity, California law controls whether an attorney is entitled to fees and the method of calculating such fees. *See, e.g., Mangold v. California Pub. Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). "California has long recognized, as an exception to the general American rule that parties bear the costs of their

---

[4] Because the fee request here is so far below the benchmark, for purposes of the numbers analysis, Class Counsel have not taken into account the excellent injunctive relief by which the Class has *legally bound* Defendants to make nationwide disclosures on their websites in perpetuity. Nevertheless, in considering attorney fees', Class Counsel request that the Court at a minimum consider this benefit to the Class, in its discretion.

own attorneys, the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 488-89 (2016).

While courts have discretion in making fee awards, "use of the percentage method in common fund cases appears to be dominant." *In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *5 (C.D. Cal. Jan. 10, 2014) (citing *Vizcaino*, 290 F.3d at 1047, and *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *Paul,* 886 F.2d at 272. The advantages of using the percentage method have been thoroughly described by many courts. *See, e.g., In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).

California courts and the Ninth Circuit have approved a number of factors which may be relevant to the Court's decision, including: (1) the results achieved, (2) the risk of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, and (5) the benefit of settlement to the public. *Aftermarket Auto. Lighting*, 2014 WL 12591624, at *5 (citing *Vizcaino*, 290 F.3d at 1048-50). The Ninth Circuit has explained these factors should not be used as a rigid checklist or weighed individually, but rather should be evaluated in light of the totality of the circumstances. *Id.* As set forth below, an analysis of these factors demonstrates that the requested fee award is reasonable.

## C.   The *Vizcaino* Factors Support Plaintiffs' Fee Request

### 1.   *Class Counsel Achieved an Excellent Result*

Applying the first *Vizcaino* factor referenced above, Class Counsel have achieved excellent results for the Class. Under the Settlement, over 90% of Class Members are expected to receive one or more unrestricted, cash-like Gift Cards (each valued at $17.45, including free shipping) that will never expire. Each Gift Card will present the Class Member with the opportunity to choose from thousands of trendy styles without having to

spend a dime out-of-pocket or to apply the Gift Card to a larger purchase with the benefit of free shipping (a hard cost for Defendants). (ECF 62 at 11-12.)

The Court is aware that the overwhelming majority of class action suits like this one require claims to be filed. This typically results in less than 10% of the class receiving a benefit. But here, over 90% of the Class is expected to receive its settlement benefits, which is extraordinary and virtually unheard of in the class action world. Adding to this is the fact that the settlement benefits to the Class were negotiated first and separately and in no way will be diminished by the attorneys' fees, litigation costs, settlement administration costs, and service awards. This too is unusual and a major benefit to the Class.

Indeed, the fact Class Members will not be adversely affected by the fee award provides strong reason to grant the request. Doing so would appropriately reward Class Counsel who assumed tremendous risk and paid an opportunity cost turning away other cases to litigate this one. (Ibrahim Decl. ¶54.) Granting the relatively modest (3.7%) fee award requested here would also benefit the Class by incentivizing other counsel to take on complex and risky consumer matters and litigate them efficiently like Class Counsel here. *See Bernardi v. Yeutter*, 951 F.2d 971, 975 (9th Cir. 1991) (citing *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990)) ("In *D'Emanuele*, we held that the presence of a risky contingent fee combined with a finding that enhancement is necessary to ensure that attorneys in the relevant market will accept civil rights cases, creates an exceptional circumstance requiring enhancement.").

Finally, the Settlement also provides impactful injunctive relief whereby Defendants are *legally bound* to maintain important disclosures concerning their marketing and advertising practices on their websites across every U.S. state and territory, not just California. (*See* discussion ECF 62 at 12-13.) This was not the case with the *Khan* settlement, which bound Defendants only in the State of California. Defendants, who are sophisticated, billion-dollar international retailers running distinct websites in different regions, were otherwise legally unbounded. After the conclusion of the case, they could have readily implemented California-only websites and continued their prelitigation

*Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards*          *Case No. 2:22-cv-03899-GW (JEMx)*

pricing practices in other states without any disclosure to non-California consumers. But now, Defendants are legally bound in perpetuity to maintain the clear and transparent disclosures in *all* U.S. states and territories. (*See* Settlement, §§ 2.10.1, 2.10.2(a)-(d) and Ex. G; *Khan* ECF 144 (Tregillis Decl.) ¶¶65-67.)

### 2.    The Risk of Litigation Also Supports the Fee Request

This factor is discussed thoroughly in the Final Approval Motion (ECF 62 at 20-23) and is thus incorporated herein by reference with a truncated discussion here. In sum, continuing to pursue litigation in lieu of settlement poses significant risk, expense, complexity, and delay in resolution for several reasons.

*First*, while Plaintiffs' case here is strong—because Class Counsel in the related *Khan* Litigation expended considerable resources on the front-end to formulate a strong damage model that would withstand the tough requirements of *Chowning v. Kohl's Dep't Stores, Inc.*, No. CV 15-08673 RGK (SPx), 2016 WL 1072129, at *12 (C.D. Cal. Mar. 15, 2016)—there was still a risk that the Court may not have seen the issue the same way Plaintiffs and their experts do.

*Second*, because this case involves *nationwide* class claims (excluding California) and a class period extending through June 17, 2022, Plaintiffs would also have to overcome other hurdles Defendants would be expected to place in Plaintiffs' way, including, for example, reliance on *Mazza v. American Honda Motor Co.*, for the proposition that differences between California law and the consumer protection laws of other states create barriers to nationwide certification. 666 F.3d 581, 591 (9th Cir. 2012).

*Third*, Plaintiffs anticipate having had to overcome challenges based on a class action waiver and arbitration clause Defendants allegedly placed on their websites under their standard terms and conditions as of October 31, 2020, as well as statutes of limitation challenges to the expansive class size Plaintiffs were able to achieve through settlement.

*Fourth*, to date, Class Counsel have poured thousands of hours and $305,251 in litigation costs for over three-and-a-half years without any guarantee of nationwide success. If this case were to continue, the expert and other case-related hard costs alone

would likely fall between $500,000 to $1,000,000, if not more, based on Class Counsel's experience. (Ibrahim Decl. ¶33.)

### 3. The Skill of Counsel and Work Performed Support the Fee Request

With regards to this third factor, Lead Class Counsel here are highly experienced attorneys, each  with approximately two decades of litigation and trial experience, holding prestigious legal positions. The Court has already found in its preliminary approval ruling in *Khan* that "[t]here is plentiful evidence demonstrating the work Plaintiffs and their counsel have undertaken in bringing and supporting this litigation." (*Khan* ECF 148 at 6.) Plaintiffs survived Defendants' Rule 12(b)(6) and Rule 12(f) challenges. Their work contesting Defendants' personal jurisdiction arguments and initiating jurisdictional discovery led Defendants to drop their challenge. Class Counsel reviewed more than 500,000 pages of Defendants' discovery, prevailed in multiple discovery motions— including successfully compelling the parent company Chairman and CEO to sit for deposition, and took many depositions and interviews of company representatives across all four brands at issue (BH/BoohooMan, PLT, and NG).

Moreover, drafting and filing the Complaint in this matter was no small task. Class Counsel researched the laws of the 49 states outside of California to decide on the most strategic state law claims to include as part of its nationwide complaint in this case. (Ibrahim Decl. ¶22.) From there, Class Counsel had to meet with dozens of Class Members to choose the appropriate representatives to assert the interests of both the nationwide class, as well as the class in their respective states. (*Id.*) After the Complaint was filed, Defendants aggressively moved to have it stricken. The litigation involving that issue, including cross motions for sanctions, were no small matter, and required considerable skill and diligence to overcome. Class Counsel achieve complete victory, which began to melt the ice for settlement.

In *Khan*, the Court also recognized that "[t]he negotiation process for this settlement agreement was both lengthy and arduous." (*Khan* ECF 148 at 6.) The negotiation process in this continuation case was also arduous and lengthy. The skill, hard work, and tenacity

of Class Counsel to achieve the original goals of the *Khan* Litigation cannot be overstated.

### 4. The Risks Class Counsel Has Undertaken by Pursuing this Case on a Contingency Basis Along With the Financial Burdens Also Support the Fee Request

Class Counsel submit that they are deserving of the relatively modest award (3.7%) requested for such a large and complex case. Over the course of the past three-and-a-half (3 ½) hotly litigated years, Class Counsel (leanly staffed with three attorneys) collectively put in over 4,700 hours between the *Khan* Litigation and this continuation case to obtain the nationwide result *Khan* initially set out to achieve. Class Counsel have remarkably achieved a remarkable result for the Class while risking their respective small practices with no guarantee of success on a contingency basis against Defendants represented by a team of experienced and skilled attorneys from a large international law firm. Class Counsel incurred $305,251 in litigation costs, including significant expert costs, to help overcome anticipated objections to their damage model based on marketing surveys for each of the three brands at issue in what would have been a highly contested class certification motion and, even if successful, a Rule 23(f) petition, summary judgment motion, trial, and appeal. They had allotted and were ready to risk an additional $1 Million or more from their operating expenses, which, if unsuccessful, could shut them down. (Ibrahim Decl. ¶32.) The substantial risk Class Counsel assumed in taking on a global giant like Boohoo Group in a very complex case was daunting, but Class Counsel persevered in their struggle for the nationwide class.

In the face of these risks and challenges, Class Counsel's fee request is justified. *See Elkies v. Johnson & Johnson Servs., Inc.*, No. CV 17-7320-GW(JEMX), 2020 WL 10055593, at *8 (C.D. Cal. June 22, 2020) (awarding 33 percent of the common fund because performance of work "on a contingency basis (for nearly two years) is an always-risky practice, particularly in a case that had to survive the number of challenges, and incur the amount of expenses.").

### 5. The Settlement Provides a Significant Benefit to Nationwide Consumers

As described above, the Settlement provides meaningful injunctive relief *legally*

16

*binding* Defendants into perpetuity to make conspicuous disclosures on their U.S. Websites across *all* U.S. states and territories (not just California) to prevent both customers and non-customers browsing the sites and considering purchases from being misled. This is a significant benefit to consumers nationwide.

### D. While a Loadstar Crosscheck Is Not Necessary Here, the Request for Fees and Costs Is Fair and Reasonable Under a Lodestar Cross-Check

Although not required, a lodestar cross-check can confirm that the percentage requested is reasonable. *Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW(CWX), 2014 WL 12577426, at *9 (C.D. Cal. Nov. 3, 2014); *see also Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a perspective on the reasonableness of a given percentage award."). Indeed, under Ninth Circuit precedent, the Court "need not necessarily engage in such a cross-check to reach its conclusion that the sought fees are reasonable under the circumstances." *Aftermarket Auto. Lighting*, 2014 WL 12591624, at *6 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311 and *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994)). Under the lodestar method, a court calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure using a multiplier, if necessary, to account for relevant factors such as the risks associated with representation, the quality of representation, the benefit obtained for the class, and the complexity and novelty of the issues presented. *Paul*, 886 F.2d at 272; *Bluetooth*, 654 F.3d at 941-42; *Jasper*, 2014 WL 12577426, at *9.

Here, the request for attorneys' fees and costs does not cut into the compensation to the Class Members and is far below the acceptable benchmark 25% of the settlement value. Hence, a lodestar cross-check does not appear necessary to assess fairness to the Class Members and reasonableness of the fees. Nevertheless, the request for attorneys' fees is fair and reasonable under the lodestar method, as discussed below.

#### 1. Class Counsel's Hourly Rates Are Reasonable

Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar

17

rates. *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). When determining a reasonable hourly rate, courts generally consider several factors, including: (1) the experience, skill, and reputation of the attorney requesting fees; (2) the prevailing rate in the community for comparable attorneys; and (3) the novelty or difficulty of the issues presented. *Addison v. Monarch & Assocs., Inc.*, No. EDCV 14-358-GW (CWX), 2018 WL 6616662, at *3 (C.D. Cal. Jan. 25, 2018) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007)); *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986). The court may consider "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney," which "are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Class Counsel's hourly rates range from $475 to $850, which are fair and reasonable considering the skilled and vigorous representation Plaintiffs have received. Plaintiffs are represented by two boutique Los Angeles/Orange County law firms that specialize in trials involving complex business litigation, class actions, government facing litigation, and high-stakes plaintiffs' cases. (Almadani Decl. ¶ 6; Ibrahim Decl. ¶¶ 48-56.) These firms are led by Class Counsel, Yasin M. Almadani and Ahmed Ibrahim, who are extremely experienced, skilled, and reputable. (*See id.*) Importantly, the Court in the *Khan* Litigation approved these hourly rates for counsel. (*See Khan* ECF 199 at 11-12.)

Mr. Almadani is a 2004 graduate of Berkeley Law School who has been practicing law for over 19 years. (Almadani Decl. ¶ 3.) Mr. Almadani served as a judicial law clerk in the Southern District of Florida, practiced complex civil litigation at prestigious firms, including Winston & Strawn, and served as an Assistant United States Attorney in the criminal sections of the Eastern and Central Districts of California for over eight (8) years. (Id. at ¶ 4.) Over his career, Mr. Almadani has gained considerable trial experience and has never lost a trial. (*Id.* at ¶ 5.)

Mr. Ibrahim graduated from law school in 2005 from the University of California,

College of the Law, San Francisco (formerly known as UC Hastings) and has been practicing law for over 18 years. (Ibrahim Decl. ¶ 47.) Mr. Ibrahim began his career in the commercial litigation department of Snell & Wilmer where he spent over five (5) years. (*Id.*) He has focused his career on high-stakes, complex civil litigation on both the plaintiffs' and defense side, including class actions, and has helped achieve results collectively worth over $100 Million. (*Id.* at ¶¶ 48-56.)

Messrs. Almadani and Ibrahim founded their law practices in 2018 and 2019, respectively, with the objective to lead high-stakes cases with an efficient, hands-on approach that avoids the traditional army of associates. (Almadani Decl. at ¶6; Ibrahim Decl. ¶ 55.) To accomplish this, Mr. Almadani and Mr. Ibrahim carefully select and accept only a limited number of cases at any given time and personally prosecuted those cases, devoting the considerable time, energy, and resources to each case for optimal results. (*Id.*)

Recently, Mr. Almadani and Mr. Ibrahim tried to verdict in this District a contentious civil fraud case involving a complex EB-5 financing structure for a Manhattan hotel project, and secured over $3.7 Million for their client, including a stipulated $1 Million in punitive damages after winning across the board on every issue at trial. (Ibrahim Decl. ¶ 53.) In another recent trial, Mr. Almadani and Mr. Ibrahim secured a $3.45 Million verdict after a hotly contested trial. (*Id.* at ¶ 54.) Mr. Almadani and Mr. Ibrahim have prosecuted this case with the same intensity and have turned away paid work to give this aggressively litigated case the time and resources it required to reach a nationwide class settlement. (Almadani Decl. at ¶ 9; Ibrahim Decl. ¶ 54.)

Rather than staffing the matter with an army of lawyers and staff, Mr. Almadani and Mr. Ibrahim took a more efficient approach with a three-attorney team: Mr. Almadani, Mr. Ibrahim, and attorney Daniel Wang. (Almadani Decl. at ¶ 10; Ibrahim Decl. ¶ 58.) Mr. Wang graduated from Case Western Reserve University School of Law in 2010 and has been practicing law for over 11 years. (Wang Decl. at ¶ 2.) His casework has involved both transactional work and litigation, including consumer-facing matters. (*Id.*) Mr. Wang is currently based in the Seattle, Washington area. (*Id.*)

19

1      Class Counsel Almadani and Ibrahim worked in tandem to closely oversee every

2 aspect of the litigation at a partner level while assigning associate-level tasks to Mr. Wang

3 and supervising his work. (Almadani Decl. at ¶ 10; Ibrahim Decl. ¶ 59; Wang Decl. at ¶

4 3.) Mr. Almadani and Mr. Ibrahim's hourly rate is $850, while Mr. Wang's hourly rate is

5 $475 for work done on this matter. (Ibrahim Decl. at ¶¶ 59, Ex. 2.)

6      These hourly rates are consistent with those charged by attorneys in the consumer

7 law field within this Circuit and with similar levels of experience. *See, e.g., Fitzhenry-*

8 *Russell v. Keurig Dr Pepper Inc.*, *et al*, No. 5:17-cv-00564 (N.D. Cal. Feb 03, 2017) (ECF

9 Nos. 327-1, 350) (finding reasonable partner hourly rates up to $894 and associate hourly

10 rates up to $658); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL

11 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding reasonable hourly rates from $650 to

12 $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for

13 paralegals); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,

14 No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding

15 reasonable hourly rates up to $1,600 for partners, up to $790 for associates, and up to $490

16 for paralegals); *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420,

17 at *9 (N.D. Cal. Apr. 24, 2019) (finding reasonable hourly rates of $365 to $950 for

18 attorneys); *Gutierrez v. Wells Fargo Bank*, N.A., No. C 07-05923 WHA, 2015 WL

19 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable partner hourly rates up to

20 $975 and associate hourly rates up to $495 in a consumer class action); *Tom v. Com Dev*

21 *USA, LLC*, No. 16-cv-1363 PSG (GJSx), 2017 WL 10378629, at *8 (C.D. Cal. Dec. 4,

22 2017) (finding reasonable range of hourly rates from $325 to $750 based on level of

23 experience); *Wit v. United Behav. Health*, 578 F. Supp. 3d 1060, 1079 (N.D. Cal. 2022)

24 (finding reasonable partner/counsel hourly rates ranging from $625 to $1,145 and

25 associate hourly rates ranging from $450 to $650). (*See also* Almadani Decl. at ¶ 11;

26 Ibrahim Decl. at ¶¶ 59-60, Ex. 2.)

27      Class Counsel's hourly rates are also consistent with rates identified in the 2022

28 Real Rate Report, a publication used by courts in this Circuit to assess reasonableness of

attorney rates.[5] *See, e.g., Judson v. Goldco Direct, LLC*, No. CV 19-6798 PSG (PLAx), 2021 WL 8462049, at *9 (C.D. Cal. June 11, 2021) (using Real Rate Report to allow attorney rates of $730 and $800 in Los Angeles); *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV13-5693 PSG (GJSx), 2017 WL 4685536, at *8 (C.D. Cal. May 8, 2017) (using Real Rate Report to allow partner rates of $700 and $1,200 in Los Angeles).

"The Real Rate Report is powered by the Wolters Kluwer ELM Solutions LegalVIEW data warehouse, which has grown to include $155B+ in anonymized legal data." (Ibrahim Decl. ¶ 60; Ex. 2.) It includes "lawyer and paralegal rate data filtered by specific practice and sub-practice areas, metropolitan areas, and types of matters." (*Id.*)

Courts in this Circuit allow fees based on an hourly rate at the third quartile within a range identified by reputable publications such as The Real Rate Report. *See, e.g., Brady Mktg. Co. Inc. v. Kai U.S.A. Ltd.*, No. 3:16-cv-1878-MO, 2018 WL 3377083, at *3 (D. Or. July 11, 2018) (noting that awarding "the 75th percentile rate . . . is the usual practice of this district"); *French v. City of Los Angeles*, No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649, at *17 (C.D. Cal. May 10, 2022) (relying on Real Rate Report to award fees in the third quartile for solo practitioner with 15 years' experience). A court may allow an hourly rate greater than the range in the Real Rate Report as "reasonable in light of [an attorney's] extensive skill and experience." *Flo & Eddie, Inc.*, 2017 WL 4685536, at *8 (finding reasonable partner rate of $1,200 in Los Angeles (above the rate identified in The Real Rate Report) based on partner's extensive skill and experience).

The 2022 Real Rate Report, *inter alia*, provides the following relevant data:

| 2022 Real Rates by Geographic Region and Matter Type | | | | |
|---|---|---|---|---|
| Region | Matter Type | Attorney Level | Median | **Third Quartile** |
| Los Angeles, CA | Litigation | Partner | $725 | **$1,045** |
| Los Angeles, CA | Litigation | Associate | $615 | **$855** |
| Seattle, WA | Litigation | Associate | $468 | **$530** |

---

[5] Due to inflation, the rates in 2023 across the board have gone up, but for purposes of this motion, Class Counsel use the 2022 rates that were favorably viewed in *Khan*.

| 2022 Real Rates by Geographic Region and Years of Experience | | | | |
|---|---|---|---|---|
| <u>Region</u> | <u>Attorney Level</u> | <u>Years' Experience</u> | <u>Median</u> | **<u>Third Quartile</u>** |
| Los Angeles, CA | Partner | Fewer than 21 Years | $801 | **$1,075** |
| Los Angeles, CA | Associate | 7 or More Years | $550 | **$840** |
| Seattle, WA | Associate | 7 or More Years | $429 | **$473** |

| 2022 Real Rates by Geographic Region for General Liability Litigation | | | | |
|---|---|---|---|---|
| <u>Region</u> | <u>Attorney Level</u> | <u>Years' Experience</u> | <u>Median</u> | **<u>Third Quartile</u>** |
| Los Angeles, CA | Partner | Fewer than 21 Years | $835 | **$995** |
| Los Angeles, CA | Associate | 7 or More Years | $475 | **$735** |
| Seattle, WA | Associate | 7 or More Years | N/A | N/A |

(Ibrahim Decl. ¶ 60; Ex. 2.)

Here, Class Counsel Almadani and Ibrahim both graduated from top law schools, and each have nearly two decades of litigation experience, including extensive experience at prestigious law firms. Mr. Almadani has litigated matters of national significance and has considerable federal trial experience, including nearly a decade at two prestigious U.S. Attorney's Offices. Mr. Ibrahim has also litigated matters of national significance, including large class actions, and has secured awards for his clients collectively worth over $100 Million to date. Class Counsel have utilized their collective experience to litigate this case vigorously and secure a tremendous result for the Class.

Nevertheless, for the lodestar cross check, Class Counsel have used a conservative partner-hourly-rate ($850) that falls well within the range identified by The Real Rate Report, *below* the third quartile for partner rates, and even near or below the third quartile for *associate* rates in the Los Angeles region. Mr. Wang's rate of $475 is also reasonable and well within The Real Rate Report range for an attorney with 11 years' experience in the Seattle region.

Therefore, the first two of the three reasonableness factors identified above—(1) the experience, skill, and reputation of the attorneys requesting fees, and (2) the prevailing rate in the community for comparable attorneys—both support Class Counsel's fee request in this case for purposes of a lodestar cross check.

The third factor—the novelty or difficulty of the issues presented—also supports the fee request. Here, the risk, expense, complexity, and likelihood of protracted litigation have been significant. The case has required Class Counsel to, among other things, investigate the validity of claims across numerous jurisdictions arising from Defendants' practices on three different websites, painstakingly pouring through historical Internet data, vetting and procuring appropriate class representatives across multiple jurisdictions, and filing and prosecuting four distinct, consolidated actions (the three *Khan* actions and this action) against foreign defendants who have, throughout this litigation, used their foreign status to evade service and discovery, requiring considerable litigation on Class Counsel's part.

Class Counsel also defeated several of Defendants' challenges to the pleadings and personal jurisdiction in all four cases, propounded two sets of discovery, reviewed the more than 546,000 pages of documents produced by Defendants, and successfully prosecuted and defended against multiple discovery motions, including obtaining an order to compel the deposition of Defendants' Chairman and highest-ranking executive. (*Id.* at ¶¶ 11-18; *see, e.g., Khan* ECF 71, 73, 89.) Class Counsel conducted four Rule 30(b)(6) depositions of Defendants' foreign corporate representatives, along with numerous interviews of important executive witnesses for class certification and settlement. (*Id.* at ¶ 20.) Counsels' efforts additionally included lengthy settlement negotiations in multiple mediation sessions and through dozens of direct communications with counsel to achieve the Settlement. (*Id.* at ¶¶ 37-42.)

Moreover, as the Court is aware, a significant challenge in false pricing cases such as these is devising a damages model that accounts for a restitutionary measure of damages. This is no easy task given the divergent case law on this issue; indeed,

experienced class action attorneys in the past have failed at this very task. *See, e.g.,
Chowning*, 2016 WL 1072129, at *12 (granting summary judgment based on Plaintiffs'
failure to demonstrate "a viable measure of restitution, such as a 'price premium' model
in which an expert isolates the amount of the price attributable to the false representation.")
For this reason, Class Counsel here: (i) conducted very detailed legal and factual research
concerning this difficult issue; (ii) had multiple conversations with a myriad of marketing
and damages experts; (iii) independently learned difficult economic and marketing
concepts to properly assess the viability of competing damage models; (iv) selected a
defensible damage model after extensive analysis; (v) expended considerable resources
and worked with the experts early in the litigation to establish the damage model and
secure a strong litigation position; and (vi) strategically used that damage model and strong
litigation position to secure a stellar result for the Class. (Ibrahim Decl. ¶ 19.)

The complexity of the issues presented here, and the strategic approach taken by
Class Counsel to tackle those issues cannot be overstated. Therefore, for cross-check
purposes, Class Counsel's hourly rates are reasonable and consistent with (if not
conservative for) prevailing rates in the Los Angeles area for attorneys of comparable skill
litigating a large and complex matter such as this.

### 2. The Hours Billed by Class Counsel Are Reasonable

Courts must bear "in mind that lawyers are not likely to spend unnecessary time on
contingency fee cases in the hope of inflating their fees." *Moreno v. City of Sacramento*,
534 F.3d 1106, 1112 (9th Cir. 2008); *Parkinson*, 796 F. Supp. 2d at 1172. Indeed, in
contingency fee cases, "the payoff is too uncertain, as to both the result and the amount of
fee . . . . By and large, the court should defer to the winning lawyer's professional judgment
as to how much time he was required to spend on the case; after all, he won, and might
not have, had he been more of a slacker." *Id.*

Furthermore, while "[t]he court may reduce the number of hours awarded because
the lawyer performed unnecessarily duplicative work, but determining whether work is
unnecessarily duplicative is no easy task." *Moreno*, 534 F.3d at 1112 (9th Cir. 2008).

"When a case goes on for many years, a lot of legal work product will grow stale; a competent lawyer won't rely entirely on last year's, or even last month's, research: Cases are decided; statutes are enacted; regulations are promulgated and amended. A lawyer also needs to get up to speed with the research previously performed." *Id.* Duplication is thus "*necessary*" and "inherent in the process of litigating over time." *Id.* (emphasis in original).

Notably, a lodestar cross-check does not require the court to "closely scrutinize" the time spent and may focus on "counsel declarations summarizing overall time spent," as opposed to "demanding and scrutinizing daily time sheets in which the work performed was broken down by individual task." *Laffitte v. Robert Half International*, 1 Cal. 5th 480, 505 (2016); *see also Jasper*, 2014 WL 12577426, at *9 n.10 (court used lodestar cross-check method without detailed billing records recognizing that the cross-check is optional). Class Counsel here have nevertheless submitted detailed billing records to demonstrate that they have spent tremendous time and resources litigating this matter, often having to forgo other work more certain to yield compensation. (Ibrahim Decl. ¶¶ 61-64, Ex. 3; Almadani Decl. at ¶ 12, Ex. 1; Wang Decl. at ¶ 5, Ex. 1.) Class Counsel have collectively spent approximately 3,659 hours on this litigation, resulting in lodestar fees of $2,761,658 to date as reflected in the chart below.

| Attorney Hours (Including Expected Hours Through Final Approval) | | | | | |
|---|---|---|---|---|---|
| <u>Attorney</u> | <u>Level</u> | <u>Rate</u> | <u>Khan Hours</u> | <u>Habberfield Hours</u> | <u>Total Fee (Nationwide)</u> |
| Almadani (LA) | Partner | $850 | 1,547.5 | 380.8 | $1,639,055 |
| Ibrahim (LA) | Partner | $850 | 1,184 | 325.9 | $1,283,415 |
| Wang (Seattle) | Associate | $475 | 927.5 | 341.4 | $602,727 |
|  |  |  |  |  |  |
| Total (Khan) |  |  | 3,659 |  | $2,762,337 |
| Total (Habberfield) |  |  |  | 1,048.1 | $762,860 |
| Total (Nationwide) |  |  | 4,707.1 | | $3,525,197 |

(*Id.*) These hours were not only reasonable and necessary, but efficient given the amount, complexity, and quality of work done in this case for the full nationwide settlement.

Class Counsel have vigorously prosecuted this case on behalf of the Class, including the work they did in the *Khan* Litigation, which Defendants acknowledge "overlap[ped] entirely with this matter" and "was used extensively to bring about the resolution in this case."[6]  (Stipulation at ¶ 21.) By way of summary, Class Counsel investigated the validity of claims arising from Defendants' practices on three different websites, procured 12 separate class representatives, filed an elaborate nationwide complaint pleading claims from eight different states, defeated Defendants' challenges to the pleadings and personal jurisdiction, conducted extensive written discovery, conducted many depositions and interviews of Defendants' executives and managers, prevailed in multiple discovery motions, defeated Defendants' sweeping effort to strike Plaintiffs' ability to bring this action, which, significantly, was directly followed by Defendants' expressed willingness to negotiate a resolution (*see Khan* ECF 181, 185; ECF 14), and conducted follow up confirmatory discovery to supplement prior documents and data. In addition, both Class Counsel have extensive experience in complex litigation as discussed above.

At the pre-filing stage, Class Counsel spent considerable time and resources investigating the matter, analyzing Defendants' websites both live and historically, reviewing the case law for challenging issues, and strategizing the proper manner to move forward. (Ibrahim Decl. ¶ 5.) Class Counsel then spent significant time with their clients to choose the appropriate class representatives, which involved dozens of interviews across the four consolidated actions. (*Id.* at ¶ 22.) Class Counsel devoted significant resources drafting and revising four separate complaints across all cases, which were subsequently amended to make the pleadings even stronger. (*Id.* at ¶¶ 3, 5-7, 22-23.) The complaint in this case required research of the laws of the 49 non-California states to choose the most advantageous jurisdictions, followed by the drafting of viable claims from

---

[6] As explained above, this case cannot and does not exist in a vacuum without the consolidated *Khan* Litigation, and as such, all four cases must be viewed in the aggregate.

*Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards*          *Case No. 2:22-cv-03899-GW (JEMx)*

multiple jurisdictions. (*Id.* at ¶ 22.) It also involved the active management of 12 separate class representatives from different jurisdictions and time zones. In 2020 and 2022, Class Counsel spent countless hours on factual and legal research to successfully oppose Defendants' myriad of challenges to the pleadings across the four consolidated actions, which included opposition papers from Plaintiffs that were hundreds of pages, including exhibits that Class Counsel spent significant efforts to independently secure in the pre-discovery phase. (*Id.* at ¶¶ 10-25.)

In late 2020, Class Counsel successfully opposed Defendants' attempt to delay discovery and depositions on the basis of COVID and being foreign entities. (Ibrahim Decl. at ¶ 12.) Then, in early 2021, Class Counsel promptly served written class discovery on Defendants in each of the Actions consisting of two sets of interrogatories and document demands, and one set of requests for admission. (*Id.* at ¶13.) Due to the inadequate responses, Plaintiffs were forced to file a lengthy motion to compel further discovery. (*Khan* ECF 67.) In April 2021, Magistrate Judge McDermott issued two separate orders granting Plaintiffs' motion, in significant part, and denying Plaintiffs' motion, in certain respects. (*Khan* ECF 71, 73.)

In March 2021, Plaintiffs responded to written class discovery consisting of interrogatories, document demands, and requests for admission. (Ibrahim Decl. ¶ 15.) Defendants also filed a motion to compel discovery. (*Khan* ECF 76.) However, on July 19, 2021, Judge McDermott denied the motion in its entirety, the only exception being that Plaintiffs were ordered to provide a verification confirming they had no documents responsive to one document demand. (*Khan* ECF 83.)

Not including voluminous spreadsheets and data, Defendants produced more than 546,000 pages of documents responsive to Plaintiffs' document demands. (Ibrahim Decl. ¶ 17.) Class Counsel and their team reviewed these documents to conduct depositions and prepare their class certification motion. (*Id.*) Class Counsel combed the discovery and worked closely with their experts to devise and refine a damage model that would likely pass muster under the most challenging of case law. (*Id.* at ¶¶ 19, 67.)

27

Because Class Counsel had done a thorough job of analyzing the discovery and finding compelling evidence against the highest-ranking executive with Defendants, Plaintiffs were able to notice the deposition of Boohoo Group's Executive Chairman. (Ibrahim Decl., ¶ 18.) This led to another tough battle where Defendants filed a motion for protective order to quash the deposition, which Plaintiffs opposed with a strong filing supported by the evidence Class Counsel had secured. (*Khan* ECF 78.) On July 28, 2021, Judge McDermott again sided with Plaintiffs, rejecting Defendants' arguments and concluding that "Plaintiffs have presented evidence that [the Executive Chairman] has unique personal non-repetitive knowledge of facts relevant to this suit and to class certification[.]" (*Khan* ECF 89 at 3.) The Executive Chairman was thus ordered to appear for deposition. (*Id.*)

In late January and early February 2022, Plaintiffs deposed four Rule 30(b)(6) corporate representatives designated on behalf of the BH, PLT, and NG brands to testify concerning class topics central to the allegations of wrongdoing. (Ibrahim Decl. ¶ 20; *see also Khan* ECF 138-142.) In addition, Plaintiffs' counsel conducted an additional three deposition-like interviews of key defense witnesses on relevant topics. (*Id.*) Because Class Counsel had done their homework combing the half-million pages in discovery, Plaintiffs secured strong evidence from the deposition and interviews to support their case.

Class Counsel also engaged in lengthy settlement negotiations for a year from May 2021 through May 2022. (Ibrahim Decl. ¶ 37.) Class Counsel participated in five mediation sessions with retired United States District Judge Irma Gonzalez, and countless additional sessions with Defendants' Counsel outside of mediation to reach an optimal result for the Class. (*Id.* ¶¶ 37-40.) Class Counsel were able to accomplish this by utilizing the evidence they had gathered, and the damages model they had developed, staying firm in their position to secure the best possible result for the Class. Judge Gonzalez, who had spent considerable time on the case, commented that Class Counsel had achieved an excellent result for the Class and the request for attorneys' fees seemed reasonable to her. (Ibrahim Decl. ¶ 37.)

Counsel also prepared lengthy preliminary and final approval motions both in the *Khan* Litigation and here.

Therefore, Class Counsel submit that the hours expended over the course of the litigation in the *Khan* Litigation and this case—all of which was indisputably required for the comprehensive nationwide settlement achieved here—to wit, 1,928.3 for Mr. Almadani, 1,509.9 for Mr. Ibrahim, and 1,268.9 for Mr. Wang, for an approximate total of 4,707 attorney hours, are reasonable and commensurate with the work performed.

### 3. *All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar*

"[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment" in cases such as this. *Washington Public Power*, 19 F.3d at 1299-1300. A district court may adjust a lodestar figure upward or downward to account for various factors. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570–571 (9th Cir. 2019) Among the factors the court may consider include "the complexity of this case, the risks involved and the length of the litigation." *Id.* (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975)).

Applying a multiplier mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *Washington Public Power*, 19 F.3d at 1299. "Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *Id.* at 1299. "If this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing." *Id.* at 1300 (internal citations and quotation marks omitted). Moreover, Class Counsel here advanced over \$300,000 in out-of-pocket expenses without any assurance of ultimate success, thereby making the representation that much riskier.

In this case, the lodestar fees total **\$3,525,197** based on the reasonable rates and

29

hours above. The out-of-pocket costs incurred by Class Counsel total approximately $305,251 to date. (Ibrahim Decl. ¶ 66.) Hence, the negotiated attorneys' fees exclusive of costs total **$8,641,749** (with the additional amount of $4,158,212 being requested here), yielding a modest lodestar multiplier of **2.45**, which is fair and reasonable, and is far below the 3 to 4 range "common in lodestar awards for lengthy and complex class action litigation" of the type seen in this case. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (holding that multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and explaining that "[m]ultipliers in the 3–4 range are common"); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher.") Similarly, in the Ninth Circuit, multipliers "ranging from one to four are frequently awarded […] when the lodestar method is applied." *Vizcaino*, 290 F.3d at 1051. The chart attached as "Appendix A" to this brief is instructive to show courts have found the range of multipliers from 1.26 to 19.6 to be acceptable.[7]

Accordingly, consistent with California and Ninth Circuit law, the **2.45** multiplier requested here is not only reasonable, but modest, especially given that class members will not lose a dime if Class Counsel's entire fee request is granted. Class Counsel thus respectfully request that the Court grant them the full amount of negotiated fees.

### E.   Class Counsel's Out-of-Pocket Expenses Should Be Awarded

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). Plaintiffs are entitled to recover the litigation expenses they reasonably incurred in investigating, prosecuting, and settling this case. *See In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008) (allowing

---

[7] If the Court were to view this case in isolation of *Khan*—which would be unfair as this case does not exist or settle without *Khan*—the lodestar multiplier would be 5.45, which is still within the range seen in Appendix A and is still appropriate given the very small percentage (3.7%) being requested by Class Counsel vis-à-vis the risks Class Counsel undertook and the tremendous time and resources they expended in these complex cases aggressively litigated for 3 ½ years.

30

recovery of "expenses relat[ing] to photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case.").

Here, in addition to the $266,463 in costs incurred in the *Khan* Litigation (which were necessary for and fully utilized in this case), Class Counsel additionally incurred approximately $38,788 in costs for the benefit of the Class, which is what Class Counsel are requesting for costs here, including (1) $26,944 in expert/consultant fees; (2) $4,425 in e-discovery database fees; (3) $6,500 in mediation fees; and (4) $919 in other typical costs such as parking, mileage, printing, and copying fees. (Ibrahim Decl. ¶ 66.) These costs were advanced by Class Counsel without any assurance of success or recoupment. Therefore, Class Counsel expended a total of $305,251 in hard costs of which they are requesting **$38,788** here for the expenditures made after the final approval in *Khan*.

A substantial portion of the out-of-pocket costs ($26,944) are attributable to expert fees. This is because a significant challenge in this case was to develop an appropriate damages model to satisfy *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and that would withstand judicial scrutiny under the most challenging of methods described in the case law. *See, e.g., Chowning*, 2016 WL 1072129, at *12 (requiring a price premium measure of restitution in a false pricing case). Although a much larger amount for experts to develop the damages model was spent previously in the *Khan* Litigation, the expert/consultant fees in this case were necessary to update the damages model for this case. (Ibrahim Decl. ¶ 67.) Plaintiffs' damages expert, Christian Tregillis, and his team culled, organized, and analyzed millions of lines of actual consumer purchase data of nationwide sales covering the class periods in this case, and every single daily marketing campaign run by Defendants for the bulk of the class period. (*Id.*) The damages analysis enabled Plaintiffs to intelligently evaluate the damages at issue, which was critical to their ability to negotiate the proposed class settlement. (*Id.*) These expert fees should be awarded here. *See generally Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (holding that class counsel's "necessary expenses also

included the retention of three experts," allowing counsel "to effectively and accurately evaluate both the potential damages in this case, as well as the strengths and weaknesses of the damage calculations they would be prepared to present at trial").

## F. The Requested Service Awards for Plaintiffs Are Reasonable

Finally, the Court should approve the requested service awards for the 12 named Plaintiffs in this action. According to the Settlement, each of them may seek an incentive award not to exceed $1,500 with no opposition from Defendants. (Settlement at § 2.3.)

The decision whether to award an incentive/enhancement payment to a class representative, and the size of that award, is within the district court's discretion. *See*, *e.g.*, *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 458, 462 (9th Cir. 2000). The criteria courts may consider in determining whether to make an incentive/enhancement award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (S.D. Cal. 1995).

Here, the Court should approve $1,500 service awards for each class representative. As reflected in the concurrently filed declarations, each class representative committed significant time and effort to this case from its inception through settlement. (Habberfield Decl. ¶¶ 8-16; Kalu Decl. ¶¶ 9-17; Runnells Decl. ¶¶ 11-17; Cachadina Decl. ¶¶. 8-16; Valiente Decl. ¶¶ 8-16; Huebner Decl. ¶¶ 15-23; V. Walton Decl. ¶¶ 8-16; Murphy Decl. ¶¶ 7-15; Hill Decl. ¶¶ 8-16; Stewart Decl. ¶¶ 12-20; Thimot Decl. ¶¶ 11-19; M. Walton Decl. ¶¶ 9-17.) The declarations show that the class representative spent considerable time on this case, ranging from 10 to 13 hours. (*Ibid.*) The class representatives spent time assisting Class Counsel by providing details about their experience on Defendants' websites, searching for and furnishing their proofs of purchases from Defendants, and sharing information about the pricing and advertising representations made to them on the

websites, which assisted Class Counsel in preparing the initial and amended complaints.

The class representatives have also kept up to date on the case and diligently provided answers and information to assist with pursuing the case on behalf of the Class. They also evaluated the proposed settlement and discussed it with Class Counsel. They reviewed the complaint, the settlement agreement, their declarations, and the Court's preliminary approval order. They also spent time on calls and video conferences with Class Counsel. The class representatives have made themselves available to Class Counsel whenever their assistance was needed, and they were prepared to litigate this case to a verdict if necessary. (*Ibid.*)

Moreover, the class representatives ultimately were the catalysts for this action without whom the case could not be brought. (Ibrahim Decl. ¶ 69.) Their involvement was critical to the prosecution of the case and their presence in the case and willingness to serve as class representatives is one of the key factors that compelled Defendants to settle this case on a nationwide basis on the same terms as the settlement in *Khan*. (*Id.*)

Indeed, all 12 class representatives were needed because Class Counsel had to approach this litigation with the assumption that Defendants would not be willing to enter into a settlement of this nationwide case—they had been completely unwilling to do so previously—and that Plaintiffs would need to go the distance, namely, by moving for nationwide class certification, going to trial, and potentially litigating the case on appeal. (*Id.* at ¶ 70.) Due to the challenges often associated with obtaining nationwide class certification in a contested motion, it was important for Plaintiffs to demonstrate to Defendants that they were prepared to move, in the alternative, for class certification of subclasses of purchasers from the states represented by the class representatives, which were Florida, Illinois, Maryland, Massachusetts, Michigan, Ohio, and New York. (*Id.*) By having these states represented in the case, Plaintiffs believe Defendants were persuaded in substantial part to reach a settlement due to the realization that it would be more difficult to defeat class certification with the existence of multistate subclasses and that they would thus have genuine damage exposure. (*Id.*)

The amount of the proposed service awards is well within the norm. This is true particularly where, as here, the total payment of $18,000 constitutes a miniscule fraction of the total approximate monetary value of the settlement of $197 Million. *See In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 947-48 (9th Cir. 2015) (upholding $5,000 incentive awards that were 417 times larger than $12 gift cards because the awards were only 0.17% of the total $27 Million settlement fund); *Ahmed v. HSBC BANK USA*, No. ED CV 15-2057 FMO (SPx), 2019 WL 13027266, at *7 (C.D. Cal. Dec. 30, 2019) ($5,000 incentive award "presumptively reasonable"); *Khan* ECF 199 at 12 (service award of $5,000 for each of the three plaintiffs "are consistent with what this Court customarily considers as acceptable for such awards.")

In addition to sacrificing their time, the class representatives have also now put their names out into the public record, thereby creating a measure of notoriety by making themselves known and searchable on the internet as being associated with litigation. For 10 of the 12 class representatives, they have now been involved in this lawsuit for well over one year. Finally, as the Court noted with regards to the class representatives in the *Khan* Litigation, the named plaintiffs here do not stand to obtain significant recoveries from the benefits to the class as a whole—$17.45 per Gift Card in monetary value—"meaning that the work they undertook was much more for the benefit of the whole than for their individual merits-based recoveries." (*Khan* ECF 199 at 12.)

As far as awarding service awards to a relatively large number of class representatives as is being requested here, this is also not uncommon. For example, in *Online DVD*, the Ninth Circuit held the district court did not abuse its discretion in approving settlement awards for 9 class representatives of $5,000 each. *Online DVD*, 779 F.3d at 947. Courts in numerous other cases have also awarded incentive payments awards for a large number of class representatives. *See*, *e.g.*, *Andrews v. Plains All Am. Pipeline L.P.*, No. CV 15-4113 PSG (JEMx), 2022 WL 4453864, at *5 (C.D. Cal. Sept. 20, 2022) (approving $15,000 service award for each of 14 class representatives); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-CV-02185-BLF, 2019 WL 6622842, at *14 (N.D. Cal. Nov. 12,

2019) ("The Court concludes that the requested $3,000 award for each of the 13 class representatives is appropriate in this case."); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 536661, at \*9 (N.D. Cal. Feb. 11, 2019) (permitting $5,000 incentive awards for 60 class representatives in nationwide class settlement, observing that "[a]lthough there is a large number of class representatives, that is largely a reflection of the scope of the lawsuit – covering all the states, plus the District of Columbia.") In this case where there are more than 9.3 million class members across 49 states, it is not unusual, unreasonable, or unjust for the Court to award $18,000 in incentive payments spread over 12 class representatives.

In sum, the actions and dedication of the class representatives played a significant role in this case and helped achieve the exceptional settlement that will benefit more than 9.3 million class members. They have all put in considerable time and effort in this case as explained in their declarations. Therefore, in light of their contributions and efforts, an incentive award of $1,500 to each of the 12 class representatives is appropriate and should be approved.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court award the following: (1) attorneys' fees in the amount of $4,158,212 to Class Counsel, (2) $1,000,000 in settlement administration expenses to be paid to KCC, (3) $305,251 to Class Counsel for litigation expenses and costs, and (4) $1,500 each to Plaintiffs as service awards.

Dated: September 1, 2023                   Respectfully submitted,

                                           ALMADANI LAW

                                           /s/ Yasin M. Almadani
                                           Yasin M. Almadani, Esq.


                                           AI LAW, PLC

                                           /s/ Ahmed Ibrahim
                                           Ahmed Ibrahim, Esq.

                                           *Attorneys for Plaintiffs Individually and*
                                           *On Behalf of All Others Similarly Situated*

36