UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-3899-GW-JEMx | Date | November 8, 2023 |
|---|---|---|---|
| Title | *Laura Habberfield, et al. v. Boohoo.com USA, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT [62]; and PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS [63, 64]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motions [62, 63, 65], set for hearing on November 9, 2023 at 8:30 a.m.

:

Initials of Preparer   JG

*Habberfield, et al. v. Boohoo.com USA, Inc., et al.*, Case No. CV-22-3899-GW-(JEMx)
Tentative Rulings on: (1) Motion for Final Approval of Class Action Settlement, and (2) Motion for Attorneys' Fees, Costs, and Service Awards

## I. Background

Plaintiffs Laura Habberfield, Keona Kalu, Katie Runnells, Juanita Carmet Cachadina, Sarah Huebner, Yesenia Valiente, Veronica Walton, Lisa Murphy, Nicole Hill, Nicole Stewart, Me'Lisa Thimot, and Marika Walton (collectively "Plaintiffs") move for final approval of a class action settlement, an award of attorneys' fees and costs to their attorneys, approval of settlement administration expenses, and awards of class representative incentive/service awards. The case concerns allegations involving false advertising/consumer protection-type claims against defendants Boohoo.com USA, Inc., Boohoo.com UK Limited, Boohoo Group PLC, PrettyLittleThing.com USA Inc., PrettyLittleThing.com Limited, NastyGal.com USA Inc., and Nasty Gal Limited (collectively, "Defendants") in connection with Defendants' advertising/marketing practices on their websites. The operative complaint in the case, the Second Amended Class Action Complaint for Damages and Injunctive Relief ("SAC"), contains thirteen claims for relief: ten statutory claims for violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200 et seq.), False Advertising Law (Cal. Bus. & Prof. Code §§ 17500 et seq.), Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 et seq.) ("CLRA"), and consumer protection statutes on the books in New York, Florida, Maryland, Massachusetts, Michigan, Ohio, and Illinois; and three common-law claims for fraud (intentional misrepresentations), fraudulent concealment, and restitution for unjust enrichment. *See* Docket No. 32. The case is a nationwide class action that follows directly from three consolidated lawsuits that *began* as nationwide cases, but that settled so as to encompass only *California* classes. *See Khan v. Boohoo.com USA, Inc., et al.*, No. 2:20-cv-03332-GW-JEMx; *Hilton v. PrettyLittleThing.com USA Inc., et al.*, No. 2:20-cv-04658-GW-JEMx; *Lee v. NastyGal.com USA Inc., et al.*, No. 2:20-cv-04659-GW-JEMx.[1]

In brief, as in the *Khan* case, the settlement provides class members with a $10 gift card (with notable flexibility in various respects – no expiration or blackout dates, no minimum-purchase requirement, no fees, usable in conjunction with other offers and promotions, and both transferable and "stackable") and free shipping (valued at $7.45 per class member), along with a nationwide expansion of the injunctive relief achieved in *Khan*. According to Plaintiffs' motion, approximately 9.3 million individuals will receive the gift cards, and over 11.3 million gift cards in total – consumers who made purchases at multiple websites will receive one for each such website – will be distributed. The Court granted preliminary approval of the instant settlement on May 18, 2023. *See* Docket Nos. 56-57; *see also* Docket No. 51.

## II. Analysis

### A. Jurisdiction

---

[1] Those consolidated cases will be referred to herein as the "*Khan*" case.

This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act. *See* SAC, ¶ 25. It also concludes that it has personal jurisdiction over Defendants at the very least by virtue of their failure to contest such jurisdiction in this action.

### B. Notice

Notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980). The process the Court ordered and the parties followed involved notice primarily sent by email (in light of the fact that the defendants are online-only retailers), along with postcard notice, publication notice, and creation of a class settlement website. *See* Declaration of Lana Cooper Regarding Execution of Class Notice Plan ("Cooper Decl."), Docket No. 62-4, ¶¶ 2, 7-8, 11-12; *see also* Docket No. 56, at 6:9-17. Of the over 10,000,000 emails sent, all but 173,254 were deemed to be successfully delivered. *See* Cooper Decl., ¶ 7. Postcard notice was then printed and mailed to 854,672 class members' mailing addresses for individuals who were either part of the unsuccessful email deliveries or for whom there was no valid email address. *See id.*, ¶ 8. Only 89,029 of those postcard notices were returned with undeliverable addresses. *See id.*, ¶ 10.[2]

The Court has determined that the notice issued here was reasonably calculated to apprise interested parties of the pendency of this action and to afford them the opportunity to object. *See* Fed. R. Civ. P. 23(e). Such notice satisfies the due process requirements of the Fifth Amendment. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009); *Brown v. Ticor Title Inc.*, 982 F.2d 386, 392 (9th Cir.1992); *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976).

### C. Certification of the Class

At the preliminary approval stage, the Court provisionally-certified three classes, for settlement purposes only, as follows:

> All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://us.boohoo.com or https://www.boohooman.com/us/ or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

> All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on

---

[2] Plaintiffs assert in their brief that the number of postcard notices returned with undeliverable addresses was 5,861. Docket No. 62, at 17:13-16. This is inaccurate. That is the number that was returned *with forwarding addresses*, and postcard notices were re-mailed to those forwarding addresses. *See* Cooper Decl., ¶ 9.

> https://prettylittlething.us or associated mobile phone applications between April 1, 2016 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.
>
> All individuals in the 49 states, other than California, including the District of Columbia, Guam, Puerto Rico, American Samoa, U.S. Virgin Islands, and Northern Mariana Islands, who made a purchase on https://nastygal.com or associated mobile phone applications between February 28, 2017 and June 17, 2022, excluding any and all past or present officers, directors, or employees of Defendants, any judge who presides over this action, and any partner or employee of Class Counsel.

Docket No. 56, at 3:14-4:2. As there is no indication that anything has changed in terms of the requirements for these settlement-related certifications, the Court now makes them final (for settlement purposes) for the reasons addressed at preliminary approval. *See* Docket No. 51, at pgs. 3-8 of 17.

### D. The Merits of the Settlement

#### 1. Legal Standards Governing Settlement

Settlement of a class action lawsuit requires court approval. *See* Fed. R. Civ. P. 23(e). The court must find that a proposed settlement is fundamentally fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). The Ninth Circuit previously instructed district courts that, in determining whether or not to approve a class settlement in accordance with Rule 23(e), the court could consider any or all of the following factors, if applicable:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). That list was not intended to be exhaustive, and a court is required to consider the applicable factors in the context of the case at hand. *See Officers for Justice*, 688 F.2d at 625.

Subsequent amendments to Rule 23 of the Federal Rules of Civil Procedure have formalized the consideration somewhat further. Now, in order for a court to determine that a settlement is "fair, reasonable, and adequate," the court must first consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3)[3]; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Clearly these rule-based mandatory considerations overlap with certain of the factors the Ninth Circuit previously established as permissible to consider. Consideration of the factors the Ninth Circuit has customarily-employed remains appropriate even after the aforementioned Rule 23 amendments. *See, e.g.*, *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021); *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021); *see also Saucillo v. Peck*, 25 F.4th 1118, 1124 n.3 (9th Cir. 2022) ("Because we vacate the district court's approval of the settlement agreement in this case for reasons unrelated to the *Hanlon* or Rule 23(e)(2) factors, we need not reach the question as to how district courts should incorporate the Rule 23(e)(2) factors into their analyses.").

Despite the importance of fairness, the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action lawsuits. *See, e.g.*, *Officers for Justice*, 688 F.2d at 625 ("Finally, it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation ...."). While balancing all of these interests, the court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Id.* The court, in evaluating the agreement(s) of the parties, is not to reach the merits of the case or to form conclusions about the underlying questions of law or fact. *See id.*

"It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.* The court may not delete, modify, or rewrite particular provisions of a settlement. *See id.* "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

### 2. The Settlement is Fair

#### a. *The Settlement Previously Would Have Enjoyed a Presumption of Fairness*

Courts previously afforded a presumption of fairness to a settlement, if: (1) the

---

[3] Rule 23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3).

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Such a starting-point is no longer appropriate. *See Roes, 1-2 v. SFBSC Mgmt., Inc.*, 944 F.3d 1035, 1049 n.12 (9th Cir. 2019) (calling into question this presumption after recent amendments to Rule 23(e)); *see also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 776, 782-83 (9th Cir. 2022); *Saucillo*, 25 F.4th at 1130-32; *Briseño v. Henderson*, 998 F.3d 1014, 1030 (9th Cir. 2021) ("Rule 23(e)(2) assumes that a class action settlement is invalid.").

It does no harm, however, to note that had such a framework still applied, the settlement would easily garner respect thereunder. Plaintiffs – who are represented by counsel experienced in complex commercial cases and class actions, *see* Omnibus Declaration of Ahmed Ibrahim in Support of Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Ibrahim Omnibus Decl."), Docket No. 62-1, ¶¶ 47-51, 53, 56 and Omnibus Declaration of Yasin M. Almadani in Support of Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards ("Almadani Omnibus Decl."), Docket No. 62-2, ¶¶ 4, 6-7 – demonstrated to the Court's satisfaction as part of preliminary approval that the settlement was the product of arm's-length negotiations, including by way of twice employing the services of retired United States District Court Judge, Irma Gonzalez. *See* Docket No. 51, at pg. 9 of 17; *see also* Ibrahim Omnibus Decl., ¶¶ 38-39. In addition, when appropriately understood in-combination with the efforts undertaken in the *Khan* case, Plaintiffs' discovery efforts were considerable (and included updating certain key information learned during *Khan*, *see* Ibrahim Omnibus Decl., ¶¶ 41-42). Finally, as was true in *Khan*, there have been no objections filed in connection with the proposed settlement or the accompanying request for fees/costs/service awards, and a very small number of opt-outs – only 18 – considering over 9,000,000 people were sent notice. *See* Supplemental Declaration of Lana Cooper Regarding Execution of Class Notice Plan ("Cooper Supp. Decl."), Docket No. 65, ¶¶ 3-4; Cooper Decl., ¶ 15.

The Court does not start with a presumption of fairness here, but had the factors previously used by courts to assess such a question continued to apply, the Court would have no hesitation in concluding those factors favored such a presumption. Even without such a presumption, the Court readily concludes that the settlement, in fact, meets the requisite class action fairness standard, as discussed further below.

      b. *The Settlement is Fair, Adequate, and Reasonable*

          i. <u>The Strength of the Case</u>

Insofar as the conduct of Defendants is concerned, there is no distinction in the strength of this case as compared to *Khan*. As in *Khan*, Plaintiffs had developed an evidentiary record demonstrating the extent and frequency of the defendants' pricing practices that are at issue in this litigation, and concluded that the prices in question were not reflective of actual prices the defendants had previously-charged, but instead merely of the defendants' opinions of the true value of the articles in-question.

However, as the Court noted in *Khan*, a strong case rarely offers certainty of recovery. What quite-likely would have made this case more difficult than *Khan* would have been if the Court would have ever had to consider application of multiple states' laws to the action. *See* Ibrahim Omnibus Decl., Docket No. 62-1, ¶ 29. Plaintiffs' primary theory, however, was that it could have been a nationwide case based only on application of California law, so the multi-state issue never came to the fore. Plaintiffs also were concerned about the impact, if any, from a class action waiver and arbitration clause that Defendants added to their websites in late 2020, a possible statute-of-limitations/*American Pipe* argument, and a potential venue challenge. *See id.* ¶ 30. Similar to *Khan*, the viability of Plaintiffs' damages model might have been a reasonable question, endangering the prospects of certification among other things. Though it was unrelated to merits, Plaintiffs also survived an initial attempt to have this Court strike this action as improper following settlement of *Khan*.

All of the foregoing supports a conclusion that this factor favored settlement and the certainty that it brings along with it.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

The expense and possible duration of the litigation should be considered in evaluating the reasonableness of a settlement. *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 458 (9th Cir.2000); *see also Nat'l Rural*, 221 F.R.D. at 526 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). Although *this* case began only in June 2022, it is difficult to separate it from *Khan*, which began in April 2020. In addition, if Defendants were to contest this case (because of the added potential multi-state complexities or otherwise), substantive challenges might have been forthcoming, as well as a potentially significantly-complex class certification fight. Of course, this does not even begin to account for potential future appellate proceedings. Time and resources spent in all those endeavors would have delayed and likely diminished any future result Plaintiffs might have achieved on behalf of the classes. Consequently, attorneys' fees and costs could have wound up eating up a substantial portion of any eventual likely recovery. In addition, there is potentially a substantial risk in litigation of this type concerning whether or not the damages model Plaintiffs have devised would be considered acceptable in the end.

Again, against all of this, the settlement agreement offers the parties immediate and certain relief. This factor therefore weighs in favor of approving the settlement.

### iii. The Risk of Maintaining Class Action Status Throughout Trial

Were Plaintiffs eventually able to achieve class certification outside the context of settlement, there would be no certainty that such certification would be maintained throughout the proceedings (or survive an appellate challenge), especially if certification involved a multi-state analysis/application. This is clearly a risk worth taking into consideration, and one that favors a resolution of the parties' dispute via settlement.

### iv. The Amount Offered in the Settlement

Basic to [the process of deciding whether a proposed compromise is fair and equitable] in every instance…is the need to compare the terms of the compromise with the likely rewards of litigation." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). Thus, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit has suggested that the Court compare the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation." *See Dunleavy*, 213 F.3d at 459; *see also Rodriguez*, 563 F.3d at 965. *But see Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action.") (omitting internal citation). At the preliminary approval stage, the Court acknowledged Plaintiffs' belief that the settlement recovery would achieve "'45 cents on the dollar' for what they could have hoped to achieve with a full victory in light of their damages' expert's belief about the amount of damages based on U.S.-based (but excluding California) sales." Docket No. 51, at pg. 9 of 17; *see also* Ibrahim Omnibus Decl., ¶ 67.

Settlement is a matter of compromise. As such, there is nothing alarming about a "45 cents on the dollar" recovery achieved in that manner. As noted previously, there have been no objections to the settlement and only a handful of opt-outs, suggesting that very few, if any, members of the classes found the amount or method of recovery – issuance of gift cards – insufficient or inappropriate.

The Court believes that the amount offered in settlement reflects a fair compromise and supports settlement.

### v. The Extent of Discovery Completed and the Stage of the Proceedings

A class plaintiff must be armed with sufficient information about the case to have been able to reasonably assess strengths and value and to broker a fair class settlement. The vast majority of discovery and other information useful to resolution of this case came by way of *Khan*. However, the Court sees no reason why that fact should meaningfully impact its consideration of this factor as to settlement of this action. Clearly, Plaintiffs had plentiful information before them, and a sufficient amount for them to gauge their position and the value of their claims. There is no apparent basis to fault Plaintiffs for believing settlement at this stage of the case was in the classes' best interest.

### vi. The Experience and Views of Counsel

In assessing the adequacy of the terms of a settlement, the trial court is entitled to, and should, rely upon the judgment of experienced counsel for the parties. *See Nat'l Rural*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir.1995). Obviously, class counsel – who are

experienced in complex commercial and class litigation – consider the instant settlement to be fair, adequate and reasonable.

This factor therefore weighs in favor of approving the settlement.

### vii. The presence of a governmental participant

There is no indication that any governmental entity participated in the settlement of this case or that any government action led to Plaintiffs' commencement of the case. Notice of the settlement, after it was reached, was successfully sent as required by the Class Action Fairness Act. *See* Cooper Decl., ¶¶ 3-4. This factor is therefore neutral.

### viii. The Reaction of the Members of the Class to the Proposed Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action [*sic*] are favorable to the class members." *Nat'l Rural*, 221 F.R.D. at 529. Here, after Plaintiffs' notice efforts, there were *no* objections and only 18 opt-outs. *See* Cooper Supp. Decl., ¶¶ 3-4. Therefore, this factor fairly obviously strongly supports approving the settlement.

### ix. Signs of Collusion

The Court does not believe that the evidence comes close to demonstrating that there was, in fact, any collusion here in reaching the settlement. To begin, Defendants clearly were not pleased that this action was allowed to proceed at all following the *Khan* settlement. As noted, the parties reached a compromise following two mediation sessions with a retired United States District Court Judge, which themselves followed an even greater number of mediation sessions with that same retired judge in connection with *Khan*. *See* Ibrahim Omnibus Decl., ¶¶ 37-39. While, as in *Khan*, the settlement agreement does contain a "clear sailing" provision (providing that Plaintiffs' counsel may seek fees and costs up to $4,197,000 – the amount requested here – with no opposition from the Defendants), the parties' mediation efforts, the fact that fees were not discussed until all material terms of the settlement were agreed-upon, and that there is no possibility for reversion,[4] all cause the Court – as in *Khan* – to conclude that a collusion concern is, in the end, unwarranted here. *See* Docket No. 51, at pgs. 11-12 n.12 of 17; *see also Briseño*, 998 F.3d at 1027 ("Disproportionate fee awards, clear sailing agreements, and kicker clauses all *may* be elements of a good deal.") (emphasis added).

### x. Adequate Representation of the Class (Rule 23(e)(2)(A))

Putting aside all that they did in connection with *Khan*, Plaintiffs' counsel defeated Defendants' early attempt to end this case as improper in light of the settlement of *Khan*. Of course, aside from their active litigation efforts, Plaintiffs' counsel also undertook substantial preparation work in outlining the theories supporting a nationwide case, finding individuals they believed suitable and necessary to represent any classes

---

[4] The Court already indicated, at the preliminary approval stage, that any fees not awarded would be directed to the National Consumer Law Center and the Better Business Bureau National Programs, equally, as *cy pres* recipients. *See* Docket No. 51, at pg. 12 of 17, n.11.

8

involved in the case, and in drafting their pleadings.  From all of this, they ultimately obtained a settlement figure which will provide some benefit to millions of consumers without need to engage in a claims process, while also getting the defendants to agree to expand nationwide (from merely a California scope) the permanent changes to messaging on their websites concerning the nature of their pricing communications.  Plaintiffs themselves of course played their own part in obtaining this result.  There is nothing to suggest inadequacy in their own, or their attorneys', efforts or the outcome.

>    xi. Arm's-Length Negotiation (Rule 23(e)(2)(B))

As noted previously, the Court is satisfied that the settlement resulted from arm's length negotiations considering the mediation efforts and private negotiations that culminated in the settlement.  *See* Ibrahim Omnibus Decl., ¶¶ 38-40.

>    xii. Adequate Relief for the Class (Rule 23(e)(2)(C))

The Court has already considered above "the costs, risks, and delay of trial and appeal."

With respect to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," class members do not need to submit claims here.  *See* Cooper Decl., ¶ 16.  Instead, gift cards will automatically be sent to the email they have on file as a result of the defendants' pre-existing records or, for those who received postcard notices instead of emailed notice, the email addresses those individuals then provided to the settlement administrator.  *See id.*, ¶¶ 16-17.  In addition, reminders about the gift cards will be communicated via social media, on the defendants' websites, and via marketing emails.  *See id.*, ¶¶ 20-22.

"[T]he terms of any proposed award of attorney's fees" will be discussed further in connection with the Court's consideration of the attorney's fee motion, *infra*.  For purposes of settlement approval, however, there is nothing glaring in the settlement insofar as attorneys' fees are concerned – other than the "clear sailing" provision, discussed elsewhere – that causes the Court to pause in giving its approval.

As noted at the preliminary-approval stage, there is no "agreement made in connection with the [settlement] proposal" other than the settlement agreement.  *See* Docket No. 51, at pg. 9 of 17; Ibrahim Omnibus Decl., ¶ 44.

There is nothing here to trouble the Court in connection with a determination that the settlement is fair, adequate and reasonable.

>    xiii. Equitable Treatment of Class Members (Rule 23(e)(2)(D))

As in *Khan*, the only "unequal treatment" of class members that might arise here has to do with the requested incentive/service awards, discussed *infra*.  Class representative service awards have long been established as legitimate in the Ninth Circuit, and there is no decision post-dating the amendments to Rule 23 which suggests that such compensation is no longer appropriate due to the terms of Rule 23(e)(2)(D). *See, e.g.*, *In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1115 n.6 (9th Cir. 2021), *cert. denied sub nom., Lowery v. Joffe*, 143 S.Ct. 107 (2022); *Cmty. Resources for Indep. Living v. Mobility Works of Cal., LLC*, 533 F.Supp.3d 881, 889

(N.D. Cal. 2020); *Rodriguez v. Evergreen Prof'l Recoveries, Inc.*, No. C19-0184-JCC, 2021 WL 2577130, *4 (W.D. Wash. June 23, 2021) (construing request for payment to representative plaintiff as request for incentive award in order to permit the payment under Rule 23(e)(2)(D)). In addition, the Court once again notes that it has received no objections to the settlement, or any of its aspects. This factor does not weigh against settlement approval.

### c. *Conclusion re Reasonableness of Settlement*

Upon consideration of the above-stated factors, the Court concludes that the settlement reached in this case is reasonable. It therefore grants the motion for final approval of the settlement.

### 3. Attorneys' Fees, Costs and Service Awards

Plaintiff's counsel moves for approval of their request for $4,158,212 in attorneys' fees, $38,788 in costs, $1,000,000 in settlement administration expenses, and class representative service awards of $1,500 to each of the twelve Plaintiffs.

It is well established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of [its] litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Jones*, 654 F.3d at 941. This rule, known as the "common fund doctrine," is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

In awarding fees in connection with a common fund, courts generally use either a percentage method or a "lodestar" method, but in the Ninth Circuit, use of the percentage method in common fund cases appears to be dominant. *See, e.g.*, *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson*, 886 F.2d at 272. The ultimate goal under any method of determining fees is to reasonably compensate counsel for their efforts in creating a common fund. *See Paul, Johnson*, 886 F.2d at 271-72. Here, as noted further below, there is no true "common fund" at play, because any fee award will not reduce the amount distributed to class members; nevertheless, the Court believes that the foregoing principles still provide guidance.

There is no question that Plaintiffs' counsel are deserving of a fee recovery here.[5] Counsel – who operate small, "boutique" practices – took up a case, on contingency, thereby sacrificing time that could have been spent on other, less-risky, matters, all the while fronting a considerable amount of expenses. When considered in combination with

---

[5] The Ninth Circuit has approved a number of factors which may be relevant to the district court's determination: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.

what they did and achieved in the *Khan* case, they put a substantial amount of work into litigating these issues and claims, and avoided an early existential challenge to the case that was related to the fact that they had actually already settled *Khan*. As with *Khan*, they also put significant thought and work into devising – and updating – a workable damages model, among many other tasks and accomplishments. *See, e.g.*, Ibrahim Omnibus Decl., ¶¶ 19, 67. As was likewise true in *Khan*, they achieved a negotiated result before much of the expenses associated with discovery and merits proceedings would have occurred, and they did so all while leanly-staffing the matter. *See* Ibrahim Omnibus Decl., ¶ 58; Almadani Omnibus Decl., ¶ 10; Omnibus Declaration of Daniel Wang in Support of Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and Service Awards, Docket No. 62-3, ¶ 3. Certainly, this result is deserving of some measure of reward.

Plaintiffs' counsel do not advocate for a percentage recovery here, considering that there is no overall lump of money – and thus no true "common fund" – to be distributed to class members. However, they do *compare* what they *do* seek by way of noting what percentage figure it would amount to (3.7%) in relation to the total value of not just this settlement, but also this settlement in combination with the settlement obtained in *Khan* (and not including the value of the injunctive relief terms of the settlement[6]): $230,000,000. *See* Docket No. 62, at 29:26-30:5.[7]

Plaintiffs' counsel also reports a lodestar figure of $762,860 and costs-incurred in the amount of $38,788[8]. *See* Docket No. 64, at 26:1-11; Ibrahim Omnibus Decl., ¶ 64. A fee award in the amount they request would effectively result in a 5.45 lodestar multiplier for this case (while it would amount to a 2.45 multiplier for this case and *Khan* combined,[9] which, in Plaintiffs' own words, "is far below the 3 to 4 range 'common in lodestar awards for lengthy and complex class action litigation,'" Docket No. 64, at

---

[6] Although Plaintiffs have not asked the Court to take into consideration the value of the injunctive relief portion of this settlement, were the Court to have to do so, it would have to face the question of how much value really should be accorded that relief in this case (as opposed to *Khan*). Plaintiffs make the point that Defendants are now legally bound to extend the *Khan* injunctive relief nationwide, and that Defendants otherwise could have different website practices for California as opposed to the rest of the country, just as they do in different nations. *See* Ibrahim Omnibus Decl., ¶ 31. However, there is no suggestion that Defendants ever have had different website operations for different locations/states/regions in this country and, as far as comparison to different countries go, different websites in different countries could potentially be explained – though no one has attempted to address the issue here – as due to the need to comply with different regulatory settings.

[7] For the reasons identified at the preliminary-approval stage and in *Khan*, Docket No. 51, at pgs. 12-14 & n.10 of 17, the Court does not believe that the settlement before it is a "coupon" settlement.

[8] The expenses include costs for expert/consultant fees, e-discovery database fees, mediation fees, parking, mileage, printing, and copying. *See* Ibrahim Omnibus Decl., ¶ 66. They are of the type – in this Court's experience – reasonably incurred in class litigation and normally charged to paying clients, and the Court finds them reasonable here. The Court therefore grants the request for fees in-full. In addition, although it is a high figure, Plaintiffs have adequately justified the $1,000,000 in settlement administration expenses for which they seek approval. Based upon that explanation, the Court awards that amount as well.

[9] The effective lodestar multiplier in *Khan* – a much-more-lengthy and hotly-contested action – was 1.63. *See Khan*, Docket No. 199, at pgs. 11-12 of 13.

11

30:14-19 (quoting *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 298 (S.D. Cal. 1995)).

In the end, the Court believes that the work undertaken in obtaining the settlement of this case was nowhere near as substantial as was involved in *Khan*. The lodestar multiplier requested for work performed in *this* action is substantially larger than that approved in *Khan*. Recognizing this, Plaintiffs' counsel shifts to focusing on the percentage of the fee request as compared to the overall value of the litigation (injunctive relief excepted). But, again, this starts to raise the question of the "true" value of the litigation where we have no idea how many gift cards will ever actually wind up being used.

On that note, as Plaintiffs recognize, *see* Docket No. 62, at 31:20-26, the Court specifically asked Plaintiffs' counsel to report back to it with statistics on the rate of redemption and corresponding dollar figure of the gift cards distributed as a result of the *Khan* settlement. *See also* Docket No. 58, at 10:23-11:9. Although the Court continues to believe that this settlement is not a "coupon settlement," this information would have been meaningful to the Court's determination, and Plaintiffs' counsel were aware of that fact. Yet, instead of providing that information, they inform the Court that they are "unable to determine" that information because no claims were required to obtain gift cards and such cards may be used at any time, and that *they* believe that the more-important information is how many people have *received* the gift cards. *See* Docket No. 62, at 31:26-32:7; *see also* Cooper Decl., ¶¶ 17-19. It is unclear what the lack of a claims process has to do with how many gift cards have been redeemed. Plaintiffs do not appear to indicate that there is a complete inability to track use of the gift cards issued in connection with the *Khan* settlement.

In any event, from this, the Court is left to conclude that the information on the topic the Court identified would not have been terribly impressive. Without that information, Plaintiffs' counsel believes that the Court is stuck with comparing the fee amount requested against the total valuation of the gift cards (and free shipping) as if every single gift card were redeemed, resulting in the fee request appearing as if it were a minimal percentage of value, far below the 25% benchmark customary in common fund cases. The Court disagrees that this is the only way to look at the fee figure Plaintiffs' counsel seeks.

For the reasons outlined above, the Court will not award the full $4,158,212 fee requested. Because of the absence of information requested from Plaintiffs' counsel, the Court is left to conclude simply what it believes is reasonable, perhaps in comparison with the lodestar reported. As the Court approved of a 1.63 multiplier in *Khan*, the Court believes that there is a very strong argument for not giving any larger multiplier in this, much-more-*lightly*-litigated, action than in *Khan*. This would result in a fee award in this action of $1,243,462.

Still, the Court recognizes that the value of the gift cards to be distributed as a result of this settlement dwarfs the value of the cards distributed following the *Khan* settlement. As such, despite its expressed misgivings in this regard, the Court is willing to award a fee higher – in fact, much higher – than that lodestar multiplier figure. The Court believes that a $3,000,000 fee is reasonable taking into consideration the work

performed on this case and the value of the gift card-based settlement. The $1,158,212 difference between the fee requested and the fee awarded will be directed to the *cy pres* organizations.

Finally, the fee motion also asks for incentive/service awards to Plaintiffs in the amount of $1,500 each. Again, there were no objections to the settlement (or to any of the proposed/requested disbursements from the settlement amount).

The decision whether to award an incentive/enhancement payment to a class representative, and the size of that award, is entirely within the trial court's discretion. *See, e.g.*, *Dunleavy*, 213 F.3d at 458, 462. The criteria courts may consider in determining whether to make an incentive/enhancement award include:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken*, 901 F.Supp. at 299.

For reasons expressed at the preliminary approval stage, the Court will award service awards to each of the Plaintiffs, but not in the amounts requested. The Court believes that the number of Plaintiffs was at least somewhat unnecessary, and the work they each performed in this action does not warrant a large amount. They spent anywhere from 10 to 13 hours on this case. *See* Docket No. 64, at 33:7-8; *see also* Ibrahim Omnibus Decl., ¶¶ 27, 69-71. In addition, while it is true that Plaintiffs' names are now associated with class action litigation, this is not an employment case, where that is usually a concern raised. They are not under threat of being deemed unemployable. The Court has no reason to suspect that their future as consumers is anything other than bright.

Taking into consideration all of the foregoing, the Court will grant service awards to the Plaintiffs in the amount of $1,000 each. The excess $6,000 will be directed to the *cy pres* organizations.

In sum, the Court will grant the motion for fees, costs, settlement administration expenses, and service awards, but with reductions of the amounts requested insofar as attorneys' fees and service awards are concerned, to $3,000,000 and $1,000 (for each of the Plaintiffs), respectively. The amounts not awarded as attorneys' fees and service awards – in the Court's calculation, $1,164,212 -- will be directed, split equally, to the *cy pres* organizations referenced in Footnote 4, *supra*.

### III. Conclusion

The Court would grant the final approval motion and the motion for award of fees, costs, settlement administration expenses, and service awards, but with the reductions set forth above. Plaintiffs should prepare a revised order/judgment reflecting the foregoing.